K8VTKOLC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4
            v.                20 CR 412 (AT)
5
    BRIAN KOLFAGE, STEPHEN BANNON,
6   ANDREW BADOLATO and TIMOTHY
    SHEA,
7
              Defendants.
8
    ------------------------------x
9
                         New York, N.Y.
10                       August 31, 2020
                       1:00 p.m.
11

12   Before:

13                 HON. ANALISA TORRES,

14                       District Judge

15
              APPEARANCES (Videoconference)
16
    AUDREY STRAUSS
17      Acting United States Attorney for the
       Southern District of New York
18   ALISON MOE
    NICOLAS ROOS
19   ROBERT SOBELMAN
       Assistant United States Attorneys
20
    SPRINGER & STEINBERG, P.C.
21      Attorneys for Defendant Kolfage
    BY:  HARVEY STEINBERG
22
    QUINN EMANUEL URQUHART & SULLIVAN LLP
23      Attorneys for Defendant Bannon
    BY:  WILLIAM BURCK
24       DANIEL KOFFMANN
       ALLISON McGUIRE
25

K8VTKOLC

1                          APPEARANCES (Cont'd)

2      MAYER BROWN LLP
            Attorneys for Defendant Badolato
3      BY:  DANIEL STEIN
            MICHAEL HEFFERNAN
4
       MERINGOLO & ASSOCIATES, P.C.
5           Attorneys for Defendant Shea
       BY:  JOHN MERINGOLO
6
       ALSO PRESENT:  FRANCESCA TESSIER-MILLER, Pretrial Services
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

K8VTKOLC

1              (The Court and all parties appearing by video)

2              (Case called)

3              THE COURT:  Good afternoon.  Counsel, would you make

4     your appearances, please.

5              MS. MOE:  Good afternoon, your Honor, Alison Moe,

6     Nicolas Roos and Robert Sobelman for the government.

7              MR. STEINBERG:  Good afternoon, Judge, my name is

8     Harvey Steinberg.  I appear on behalf of Mr. Kolfage, who is

9     also on the line.

10             THE COURT:  Mr. Steinberg, I'm having difficulty

11    seeing you.  Maybe because of the light behind you, perhaps you

12    could pull down the shade.

13             MR. STEINBERG:  We're doing that as you speak.

14             THE COURT:  That's much better.

15             MR. STEINBERG:  Thank you.

16             THE COURT:  Please go ahead.

17             MR. BURCK:  Good afternoon, your Honor, this is

18    William Burck, Daniel Koffman and Allison McGuire from Quinn

19    Emanuel for Mr. Bannon, who is also present.

20             MR. STEINBERG:  Good afternoon, your Honor, Daniel

21    Stein and Michael Heffernan from Mayer Brown for Mr. Badolato,

22    who is also present on the line.

23             MR. MERINGOLO:  John Meringolo for Mr. Shea.  He's

24    also present.

25             THE COURT:  This video conference is open to the

K8VTKOLC

1    public just as the courtroom would be, but as a reminder to

2    those who are listening in, photographing, recording or

3    rebroadcasting the proceeding is prohibited.

4           Each defendant has already submitted a form consenting

5    to this proceeding taking place by videoconference.  I

6    understand that Mr. Bannon has been arraigned but that

7    Mr. Kolfage, Mr. Badolato and Mr. Shea have not.  Is that

8    correct?

9           MS. MOE:  Yes, your Honor, that's correct.

10          THE COURT:  All right.  Mr. Kolfage, Mr. Badolato and

11   Mr. Shea, you've been charged in an indictment with two counts:

12   One, conspiracy to commit wire fraud; and two, conspiracy to

13   commit money laundering, both in connection with the operation

14   of a fund-raising campaign called We Build the Wall.

15          I'm now going to ask you some questions.  When I call

16   your name, please answer.

17          Have you been provided with a copy of the indictment,

18   that is, the written version of the charges against you,

19   Mr. Kolfage?

20          DEFENDANT KOLFAGE:  Yes, your Honor, I have received

21   it.

22          THE COURT:  Mr. Badolato?

23          DEFENDANT BADOLATO:  Yes, I have received it.

24          THE COURT:  Mr. Shea?

25          DEFENDANT SHEA:  Yes, ma'am, I have received it.

K8VTKOLC

1          THE COURT:  Do you want me to read it to you now in

2     open court or do you waive its public reading?

3          Mr. Kolfage?

4          DEFENDANT KOLFAGE:  I do not need you to read it.

5          THE COURT:  Mr. Badolato?

6          DEFENDANT BADOLATO:  I waive the public reading.

7          THE COURT:  Mr. Shea?

8          DEFENDANT SHEA:  I waive the public reading.

9          THE COURT:  With respect to the charges in the

10    indictment, how do you plead, Mr. Kolfage?

11         DEFENDANT KOLFAGE:  Not guilty.

12         THE COURT:  Mr. Badolato?

13         DEFENDANT BADOLATO:  Not guilty.

14         THE COURT:  Mr. Shea?

15         DEFENDANT SHEA:  Not guilty.

16         THE COURT:  I would like the government to give me a

17    report as to the status of bail.

18         MS. MOE:  Yes, your Honor.  On August 20 the Court set

19    bail conditions for defendant Steven Bannon.  With respect to

20    the remaining three defendants, this appearance is their first

21    appearance in this district.  We've conferred with defense

22    counsel and submitted proposed bail conditions for the Court's

23    consideration by letter.  I would be happy to review those if

24    the Court would like me to, but they are substantially the same

25    conditions that we proposed by letter.

K8VTKOLC

1    THE COURT:  I would like you to state them on the

2    record, please.

3    MS. MOE:  Yes, your Honor.  So with respect to

4    defendant Brian Kolfage, the parties jointly propose a $500,000

5    personal recognizance bond, co-signed by two financially

6    responsible persons within two weeks.

7    The second condition would be a travel restriction

8    restricting travel to the Northern District of Florida, except

9    for travel to the Southern District of New York to attend

10   court, and travel to the District of Colorado to meet with

11   defense counsel, and all necessary points between for travel,

12   including travel by car.

13   The third condition is that the defendant must

14   surrender all passports and refrain from making any new

15   applications.

16   The fourth condition is supervision as directed by

17   Pretrial Services.

18   The fifth is that the defendant be prohibited from

19   raising funds on behalf of We Build the Wall or engaging in

20   financial transactions involving We Build the Wall's funds.

21   Sixth, that the defendant may not have any contact

22   with co-defendants or other individuals affiliated with We

23   Build the Wall, except in the presence of defense counsel.

24   Seventh, that the defendant shall not transfer any

25   real property or assets, encumber any real property or assets,

K8VTKOLC

1    or obtain any new lines of credit without permission of

2    Pretrial Services.

3              And eighth, the defendant may not possess firearms and

4    must surrender any firearms to Pretrial Services.

5              With respect to Andrew Badolato, the first proposed

6    condition is a $250,000 personal recognizance bond cosigned by

7    two financially responsible persons within two weeks.

8              Second, travel restrictions to the Middle District of

9    Florida, the Southern District of New York for purposes of

10   meeting with the defense counsel or attending court, the

11   District of Columbia for purposes of meeting with defense

12   counsel, and all necessary points between for travel, including

13   travel by car.

14             Third, the defendant must surrender all passports and

15   refrain from making any new applications.

16             Fourth, supervision as directed by pretrial services.

17             Fifth, the defendant is prohibited from raising funds

18   on behalf of We Build the Wall or engaging in financial

19   transactions involving We Build the Wall's funds.

20             Sixth, that the defendant may not have contact with

21   co-defendants or other individuals affiliated with We Build the

22   Wall, except in the presence of defense counsel.

23             And seventh, the defendant may not possess firearms

24   and must surrender any firearms to Pretrial Services.

25             Finally with respect to Timothy Shea, the first

K8VTKOLC

condition we propose is a $250,000 personal recognizance bond

cosigned by two financially responsible persons within two

weeks.

The travel restrictions are the District of Colorado,

the Southern District of New York for the purposes of attending

court and meeting with defense counsel, and all necessary

points between for travel, including travel by car.

We propose that the defendant must surrender all

passports and refrain from making any new applications.

We propose supervision as directed by Pretrial

Services.

We propose that the defendant is prohibited from

raising funds on behalf of We Build the Wall or engaging in

financial transactions involving We Build the Wall's funds.

We propose that aside from the defendant's spouse, the

defendant may not have contact with co-defendants or other

individuals affiliated with We Build the Wall, except in the

presence of defense counsel.

And finally, that the defendant not possess firearms

and must surrender any firearms to Pretrial Services.

THE COURT:  Having heard these proposed conditions and

having considered the factors set forth in 18, United States

Code, Section 3142(g), I find that the agreed-upon conditions

of release reasonably assure that the defendants will appear

for future court appearances.  Accordingly, I approve the

K8VTKOLC

1    conditions for Mr. Kolfage, Mr. Badolato and Mr. Shea.

2          Now let me warn you, and I'm speaking to the

3    defendants, that if you fail to appear when required or if you

4    violate any of the conditions of your release, a warrant will

5    be issued for your arrest, you may be detained pending trial,

6    you and anyone who signed the bond will be responsible for

7    paying the full amount of the bond, and you may be charged with

8    a separate crime of bail jumping.

9          Do you understand, Mr. Kolfage?

10         DEFENDANT KOLFAGE:  Yes, your Honor.

11         THE COURT:  Mr. Badolato?

12         DEFENDANT BADOLATO:  Yes, your Honor.

13         THE COURT:  Mr. Shea?

14         DEFENDANT SHEA:  Yes, your Honor.

15         THE COURT:  I understand that Mr. Bannon has already

16   received the same warning.  Of course, those rules continue to

17   apply.

18         I understand that an officer with pretrial is also

19   present on the call.  Ms. Tessier-Miller, is there anything

20   that you would like to say?

21         MS. TESSIER-MILLER:  Not at this time, your Honor.

22         THE COURT:  All right.  Let me set a trial date.  Here

23   in the Southern District of New York there are only a few

24   courtrooms that are outfitted to deal with the challenges posed

25   by the Covid pandemic, so I am not a hundred percent certain

K8VTKOLC

1   whether we will go forward on the date that I am going to set

2   today, but I am going to be optimistic and hope that we have

3   courtrooms available.

4           May 24, 2021 is the date that I would like to set.

5           (Pause)

6           THE COURT:  So I haven't heard any objections to that

7   date, so that is the date that we will go forward.

8           I would like to get a report concerning discovery.

9           MS. MOE:  Yes, your Honor.  With respect to discovery,

10  the government intends to seek a protective order before

11  producing discovery in this case, given the sensitive materials

12  that will be contained in our discovery production.  We intend

13  to --

14          THE COURT:  I'm sorry, would you repeat that, please?

15          MS. MOE:  Yes, your Honor.  The government intends to

16  seek a protective order before producing discovery, given the

17  sensitive materials that will be contained in our production.

18  And so it's our intention to confer with defense counsel, and

19  we hope to submit a proposed protective order promptly so that

20  discovery productions can begin.

21          Following the entry of a protective order, we will

22  produce the following materials promptly in five categories:

23  The first is all search warrants and affidavits; the second is

24  all subpoena returns; the third is public source information

25  that the government has gathered; the fourth is responsive

K8VTKOLC

1    material from a January search warrant for a number of email

2    accounts and cloud storage accounts; and finally, in addition

3    to responsive material from that warrant we also intend to

4    produce to each defendant their own complete account.

5           THE COURT:  By what date do you expect all those

6    materials will be produced?

7           MS. MOE:  For this initial wave of materials, which

8    will be voluminous, we would ask for three weeks to produce

9    these materials following the entry of a protective order.

10          There is a second category of information which I

11   would be happy to address following the production of our first

12   batch.

13          THE COURT:  When do you think you'll reach agreement

14   on the protective order?

15          MS. MOE:  Your Honor, our hope is to circulate a

16   protective order either today or tomorrow and then confer with

17   defense counsel.  So it just depends on whether there are any

18   issues.  The terms we intend to propose are fairly standard, so

19   we hope that there won't be any issues with resolving that, but

20   of course we'll need to confer with defense counsel about those

21   terms before submitting it to the Court.  But our hope is to do

22   so promptly as soon as we are able to discuss it with defense

23   counsel.

24          THE COURT:  And then you said you expect the first

25   wave of discovery to come three weeks thereafter, correct?

K8VTKOLC

1        MS. MOE:  Yes, your Honor.  And that's largely to

2   account for the mechanics of producing a large volume of data.

3        THE COURT:  So I am going to expect that the

4   protective order will be finalized by the 8th of September,

5   next Tuesday, and that the first wave of production will happen

6   by the 29th of September.

7        MS. MOE:  Yes, your Honor.

8        THE COURT:  Now you said there's a second wave?

9        MS. MOE:  Yes, your Honor.  Following this initial

10   production, which will be voluminous, we intend to produce

11   additional materials as they become available to the

12   government.  So we intend that the first wave will include all

13   materials which are available to the government in the

14   categories that I've outlined.

15        Following that initial production we will produce

16   additional materials as they become available to us.  In

17   particular, your Honor, in July and August the government has

18   seen several email device and premises search warrants, and

19   some of those email accounts have not yet been received from

20   the service providers, and the devices have not yet been

21   forensically imaged, so when we receive that data we'll provide

22   copies to the owners of the accounts or device and then make

23   productions on a rolling basis following a privilege review and

24   a responsiveness review.

25        In our view, producing these materials on a rolling

K8VTKOLC

1    basis as they become available to the government is the fastest

2    way to get those materials to defense counsel.  And we do not

3    believe that this will delay any motion practice, given that we

4    are producing all of the accompanying affidavits and search

5    warrants for those materials promptly.

6         THE COURT:  So when do you think that all of the items

7    will be delivered to defense?

8         MS. MOE:  Your Honor, it's difficult to give a firm

9    estimate given that much of the material is not available to

10   the government, so there is a variable beyond our control and

11   it's difficult to project how long the privilege review would

12   take.  But we intend to produce those on a rolling basis, so we

13   will propose either setting a check-in date to alert the Court

14   about the status of discovery or a follow-up conference,

15   whatever the Court's preference is, but we would be happy to

16   keep the Court updated on the progress of those rolling

17   productions.

18        THE COURT:  Do you have the sense that you will be

19   able to produce these items by the 30th of October?

20        MS. MOE:  It would be difficult to give an estimate,

21   your Honor, I apologize.  We would be happy to submit a letter

22   in the coming weeks when we have a better sense of the timeline

23   for extracting devices and reviewing materials from a

24   third-party provider.  At this date we don't yet know which

25   devices we'll be able to get into, whether there will be

K8VTKOLC

password issues or other encryption problems which might delay

the extraction of some of those materials, but if it's

acceptable to the Court, we would be happy to submit status

letters on those issues.

THE COURT:  I would like to set a date for a status

conference, October 26 at 1:00 p.m.  And yes, I would like to

hear about the progress of discovery.

MS. MOE:  Yes, your Honor.

THE COURT:  On August 28 the government submitted to

me a letter indicating that Mr. Kolfage has made a number of

statements on social media concerning this case.  Under Local

Criminal Rule 23.1, lawyers appearing in criminal proceedings

before the Court have a duty to refrain from public statements

outside of court that have a substantial likelihood of

interfering with a fair trial or prejudicing the due

administration of justice.

So that there's no confusion, I am now going to give

you some examples of those types of statements:  Statements

about the prior criminal record including arrest, indictments

or other charges of crime, or the character or reputation of

the accused; statements about the existence or contents of any

confession, admission or statement given by the accused, or the

refusal or failure of the accused to make any statement;

statements about the identity, testimony or credibility of

prospective witnesses; statements about the possibility of a

K8VTKOLC

plea of guilty to the offenses charged or lesser offenses;

information a lawyer knows is likely to be inadmissible at

trial, and would, if disclosed, create a substantial likelihood

of prejudicing an impartial trial; any opinion as to the

accused's guilt or innocence or as to the merits of the case or

the evidence in the case.  If I could fill in that public

statements by attorneys or by the defendant threaten the

Court's ability to conduct a fair trial by an impartial jury.

Local Rule 23.1 also gives me the authority to issue a

special order prohibiting the parties from making those

statements or using certain modes of communication.  If any

party in this case makes a statement that risks tainting the

impartiality of potential jurors or otherwise calls into

question the fairness of these proceedings, I will exercise

that authority.

Do you understand, Mr. Kolfage?

DEFENDANT KOLFAGE:  Yes, your Honor.

THE COURT:  Mr. Bannon?

DEFENDANT BANNON:  Yes, your Honor.

THE COURT:  Mr. Badolato?

DEFENDANT BADOLATO:  Yes, your Honor.

THE COURT:  Mr. Shea?

DEFENDANT SHEA:  Yes, ma'am.

THE COURT:  Are there any further applications?

MR. STEINBERG:  Yes, Judge.  May I address what the

K8VTKOLC

1    Court has just raised?  This is Harvey Steinberg on behalf of

2    Mr. Kolfage.

3              THE COURT:  You may.

4              MR. STEINBERG:  Thank you.  By definition, 23.1 does

5    not apply to the defendants unless the Court conducts a special

6    proceeding.  And that's been reaffirmed not only by the rule,

7    but also by the case of *United States v. Gotti*, which came out

8    of the Southern District, it's a 2004 case and could be found

9    at 2004 U.S. District Lexis 24192.

10             The concern that I make is this:  The government in

11   this case is the only entity that has violated the rules.

12   Specifically, in the list that the Court cited, Number 7 is the

13   one that was violated.  The government in this case issued a

14   press release, it was co-authored, apparently, or approved

15   explicitly by the U.S. Attorney herself and the agent in charge

16   of this investigation.  The U.S. Attorney is quoted as saying

17   about my client that he used the funds for his lavish

18   lifestyle.  That has nothing to do with this case.  It's a

19   violation of Number 7.

20             What's even worse is the agent who was in charge of

21   this is quoted as saying, "This case should serve as a warning

22   to other fraudsters" -- his terms -- "that no one is above the

23   law, not even a disabled war veteran," in reference to my

24   client.  For the government to file that letter after they set

25   forth a false and inappropriate narrative and then say that the

K8VTKOLC

1   defendant shouldn't have his First Amendment rights pursuant to

2   a rule that is not applicable at this point, we take exception

3   to the government's conduct.  And then for them to say hey,

4   look, we're not going to make any further statements is

5   specious at best, because they have created a narrative that is

6   being repeated by the press.  Their quotes are out there.

7           So I have concern that the government who -- it

8   reminds me of the bully who picks on, if you will, the person

9   who he perceives to be the weakest, and then when the weakest

10  hits him back he runs to the teacher.  I am concerned that the

11  government has set forth this complaint about Rule 23 that

12  doesn't apply at this point and won't apply unless the Court

13  specifically I think has to have a hearing pursuant, the way I

14  read the rule, to 1(h).  And then the Court has to conduct a

15  hearing to determine whether or not anything my client has said

16  pursuant to his First Amendment rights has impacted the

17  impartial jury selection process.

18          The only entity that has done that so far is the

19  government, and I just wanted to make clear on the record that

20  we don't think it's fair for the government to take the shot

21  over the bow and then when there's an attempt to respond

22  appropriately -- and let me be clear, Judge, I, as a lawyer, am

23  aware of 23.1.  I have not made any statements whatsoever.  I

24  have not cajoled, interpreted, suggested or helped the

25  defendant crafting any statements.  But in fairness, we can't

K8VTKOLC

1    have a situation where the government takes shots and basically

2    calls my client a fraudster and says he was living this lavish

3    lifestyle, and then when we don't even attempt, if you will, to

4    deal with the facts, which they did in violation of the rule

5    that applies to them, come forward and complain we think is

6    inappropriate.  And I just want that to be part of the record,

7    Judge.  That's our concern.

8              THE COURT:  I will hear from the government.

9              MS. MOE:  Thank you, your Honor.  First, just so we

10   understand the procedural context of the government's

11   application, as we were clear in our letter, we have not asked

12   the Court to issue an order at this point.  We brought these

13   issues to the Court's attention, as we brought them to

14   counsel's attention, in order to make clear that the

15   expectations were that everyone would comply with Local

16   Rule 23.1.  And that's all we've asked the Court to do, which

17   the Court has done today.  So the government has not sought an

18   order in this case under Rule 23.1.

19             With respect to the substance of defense counsel's

20   allegations, the government issued a press release in this

21   case, which is standard.  That press release tracked the

22   allegations in the indictment, and the government submits that

23   it's entirely appropriate and commonplace in this district.

24   The government did not have a press conference or anything

25   beyond issuing a press release in this case, which was entirely

K8VTKOLC

1    appropriate.

2              What troubles the government are statements by a

3    defendant on social media intended to be broadcast to victims

4    in this case and donors suggesting that the government will be

5    targeting the donors and using their personal information for

6    nefarious purposes.  That deeply concerns the government, and

7    that's why we brought this to the Court's attention, and we

8    appreciate the Court advising the parties of its expectation

9    that everyone will comply with Local Rule 23.1.

10             As we outlined in our letter, the government does not

11   intend to issue any other further public statements with the

12   exceptions outlined in our letter, and we fully intend to

13   comply with Local Rule 23.1, and we appreciate the Court

14   advising the parties of its expectation that they will do the

15   same.

16             THE COURT:  Well, I just asked the defendants if they

17   understood what I said and they said that they did.  I know

18   that the attorneys understand the rule, and so my expectation

19   is that there will not be violations of the rule.  If I have to

20   hold an additional proceeding to determine whether the rule has

21   been violated, well, we shall see.

22             Are there any further applications?

23             MR. STEINBERG:  Not on behalf of Mr. Kolfage.  Thank

24   you.

25             MR. BURCK:  Not on behalf of Mr. Bannon, your Honor,

K8VTKOLC

1    thank you.

2             THE COURT:  Is there a motion for me to exclude time

3    under the Speedy Trial Act?

4             MS. MOE:  Yes, your Honor.  The government has an

5    application under the Speedy Trial Act.  Before addressing

6    speedy trial matters, your Honor, we did want to raise one

7    additional matter today before concluding.

8             Your Honor, we're not seeking any relief today, but we

9    did want to make the Court aware that the government has been

10   in communication with Mr. Bannon's defense counsel to discuss

11   whether there may be a potential conflict in this case, given

12   that the law firm of Quinn Emanuel previously represented We

13   Build the Wall.  we've asked defense counsel to provide us some

14   additional information about the scope of that representation,

15   and our intention is to submit a letter to the Court addressing

16   that issue and potentially requesting a Curcio hearing.  So

17   we're not asking for any relief today, but we did want to make

18   the Court aware that we intend to raise that issue soon.

19            But aside from that issue, there are no issues from

20   the government aside from asking the Court to exclude time

21   under the Speedy Trial Act.  We ask the Court to exclude time

22   between today and the trial date in order for the parties to

23   discuss a potential protective order, for defense counsel to

24   review discovery, and possibly any motions.

25            THE COURT:  Any objection?

K8VTKOLC

1          MR. BURCK:  Your Honor, no objection from Mr. Bannon.

2     I would like to briefly respond to the government's potential

3     request for a Curcio.

4          THE COURT:  Go ahead.

5          MR. BURCK:  Thank you, your Honor.  The government is

6     correct, they have let us know that they would like to get more

7     information about prior representation by Quinn Emanuel of We

8     Build the Wall.  And just to be specific, your Honor, there

9     were two lawyers at our firm, not people who currently

10    represent Mr. Bannon, not myself or my colleagues, who did a

11    very limited amount of work for We Build the Wall in October

12    and November of last year.  It was a partner who did about six

13    hours of work and an associate who did about eight hours of

14    work.  That's the basis for the potential conflict.

15         We have told the government that we would not object

16    to a Curcio hearing.  It would be fine with us.  We already

17    talked to our client about it.  We're in the process of talking

18    to the other defendants about it as well, as well as We Build

19    the Wall.  So in the event the government does request a

20    Curcio, we will not object, and we will work with the

21    government again.

22         We don't think this is a significant issue, though,

23    for a couple of reasons; one is we expect that any conflict

24    will be waived by all the parties.  And again, even to the

25    extent that there was a prudential reason to keep the people

K8VTKOLC

1    who worked the limited amount of 14 hours of work for We Build

2    the Wall last year, they're not currently and we don't intend

3    to have them on the trial team.  So again, we think there are

4    many ways to handle that issue, but we will work with the

5    government and come back to you as soon as we can.

6            THE COURT:  All right.  So time is excluded under the

7    Speedy Trial Act through May 24, 2021, having heard no

8    objections from counsel.  I find that the ends of justice

9    served by excluding such time outweigh the interests of the

10   public and the defendants in a speedy trial because this will

11   allow time for the prosecution to finish producing discovery,

12   for the defense to consider it and decide whether to file

13   motions, and for the parties to discuss a possible disposition.

14           That brings our conference to a close.  The matter is

15   adjourned.  I wish you all good health.

16           (Adjourned)

17

18

19

20

21

22

23

24

25