UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,                :
                                          :
   - v. -                                :   20-CR-412 (AT)
                                          :
KOLFAGE, et al.,                         :
                                          :
                     *Defendants*.      :
------------------------------------------------------------X

# DEFENDANT TIMOTHY SHEA'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO TRANSFER VENUE TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO

John C. Meringolo, Esq.
Meringolo & Associates, P.C.
375 Greenwich Street, 7th Floor
New York, New York 10013
(212) 941-2077
*Attorneys for Defendant Timothy Shea*

## MEMORANDUM OF LAW IN SUPPORT OF
## TRANSFER TO THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Timothy Shea respectfully submits this Memorandum of Law in support of his motion to transfer venue of the above-captioned case from the Southern District of New York to the United States District Court for the District of Colorado pursuant to Federal Rule of Criminal Procedure 21(b) ("Rule 21(b)"). Pursuant to Rule 21(d), a motion for change of venue may be made "at any other time the court or these rules prescribe." For the reasons set forth below, the proceedings against Mr. Shea, who is scheduled to go to trial in May 2021, should be transferred in the interests of justice, location of counsel, and for the convenience of the parties and the witnesses. Among the enumerated "…injuries and usurpations" attributed to George III compelling the Fathers of the Republic to declare their independence from the sovereignty of Great Britain was: "For transporting us beyond the Seas to be tried for pretended offenses."[1] Indeed, the abolition of this abuse was so paramount to the Framers of the Constitution, it was manifested, in tandem, both in the body of the Document itself, and again in the Bill of Rights. Article III of the Constitution provides in part that, "the Trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed."  U.S. Const. Art. III § 2, cl. 3.  Further, the personal rights of every individual guaranteed by the Sixth Amendment include a criminal trial "by an impartial jury of the State and District wherein the crime shall have been committed." U.S. Const. Amend. VI.

The spirit of this principle currently finds expression in the policy reflected in Rule 21(b), and resonates in the holdings of cases that have examined motions of criminal

---

[1] *Declaration of Independence,* July 4, 1776

1

defendants to determine whether the transfer of a prosecution to an alternative district is warranted "in the interest of justice." Thus, it has been observed by the Seventh Circuit that, "The underlying spirit of the constitutional concern for trial in the vicinage of the defendant, rooted in centuries of Anglo-Saxon jurisprudence and universally recognized by the federal courts, is not to be ignored." *Minnesota Mining & Manufacturing Co. v. Platt*, 314 F. 2d 369, 372-373 (7th Cir. 1963), reversed on other grounds, 376 U.S. 240 (1964).

This bias has predisposed federal judges in their analysis under Rule 21(b) to refer to "the constitutional underlying of the rules governing venue," *United States v. Ohran*, 2000 WL 620217, at *4 (S.D.N.Y. May 12, 2000) and to observe that "the bureaucratic convenience of the government is subject to and must give way to the principles of fairness imbedded in the rule," *United States v. Coffee*, 113 F. Supp. 2d 751, 759 (E.D.Pa. 2000); and to remark that even the most notorious of defendants are "unreservedly entitled to the protections of the principles codified in Rule 21(b)." *United States v. Gotti*, 593 F. Supp. 2d 1260, 1271 (M.D.Fla. 2008). In *United States v. Gotti*, 593 F. Supp. 2d 1260, 1269 (M.D. Fla. 2008), the District Court of the Middle District of Florida found that the *Platt* factors yielded "strongly influential conclusions" as to Gotti's case transfer to New York. As the Court found:

> Gotti and his family and friends are in and around New York. Gotti's personal real estate business, understandably disrupted by his absence, is in New York. The witnesses in a case of this nature and at this stage of the prosecution are necessarily speculative in number and location, but undoubtedly the bulk of the witnesses to the RICO conspiracy charged in the Florida indictment are in and around New York or, at least, not singularly convenient to Tampa. The bulk of the events alleged in the indictment occurred in and around New York (as well as New Jersey and Pennsylvania), although some are alleged to have occurred in Florida. The defense of this case in Florida incontestably requires some bothersome increment of expense (probably in the vicinity of a quarter of a million dollars) to Gotti over the

cost of defense in New York. Gotti's lawyers, who have defended him repeatedly and successfully in New York on the same charge asserted in Florida, practice and reside in New York. Both New York and Tampa are easily accessible but, obviously, access to Tampa is an increased burden for Gotti, his counsel, his family and friends, and his witnesses. Either the New York or the Florida court can expeditiously process the case. In sum, although the parties might quibble about the details, no disinterested observer can doubt that defense of the present indictment in Florida visits on Gotti a material increment of financial, personal, and legal burden over defense of the same indictment in New York.

*United States v. Gotti*, 593 F. Supp. 2d 1260, 1269.

Thus, although motions under Rule 21(b) are subject to the sound discretion of the trial judge, that discretion is exercised not in the abstract, but rather within the constitutional context of the historical heritage cited herein. With this in mind, Mr. Shea petitions this Court "for the convenience of the parties and witnesses, and in the interest of justice" to transfer this matter to the District of Colorado.

## STATEMENT OF FACTS

The Indictment in this case charges Mr. Shea with a one count of conspiracy to commit wire fraud and one count of conspiracy to commit money laundering. The Indictment centers around a crowdfunding campaign website referred to as "We the People Build the Wall" (later changed to "We Build the Wall"), which sought to raise money to build a wall along the southern border of the United States. *See* Indictment at ¶ 1. We Build the Wall has its own website, where it offers updates on its own construction of a border wall in Texas.[2] The We Build the Wall campaign was launched on or around December 17, 2018 and raised over $25 million, "hundreds of thousands of dollars" of which the Indictment alleges were "used in a manner inconsistent with the organization's public representations" by the defendants. *Id.* at ¶ 2. The Indictment alleges that co-defendants

---

[2] https://webuildthewall.us/update/

3

Brian Kolfage and Stephen Bannon received $350,000 and $1,000,000, respectively, from the funds through a non-profit organization. *Id.* The Indictment further alleges that the defendants "devised a scheme to route those payments" through the non-profit organization "and a shell company" under Mr. Shea's control. *Id.* According to the Indictment, defendants Kolfgage (Florida Resident), Bannon, and Badolato (Florida Resident) made false statements when they promised donors all proceeds would go to the wall, and not to them. *Id.* at ¶ 17.

Beginning in or around April 2019, allegedly Kolfage's "secret monthly salary of approximately $20,000 was passed indirectly through other third-party entities that were purported vendors for We Build the Wall, including one under the control of" Mr. Shea. *Id.* at ¶ 20. According to the Indictment, "Shell Company-1" began receiving payments from the campaign which Mr. Shea paid to Kolfage, a resident of Florida. It must be noted that although the first choice of venue for Mr. Shea is in Colorado, however a Florida Jurisdiction is more appropriate than the Southern District of New York. In addition, it is alleged all defendants each received "hundreds of thousands of dollars" in donor funds which they used for personal expenses. *Id.* at ¶ 24. Throughout all times of the alleged conspiracy, Mr. Shea resided in Castle Rock, Colorado.

As demonstrated below, it will be made manifestly clear that this Court's connection to the legal and factual issues presented by the Indictment is remote, technical, and wholly attenuated from the events, activities and witnesses associated with the alleged conspiracy. Further, with a trial date scheduled for May 2021, Mr. Shea files this motion well in advance of the commencement of trial and with due concern to this Court's scheduling.

Therefore, the appropriate forum for the trial of this matter, based upon the convenience of the participants, and the interests of justice, is the United States District Court of the District of Colorado.

## **DISCUSSION**

### I.  Transfer is Proper According to Federal Rule of Criminal Procedure 21(b).

It is well settled that "[b]oth the Sixth Amendment and Federal Rule of Criminal Procedure 18 require that defendants be tried in the district where their crime was 'committed.'" *United States v. Ramirez*, 420 F.3d 134, 138 (2d Cir. 2005) (citing U.S. Const. amend. VI and Fed. R. Crim. P. 18).

When a statute defining an offense does not have specific venue provisions or rules, the *locus delicti*, i.e. site of the offense, is determined from "the nature of the crime alleged and the location of the act or acts constituting it." *United States v. Cabrales*, 524 U.S. 1, 6-7 (1998). Where more than one location is implicated under a continuing offense theory, "venue is properly laid in any of the districts where an essential conduct element of the crime took place,"  a rule that has been codified in the first paragraph of 18 U.S.C. § 3237(a). *Ramirez*, 420 F.3d at 139. Acts considered "merely preparatory" to the commission of the crime will not support venue. *See United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1190 (2d Cir. 1989).

Conspiracy is a continuing offense under § 3237. *See United States v. Tannenbaum*, 934 F.2d 8, 12 (2d Cir. 1991). In a conspiracy prosecution, venue is proper in any district in which "the conspiratorial agreement was formed or ... an overt act in furtherance of the conspiracy was committed by any of the coconspirators." *United States v. Ramirez-Amaya*, 812 F.2d 813, 816 (2d Cir. 1987); *see United States v. Rosa*, 17 F.3d 1531, 1541 (2d Cir.

5

1994) (same); 18 U.S.C. § 3237(a) (prosecution is proper "in any district in which such offense was begun, continued or completed"). An overt act in furtherance of a conspiracy will establish venue "even where an overt act is not a required element of the conspiracy offense." *Whitfield v. United States*, 543 U.S. 209, 218 (2005).

Rule 21(b) of the Federal Rules of Criminal Procedure establishes that, "Upon the defendant's motion, the court may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice." Fed. R. Crim. P. 21(b). This rule vests broad discretion in the trial judge to determine whether the interests of justice dictate a transfer. *United States v. Maldonado-Rivera*, 922 F.2d 934, 966 (2d Cir. 1990). Discretion as to jurisdiction in such cases is placed in the court. Fed.R.Crim.P. 21(b) Advisory Committee Note 2.

The applicable standard governing the administration of Rule 21(b) is derived from the seminal United States Supreme Court opinion of *Platt v. Minnesota Mining & Manufacturing Co.*, 376 U.S. 240 (1964) The *Platt* decision established the ten factual criteria that, although not exclusive, are designed to determine the appropriate forum for a criminal prosecution—one which ultimately assures the convenience of the trial participants and guarantees the protection of the "interests of justice." These include:

> (1) location of defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents likely to be involved; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket conditions of each district; (10) any other special elements which might affect the transfer.

The determination of whether a particular case should be transferred pursuant to a Rule 21(b) motion rests within the sound discretion of the Court. *United States v.*

*Carver,* 413 F. 2d 284 (2d Cir. 1969); *Platt*, 376 U.S. at 243.

"A Court should not give any one factor preeminent weight nor should it assume that the quantity of factors favoring one party outweighs the quality of factors in opposition." *United States v. Spy Factory, Inc.*, 951 F. Supp. 450, 455 (S.D.N.Y. 1997). *See also United States v. Maldonado–Rivera,* 922 F.2d 934, 966 (2d Cir. 1990) ("No one of these considerations [the *Platt* factors] is dispositive, and 'it remains for the court to try to strike a balance and determine which factors are of greatest importance.'") (citing *United States v. Stephenson,* 895 F.2d 867, 875 (2d Cir. 1990)). Rather, a Court should look to all of the factors and determine whether the interests of justice would be better served by changing the trial venue. In essence, "[t]he determination of whether a particular case calls for transfer depends upon the peculiar facts and circumstances of that case." *United States v. Posner,* 549 F. Supp. 475, 477 (S.D.N.Y. 1982). If "the defendant argues that his prosecution in the contested district will result in a hardship to him, prejudice him, or undermine the fairness of his trial," this Circuit has, on occasion, supplemented a "venue inquiry with a 'substantial contacts' test that takes into account a number of factors, including the site of the defendant's acts and the locus of the effect of the criminal conduct." *United States v. Rutigliano*, 790 F.3d 389, 399 (2d Cir. 2015) (internal citations omitted).

II.    **The *Platt* Factors Support a Transfer of Venue in this Case**

The *Platt* factors upon which Mr. Shea relies overwhelmingly support a transfer of venue of Mr. Shea's case to the District Court of Colorado.

   **1. The Location of the Defendant**

Courts recognize that, "it can be a hardship for a defendant to face a trial far away

7

from home and from appropriate facilities for defense.... It has been stated, therefore, that as a matter of policy, a defendant should ordinarily be tried, whenever possible, where he resides." *United States v. Aronoff*, 463 F. Supp. 454, 456 (S.D.N.Y. 1978). Although a defendant's residence alone cannot support transfer, *United States v. Kirk Tang Yuk*, 885 F.3d 57 (2d Cir. 2018), this Court has recognized "the unfairness and hardship to which trial in an environment alien to the accused exposes him, and the important policies underlying the venue provisions of the Constitution and Bill of Rights, the Supreme Court has declared that venue statutes should, whenever possible, be construed so to permit trial at the residence of the defendant." *United States v. Cashin,* 281 F.2d 669, 675 (2d Cir. 1960) (citations and internal quotation marks omitted).

Mr. Shea's Castle Rock, Colorado home is not just a mere residence. It is the nucleus of his family, business, and personal and professional ties. He has resided in Colorado his entire life, aside from when he lived in Utah from 2002 through 2011. Since 2011, he has lived in Castle Rock, where he has raised his family. He has zero ties to New York and does not travel out-of-state with any frequency – the only time he was ever in New York was as a child to attend a Yankee game. To travel cross county and face trial in a state completely foreign to him would be beyond an inconvenience, but rather, an injustice.

**2. The Location of Possible Witnesses**

Courts view the location of witnesses as meriting disproportionate consideration in favor of transfer. For example, in *United States v. Alter*, 81 F.R.D. 524 (S.D.N.Y. 1979), the court ordered transfer of the underlying action from New York to Miami because the

8

"convenience of the witnesses is so predominant that a trial in [New York] would be unduly burdensome and . . . fairness requires a transfer in the interest of justice." *Alter* at 527.

The defense intends to call a number of witnesses in its case-in-chief who are residents of Colorado. Traveling to the Southern District of New York will result in the inconvenience of a number of people throughout the trial, particularly in light of the unpredictability and limitations surrounding travel in the era of COVID-19. Considering the distance of travel from Colorado to this District, the number of witnesses required by Mr. Shea to defend his case, and the prejudice that the unavailability of these witnesses would cause, Mr. Shea respectfully submits that the District of Colorado is the most convenient, cost effective, proper, and logical forum for the trial of this case, in line with the second *Platt* factor.

### 3. The Location of Events

While the Indictment *pro forma* recites that the conspiracy occurred in the Southern District, there is no other evidence of any meaningful connection between this Court and the alleged conspiracy. Discovery disclosures have not revealed how the government has drawn this conclusion. Rather, the discovery related to Mr. Shea continuously places him outside the Southern District of New York, specifically in Castle Rock, Colorado, where he resides. Because Mr. Shea has never resided nor visited the Southern District of New York in his adult life, his alleged involvement must logically be exclusively limited to activity that occurred outside of the Southern District. Likewise, Mr. Shea's co-defendants do not reside in, and have minimal connection to, this district. Furthermore, the entirety of the We Build the Wall campaign was focused on areas well outside the Southern District

9

of New York – the Mexico-United States borders. Therefore, Mr. Shea requests that venue be changed to the United States District Court for the District of Colorado.

### 4. The Location of Documents

Since Mr. Shea has lived in Colorado almost his entire life, any primary source of documentary evidence that the government might seek to introduce with respect to Mr. Shea's personal life and work experience is undoubtedly located outside of New York. Additionally, any and all documents that the defense might seek to introduce or use in its trial preparation are likewise located in Mr. Shea's home state.

### 5. Disruption to Defendant's Business

Mr. Shea owns an energy drink business, called Winning Energy, that is based in Castle Rock, Colorado. As Winning Energy is still developing and growing in the local sector, it is incumbent upon Mr. Shea to remain engaged and hands-on with all elements of his business. A start-up company in its infancy will undoubtedly be disrupted if a trial were to take place in New York.

### 6. The Expense to the Parties

"The United States is ubiquitous. The IRS and the Department of Justice are, or should be, "at home," not only in Washington, D.C., but also in Fresno or any other place in California or elsewhere in which a federal court sits." *United States v. Benjamin*, 623 F. Supp. 1204, 1212 (D. D.C. 1985). The Court is likewise reminded that: "The United States of America has, for all practical purposes, unlimited financial resources to bring to bear. Unlike the [defendants], the Government can, and does, mint money." *United States v. Coffee*, 113 F. Supp 2d. 751, 757 (E.D. Pa. 2000)**.**

### 7. Location of Counsel

Mr. Shea is currently represented, by John Meringolo, Esq, who is based in New York. However, almost two thousand miles separating Mr. Shea's lawyers pose a tremendous difficulty for their interaction, such as interviewing potential defense witnesses. A defense cannot be prepared exclusively via telephone. Particularly with respect to the trial itself, it is irrefutable that a forum within the District of Colorado, where Mr. Shea would undoubtedly qualify for local CJA counsel, would be most effective in bringing together Mr. Shea's attorneys without imposing a greater burden than necessary.

### 8. The Relative Accessibility to the Place of Trial

Based upon the domiciles of the witnesses, the majority of whom, as described above, are Colorado residents, the District of Colorado is much more accessible than the Southern District of New York. The imposition on the parties to travel to New York is unduly burdensome, straining, and dangerous in light of COVID-19. The defense concedes that both Districts are accessible by automobile, air, and public transit. However, because of the relative distance of the Southern District from all of the interested parties and events, the accessibility of a trial in New York City pales in comparison to the accessibility in this particular case of the District of Colorado for the persons involved.

### 9. Docket Conditions

Defense counsel cannot opine to the docket conditions of the Court, and is confident that Mr. Shea's trial will be handled as expeditiously as possible. However, one factor that can irrefutably affect the trial remains out of the hands of the Court. In light of COVID-19 and the unprecedented changes the pandemic has made on jury trials, it is unclear when and how a trial would commence. While all district courts are undoubtedly in the middle

of the adaptation process, a trial within arguably the busiest district can prove to be all the more cumbersome.

## **CONCLUSION**

For the foregoing reasons, Mr. Shea respectfully requests that the Court grant her motion and transfer this case, pursuant to Rule 21(b), to the U.S. District Court of the District of Colorado.

Dated:   November 5, 2020
         New York, NY

Respectfully submitted,
 /s/
 John Meringolo, Esq.
Meringolo & Associates, P.C.
*Attorneys for Defendant*
375 Greenwich Street, 7th Floor
New York, NY 10013
(212) 941-2077
