UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- x
                                           :
   UNITED STATES OF AMERICA           :
                                           :
              - v. -                    :         20 Cr. 412 (AT)
                                           :
   BRIAN KOLFAGE, *et al.*,              :
                                           :
                Defendants.             :
                                           :
------------------------------------------------------- x


## MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA
## IN OPPOSITION TO DEFENDANT TIMOTHY SHEA'S MOTION TO TRANSFER
## <u>VENUE TO THE DISTRICT OF COLORADO</u>


                                                         AUDREY STRAUSS
                                                         Acting United States Attorney
                                                         Southern District of New York


Nicolas Roos
Alison G. Moe
Robert B. Sobelman
Assistant United States Attorneys
*- Of Counsel -*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS .................................................................................................... 1

ARGUMENT .......................................................................................................................... 2

    I.    Legal Standard ............................................................................................................ 2

    II.   Discretionary Transfer of Venue Is Not Appropriate ........................................... 4

        A.    Residence of the Defendant ........................................................................ 5

        B.    Location of Witnesses ................................................................................. 7

        C.    Location of Events ....................................................................................... 9

        D.    Location of Documents and Physical Evidence ....................................... 10

        E.    Disruption of the Defendant's Business .................................................... 11

        F.    Expenses to the Parties .............................................................................. 12

        G.    Location of Counsel .................................................................................. 13

        H.    Relative Accessibility of the Place of Trial ............................................. 14

        I.    Docket Conditions ..................................................................................... 14

CONCLUSION .................................................................................................................... 16

# **TABLE OF AUTHORITIES**

*Platt v. Minn. Mining & Mfg. Co.*, 376 U.S. 240 (1964) .............................................................. 3
*United States v. Avenatti*, No. 19 Cr. 374 (DAB), 2019 WL 4640232 (S.D.N.Y. Sept. 24, 2019)
................................................................................................................................................ 15
*United States v. Blakstad*, No. 19 Cr. 486 (ER), 2020 WL 5992347 (S.D.N.Y. Oct. 9, 2020) .... 11
*United States v. Blondet*, No. 16 Cr. 387 (JMF), 2019 WL 5690711 (S.D.N.Y. Nov. 4, 2019) .... 4
*United States v. Brooks*, No. 08 Cr. 35 (PKL), 2008 WL 2944626 (S.D.N.Y. July 31, 2008) ... 10, 13
*United States v. Calk*, No. 19 Cr. 366 (LGS), 2020 WL 703391 (S.D.N.Y. Feb. 12, 2020) ...... 2, 3
*United States v. Canale*, No. 14 Cr. 713 (KBF), 2015 WL 3767147 (S.D.N.Y. June 17, 2015) . 16
*United States v. Christian*, No. 12 Cr. 41 (KBF), 2012 WL 1134035 (S.D.N.Y. Apr. 2, 2012)... 7, 10, 14, 17
*United States v. Coriaty*, No. 99 Cr. 1251 (DAB), 2000 WL 1099920 (S.D.N.Y. Aug. 7, 2000)  6, 15
*United States v. Datta*, 797 F. Supp. 2d 448 (S.D.N.Y. 2011) ............................................... 12, 19
*United States v. Ebbers*, No. 02 Cr. 1144 (BSJ), 2004 WL 2346154 (S.D.N.Y. 2004) ..... 9, 12, 16
*United States v. Estrada*, 880 F. Supp. 2d 478 (S.D.N.Y. 2012) ................................................. 12
*United States v. Juncal*, No. 97 Cr. 1162 (JFK), 1998 WL 473949 (S.D.N.Y. Aug. 7, 1998) ....... 9
*United States v. Keuylian*, 602 F.2d 1033 (2d Cir. 1979) ...................................................... 13, 17
*United States v. Kirk Tang Yuk*, 885 F.3d 57 (2d Cir. 2018) ......................................................... 2
*United States v. Larsen*, No. 13 Cr. 688 (JMF), 2014 WL 177411 (S.D.N.Y. Jan. 16, 2014) ... 3, 8
*United States v. Maldonado-Rivera*, 922 F.2d 934 (2d Cir. 1990) ............................................... 4
*United States v. Parrilla*, No. 13 Cr. 360 (AJN), 2014 WL 2200403 (S.D.N.Y. May 22, 2014) . 5, 14, 16
*United States v. Pastore*, No. 17 Cr. 343 (NSR), 2018 WL 395490 (S.D.N.Y. Jan. 11, 2018) ... 19
*United States v. Percoco*, No. 16 Cr. 776 (VEC), 2017 WL 6314146 (S.D.N.Y. Dec. 11, 2017)  6, 17, 19
*United States v. Posner*, 549 F. Supp. 475 (S.D.N.Y. 1982) ..................................................... 2, 5
*United States v. Quinn*, 401 F. Supp. 2d 80 (D.D.C. 2005) .......................................................... 4
*United States v. Rutkoske*, 394 F. Supp. 2d 641 (S.D.N.Y. 2005) ............................................... 18
*United States v. Spy Factory, Inc.*, 951 F. Supp. 450 (S.D.N.Y. 1997) ................................. passim
*United States v. Stein*, 429 F. Supp. 2d 633 (S.D.N.Y. 2006) ................................................. 7, 10
*United States v. Stephenson*, 895 F.2d 867 (2d Cir. 1990) .................................................... 13, 17
*United States v. Thomas*, No. 06 Cr. 365 (DLC), 2006 WL 2283772 (S.D.N.Y. Aug. 6, 2006) ... 5
*United States v. Valdes*, No. 05 Cr. 156 (KMK), 2006 WL 738403 (S.D.N.Y. Mar. 21, 2006) 5, 6
*United States v. Wheaton*, 463 F. Supp. 1073 (S.D.N.Y. 1979) .................................................... 6
*United States v. Williams*, 437 F. Supp. 1047 (W.D.N.Y. 1977) .................................................. 3
*United States v. Wilson*, No. 01 Cr. 53 (DLC), 2001 WL 798018 (S.D.N.Y. July 13, 2001) .... 7, 8

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum in opposition to defendant Timothy Shea's motion to transfer venue to the District of Colorado ("Mot."). Shea's motion presents no factors justifying a departure from the general rule that a criminal prosecution should be retained in the original district where the case was charged. Indeed, prosecuting Shea—who participated in a nationwide fraud scheme from which he profited handsomely—in a different district would require severance, causing duplicate trials and doubling the burden on the Government, the judiciary, witnesses, and victims. Shea can and will get a fair trial here in the Southern District of New York, he does not allege otherwise, and the fact that he lives elsewhere does not warrant a change in venue. His motion should be denied.

## STATEMENT OF FACTS

On August 17, 2020, a grand jury sitting in this District returned a sealed Indictment charging defendants Brian Kolfage, Stephen Bannon, Andrew Badolato, and Timothy Shea with orchestrating a scheme to defraud hundreds of thousands of donors, including donors in the Southern District of New York, in connection with an online crowdfunding campaign ultimately known as "We Build the Wall" that raised more than $25,000,000 to build a wall along the southern border of the United States. (Dkt. No. 2 ¶ 1.) Specifically, the Indictment charges the defendants, including Shea, with one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, and one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). (*Id*. ¶¶ 27-29, 31-33.) As described in the Indictment, the defendants conspired to induce donors to contribute millions of dollars to the We Build the Wall campaign through materially false and fraudulent statements about the use of the funds and how none of the donations

would go to Kolfage. (*Id.* ¶¶ 1-2, 8-25.) In order to conceal the money transfers to Kolfage, payments were laundered, among other means, through a bank account in the name of an anonymous limited liability corporation that had been set up by Shea and were falsely described as being for "social media" work. (*Id.* ¶¶ 20-21.) Shea profited from his involvement in the money laundering transactions, receiving hundreds of thousands of dollars, which he used on personal expenses. (*Id.* ¶¶ 21, 24.)

On August 20, 2020, the Honorable Stewart D. Aaron, United States Magistrate Judge for the Southern District of New York, unsealed the Indictment. (Dkt. No. 3.)

## ARGUMENT

### I. Legal Standard

"As a general rule a criminal prosecution should be retained in the original district" where the case was charged. *United States v. Posner*, 549 F. Supp. 475, 477 (S.D.N.Y. 1982); *see also United States v. Kirk Tang Yuk*, 885 F.3d 57, 74 n.5 (2d Cir. 2018) (noting that the general rule is that "a criminal prosecution should be retained in the original district"). Discretionary transfers of venue are governed by Federal Rule of Criminal Procedure 21(b), which provides that, "for the convenience of parties and witnesses, and in the interest of justice, the court upon motion of the defendant may transfer the proceeding as to that defendant or any one or more of the counts thereof to another district." Fed. R. Crim. P. 21(b). The convenience of "any victim" must also be considered following the amendment of Rule 21(b). *See United States v. Calk*, No. 19 Cr. 366 (LGS), 2020 WL 703391, at *2 (S.D.N.Y. Feb. 12, 2020) (citing Fed. R. Crim. P 21(b), advisory committee's note). The "burden is on the moving defendant to justify a transfer under Rule 21(b)." *United States v. Spy Factory, Inc.*, 951 F. Supp. 450, 464 (S.D.N.Y. 1997) (Sotomayor, J.) (quotation marks omitted). That burden "is not often or easily met," as the defendant must show that trial in the original district "would be so unduly burdensome that fairness requires the transfer

2

to another district." *United States v. Larsen*, No. 13 Cr. 688 (JMF), 2014 WL 177411, at *2 (S.D.N.Y. Jan. 16, 2014); *see also Calk*, 2020 WL 703391, at *2 (same). Furthermore, the moving defendant must provide "factual substantiation" for his contentions that a transfer is in the interests of justice. *United States v. Williams*, 437 F. Supp. 1047, 1051 (W.D.N.Y. 1977); *see also Spy Factory*, 951 F. Supp. at 456 ("the court must rely on 'concrete demonstrations'" of fact).

In *Platt v. Minnesota Mining and Manufacturing Co.*, the Supreme Court introduced a list of factors that courts routinely consider in analyzing a defendant's motion to transfer venue: (1) location of defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket condition of each district involved; and (10) any other special elements which might affect the transfer. 376 U.S. 240, 243-44 (1964). "No one of these considerations is dispositive, and it remains for the court to try to strike a balance and determine which factors are of greatest importance." *United States v. Maldonado-Rivera*, 922 F.2d 934, 966 (2d Cir. 1990) (quotation marks and brackets omitted).

Generally speaking, "there has been a 'trend in recent years away from granting transfers.'" *United States v. Blondet*, No. 16 Cr. 387 (JMF), 2019 WL 5690711, at *2 (S.D.N.Y. Nov. 4, 2019) (quoting *United States v. Quinn*, 401 F. Supp. 2d 80, 85-86 (D.D.C. 2005) (citing cases and treatises)). This trend recognizes that, since the time that *Platt* was decided in 1964, "the massive expansion of technology and the relative decline in costs for long-distance travel over the past few decades" have greatly reduced the circumstances where transfer is justified. *Id.* (quoting *Quinn*, 401 F. Supp. 2d at 86).

## II. Discretionary Transfer of Venue Is Not Appropriate

In this case, the relevant *Platt* factors do not justify deviation from the "general rule" that "a criminal prosecution should be retained in the original district" where the case was charged, *Posner*, 549 F. Supp. at 477.  While a trial outside the defendant's district of residence will impose some inconvenience for Shea, as it does for any defendant, this factor standing alone is insufficient to merit a transfer.  Transferring the case would require relocation of the Government attorneys and agents, as well as witnesses, victims, and defense counsel to the District of Colorado, imposing significant burdens on all parties.  Because all of the *Platt* factors besides the defendant's place of residence are neutral or weigh against transfer, this motion should be denied.

That is particularly true given that transferring venue for Shea's case would require severance from the case against Shea's three co-defendants, none of whom live in Colorado or have joined in this motion.  The fact that Shea was charged along with three co-conspirators thus "favors denial of the motion, as 'severing the trial of properly joined defendants without good reason is contrary to the interest of justice,' and 'transfer of a subset of defendants in a multi-defendant case requires serious consideration of the Government's interest in avoiding duplicate trials.'"  *United States v. Parrilla*, No. 13 Cr. 360 (AJN), 2014 WL 2200403, at *2 (S.D.N.Y. May 22, 2014) (quoting *United States v. Thomas*, No. 06 Cr. 365 (DLC), 2006 WL 2283772, at *2 (S.D.N.Y. Aug. 6, 2006) and *United States v. Valdes*, No. 05 Cr. 156 (KMK), 2006 WL 738403, at *10 (S.D.N.Y. Mar. 21, 2006)).  Severing and transferring would "also impose a 'double burden on the judiciary,'" as this Court has already set a trial date and will devote significant resources to pretrial and trial-related proceedings, "and an additional trial in [Colorado] would be required." *Id.* (quoting *United States v. Wheaton*, 463 F. Supp. 1073, 1079 (S.D.N.Y. 1979)); *see also United States v. Percoco*, No. 16 Cr. 776 (VEC), 2017 WL 6314146, at *17 (S.D.N.Y. Dec. 11, 2017)

4

(denying transfer because it would create "dual prosecutions" and "place a double burden on the judiciary"). Therefore, because a transfer in a multi-defendant case such as this one—where all the defendants are charged in the same conspiracy counts—would have the effect of severing the case without a lawful reason, and would double the burden on the Government and the courts, the motion should be denied.

### A. Residence of the Defendant

The first *Platt* factor is the location of the defendant. While there is no dispute that the defendant resides in Colorado, this fact alone does not justify transfer.

It is well established that "the inconvenience of having to stand trial outside of one's home district, without more, is insufficient to warrant a transfer," *United States v. Coriaty*, No. 99 Cr. 1251 (DAB), 2000 WL 1099920, at *2 (S.D.N.Y. Aug. 7, 2000) (internal quotation marks omitted), and a defendant's residence, standing on its own, "has no independent significance in determining whether transfer to [a different] district would be 'in the interest of justice,'" *United States v. Stein*, 429 F. Supp. 2d 633, 645-46 (S.D.N.Y. 2006) (denying transfer to another district in multi-defendant case where some defendants were from Texas and California). That is because a defendant's desire to be tried in his district of residence is "in tension with the more general presumption that a criminal prosecution should be retained in the original district." *Spy Factory*, 951 F. Supp. at 464.

Shea's motion sets forth no facts that would distinguish this case from the dozens of cases before it where a defendant was tried outside of his or her district of residence. Shea states that trying his case outside of Colorado would inconvenience him and separate him from his family and community ties. (Mot. 8.) But "[e]very life is significantly disrupted during a trial no matter where it is held. Besides the need to be in court every day, the evenings and weekends are usually

5

consumed analyzing the evidence that has been admitted and preparing for the remainder of trial.'" *United States v. Christian*, No. 12 Cr. 41 (KBF), 2012 WL 1134035, at *1 (S.D.N.Y. Apr. 2, 2012) (quoting *United States v. Wilson*, No. 01 Cr. 53 (DLC), 2001 WL 798018, at *1 (S.D.N.Y. July 13, 2001)). The duration of any disruption here—which would occur regardless of where Shea is tried—is not nearly so long as in other cases where motions to transfer have been denied. *See, e.g.*, *Stein*, 429 F. Supp. 2d at 645 (denying a motion to transfer where the trial was anticipated to last between six and eight months); *Wilson*, 2001 WL 798018, at *3 (denying a motion to transfer where trial was estimated to last six to eight weeks).

Moreover, Shea is better positioned to bear any inconvenience than many defendants for whom motions to transfer are denied. *See, e.g.*, *Larsen*, 2014 WL 177411, at *3 (denying transfer where an indigent defendant living in another state would be unable to care for his children or attend his job at a pizzeria during trial). Shea and his wife received hundreds of thousands of dollars in connection with the charged scheme, and as discussed below, he has not identified anything about his business that would prevent him from traveling. During the period of the charged conspiracy, Shea also took several trips—including to cities near New York like Boston and Scranton—which belies the notion that Shea is incapable of traveling to the East Coast and underscores Shea's apparent ability to mitigate any inconvenience that could arise from him being out of the state of Colorado. In sum, this is not a case where the defendant's interests in a trial near his residence are unusually strong or where the defendant is able to point to an extraordinary circumstance necessitating a trial in his home district; rather, the interests here are, if anything, considerably weaker than those present in cases where transfer has been deemed to be warranted.

## B. Location of Witnesses

The location of witnesses who are likely to be called at trial does not weigh in favor of transfer. Shea has not identified which witnesses he claims reside in Colorado, and does not show, as required, that any Government or defense witness would be unable to attend trial in this District. In these circumstances, courts repeatedly find that this factor does not favor transfer.

A defendant claiming that the location of witnesses warrants a transfer of venue bears the burden of offering the Court "specific examples of witnesses' testimony and their inability to testify because of the location of trial." *Spy Factory*, 951 F. Supp. at 456. The "naked allegation that witnesses will be inconvenienced by a trial in a distant forum will not suffice for transfer." *Id.*; *see also United States v. Juncal*, No. 97 Cr. 1162 (JFK), 1998 WL 473949, *5 (S.D.N.Y. Aug. 7, 1998) ("there is no basis to grant the motion to transfer" where defendant fails to make "a specific proffer of testimony from specific witnesses to allow the court to make an informed decision about the importance of these witnesses to [the defendant's] case"). Rather, "the court must rely on concrete demonstrations of the proposed testimony." *Spy Factory*, 951 F. Supp. at 456 (quotations and citations omitted). Moreover, "in this age of easy air travel, this factor is generally much less relevant than it was in 1964, when the Supreme Court decided *Platt*." *United States v. Ebbers*, No. 02 Cr. 1144 (BSJ), 2004 WL 2346154, at *1 (S.D.N.Y. 2004).

Although the Government has not finalized its trial witness list, the Government presently does not anticipate calling at trial *any* witnesses who are located in Colorado. Rather, the Government anticipates calling witnesses from several locations throughout the United States, including one or more agents and analysts involved in the investigation, who are based here, as well as victims based in the Southern District of New York. And because some of those witnesses are New York-based victims, pursuant to Rule 21(b), "the convenience of victims" must

7

considered in evaluating the trial venue. The defendant claims that he intends to "call a number of witnesses in [his] case-in-chief who are residents of Colorado." (Mot. 9.) But Shea has not identified a single specific witness whom he intends to call at trial or what their likely testimony would be, nor has he made any allegation that such a witness would be unable to testify if the trial is held in New York. In such circumstances, courts in this District repeatedly have found that the location of witnesses in the defendant's home district did not weigh in favor of transfer. *See, e.g.*, *Christian*, 2012 WL 1134035, at *2 (finding that this factor did not support transfer where defendants "address[ed] the convenience of the witnesses with conclusory averments" that trial in this District would be less convenient and "d[id] not put forward any evidence that potential witnesses would be unwilling and unable to travel to the Southern District of New York"); *United States v. Brooks*, No. 08 Cr. 35 (PKL), 2008 WL 2944626, at *2 (S.D.N.Y. July 31, 2008) (finding that "bare assertion" of hardship was insufficient to tip this *Platt* factor in favor of transfer); *Stein*, 429 F. Supp. 2d at 646 (finding that location of witnesses did not support transfer where defendants failed to put forward any evidence that potential witnesses would be unable or unwilling to travel to this District).

The defendant claims that traveling to New York would be difficult for witnesses as a result of the COVID-19 pandemic. (Mot. 9.) "But this is an argument against holding any trial at all, rather than where to hold the trial." *United States v. Blakstad*, No. 19 Cr. 486 (ER), 2020 WL 5992347, at *6 (S.D.N.Y. Oct. 9, 2020). There are currently multiple trials taking place in the Southern District of New York or scheduled for the near term that involve out-of-state defendants and witnesses. Because, as noted above, a number of witnesses are based in New York (and other locations), transferring the case does not mean witnesses would not need to travel: it just mean that witnesses would need to fly to Colorado, not New York. And while the pandemic is a rapidly

8

evolving situation, New York currently has some of the lowest COVID-19 positivity rates in the country.

In sum, because the Government's witnesses are not located in Colorado and the defendant has failed to provide a single "specific example[] of witnesses' testimony and . . . inability to testify because of the location of the trial," *Spy Factory*, 951 F. Supp. at 456, he has failed to meet his burden to prove that the location of witnesses compels a transfer to Colorado.

### C. Location of Events

The location of the charged events—in which the defendants perpetrated a nationwide fraudulent fundraising campaign targeting donors in New York and elsewhere—weighs against transfer. The defendant acknowledges that he was based in Colorado, his co-defendants were in other states, the wall they were trying to build was in several states along the southern United States border, and, of course, the donor victims are scattered across nearly every state. But those facts do not weigh in favor in transfer. Quite the opposite, the geographic breadth of the scheme counsels against transfer. *See, e.g.*, *United States v. Estrada*, 880 F. Supp. 2d 478, 483 (S.D.N.Y. 2012) (noting that "[t]he majority of 'the events likely to be at issue' are alleged to have occurred in Los Angeles," but concluding that "this factor is not particularly persuasive when defendants are alleged to have intentionally projected their fraud nationwide, including into this District"); *Ebbers*, 2004 WL 2346154, at *1 (finding third *Platt* factor did not weigh in favor of transfer when securities fraud involved national company listed on Nasdaq and Government's case involved conversations with New York entities); *Spy Factory*, 951 F. Supp. at 457 (though the defendant's company was in Texas, his illegal sales were national in scope, making New York an equally appropriate venue). Accordingly, while the trial in this case will undoubtedly relate to some events that took place outside the Southern District of New York, that would be an inevitability in any

9

district in which this case was tried. This factor, therefore, weighs against transfer or, at a minimum, is neutral.

### D. Location of Documents and Physical Evidence

The fourth *Platt* factor, the location of documents, does not weigh in favor in transfer, particularly when modern developments in electronics and computing render documents readily available to a defendant wherever he or she is located. *See United States v. Datta*, 797 F. Supp. 2d 448, 450 (S.D.N.Y. 2011) (finding that electronic format of documents "neutraliz[ed] any issue concerning the location of documents"); *Brooks*, 2008 WL 2944626, at *2 ("the location of documents and records is not a major concern in these days of easy and rapid transportation"). In fact, as a result of the search warrants that were executed at the times when the defendants were arrested, relevant physical evidence—such as cellphones and laptops—are located in the Southern District of New York. Similarly, evidence relied upon by the Government in charging the case was gathered and is maintained in Manhattan, and as a result, transfer of venue would require the Government to transport documents, seized electronics, hard drives containing evidence, and other materials to Colorado. *See United States v. Stephenson*, 895 F.2d 867, 875 (2d Cir. 1990) (presence of documents and recordings in this District favored retaining venue); *United States v. Keuylian*, 602 F.2d 1033, 1038 (2d Cir. 1979) (presence of most of the exhibits in the charging district favored retaining venue).

The defendant claims that documents that he "might seek to introduce" are located in Colorado. (Mot. 10.) But this is nothing more than another naked assertion without any indication of what types of documents are located in Colorado, their volume, or why they cannot be scanned

or transported to New York.[1]  This declaration is also belied by the fact that relevant evidence was seized from the defendant and is now located in New York.  Accordingly, the location of relevant evidence is not a basis to transfer the case.

### E.  Disruption of the Defendant's Business

Shea states that his business, Winning Energy—an energy drink "for winners" that purports to be "made from liberal tears"[2]—"is still developing and growing in the local sector," and that he needs to stay in Colorado during a trial.  (Mot. 10.)  But, as noted above, "[e]very life is significantly disrupted during a trial wherever it is held." *Christian*, 2012 WL 1134035, at *1.  A trial in New York or Colorado will disrupt Shea's ability to run his business, and he "never alleges, specifically, why his absence from his physical place of business will cause more disruption if he is on trial in New York rather than in [Colorado]."  *Parrilla*, 2014 WL 1621487, at *15.  It is apparent from Winning Energy's website and social media pages—which seem to reflect nationwide sales and marketing based on national politics—that there is nothing intrinsically local about the business.  To the extent Shea may need to attend to his work during the trial, he would only have time to do so during breaks in the trial day, in the evenings, and during weekends, irrespective of whether the trial occurs in Colorado or New York.  And Shea can easily maintain contact with his work using basic communications technology.  *See Spy Factory*, 951 F. Supp. at 458 ("[N]o defendant has shown why telephone and fax machine communication is insufficient to maintain the minimal contact that would be available to any of them over a lunch

---

[1] Notably, despite the Government's request, the defendant has not produced any reciprocal discovery.

[2] Winning Energy's website is available at https://winning-energy.com/.

11

hour or after-hours if the trial were moved."); *Coriaty*, 2000 WL 1099920, at *3 ("This is particularly true in the age of cell phones, email, and fax machines."). Nothing about Shea's business requires a transfer of this case to Colorado.

### F. Expenses to the Parties

The expenses to the parties weigh against transfer. Shea does not dispute that the Government will bear significant costs in relocating the trial and investigative team to the District of Colorado, but says it does not matter because the Government "can, and does, mint money." (Mot. 10 (citation omitted).) But the Government's resources are not unlimited, and unnecessary expenses incurred by the Government are ultimately paid for by taxpayers. Transferring this case to Colorado would require an entire New York based investigative and prosecutorial team— including three Assistant U.S. Attorneys, two paralegals, several federal law enforcement agents, and computer forensic experts—to relocate to Colorado for weeks, and would require the transportation of large amounts of data and physical evidence to another district. Courts in this District have repeatedly denied transfer motions in part because the expense of transfer to the Government was too significant to warrant transfer. *See, e.g., United States v. Avenatti*, No. 19 Cr. 374 (DAB), 2019 WL 4640232, at *5 (S.D.N.Y. Sept. 24, 2019) (denying transfer because "the entire prosecution team—including several Assistant United States Attorneys, paralegals, and multiple law enforcement agents—would be forced to relocate to California for the duration of the trial"); *United States v. Canale*, No. 14 Cr. 713 (KBF), 2015 WL 3767147, at *4 (S.D.N.Y. June 17, 2015) (denying transfer where it "would require the Government to transport and house two prosecutors, as well as a paralegal and several case agents"); *Ebbers*, 2004 WL 2346154, at *2 ("It would impose an enormous burden on the government to move the prosecutors, investigators, support staff, court staff, and others familiar with the case … to another

12

jurisdiction"). And because transfer of Shea's case would also require a severance and duplicative trials in two separate districts involving two courts and two juries, the expense to the Government and the court system would be even more burdensome. *See Parrilla*, 2014 WL 1621487, at *15.

Weighed against these costs and the presumption that a case should be tried in the original district, Shea does not identify any impact on him sufficient to tip this factor towards transfer. Indeed, Shea does not even raise the costs to himself of trying a case in Manhattan. Shea has a court-appointed attorney under the Criminal Justice Act, significantly mitigating any costs to him. Moreover, he makes no showing of how the expense of a trial in the Southern District of New York might prejudice the quality of his defense, nor is any such showing plausible in light of the fact that he has a publicly-funded defense. In sum, Shea has not met his burden of showing that any added expense of trying this case in this District warrants a transfer of this case.

### G. Location of Counsel

The location of counsel weighs against transfer. Shea is represented by an attorney located in New York. He argues that it would be easier to meet with his counsel if he had local counsel in Colorado. But it is hardly atypical for defendants to have counsel located in other states, and particularly in light of the ongoing pandemic, hardly atypical for attorneys to communicate via telephone and video conferencing even when based in the same city. Aside from a conclusory assertion that it is difficult to prepare for trial without counsel in Colorado, Shea has provided no details to support his argument.

Furthermore, this factor is not limited to the location of defense counsel. As the Second Circuit has made clear, the location of the prosecution team is an appropriate consideration in denying a motion to transfer venue. *Stephenson*, 895 F.2d at 875 (considering "location of the prosecutor"); *Keuylian*, 602 F.2d at 1038 (considering location of "the Government attorney and

13

the ATF case agent"). Here, as detailed above, the location of the prosecution team, which consists of three Assistant U.S. Attorneys, two paralegal specialists, and multiple case agents, weighs against transfer, as they work next door to this Court (at One St. Andrew's Plaza) or at nearby law enforcement offices.

### H. Relative Accessibility of the Place of Trial

The relative accessibility of the two districts does not favor a transfer, nor does the defendant suggest otherwise. It is not reasonably subject to dispute that Manhattan is one of the most accessible locations in the United States. *See Percoco*, 2017 WL 6314146, at *17 (denying transfer because, *inter alia*, "New York City is clearly an accessible transportation hub"); *Christian*, 2012 WL 1134035, at *2 (denying transfer because, *inter alia*, "New York is easily accessible by air with three major airports, as well as a variety of other public transportation"). Accordingly, to the extent that any witnesses are required to travel from outside of New York to testify, the inconvenience will be minimal. By contrast, and while the Government would not suggest that Colorado is a remote location, direct flights to Colorado are comparatively more difficult to find and are not available from as many locations, and therefore Shea's proposed district of transfer is, if anything, comparably less accessible than New York. This factor does not favor transfer.

### I. Docket Conditions

The ninth *Platt* factor, the docket conditions of the district courts involved, weighs against transfer. For the twelve-month period ending on June 30, 2020, when compared to the District of Colorado, this District averaged fewer filings per judge (470 versus 612) and fewer trials per judge (10 versus 12). *See* Judicial Caseload Profile, Federal Judicial Center (June 30, 2020), https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2020/06/30-1.

Thus, the docket conditions in the Southern District of New York are better than, or at least comparable to, those in the District of Colorado. Additionally, jury trials have recently begun in the Southern District of New York, while they remain suspended in the District of Colorado at least into January 2021. The Court has also set a date for trial in this matter, while "it is highly unlikely that [the defendant] could schedule a trial date sooner in the District of [Colorado]," *United States v. Rutkoske*, 394 F. Supp. 2d 641, 647-48 (S.D.N.Y. 2005), and therefore there is good reason to believe that Shea will receive a trial sooner in this District.

* * *

In sum, the circumstances here strongly favor denial of the motion to transfer the case. Even in cases where some of the *Platt* factors "favor or perhaps favor transfer," *Datta*, 797 F. Supp. 2d at 450, courts nonetheless deny such motions where defendants do not meet their burden of overturning the presumption that a trial shall be held in the initial district. *See, e.g.*, *id.* (denying motion to transfer even while noting "[i]t appears that more of the events pertinent to the indictment occurred in Texas than here, defendant's business is centered there, and the defendant's family now resides in Texas" and that "it may be that more trial witnesses ultimately will prove to be Texas rather than New York area residents"); *United States v. Pastore*, No. 17 Cr. 343 (NSR), 2018 WL 395490, at *5 (S.D.N.Y. Jan. 11, 2018) (denying transfer where two of the *Platt* factors—residence of defendant and location of counsel—favored transfer and the others were neutral or militated against transfer); *Percoco*, 2017 WL 6314146, at *18 (denying transfer despite location of defendants, a number of witnesses, and a number of relevant events in other district); *Larsen*, 2014 WL 177411, at *3 (denying transfer despite indigent defendant's residence, job and child care responsibilities supporting motion where other factors were opposed or neutral). But here, it is not a close case: the *Platt* factors, considered in their totality, weigh heavily against a

15

transfer of Shea's case to the District of Colorado because such a transfer—and the resulting severance of his case and the need for duplicate trials—will impose significant burdens on the Government, the courts, witnesses, and victims.

## **CONCLUSION**

For the foregoing reasons, Shea's motion to transfer should be denied.

Dated: New York, New York
November 12, 2020

Respectfully submitted,

AUDREY STRAUSS
Acting United States Attorney

By: /s/ Nicolas Roos
Nicolas Roos
Alison G. Moe
Robert B. Sobelman
Assistant United States Attorneys