# Exhibit C



Justin S. Weddle
212 - 997 - 5518 (o)
347 - 421 - 2062 (m)
jweddle@weddlelaw.com

September 22, 2020

**By Email**

Nicholas Roos, Esq.
Robert B. Sobelman, Esq.
Alison Moe, Esq.
Assistant United States Attorneys
U.S. Attorney's Office
Southern District of New York
New York, NY 10007

Re:   **Kris Kobach and We Build the Wall**

Dear Nicholas, Robert, and Alison:

I am writing regarding your request that Kris Kobach voluntarily produce documents relating to We Build the Wall Inc. and other entities and persons, as described in your September 3, 2020 email to me. Our ability to comply with your request is greatly hampered by the government's position, as conveyed in our telephone call of August 21, 2020, that *all* money received from donors is the proceeds of fraud. Rather than continue our prior discussion of the merits of this position in the abstract, I write today to request that the government permit certain expenditures by We Build the Wall that will faciliate compliance with your request and other legal requests. In addition, We Build the Wall seeks your permission to pay certain outstanding invoices, and to pay some future costs that are necessary for legal compliance and processing of We Build the Wall's funds. Finally, we seek your permission to pay a portion of the legal fees of Brian Kolfage, as We Build the Wall would have done absent government intervention.

To put this request in context, I have been informed that We Build the Wall's cash on hand is approximately $1.7 million (some of this is in the form of cashiers checks issued and held by banks upon their closure of We Build the Wall's accounts). It should also be noted that We Build the Wall has received approximately $1.675 million in donations *since* February 1, 2020 (i.e., *after* We Build the Wall's website disclosed that Mr. Kolfage would receive compensation as CEO). Moreover, beyond that amount, I am informed that since August 20, 2020 (the date the indictment was announced), We Build the Wall's donation processing vendor has received approximately 4,200 letters (most of which likely contain checks).


Please note that the amounts set forth herein are approximate and in the process of being verified. I can provide updates once that process has been completed.

***Legal Expenses Relating to the Indictments and Request for Documents***

We Build the Wall has purchased a limited amount of directors and officers insurance that covers the defense costs of certain persons, as well as the defense costs of the entity itself under certain circumstances. The insurance company has taken the position that neither Mr. Kobach's nor We Build the Wall's legal expenses are covered.

Absent intervention by the government, We Build the Wall would have paid for Mr. Kobach's outside counsel to assist him in responding to the government's request for documents. We estimate that Mr. Kobach's legal fees relating to the government's request will be $30,000. In addition, absent intervention, We Build the Wall would have paid for a vendor to collect, process, faciliate the review of, and create production sets, of Mr. Kobach's materials responsive to the government's request. We estimate that the vendor costs for this work will be $5,000-$10,000. We therefore request that the government permit the payment, from We Buld the Wall, to Weddle Law PLLC of $40,000 as a retainer to cover legal fees and vendor expenses relating to its request of Mr. Kobach. Absent this approval, the production will have to be performed manually, likely by Mr. Kobach himself. Undertaking a manual review and production, at the same time that Mr. Kobach's work as general counsel has increased, will cause the production to the government to be substantially delayed and will not be possible by the end of this month. In addition, any production will likely not be in a standard database-friendly format.

Moreover, absent intervention by the government, We Build the Wall would have hired outside counsel to advise it on various legal issues presented in the wake of the government's Indictment, and to search for and produce documents, to the extent requested. These issues are not merely hypothetical, but have been presented on a near-constant basis. For example, on September 15, 2020, the New Jersey Attorney General issued a comprehensive subpoena to We Build the Wall comprising 18 numbered categories of document requests and requiring that the production be made in a standard database-friendly format. The New Jersey Attorney General has set the return date for the subpoena as October 2, 2020. Outside counsel, together with a forensic vendor, is experienced with managing such a production, including its techincal requirements. But based on the government's intervention, We Build the Wall is unable to obtain such assistance. As it stands, We Build the Wall is forced to rely only on Mr. Kobach for this and other pressing legal issues, including:

1. Advice on issues presented by the return of the Indictment.



2. Challenging a property tax assessment performed by Dona Ana County, NM, on We Build the Wall's narrow strip of property in Sunland Park, on which the "Project One" border wall was built. Leaving the assessment unchallenged would result in a significant tax liability for We Build the Wall.

3. Working with the U.S. Department of Homeland Security to finalize the transfer of ownership of the We Build the Wall's Project One property to the U.S. Department of Homeland Security.

Thus, it is not possible, without assitance, for Mr. Kobach to manage the New Jersey subpoena response and comply with its technical requirements in the time frame allotted, at the same time that he is called upon to advise on various legal issues and work on the government's request for his documents. We estimate that outside counsel assistance in responding to New Jersey's request would cost approximately $80,000, together with vendor costs of approximately $20,000. We therefore request that you permit the expenditure of this amount.

*Creditor Payments*

We Build the Wall is contractually obligated to make payments to certain creditors as described below.

1. Payment to Kobach Law LLC for past services rendered: $75,000. We Build the Wall's contract with Kobach Law LLC provides that Kobach Law will be paid a flat fee of $25,000 per month for his legal services and other work, inluding Mr. Kobach's service as general counsel. The payments are due on the first of the month to cover services to be provided that month. The last payment he received was for June 2020. Therefore, pursuant to the contract, to date, We Build the Wall owes Mr. Kobach $75,000.

2. Payment to Foley & Lardner for legal work:  $396.00.

3. Payment to Southern Pine Strategies, PMD Creative, and American Campaign Services for July 2020 fundraising work:  $29,628.90.

4. Payment to Southern Pine Strategies, PMD Creative, and American Campaign Services for August 2020 fundraising work through August 21, 2020:  $29,340.90.

5. Payment to Paramount Communication Group for July and August 2020 fundraising work:  $4,586.94.


6. Payment to Chaplain's Catering for food at the July 2020 educational seminar at the Project One wall site: $2,107.58.

7. Payment to Sunstate for an electrical generator at the July 2020 educational seminar at the Project One wall site: $1,374.51.

### *Expenses for Tax Preparation, Audited Financial Statements, and the Processing of Recent Donations*

We Build the Wall, as a not-for-profit corporation, must continue to file documents and perform certain financial calculations. In the short term, We Build the Wall needs to complete and file a 2019 IRS 990 form as soon as possible. Once the IRS 990 is completed, We Build the Wall will need to pay an accounting firm to prepare audited financial statements for 2019. The estimated cost of these services is approximately $5,000-$10,000.

In addition, as noted above, in the weeks since the Indictment, We Build the Wall has continued to receive a significant volume of contributions in the form of mailed checks that need to be processed and deposited into a bank account. They are currently unprocessed and being stored in bins with a vendor, which likely will only complicate any efforts to safeguard and manage that money, regardless of whether it should go toward We Build the Wall's work, be forfeited, or be returned to donors. We request that We Build the Wall be permitted to set up a separate bank account for these funds, pay a vendor to process the checks, and use these funds to pay for a portion of the expenses described above.

### *Brian Kolfage Defense Costs*

As noted above, We Build the Wall has limited insurance that covers the defense costs of certain individuals. The insurance company has taken the position that Brian Kolfage is an insured person whose defense costs are covered by insurance, but only after We Build the Wall covers the "rentention" amount of $125,000. Absent intervention by the government, We Build the Wall would pay all or a portion of Mr. Kolfage's defense costs up to that retention amount. In addition, because the insurance company is requiring payment of the retention amount prior to making any insurance payments, the government's position is not only preventing We Build the Wall from paying Mr. Kolfage's and We Build the Wall's counsel, but is also preventing Mr. Kolfage from obtaining insurance coverage for his defense costs. We therefore request that the government permit payment of these costs up to the retention amount.

\*   \*   \*   \*


This request is made without prejudice to any arguments Mr. Kobach or We Build the Wall might make that We Build the Wall's funds are not the proceeds of fraud, and likewise we would be willing to agree that the government's agreement to this request is without prejudice to any arguments the government may wish to make that We Build the Wall's funds—outside amounts paid with permission, as requested herein—are the proceeds of fraud.

Very truly yours,

*Justin S. Weddle*

Justin S. Weddle