# Exhibit E



Justin S. Weddle
212 - 997 - 5518 (o)
347 - 421 - 2062 (m)
jweddle@weddlelaw.com

September 25, 2020

**By Email**

Robert B. Sobelman, Esq.
Assistant United States Attorney
U.S. Attorney's Office
Southern District of New York
New York, NY 10007

Re:  **Kris Kobach and We Build the Wall**

Dear Robert:

  Thank you for your September 23, 2020 email responding to my letter of September 22, 2020. In your email, you state that "funds raised by We Build the Wall as part of the fraud scheme alleged in the Indictment are crime proceeds." This is a narrower view than the one I understood the government to be adopting (i.e., that *all* funds donated to We Build the Wall are the proceeds of fraud). If I am not misreading your email, therefore, it would appear that there are certain matters upon which we have no disagreement, including the following:

1. Any funds donated to We Build the Wall, at least a reasonable period of time after Kolfage's compensation was publicly disclosed, are not "funds raised by We Build the Wall as part of the fraud scheme alleged in the Indictment," and thus are not crime proceeds. I respectfully submit that February 1, 2020 is a reasonable date to use to distinguish between funds allegedly raised as part of the scheme alleged in the Indictment and those raised independent of that alleged scheme.

2. Even if you may believe a different date than February 1, 2020 represents a reasonable distinguishing date, certainly funds sent to We Build the Wall after the Indictment was announced are not "funds raised by We Build the Wall as part of the fraud scheme alleged in the Indictment"—for they are funds sent after the government's allegations were publicly announced and widely reported. Thus, I respectfully submit that there is no basis for We Build the Wall to refrain from processing the mail received by the vendor and depositing checks sent after August 20, 2020.

  Please let me know if I have misread your email, and please confirm any areas upon which we do not disagree, including, if applicable, the two mentioned above.


With respect to legal fees, you have posed two questions, which I respectfully submit proceed from an incorrect premise. That is, you have asked about other assets or the rights of individuals and entities. Instead, I submit the starting point of the analysis is to determine whether the government's oral statement about its views on the status of the funds is a valid mechanism, consistent with the requirements of due process of law, for altering the normal freedoms that property-owners enjoy with respect to the use of their property. Thus, starting from that point, I would be grateful if you could provide any legal authority for the government to seek to alter We Build the Wall's freedom to use its assets by this mechanism, or to prioritize the use of other assets for legal fees rather than these assets.

In addition, you have requested legal authority regarding the "right to have corporate assets unfrozen," but I am not aware of any legal order freezing any assets, or any court proceeding seeking to do so. To the extent there is such an order, please provide it, and to the extent there is a court proceeding underway, please notify me.

I would also note that it is by no means unusual for employees to look to employers to cover legal fees relating to investigations. As Judge Kaplan explained in *United States v. Stein*, 435 F. Supp. 2d 330 (S.D.N.Y. 2006):

> [A]n employer often must reimburse an employee for legal expenses when the employee is sued, or even charged with a crime, as a result of doing his or her job. Indeed, the employer often must advance legal expenses to an employee up front, although the employee sometimes must pay the employer back if the employee has been guilty of wrongdoing.
>
> This third principle is not the stuff of television and movie drama. It does not remotely approach Miranda warnings in popular culture. But it is very much a part of American life. Persons in jobs big and small, private and public, rely on it every day. Bus drivers sued for accidents, cops sued for allegedly wrongful arrests, nurses named in malpractice cases, news reporters sued in libel cases, and corporate chieftains embroiled in securities litigation generally have similar rights to have their employers pay their legal expenses if they are sued as a result of their doing their jobs. This right is as much a part of the bargain between employer and employee as salary or wages

*Id.* at 335, *aff'd* 541 F.3d 130 (2d Cir. 2008); *see also United States v. Stein*, 541 F.3d at 155 (noting, in the Sixth Amendment context, that "it is easy to distinguish [from the circumstances of *Caplin Drysdale, Chartered v. United States*, 491 U.S. 617, 626 (1989)] the case of an employee who reasonably expects to receive attorneys' fees as a benefit or



perquisite of employment, *whether or not the expectation arises from a legal entitlement*. As has been found here as a matter of fact, these defendants *would* have received fees from KPMG but for the government's interference." (first emphasis added)).

    I would be most grateful if you would confirm, at the least (and without waiving any positions on either side), that We Build the Wall can expend its funds received after February 1, 2020 (or such other date you propose), (1) to process mail and deposit checks received after August 20, 2020, and (2) to pay the legal fees described in my September 21, 2020 letter.

                                          Very truly yours,

                                          Justin S. Weddle

Cc:    Nicholas Roos, Esq.
        Alison Moe, Esq.