UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #: _____          │
│ DATE FILED: 1/10/2022            │
└─────────────────────────────────┘
```

UNITED STATES OF AMERICA,

-against-

20 Cr. 412-4 (AT)

TIMOTHY SHEA,

**ORDER**

Defendant.

ANALISA TORRES, District Judge:

Defendant, Timothy Shea, moves, pursuant to Federal Rule of Criminal Procedure 14(a), for an order severing his trial from that of his co-defendants,[1] Brian Kolfage and Andrew Badolato.  Shea Mot., ECF No. 135.  For the reasons stated below, Shea's motion is DENIED.

## BACKGROUND

On August 17, 2020, a grand jury returned a sealed indictment charging Brian Kolfage, Stephen Bannon, Andrew Badolato, and Timothy Shea with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h).[2]  Indictment, ECF No. 2.  The indictment alleges that they fraudulently induced donors to contribute millions of dollars to an online crowdfunding campaign known as We Build the Wall.  *Id.* ¶ 16.  The indictment further alleges that Kolfage, Bannon, and Badolato made repeated false statements—on the crowdfunding website, We Build the Wall's website, and in social media, press releases, and donor solicitations—that money from the fundraising campaign would not be taken for their personal use, and that all funds would go to the campaign's stated mission: building a wall along the southern border of the United States.  *Id.* ¶¶ 1, 9, 11–14.  We Build the Wall raised approximately $25,000,000.  *Id.* ¶ 16.  Despite

---

[1] On May 25, 2021, the Court dismissed the charges against Stephen Bannon following the issuance of a presidential pardon.  ECF No. 117.

[2] The indictment was unsealed on August 20, 2020.  ECF No. 3.

representations to the contrary, Kolfage, Bannon, Badolato, and Shea allegedly took hundreds of thousands of dollars from these funds for their own personal use. *Id.* ¶ 17.

As to Shea, the indictment alleges that he conspired with his co-defendants and Bannon to conceal payments to himself and Kolfage from funds raised by means of the false statements. *Id.* ¶ 2. Shea allegedly suggested to Kolfage, Bannon, and Badolato that Shea create a shell corporation to send money to himself and Kolfage. *Id*. ¶ 20. Consistent with this alleged proposal, Shea incorporated a limited liability corporation, which We Build the Wall then paid for "social media" work that was not performed. *Id*. ¶ 21. The funds were then funneled to Shea and Kolfage. *Id.*

On November 15, 2021, Shea moved to sever his trial from that of his co-defendants. Shea Mot. For the reasons stated below, Shea's motion is DENIED.

## DISCUSSION

I. <u>Legal Standard</u>

"There is a preference in the federal system for joint trials of defendants who are indicted together." *Zafiro v. United States*, 506 U.S. 534, 537 (1993). However, under Rule 14 of the Federal Rules of Criminal Procedure, "[i]f the joinder of offenses or defendants in an indictment . . . for trial appears to prejudice a defendant . . . , the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). Severance is considered "an extreme remedy." *United States v. Lopez*, No. 18 Cr. 736, 2019 WL 4733603, at *4 (S.D.N.Y. Sept. 27, 2019). "The burden is on the defendant to demonstrate that severance is proper," *id*., and this burden can be satisfied only with a showing that "a joint trial would subject him to 'legally cognizable prejudice,'" *United States v. Pirro*, 76 F. Supp. 2d 478, 481 (S.D.N.Y. 1999) (quoting *Zafiro*, 506 U.S. at 541).

The preference for joint trials reflects the idea that "[j]oint trials play a vital role in the criminal justice system" because "[t]hey promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." *Zafiro*, 506 U.S. at 537 (quotation marks omitted); *see also Richardson v. Marsh*, 481 U.S. 200, 210 (1987) (explaining that joint trials "enabl[e] [a] more accurate assessment of relative culpability—advantages which sometimes operate to the defendant's benefit"). The Supreme Court has, therefore, instructed that "a district court should grant a Rule 14 severance motion only when 'there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" *United States v. Feyrer*, 333 F.3d 110, 114 (2d Cir. 2003) (quoting *Zafiro*, 506 U.S. at 539). Even in situations "where the risk of prejudice is high," the court should consider "less drastic measures—such as limiting instructions—[which] often suffice as an alternative to granting a Rule 14 severance motion." *Id*. The preference for joint trials "is particularly strong where . . . the defendants are alleged to have participated in a common plan or scheme." *United States v. Salameh*, 152 F.3d 88, 115 (2d Cir. 1998); *see also Pirro*, 76 F. Supp. 2d at 483.

II.   Application

Shea argues that the "spillover prejudice" from a joint trial is so great that holding a joint trial in this case would constitute "a miscarriage of justice." Shea Mem. at 4, ECF No. 136. Shea contends that there is a significant disparity between the amount of evidence against him and the amount of evidence against his co-defendants, and that he is less culpable than them. *See id.* at 5–6. Shea further argues that the spillover prejudice will be greater in his case than it is in the average case because his co-defendants have "been the subject of massive notoriety and fame," *id.* at 6, as Kolfage was the "figurehead and spokesperson of the organization" and

Badolato was Bannon's primary contact, *id*. at 2.  Shea's arguments, however, do not overcome the strong preference for joint trials of co-defendants charged with conspiracy.  *See Salameh*, 152 F.3d at 115; *Pirro*, 76 F. Supp. 2d at 483.

First, the Court rejects Shea's contentions regarding the relative levels of culpability among the three co-defendants, and the alleged disparity in the amount of proof against each defendant.  As the Second Circuit has recognized, "disparity in the quantity of evidence and of proof of culpability are inevitable in any multidefendant trial, and by themselves do not warrant a severance," particularly when the unrelated evidence does not "reflect[] activities of a violent nature."  *United States v. Cardascia*, 951 F.2d 474, 483 (2d Cir. 1991); *see also United States v. Spinelli*, 352 F.3d 48, 56 (2d Cir. 2003) ("[E]ven the fact that evidence may be admissible against one defendant but not another does not necessarily require a severance." (internal quotation marks omitted)).  Moreover, "[i]t is well established that defendants who played a minor role in a conspiracy may be tried with those who played a larger or dominant role." *United States v. Hameedi*, No. 17 Cr. 137, 2017 WL 5152991, at *5 (S.D.N.Y. Nov. 3, 2017) (citation omitted) (alteration in original); *see also Richardson*, 481 U.S. at 210.  Although Shea argues that "large swathes of evidence" would not be admissible against him, *see* Shea Mem. at 5, he offers no reason for its inadmissibility.  In addition, "[e]vidence that would be admissible against [Shea] at a separate trial is neither spillover nor prejudicial."  *United States v. Ramos*, 346 F. Supp. 2d 567, 572–73 (S.D.N.Y. 2004) (internal quotation marks omitted).  Moreover, Shea has also not demonstrated that a limiting instruction, "the preferred device for curing any prejudicial spillover that may result from a multi-defendant . . . trial" would be insufficient in his case.  *Id.* at 575.

Second, the Court rejects Shea's contentions regarding the relative notoriety of his co-defendants.  Shea cites no legal authority, nor has he explained to the Court why information and evidence about his co-defendants and Bannon would not be presented at a separate trial, were the Court to grant severance.  Moreover, his concern about the potential stigma which might arise from his association with his co-defendants and Bannon can be addressed at voir dire, when the Court may question potential jurors about any biases they may have against those individuals. *Cf. United States v. Martoma*, No. 12 Cr. 973, 2014 WL 164181, at *7 (S.D.N.Y. Jan. 9, 2014) ("Numerous courts in high-profile cases have recognized that a thorough voir dire may be adequate to address concerns about the effect of pre-trial publicity on a defendant's right to a fair trial.").

Accordingly, Shea's motion for severance is DENIED.

## CONCLUSION

For the reasons stated above, Shea's motion for severance is DENIED.

SO ORDERED.

Dated: January 10, 2022
New York, New York

_____
ANALISA TORRES
United States District Judge