UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- x
    UNITED STATES OF AMERICA

            - v. -                        20 Cr. 412 (AT)

    TIMOTHY SHEA,

                Defendant.

------------------------------------------------------- x

## THE GOVERNMENT'S MOTIONS *IN LIMINE*

                                              DAMIAN WILLIAMS
                                              United States Attorney
                                              Southern District of New York

Alison Moe
Nicolas Roos
Robert B. Sobelman
Assistant United States Attorneys

- Of Counsel -

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 2

I.   The Court Should Preclude Evidence and Argument that Victims of the Defendant's Scheme to Defraud Are to Blame for Having Acted Negligently or Gullibly ..................... 2

    A.   Applicable Law ............................................................................................... 2

    B.   Discussion ....................................................................................................... 3

II.  The Court Should Preclude Evidence and Argument Concerning the Potential Punishment or Consequences of Conviction.............................................................................. 5

III. The Court Should Preclude Evidence and Argument Concerning the Government's Motives, Any Claim of Selective Prosecution, and Any Suggestion that the Defendant's Conduct Should Be Handled As a Civil Matter ................................................................. 5

IV.  The Court Should Preclude Evidence and Argument That Would Invite Nullification ...... 7

CONCLUSION ................................................................................................................... 9

**PRELIMINARY STATEMENT**

The Government respectfully submits this memorandum of law in support of its motion for certain rulings in advance of the trial of defendant Timothy Shea scheduled for May 16, 2022. The Government moves *in limine* to: (i) preclude argument that victims of the charged fraud scheme are to blame for having acted negligently or gullibly; (ii) preclude evidence and argument concerning the potential punishment or consequences that the defendant faces if convicted; (iii) preclude evidence and argument concerning the Government's motives, any claim that the defendant is being selectively prosecuted, and any suggestion that the defendant's conduct should be dealt with solely as a civil matter; and (iv) preclude evidence and argument that would invite nullification.

**BACKGROUND**

On August 17, 2020, a grand jury sitting in this District returned an Indictment charging Timothy Shea, among others, with orchestrating a scheme to defraud hundreds of thousands of donors, including donors in the Southern District of New York, in connection with an online crowdfunding campaign ultimately known as "We Build the Wall" that raised more than $25,000,000 to build a wall along the southern border of the United States. (Dkt. No. 2 ¶ 1.) Specifically, the Indictment charged Shea with one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, and one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). (*Id.* ¶¶ 27-29, 31-33.) As described in the Indictment, Shea conspired with others to induce donors to contribute millions of dollars to the We Build the Wall campaign through materially false and fraudulent statements about the use of the funds, including that none of the donations would go to co-defendant Brian Kolfage. (*Id.* ¶¶ 1-2, 8-25.) In order to conceal the money transfers to Kolfage, payments were laundered, among other means, through

a bank account in the name of an anonymous limited liability corporation that had been set up by Shea and were falsely described as being for "social media" work. (*Id.* ¶¶ 20-21.) Shea profited from his involvement in the money laundering transactions, receiving hundreds of thousands of dollars, which he spent on personal expenses. (*Id.* ¶¶ 21, 24.)

## ARGUMENT

**I.   The Court Should Preclude Evidence and Argument that Victims of the Defendant's Scheme to Defraud Are to Blame for Having Acted Negligently or Gullibly**

The federal fraud statutes, including wire fraud, do not require the Government to prove reliance on a defendant's conduct as an element of the offense. The defendant should therefore be precluded from suggesting during the trial—whether in jury addresses or witness examinations—that the victims of the defendant's fraud are to blame, either because they failed to conduct sufficient diligence, were negligent, or otherwise acted unreasonably in relying on the misrepresentations made by participants in the charged fraud scheme.

**A.   Applicable Law**

Under Federal Rule of Evidence 402, "[i]rrelevant evidence is not admissible" at trial, Fed. R. Evid. 402, and under Rule 403, a court may exclude even relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403; *see also United States v. Miller*, 626 F.3d 682, 689 (2d Cir. 2010).

The essential elements of wire fraud—the object of the conspiracy charged in Count One—are: (1) a scheme to defraud; (2) money or property as the object of the scheme; and (3) use of wires to further the scheme. *United States v. Binday*, 804 F.3d 558, 569 (2d Cir. 2015). To "prove the existence of a scheme to defraud, the government must also prove that the misrepresentations were material, and that the defendant acted with fraudulent intent." *United States v. Weaver*, 860

F.3d 90, 94 (2d Cir. 2017) (internal citations and quotation marks omitted). A "statement is material if the misinformation or omission would naturally tend to lead or is capable of leading a reasonable [person] to change [his] conduct." *Id.* In other words, materiality is an objective standard, and actual reliance is not an element of criminal fraud. *Neder v. United States*, 527 U.S. 1, 24-25 (1999).

In *United States v. Thomas*, the Second Circuit rejected as a matter of law the proposition that a victim's "vigilance (or lack thereof) was relevant." 377 F.3d 232, 241, 243 (2d Cir. 2004); *see also Weaver*, 860 F.3d at 95 ("[T]he unreasonableness of a fraud victim in relying (or not) on a misrepresentation does not bear on a defendant's criminal intent in designing the fraudulent scheme, whereas the materiality of the false statement does."). Just as "justifiable reliance" is not an element of criminal fraud, neither does the Government need to prove damages, because the fraud statutes criminalize the "scheme" rather than the completed fraud. *Weaver*, 860 F.3d at 95; *see also United States v. Rybicki*, 287 F.3d 257, 262 (2d Cir. 2002) ("[T]he only significance in a fraud case of proof of actual harm befalling the victim as a result of the scheme is that it may serve as circumstantial evidence from which a jury could infer the defendant's intent to cause harm."), *on reh'g en banc*, 354 F.3d 124 (2d Cir. 2003). It is enough to show that the defendant "contemplated some actual harm or injury to [the] victims." *Weaver*, 860 F.3d at 95 (quoting *United States v. Greenberg*, 835 F.3d 295, 306 (2d Cir. 2016) (emphasis in original)). The pertinent statute therefore focuses on the defendant's statements and intent, not on the state of mind of his victims.

    **B.**    **Discussion**

Because such evidence would be irrelevant under Rules 401 and 402, and unduly confusing under Rule 403, the defendant should be precluded from offering evidence or argument that, had the victims of the charged fraud scheme or anyone else asked more questions of the defendant or

3

his co-conspirators, or been more diligent in some respect, the defendant or his co-conspirators would have told them the truth, or that the defendant is otherwise innocent because the victims of his fraud scheme were unreasonable in their reliance on the misrepresentations made as part of the scheme or could have been more diligent in their dealings with participants in the scheme. *E.g.*, *United States v. Amico*, 486 F.3d 764, 780 (2d Cir. 2007) ("The majority of circuits to address the issue have rejected this defense, holding that a victim's lack of sophistication is not relevant to the intent element of . . . wire fraud" (citations omitted)).

As part of the charged fraud scheme, the defendant and his co-conspirators lied or caused misleading information to be conveyed to the victims. The diligence and sophistication of those the defendant and his co-conspirators targeted during this scheme to defraud are not appropriate considerations at trial. *E.g.*, *Thomas*, 377 F.3d at 243 ("We refuse to accept the notion that the legality of a defendant's conduct would depend on his fortuitous choice of a gullible victim." (internal quotation marks omitted)). Indeed, in proving a scheme to defraud, the Government is "not required to show that the intended victim was actually defrauded." *United States v. Wallach*, 935 F.2d 445, 461 (2d Cir. 1991) (internal citations omitted). Nor should the defendant be able to use his and his co-conspirators' own ruse against their victims by suggesting that, had they only asked certain questions or taken certain steps, they would have known that they were being provided false or misleading information. In short, the defendant should be precluded from blaming his victims—whether through argument or evidence elicited through direct testimony or cross examination—because such evidence is irrelevant and would violate Rule 403. *See, e.g.*, *United States v. Avenatti*, No. 19 Cr. 374 (JMF) (S.D.N.Y. Jan. 13, 2022) (Tr. 8) (granting government motion to "preclude evidence and argument that victims of defendant's alleged scheme are to blame for having acted negligently or gullibly").

## II. The Court Should Preclude Evidence and Argument Concerning the Potential Punishment or Consequences of Conviction

The defendant should be precluded from offering evidence or argument concerning the potential punishment or consequences that he faces if convicted. Where the jury has no role at sentencing—such as in this case—it "should be admonished to 'reach its verdict without regard to what sentence might be imposed.'" *Shannon v. United States*, 512 U.S. 573, 579 (1994) (quoting *Rogers v. United States*, 422 U.S. 35, 40 (1975)). This is so for good reason: argument concerning punishment "invites [jurors] to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion." *Id.* There is no proper basis for the defendant to put these issues before the jury in any form, and the defendant should not be permitted to offer evidence or argument inviting the jury to consider them. *See, e.g.*, *Avenatti*, No. 19 Cr. 374 (JMF) (S.D.N.Y. Jan. 13, 2022) (Tr. 9-10) ("anything that adverts to possible punishments, including possibility of incarceration, however obliquely, is improper and will not be permitted," including, for example, a statement in opening or closing arguments that the defendant's "liberty is at stake," which would be "a not-so-thinly veiled reference to the prospect of incarceration, which is altogether improper").

## III. The Court Should Preclude Evidence and Argument Concerning the Government's Motives, Any Claim of Selective Prosecution, and Any Suggestion that the Defendant's Conduct Should Be Handled As a Civil Matter

The Court should preclude evidence and argument concerning the Government's motives, any claim that the defendant is being selectively prosecuted, and any suggestion that the defendant's conduct should be dealt with solely as a civil matter. Arguments and evidence regarding the reach of criminal statutes or the Government's decision to prosecute are "ultimately separate from the issue of [the defendant's] factual guilt" and, thus, properly excluded from trial. *United States v. Regan*, 103 F.3d 1072, 1082 (2d Cir. 1997); *see also id.* ("[The] selective

prosecution defense is an issue for the court rather than the jury."); *United States v. Reese*, 933 F. Supp. 2d 579, 583 (S.D.N.Y. 2013) (precluding defendant from advancing arguments aimed at jury nullification and the overall propriety of the Government's investigation); *United States v. Demosthene*, 334 F. Supp. 2d 378, 380 (S.D.N.Y. 2004) (noting that the defendant "may not argue before the jury issues relating to the overall propriety of the Government's investigation in this case"), *aff'd*, 173 F. App'x 899 (2d Cir. 2006); *United States v. Stewart*, No. 03 Cr. 717 (MGC), 2004 WL 113506, at *1 (S.D.N.Y. Jan. 26, 2004) (granting motion to preclude defendant from "presenting arguments or evidence that would invite the jury to question the Government's motives in investigating and indicting" the defendant); *see generally United States v. Thomas*, 116 F.3d 606, 614 (2d Cir. 1997) ("Nullification is, by definition, a violation of a juror's oath to apply the law as instructed by the court—in the words of the standard oath to jurors in the federal courts, to render a true verdict *according to the law and the evidence*. We categorically reject the idea that, in a society committed to the rule of law, jury nullification is desirable or that courts may permit it to occur when it is within their authority to prevent." (internal quotation marks and citation omitted)).

The basis for this settled rule is fundamental. A claim of improper prosecutorial motive, whatever its ground, "is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *United States v. Armstrong*, 517 U.S. 456, 463 (1996). Such a claim is self-evidently "unrelated to factual innocence of the crime charged," which is the sole issue to be decided by the jury, and, as a result, the Court alone must resolve it. *Regan*, 103 F.3d at 1082.

Based on this precedent, any evidence or argument suggesting that the Government purportedly singled out the defendant for prosecution for improper reasons is—in addition to being

baseless—irrelevant to the issues before the jury.  Similarly, claims that the charged conduct should have been brought in a civil, rather than criminal, proceeding provide no defense to the criminal charges and are not relevant to the merits of the charges.  As a result, any such argument and evidence should be precluded because evidence and argument concerning the Government's motives for prosecuting the defendants are irrelevant, will confuse the jury, distract from the evidence at trial, and improperly encourage jury nullification.

## IV.     The Court Should Preclude Evidence and Argument That Would Invite Nullification

The defendant should be precluding from offering evidence of aspects of his life that may tend to elicit the jury's sympathy, such as his family background.  The defendant should likewise be precluded from offering evidence that his co-defendant received a pardon, while he did not.  Such evidence should be excluded as irrelevant, confusing, and unfairly prejudicial.

Evidence and argument that makes the defendant appear sympathetic for reasons unrelated to the charges at issue should also be excluded as inviting the jury to acquit a defendant even where the evidence proves his guilt beyond a reasonable doubt.  Juries are not "to act based on their . . . sympathy."  *United States v. Stroming*, 838 F. App'x 624, 627 (2d Cir. 2021); *see, e.g.*, *United States v. Mustaga*, 753 F. App'x 22, 37 (2d Cir. 2018) ("The district court correctly recognized that evidence of solitary confinement could be used for the improper purpose of provoking juror sympathy.").  Any attempt to encourage such sympathy is therefore an attempt at nullification, which is itself plainly improper.  *See, e.g.*, *Thomas*, 116 F.3d at 615 (Jury nullification is "by no means a right or something that a judge should encourage or permit if it is within his authority to prevent.").

In keeping with these principles, the defendant should be precluded from offering evidence and argument concerning his family background, children, health, age, religion, or other similar personal factors, absent a showing that such factors bear on guilt.  *See, e.g., United States v.*

7

*Paccione*, 949 F.2d 1183, 1201 (2d Cir. 1991) (affirming preclusion of evidence that defendant had son with cerebral palsy whom defendant had devoted his life to care for); *United States v. Battaglia*, No. S9 05 Cr. 774 (KMW), 2008 WL 144826, at *3 (S.D.N.Y. Jan. 15, 2008) (precluding "evidence of [d]efendant's family and personal status" as not "relevant to the issue of whether [d]efendant committed the crimes charged"); *United States v. St. Rose*, No. 11 Cr. 349 (SJ), 2012 WL 1107659, at *1 (E.D.N.Y. Apr. 2, 2012) (precluding evidence of the defendant's immigration status because it does "not bear on the [d]efendant's innocence or guilt"). Such evidence is irrelevant to the jury's determination of guilt and should be precluded.

The defendant should likewise be precluded from eliciting that the defendant's co-defendant, Stephen Bannon, received a presidential pardon and the charges against him were subsequently dismissed. In order to avoid a jury's improper imputation of guilt or innocence of another individual to a defendant on trial, courts routinely instruct juries that they may "not speculate as to the reasons why other persons are not on trial," because "[t]hose matters are wholly outside [their] concern and have no bearing on [their] function as jurors." *United States v. Muse*, No. 06 Cr. 600 (DLC), 2007 WL 1989313, at *22 (S.D.N.Y. July 3, 2007), *aff'd*, 369 F. App'x 242 (2d Cir. 2010). (*See also* Joint Requests to Charge, Request No. 38.) The issuance of a pardon to Bannon and the disposition of the charges against him would invite the jury to engage in such impermissible speculation and would otherwise have no bearing on the questions of fact this jury will be asked to resolve at the defendant's trial. Accordingly, the Court should preclude any evidence or argument relating to the pardon, which could only be offered in service of impermissible jury nullification arguments. *See Thomas*, 116 F.3d at 614 ("We categorically reject the idea that, in a society committed to the rule of law, jury nullification is desirable or that courts may permit it to occur when it is within their authority to prevent."); *see also United States v.*

8

*Washington*, 705 F.2d 489, 494 (D.C. Cir. 1983) (per curiam) ("A jury has no more '*right*' to find a 'guilty' defendant 'not guilty' than it has to find a 'not guilty' defendant 'guilty,' and the fact that the former cannot be corrected by a court, while the latter can be, does not create a right out of the power to misapply the law. Such verdicts are lawless, a denial of due process and constitute an exercise of erroneously seized power." (emphasis in original)).[1]

## CONCLUSION

For the foregoing reasons, the Government's motions *in limine* should be granted.

Dated: New York, New York
April 7, 2022

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By:   /s/
Alison Moe
Nicolas Roos
Robert B. Sobelman
Assistant United States Attorneys
(212) 637-2225/2421/2616

---

[1] For similar reasons, the Court should reject the defendant's request in the proposed *voir dire* to question prospective jurors about the pardon, which likely would have the unintended and potentially prejudicial effect of informing jurors about a fact that is plainly inadmissible at trial.

9