UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
UNITED STATES OF AMERICA,

                     20-CR-412 (AT)

          v.

TIMOTHY SHEA,
                 Defendant.
-----------------------------------------------------X


**DEFENDANT TIMOTHY SHEA'S MOTION *IN LIMINE***
**TO PRECLUDE THE INTRODUCTION OF CERTAIN EVIDENCE**
**PURSUANT TO FEDERAL RULE OF EVIDENCE 404(b)**


Dated:  April 7, 2022
       New York, NY

                                John Meringolo, Esq.
                                Meringolo & Associates, PC
                                375 Greenwich St., Fl. 7
                                New York, NY 10013
                                (212) 397-7900

                                *Attorney for Timothy Shea*

## **TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ...................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 1

LEGAL STANDARD FOR THE MOTION ................................................................... 3

DISCUSSION ................................................................................................................... 6

   1.   EVIDENCE OF BACKDATED DOCUMENTS MUST BE EXCLUDED FROM THE GOVERNMENT'S CASE-IN-CHIEF ...................................... 6

   2.   EVIDENCE OF ALLEGED MISAPPROPRIATION OF $38,500 MUST BE EXCLUDED FROM THE GOVERNMENT'S CASE-IN-CHIEF.................................. 7

   3.   EVIDENCE THAT MR. SHEA FAILED TO DISCLOSE "SOME" INCOME TO THE IRS MUST BE EXCLUDED. ........................................ 9

   4.   EVIDENCE OF A COVID ECONOMIC INJURY DISASTER LOAN MR. SHEA RECEIVED FOR RPMM MUST BE EXCLUDED. ......................... 11

   5.   EVIDENCE OF MR. SHEA'S ALLEGED STATEMENTS ABOUT "A NEW YORK MAFIA CRIME FAMILY" MUST BE EXCLUDED. ................................. 13

CONCLUSION................................................................................................................ 15

## **TABLE OF AUTHORITIES**

### **Cases**

*Berger v. United States*, 295 U.S. 78, 55 S. Ct. 629, 79 L. Ed. 1314 (1935) .............................. 14

*In re Agent Orange Prod. Liab. Litig.*, 611 F. Supp. 1223 (E.D.N.Y. 1985) *aff'd sub nom. In re Agent Orange Prod. Liab. Litig. MDL No. 381*, 818 F.2d 187 (2d Cir. 1987) .......................... 5

*Manko v. United States*, 63 Fed. Appx. 570 (2d Cir. 2003) ...................................................... 5

*McGautha v. California*, 402 U.S. 183 (1973) ....................................................................... 3

*Old Chief v. United States*, 519 U.S. 172 (1997) ................................................................ 4, 9

*United States v. Berbal*, 62 F.3d 456 (2d Cir. 1995) ............................................................. 4

*United States v. Bok,* 156 F.3d 157 (2d Cir.1998) ................................................................ 9

*United States v. Carboni*, 204 F.3d 39 (2d Cir. 2000) ........................................................... 3

*United States v. Carlo*, 507 F.3d 799 (2d Cir. 2007) ............................................................. 6

*United States v. Concepcion,* 983 F.2d 369 (2d Cir. 1992) ..................................................... 3

*United States v. Curley*, 639 F.3d 50 (2d Cir. 2011) ............................................................. 14

*United States v. Edwards*, 342 F.3d 168 (2d Cir. 2003) .................................................... 4, 5, 9

*United States v. Garcia*, 587 F.3d 509 (2d Cir. 2009) ........................................................... 6

*United States v. Gigante*, 166 F.3d 75 (2d Cir. 1999) ........................................................... 7

*United States v. Graziano,* 558 F.Supp.2d 304 (E.D.N.Y.2008) .............................................. 4

*United States v. Halper*, 590 F.2d 422 (2d Cir. 1978) ........................................................... 5

*United States v. Hsu*, 669 F.3d 112 (2d Cir. 2012) ............................................................ 3, 9

*United States v. Huezo*, 546 F.3d 174 (2d Cir. 2008) ............................................................ 6

*United States v. O'Connor*, 580 F.2d 38 (2d Cir. 1978) ........................................................ 13

*United States v. Paulino*, 445 F.3d 211 (2d Cir. 2006) ....................................................... 5, 10

*United States v. Pitre*, 960 F.2d 1112 (2d Cir. 2003) ......................................................... 5, 9

*United States v. Pugh*, 2003 WL 22132915 (D. Ct. Aug. 26, 2003) ............................................. 4

*United States v. Quattrone,* 441 F.3d 153 (2d Cir. 2006) ........................................................... 4

*United States v. Quinones,* 511 F.3d 289 (2d Cir. 2007) ............................................................ 3

*United States v. Salovitz*, 701 F.2d 17 (2d Cir. 1983) ................................................................. 3

*United States v. Scott*, 677 F.3d 72 (2d Cir. 2012) ................................................................. 5, 13

*United States v. Shellef*, 507 F.3d 82 (2d Cir. 2007) .................................................................. 9

*United States v. Tarricone*, 996 F.2d 1414 (2d Cir. 1993) ..................................................... 5, 10

*United States v. Towne*, 870 F.2d 880 (2d Cir. 1989) ................................................................. 3

*United States v. Vilar*, No. 05 CR. 621 (RJS), 2008 WL 4178117 (S.D.N.Y. Sept. 5, 2008) ........ 3

*United States v. Williams*, 585 F.3d 703 (2d Cir. 2009) .............................................................. 3

## Statutes

26 U.S.C. § 7206 ................................................................................................................ 11

## Rules

Fed.R.Evid. 401 ................................................................................................................... 3

Fed.R.Evid. 402 ................................................................................................................... 3

Fed.R.Evid. 403 .............................................................................................................. 1, 14

Fed.R.Evid. 404(b)........................................................................................................... passim

Fed.R.Evid. 801(d)(2)(E)....................................................................................................... 7

## Other Authorities

Fed. R. Evid. 403 Advisory Committee's Note ..................................................................... 4, 14

## PRELIMINARY STATEMENT

On April 4, 2022, the Government provided notice that it intended to seek a superseding indictment of Mr. Shea "approximately 30 days before trial, which is likely to, among other things, add one or more charges for obstruction of justice" and that, in the alternative, it would attempt to introduce five categories of evidence against Mr. Shea as "direct evidence of one of the current counts of the Indictment, or the expected obstruction charges" or, "in the alternative, pursuant to Rule 404(b)." The Government's letter is attached hereto as Exhibit A.

Because none of the proffered evidence is relevant to the charges—conspiracy to commit wire fraud and conspiracy to commit money laundering—in the current indictment and because it is not admissible for any proper purpose under Federal Rules of Evidence 404(b) and 403, the Defense moves to exclude the proffered evidence from the Government's case-in-chief.

Further, the Defense reserves the right to move at the appropriate time in the event the Government brings a superseding indictment alleging obstruction of justice charges for any and all necessary particulars and for the production of discoverable evidence of alleged obstruction not produced to date.

## STATEMENT OF FACTS

Mr. Shea stands accused of conspiring with others to commit wire fraud and to launder funds resulting from that fraud in connection with We Build the Wall ("WBTW"), an entity that was advertised to be a non-profit organization for the purpose of collecting donations intended to be used to build a portion of the wall along the United States' southern border, from December 2018 through August 2020. Mr. Shea is the CEO of Ranch Property Marketing and Management ("RPMM"), a legitimate corporate entity that had business dealings with WBTW during the period in question. Of the four original defendants in the case, only Mr. Shea has elected to

proceed to trial. Documentary evidence establishing the transactions between WBTW and RPMM, and the communications between Mr. Shea and his former co-defendants, are anticipated to form the substance of the Government's evidence at trial.

The Government advises the Defense that it intends to introduce five items or categories of evidence in its case-in-chief either as direct evidence (assuming a superseding indictment is sought and obtained) or under Fed.R.Evid. 404(b):

- Evidence that Mr. Shea conspired with Brian Kolfage and his wife, Amanda Shea, to "create two backdated documents that purported to relate to seemingly benign, alternative reasons for why money was transferred from [WBTW] to [RPMM] and from RPMM to Kolfage" in October 2019 after learning of the existence of the grand jury's investigation;

- Evidence that, in June 2020, Mr. Shea "and Kolfage misappropriated $38,500 from We Build the Wall as a purported "loan" to their energy drink company, Winning Energy LLC";

- Evidence that "during the period of the crimes charged in the Indictment, the defendant did not disclose to the Internal Revenue Service certain income from his participation in the crimes charged;"

- "Evidence that, in May 2020, the defendant caused RPMM to receive a $59,700 COVID Economic Injury Disaster Loan and Advance from the Small Business Administration based on misrepresentations about RPMM, and then used those funds for personal expenses;" and

- Evidence that, "in approximately July 2021, the defendant conveyed to a witness that he believed co-defendant Andrew Badolato was cooperating with the Government, and that

2

Badolato should, in sum and substance, watch his back because the defendant knows people in a New York mafia crime family."

Although this last item is patently ridiculous and defies logic and common sense, the Defense addresses the admissibility of each item of proffered evidence in turn.

## <u>LEGAL STANDARD FOR THE MOTION</u>

"The Constitution requires no more than that trials be fairly conducted and that guaranteed rights of defendants be scrupulously respected." *United States v. Salovitz*, 701 F.2d 17, 21 (2d Cir. 1983) (quoting *McGautha v. California*, 402 U.S. 183, 221 (1973)). In furtherance of this requirement, only relevant evidence – evidence that "has any tendency to make a fact [that is of consequence in determining the action] more or less probable than it would be without the evidence" is admissible at trial. Fed.R.Evid. 401; 402. "Irrelevant evidence is not admissible." Fed.R.Evid. 402. *See United States v. Towne*, 870 F.2d 880, 886 (2d Cir. 1989) (to be relevant, evidence needs to tend to prove the government's case); *United States v. Williams*, 585 F.3d 703, 707 (2d Cir. 2009) (same).

Direct proof includes only evidence that " 'arose out of the same transaction or series of transactions as the charged offense, ... is inextricably intertwined with the evidence regarding the charged offense, or ... is necessary to complete the story of the crime on trial.' " *United States v. Hsu*, 669 F.3d 112, 118 (2d Cir. 2012) (quoting *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000)). Where uncharged conduct is "treated as 'part of the very act charged,' or, at least, proof of that act,' that evidence 'must nonetheless satisfy the balancing test set forth in Federal Rule of Evidence 403.'" *United States v. Vilar*, No. 05 CR. 621 (RJS), 2008 WL 4178117, at *2 (S.D.N.Y. Sept. 5, 2008) (citing *United States v. Quinones,* 511 F.3d 289, 309 (2d Cir. 2007) (quoting *United States v. Concepcion,* 983 F.2d 369, 392 (2d Cir. 1992)); *United States v.*

*Graziano,* 558 F.Supp.2d 304, 320 (E.D.N.Y.2008); *United States v. Pugh*, 2003 WL 22132915 at *2 (D. Ct. Aug. 26, 2003) (citing *United States v. Berbal*, 62 F.3d 456, 463 (2d Cir. 1995) (there is no exception to the Rule 403 analysis for "intertwined" evidence)).

Under Rule 403, the trial court must consider whether the proffered evidence: (1) is offered for a proper purpose; (2) is relevant to a disputed trial issue; (3) its probative value is substantially outweighed by its possible prejudice; and (4) the trial court must administer an appropriate limiting instruction. *United States v. Edwards*, 342 F.3d 168, 176 (2d Cir. 2003).

"[W]hat counts as the Rule 403 probative value' of an item of evidence, as distinct from its Rule 401 'relevance,' may be calculated by comparing evidentiary alternatives . . . [W]hen a court considers' whether to exclude on grounds of unfair prejudice,' the 'availability of other means of proof may . . . be an appropriate factor.'" *Old Chief v. United States*, 519 U.S. 172, 184 (1997) (quoting Advisory Committee's Notes on Fed. R. Evid. 403). "The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged . . . 'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Id*. at 180-81 (internal quotation and citation omitted). Such prejudice "may be created by the tendency of the evidence to prove some adverse fact not properly in issue or unfairly to excite emotions against the defendant." *United States v. Quattrone,* 441 F.3d 153, 186 (2d Cir. 2006). Thus, evidence must be excluded that "unduly inflame[s] the passion of the jury, confuse[s] the issues before the jury, or inappropriately lead[s] the jury to convict on the basis of conduct not at issue in the trial." *Quattrone,* 441 F.3d at 186.  "Exclusion of evidence of low probative value is particularly appropriate when admission would result in expenditure of substantial trial time and jury

confusion." *In re Agent Orange Prod. Liab. Litig.*, 611 F. Supp. 1223, 1255-56 (E.D.N.Y. 1985) *aff'd sub nom. In re Agent Orange Prod. Liab. Litig. MDL No. 381*, 818 F.2d 187 (2d Cir. 1987); S*ee also Manko v. United States*, 63 Fed. Appx. 570, 573 (2d Cir. 2003) ("We have held that "[a] trial judge has discretion to exclude evidence [that] is only slightly probative if its introduction would confuse and mislead the jury by focusing its attention on collateral issues and if it would unnecessarily delay the trial.") (internal citations omitted).

The evidentiary rules also permit introduction of "other act" evidence under Fed.R.Evid. 404(b) to prove *only* "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). "[I]t is by no means [the Second Circuit's] view that such evidence is either presumed relevant or automatically admissible. Its relevance to an issue truly in dispute must be demonstrated." *United States v. Halper*, 590 F.2d 422, 432 (2d Cir. 1978). Even under the Second Circuit "inclusory" approach to other act evidence, other act evidence is not admissible if: (1) it is offered to show a defendant's character or for some other improper purpose; (2) it is not relevant to a consequential issue at trial; (3) its probative value is substantially outweighed by its possible prejudice. *See Edwards*, 342 F.3d at 176 (citing *Pitre*, 960 F.2d at 1119); *see also Scott*, 677 F.3d at 81 (To be admissible under Rule 404(b), other act evidence must be more than relevant under Fed.R.Evid. 401. It must be "relevant to an issue *in dispute*.") (emphasis in original).

Further, "when a defendant 'unequivocally' relies on a defense that he 'did not do the charged act at all, . . . evidence of other acts is not admissible for the purpose of proving [the] intent' or knowledge with which he acted." *United States v. Paulino*, 445 F.3d 211, 221 (2d Cir. 2006) (quoting *United States v. Tarricone*, 996 F.2d 1414, 1421-22 (2d Cir. 1993) (internal quotation marks omitted)).

## DISCUSSION

1. **EVIDENCE OF BACKDATED DOCUMENTS MUST BE EXCLUDED FROM THE GOVERNMENT'S CASE-IN-CHIEF**

Mr. Shea is charged with conspiracy to commit wire fraud and conspiracy to commit money laundering. Both wire fraud conspiracy and money laundering conspiracy are specific intent crimes[1], requiring proof beyond a reasonable doubt that Mr. Shea "knowingly engaged in the conspiracy with the specific intent to commit the offenses that [are] the objects of the conspiracy." *United States v. Garcia*, 587 F.3d 509, 515 (2d Cir. 2009) (quoting *United States v. Huezo*, 546 F.3d 174, 180 (2d Cir. 2008) (additional citation omitted)). The Government seeks to introduce evidence of backdated documents from October 2019 to prove Mr. Shea tried to mislead a grand jury investigation because he knew he had done something wrong. But backdated documents – assuming, *arguendo*, that they in fact exist – do not prove that Mr. Shea knew *at the moment he committed the offense beginning in December 2018* – again, assuming, *arguendo*, and for purposes of this motion only that an offense was committed—that what he was doing was wrong or that he had the *mens rea* that the law requires at the relevant time. The applicable statutes require willful wrongdoing at the time of the offense, not after-the-fact recognition that an act already undertaken was wrong.

Moreover, evidence of allegedly backdated documents between WBTW and RPMM – internal agreements that there is no evidence the public ever saw or knew of -- does not constitute evidence that Mr. Shea or his company conspired to mislead the public, which is the heart of the charges here.

---

[1] *See United States v. Carlo*, 507 F.3d 799, 801 (2d Cir. 2007) (wire fraud conspiracy); *United States v. Garcia*, 587 F.3d 509, 515 (2d Cir. 2009) (money laundering conspiracy)

But even if the Court were to conclude that the backdated documents have some probative value as direct evidence of the alleged offenses, additional hurdles remain before they would be admissible against Mr. Shea that the prosecution cannot overcome. First, to the extent Mr. Shea's wife is alleged to have been a party to any relevant conversations or actions, any communications between her and Mr. Shea are protected by the spousal communications privilege. Second, to the extent the Government will seek to introduce the backdated documents and/or any communications about them through co-conspirator testimony, the Government must first establish the existence of the conspiracy and Mr. Shea's participation in it. *See*, *e.g.*, *United States v. Gigante*, 166 F.3d 75, 82 (2d Cir. 1999) (before a hearsay statement of a co-conspirator may be admitted, the district court must find by a preponderance of the evidence "first, that a conspiracy existed that included the defendant and the declarant; and second, that the statement was made during the course of and in furtherance of that conspiracy."); Fed.R.Evid. 801(d)(2)(E) (hearsay exceptions).

Finally, to the extent the Government proffers that the backdated documents would be admissible under 404(b), which permits "other act" evidence to prove *only* "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident," the backdated documents must be excluded because, again, they prove nothing as to the state of Mr. Shea's mind or his "motive, intent, preparation, plan, or knowledge" at the time that the alleged offense conduct began.

## 2. EVIDENCE OF ALLEGED MISAPPROPRIATION OF $38,500 MUST BE EXCLUDED FROM THE GOVERNMENT'S CASE-IN-CHIEF.

The alleged evidence that, in June 2020, Mr. Shea and Kolfage "misappropriated $38,500" from WBTW as a "loan" to Winning Energy, LLC, must likewise be excluded from the Government's case-in-chief as it is neither direct evidence of Mr. Shea's participation in the

charged conspiracies nor admissible under 404(b). The Indictment alleges that Bannon and Kolfage, not Shea, "repeatedly and falsely assured the public that Kolfage would 'not take a penny in salary or compensation' and that '100% of the funds raised . . . will be used in the execution of [WBTW's] mission and purpose' . . ." Indictment at ¶ 1. There is no allegation that Mr. Shea ever made such representations or even that he knew they were made. Further, although the Indictment asserts that "[b]eginning in January 2019," Mr. Shea and his co-defendants "caused" WBTW "to mislead donors, promising them repeatedly that '100 percent' of the funds would be used for construction of a wall" (Indictment at ¶ 9), the Defense has not seen evidence that Mr. Shea in fact made such representations or was involved in the making of such representations. To the contrary, the "public narrative" was "crafted by" Kolfage, Bannon, and Badolato (Indictment at ¶ 17), not by Mr. Shea.

Further, the forward-looking statement that all funds would be used for the wall is not rendered invalid by the fact that funds were subsequently used for another purpose in addition to the funding of the wall. Without evidence of the *mens rea at the time the statements were made*, what happened after the fact cannot establish that statements about the intended use of the funds were intentional or willful misrepresentations at the time they were made.

Similarly, evidence of use of WBTW's funds as a loan is not evidence that those funds were not subsequently returned to WBTW with interest for use in the construction of the border wall. A loan is, by its nature, temporary. That a loan was made (again, assuming, *arguendo*, the veracity of the Government's allegations for the purposes of this motion only) proves nothing about what occurred thereafter. Finally, because the alleged loan is extraneous to, and did not "ar[i]se out of the same transaction or series of transactions as the charged offense, ... is [not] inextricably intertwined with the evidence regarding the charged offense, [and] ... is [not]

necessary to complete the story of the crime on trial' " (*United States v. Hsu*, 669 F.3d 112, 118 (2d Cir. 2012) (internal citation omitted)), it must be excluded.

Evidence of the alleged "misappropriation" is, therefore, not admissible as direct evidence that Mr. Shea made false statements about the use of WBTW's funds or that he knew of and adopted the false statements of others.

Nor is evidence of the alleged loan admissible under 404(b) because it is of low (if any) probative value and because it cannot meet the balancing test described in *Old Chief*—there surely must be more probative, less prejudicial, and more direct evidence of knowing misrepresentations concerning the use of WBTW's funds, if the Government's allegations against Mr. Shea are to be substantiated at trial.

**3.  EVIDENCE THAT MR. SHEA FAILED TO DISCLOSE "SOME" INCOME TO THE IRS MUST BE EXCLUDED.**

The Second Circuit has held that "a defendant's past taxpaying record is admissible to prove willfulness circumstantially." *United States v. Shellef*, 507 F.3d 82, 101 (2d Cir. 2007) (quoting *United States v. Bok,* 156 F.3d 157, 165 (2d Cir.1998); *cf.* Fed.R.Evid. 404(b) ["Evidence of other crimes, wrongs, or acts" may be admissible to prove, *inter alia,* "intent, ... knowledge, ... or absence of mistake or accident...."]). However, as with any other act evidence, failure to pay taxes is *not* admissible if: (1) it is offered to show a defendant's bad character or for some other improper purpose; (2) it is not relevant to a consequential issue at trial; or (3) its probative value is substantially outweighed by its possible prejudice. *See Edwards*, 342 F.3d at 176 (citing *Pitre*, 960 F.2d at 1119 ); Fed.R.Evid. 404(b). Further, "when a defendant 'unequivocally' relies on a defense that he 'did not do the charged act at all, . . . evidence of other acts is not admissible for the purpose of proving [the] intent' or knowledge with which he

acted." *Paulino*, 445 F.3d at 221 (quoting *Tarricone*, 996 F.2d at 1421-22 (internal quotation marks omitted)).

Here, Mr. Shea's alleged failure to report "certain income" from his alleged participation in the charged conspiracy to the IRS is of questionable accuracy and so vague that it has nothing probative to add to the case. The Government's 404(b) letter does not provide specifics of the allegedly unreported monies. It does not explain whether the failure to report is attributable to Mr. Shea personally or to his company. It does not provide a timeframe for the alleged failure to report, the specific source of the unreported income, or a dollar amount. It is impermissibly vague, verging on speculative. In a case focused on dollar amounts, the Defense would anticipate that the Government would be able to proffer an exact sum of allegedly unpaid tax, or at least the exact amount of income on which the tax was not paid. That the Government has not done so leads the Defense to question the veracity of the source of the Government's information.[2]

More importantly, the proffered tax evidence is inadmissible to prove anything about Mr. Shea's frame of mind (knowledge, intent, etc.) under 404(b) because Mr. Shea has asserted, through his plea of not guilty that he has not committed the charged offenses at all. *See Paulino*, 445 F.3d at 221.

But even if the Government's assertion is true, Mr. Shea's tax returns, whether personal or corporate, simply have nothing probative to add to the case. Filing a tax return with materially false information, including the failure to report earned income, is a separate crime having to do with the *reporting* of the income but saying nothing as to the *source* of that income.  Title 26 of the United States Code § 7206 provides that anyone who "[w]illfully makes and subscribes any

---

[2] If the Government is in fact in possession of IRS documentation to substantiate this assertion, the Defense herewith moves for its immediate production so that the Defense may adequately evaluate it.

return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter . . .shall be guilty of a felony . . ." 26 U.S.C. § 7206. Thus, if a taxpayer received only legitimate income, yet failed to declare part of that income, he would be guilty of a crime. The question of whether income is honestly earned or fraudulently obtained has no bearing on whether it is accurately declared on a tax return, and the numerical contents of a tax return form 1040, likewise, cannot speak to the source of that income. The Government's argument that Mr. Shea's failure to report "certain income" to the IRS is probative evidence that any such income was fraudulently obtained makes no sense.

Further, to the extent the Government proffers that the evidence of unreported income is evidence of "consciousness of guilt," it must be excluded under Rule 404(b) because "consciousness of guilt" is not a permitted ground for the introduction of "other act" evidence.

### 4. EVIDENCE OF A COVID ECONOMIC INJURY DISASTER LOAN MR. SHEA RECEIVED FOR RPMM MUST BE EXCLUDED.

The Government seeks to admit evidence concerning a small business loan Mr. Shea obtained for RPMM, as part of the Small Business Administration's COVID Economic Injury Disaster Loan and Advance Program. The Government alleges that the $59,700 loan was given "based on misrepresentations about RPMM" and that Mr. Shea "then used those funds for personal expenses." The Government alleges that the evidence is direct proof of the charged money laundering conspiracy as it establishes Mr. Shea's ownership of the company or alternatively, that the evidence is admissible under Rule 404(b) to establish plan, identity, knowledge, and absence of mistake.

As an initial matter, and as the Government is quite aware from readily available documentary evidence, Mr. Shea lawfully obtained a loan for RPMM. If admitted at trial, the

11

Defense is ready to vehemently disprove the allegations of misrepresentation. But the Defense should not have to do that. Mr. Shea's application for a COVID loan has nothing to do with whether or not he conspired with others to commit wire fraud in connection with WBTW or whether he conspired with others to launder the proceeds of that wire fraud. RPMM's business loan is wholly distinct and independent from anything related to WBTW. It is not direct proof of the offense conduct. It does not arise out of his interactions with his co-defendants. It has no probative value as to any of the allegations in the Indictment. It is, moreover, entirely unnecessary to prove the main point for which the Government has proffered admissibility of the COVID loan: Mr. Shea's ownership of RPMM is not in dispute. Mr. Shea has never denied the existence of his business or his ownership of it.

In addition, the Government's boilerplate assertions fail to establish that the RPMM business loan constitutes other act evidence under 404(b). If the Government fails to demonstrate the other-act evidence "provide[s] a reasonable basis for inferring knowledge, [intent or other issue in dispute]," its offer of the evidence for that purpose must be "rejected on grounds of relevance." *See United States v. Gordon*, 987 F.2d 902, 908 (2d Cir. 1993). In this instance, the RPMM loan, which defense counsel maintains is entirely lawful, does not provide a reasonable basis for inferring or establishing any knowledge as it relates to the charged offenses, which are entirely independent, separate, and distinct from the facts and circumstances surrounding the WBTW campaign. As such, the evidence must be excluded as irrelevant.

Finally, even if the Government could establish a modicum of tangential relevance between the COVID loan and the charged conduct, the "trial within a trial" that would ensue in order for defense counsel to rebut the false allegation that the COVID loan was obtained through misrepresentations or that Mr. Shea spent the loan in ways not intended by the Small Business

Administration would be a colossal waste of time and create undue delay and confusion of the issues, making it prohibited under Rule 403.

5. **EVIDENCE OF MR. SHEA'S ALLEGED STATEMENTS ABOUT "A NEW YORK MAFIA CRIME FAMILY" MUST BE EXCLUDED.**

The Government also seeks to admit evidence that in July 2021, Mr. Shea conveyed to a witness that he believed co-defendant Andrew Badolato was cooperating with the Government and that Badolato should "in sum and substance" "watch his back" because Mr. Shea "knows people in a New York mafia crime family." The Government contends such evidence is direct proof of Mr. Shea's "consciousness of guilt," and "anticipated obstruction of justice charges," or in the alternative, 404(b) evidence to establish intent, knowledge, and absence of mistake.

These allegations, which are entirely meritless and not based on even a modicum of truth cannot be considered "direct evidence" of anything, much less direct proof of the charged conduct. Mr. Shea, a Colorado resident who has never set foot in New York but for a family vacation, is not charged with an offense even tenuously associated with any sort of violence, much less any violence related to any type of "New York mafia crime family." He is unequivocally and definitively unrelated to, and unassociated with, any individual or group that could even conceivably be described as such. The Government's false allegations, if not so consequential to this very important moment in Mr. Shea's life, would be laughable.

Evidence may not be admitted under Rule 404(b) unless it is "relevant to an issue *in dispute*." *Scott*, 677 F.3d at 81 (emphasis supplied). The burden is on the Government to clearly articulate how proffered prior act evidence fits into a chain of logical inferences and is, therefore, specifically offered for a proper purpose. *See Scott*, 677 F.3d at 81 (citing *United States v. O'Connor*, 580 F.2d 38, 40 (2d Cir. 1978) ("[T]he prosecutor must show that the evidence is relevant, and there is no presumption that it is.")). In this instance, there is no logical explanation

for how such an unsupported statement – which Mr. Shea vehemently denies – could be related to any factual issue in dispute at trial. It is clear that the proffered statement is offered not for any proper 404(b) purpose but with the sole intention of inflaming the jury and frightening the jurors with mention of "mafia crime families" into convicting Mr. Shea on an improper basis.

The unfair prejudice that would result from the admission of this evidence cannot be overstated.  Unfair prejudice in this context "means an undue tendency to suggest decision on an improper basis."  Fed. R. Evid. 403 Advisory Committee's Note.  Where evidence "tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence," it is properly excluded as unfairly prejudicial under Rule 403. See *United States v. Curley*, 639 F.3d 50, 57 (2d Cir. 2011). One would be hard-pressed to craft a better example of evidence that tends to suggest decision on an improper basis than the mention of a completely unrelated, unsupported statement of alleged "mafia" ties.

Lastly, we respectfully remind the Government of the high standard to which they should be held during the trial of this matter.  As the Supreme Court has instructed in an oft-quoted opinion:

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor-indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. **It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one**.

*Berger v. United States*, 295 U.S. 78, 88, 55 S. Ct. 629, 633, 79 L. Ed. 1314 (1935) (emphasis supplied).

14

There is no proper basis for the admission of this inflammatory and fabricated statement. It must not be admitted at trial.

## **CONCLUSION**

WHEREFORE, protection of Mr. Shea's Sixth Amendment right to a fair trial counsels that none of the five categories of proffered "other act" evidence should be admitted in the Government's case-in-chief at trial.

Dated: April 7, 2022
      New York, NY

John Meringolo, Esq.
Meringolo & Associates, PC
375 Greenwich St., Fl. 7
New York, NY 10013
(212) 397-7900

*Attorney for Timothy Shea*

15