UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
UNITED STATES OF AMERICA,

v.                                                              20-CR-412 (AT)

TIMOTHY SHEA,
                       Defendant.
-------------------------------------------------------X

## DEFENDANT TIMOTHY SHEA'S OPPOSITION TO THE GOVERNMENT'S MOTIONS *IN LIMINE*

                                                           John Meringolo, Esq.
                                                           Meringolo & Associates, PC
                                                           375 Greenwich St., Fl. 7
                                                           New York, NY 10013
                                                           (212) 941-2077

                                                           *Attorney for Timothy Shea*

**PRELIMINARY STATEMENT**

On April 7, 2022, in advance of the trial of defendant Timothy Shea, the Government filed a memorandum of law in support of its motions *in limine*. Dkt. #166. The Government asks the Court to preclude: 1) evidence and argument that the alleged victims of the charged fraud conspiracy acted negligently or gullibly; 2) arguments concerning the potential punishment Mr. Shea faces if convicted; 3) arguments concerning Government motive, selective prosecution, and that Mr. Shea's conduct should have been handled as a civil matter; and 4) jury nullification arguments. *See* Government's Memorandum of Law ("Govt. Memo.") at 1.

As the Government does not seek any evidentiary rulings based on cognizable facts or actual legal arguments raised by the Defense, there is little to oppose at this juncture. However, we respectfully submit this brief opposition to the Government's arguments so as to clarify the record in advance of trial.

**DISCUSSION**

I.  **The Government's Motion to Preclude A "Victim Blaming" Defense Is Unnecessary.**

Defense counsel has never made any arguments that would tend to suggest the Defense intends to advance a "victim blaming" defense. Although the Government's restatement of the necessary elements of the charged offense is rudimentary and an oversimplification of the specific facts at issue in this case, the Defense does not intend to argue that the alleged victims of the offense were to blame. But the Government's witnesses should not be protected from the vigorous cross-examination to which Mr. Shea is constitutionally entitled.

For example, the Defense should not be precluded from questioning the Government's witnesses about what investigation, if any, they undertook before, e.g., making a donation to We Build the Wall. The Defense should not be precluded from asking what, if any, dealings the

1

witnesses had with Mr. Shea or his alleged co-conspirators. The Defense should not be precluded from asking about the witnesses' understanding of the way in which their donations would be used. The Defense should not, in short, be restricted from a full examination of all relevant facts to which the witnesses testify on direct examination. This is a bedrock principle of the law.

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Holmes v. South Carolina*, 547 U.S. 319, 319, 126 S. Ct. 1727, 1728, 164 L. Ed. 2d 503 (2006) (quoting *Crane v. Kentucky,* 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986)). To that end, Federal Rule of Evidence 106 provides, "If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time."

"At common law, the doctrine of completeness arose to permit a party against whom a part of a writing or utterance has been introduced to 'in his turn complement it by putting in the remainder, in order to secure for the tribunal a complete understanding of the total tenor and effect' of the whole." *United States v. Williams*, 930 F.3d 44, 58 (2d Cir. 2019), *cert. denied,* No. 20-6551, 2021 WL 2519269 (U.S. June 21, 2021) (quoting 7 Wigmore on Evidence § 2113, at 653 (Chadbourn rev. ed. 1978)).

While Fed.R.Evid. 106 is restricted to writings and recorded statements "for practical reasons," Fed.R.Evid. 106 advisory committee note (1972 Proposed Rules), "the common law rule of completeness is substantially broader than Rule 106, covering 'not only writings taken out of context, but also ... the truncated use of acts, declarations, and conversations.' " *Williams*,

930 F.3d at 59 (quoting 21A Kenneth W. Graham, Jr., Federal Practice and Procedure § 5072 (2d ed. 2015) (emphasis in *Williams* omitted)). Crucially here, "the common law doctrine persists in the wake of Rule 106's adoption." *Id.* (referencing *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 171–72, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988)). Thus, the common law completeness doctrine "can be invoked for completeness where Rule 106 does not apply." 21A Graham, *supra*, § 5073 n.1 (referencing *Beech Aircraft*).

To the extent, therefore, that the Government, through its witnesses, introduces fragments of any acts, declarations, or conversations that should be considered in their entirety under the common law doctrine of completeness, the Defense should not be precluded from pursuing such questions with the witnesses on cross-examination. We note that, not having seen the witness list, the Defense is at a disadvantage in responding to this motion insofar as it is unaware of the identities of any witnesses the Government may call or their relationship to Mr. Shea or the conduct at issue at trial. Within the bounds of fairness and good faith, however, cross-examination should not be precluded.

## II. Discussion of the Potential Punishment or Consequences of Conviction of Others Should Not Be Inappropriately Limited

As per the joint requests to charge that were submitted on behalf of the Government *and* defense counsel, Request No. 61 specifically provides that the question of possible punishment of the defendant is of no concern for the jury and is a question solely for the Court. Furthermore, question 46 of the jury *voir dire* specifically addresses the issue of whether a potential juror can accept the law that the question of punishment is for the Court to decide. For these reasons, the Defense does not intend to raise for the jury the potential punishment that Mr. Shea is facing if convicted.

3

However, the Defense should not be precluded from a fulsome exploration of any cooperating witnesses' agreements with the Government, their potential sentences they face as a result of their conviction, or the benefits that they hope to gain—in the nature of reduced sentences or even avoidance of incarceration—as a result of their testimony against Mr. Shea. The Defense is not responsible for the Government's charging decisions and, should the cooperating witness(es) happen to have pled guilty to the same (or related) offenses as those with which Mr. Shea is charged, the Defense should not be precluded from exploring their potential sentencing exposure and from directing the jury's attention to any relevant inferences that may be drawn from the resulting testimony.

### III. The Defense Should Not Be Precluded From Making All Relevant And Admissible Arguments Supported By The Facts Of This Case.

Selective prosecution claims are rooted in "the equal protection component of the Due Process Clause of the Fifth Amendment, which dictates that "the decision whether to prosecute may not be based on an unjustifiable standard such as race, religion, or other arbitrary classification." *United States v. Armstrong*, 517 U.S. 456, 464 (1996). In order to assert a claim of selective prosecution, a defendant bears the burden of establishing *prima facie* both: "(1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights." *United States v. Sun Myung Moon*, 718 F.2d 1210, 1229 (2d Cir. 1983) (quoting *United States v. Berrios*, 501 F.2d 1207, 1211 (2d Cir.1974)). Such claims are raised during pre-trial proceedings. *Id.* Because "a selective prosecution defense alleges a defect in the institution of the prosecution, [it] is an issue for the court rather than the

4

jury." *United States v. Helbrans*, No. 2021 WL 4778525, at *35 (S.D.N.Y. Oct. 12, 2021) (*quoting United States v. Farhane*, 634 F.3d 127, 167 (2d Cir. 2011)).

Mr. Shea has not raised a selective prosecution claim and has given no indication that he intends to do so at a later date. To the contrary, he has agreed to a proposed jury instruction that the jurors are not to speculate about the reasons why other individuals are not on trial. See Request No. 38 (Persons Not on Trial). The reasoning behind the Government's motion to preclude arguments that the Defense does not intend to make eludes us.

That said, the Defense should not be precluded from making valid references to the facts of this case including that Stephen Bannon received a pardon—a political decision, not a vindication of his innocence—, should that fact be raised or relevant to a point of cross-examination or argument. He should not be precluded from noting, again, if relevant to a valid point for the jury's consideration, that individuals associated with this case may have some name recognition where he does not. He should not be precluded from making every valid argument in his own defense which the facts and the law suggest.

To the extent the Government is attempting to evade its own moral and ethical obligations by placing the onus on the Defense to disregard some prosecutorial defect in its charging decisions, we suggest that any such concerns might be better addressed prior to trial either in an evidentiary hearing or through the timely disclosure of exculpatory material pursuant to Rule 5(f) of the Federal Rules of Criminal Procedure and the well-known standards of *Brady v. Maryland*, 373 U.S. 83 (1963) and *Kyles v. Whitley*, 514 U.S. 419 (1995).

### IV. Jury Nullification Is the Province of the Jury and Not A Legal Matter for the Court to Preclude.

Jury nullification is defined as a jury's "knowing and deliberate rejection of the evidence, or refusal to apply the law." (Black's Law Dictionary). It is a unique phenomenon that occurs

5

within the sanctity of the jury room and under circumstances to which neither the Defense nor the Government would be privy. The Government seems to believe that presenting evidence of Mr. Shea's family background would impermissibly elicit sympathy to such an extent that jury nullification would occur. One would be hard-pressed to conjure a situation where the mere mention of one's family, by way of background evidence or for other proper means, would invite nullification. Although the Defense does not presently intend to introduce evidence of Mr. Shea's family background, should the topic arise in relation to the evidence, there is no reason to assume it would invite jury nullification.

If Mr. Shea testifies, however, he should be permitted to provide any relevant background evidence just as every other witness is asked to do. Testimony about the personal background of a witness is "routinely admitted without objection" to tell "the jury something about the defendant as a person, and his experience in life." *United States v. Blackwell*, 853 F.2d 86, 88 (2d Cir. 1988). *See also Gov't of Virgin Islands v. Grant*, 775 F.2d 508, 513 (3d Cir. 1985) (discussing the "common sense notion that it is helpful for the trier of fact to know something about a defendant's background when evaluating his culpability").

Further, to the extent that Mr. Shea's wife's name may arise during the course of the trial, Mr. Shea should not be precluded from presenting any admissible and relevant evidence for the jury's consideration. Similarly, the fact that his co-defendant Mr. Bannon received a presential pardon – a *very* publicized and well-known fact to anyone remotely familiar with current events – is an issue that will likely, and necessarily arise, during the presentation of evidence. As the Defense intends to call Mr. Bannon as a witness, it is nearly impossible to avoid the fact that he was a former co-defendant and received a pardon. Such facts do not "invite" nullification, as the

6

Government suggests, but are rather integral aspects of the case and the facts at issue. Under the Federal Rules of Evidence and case law in this Circuit, such evidence would not be improper.

Courts have "wide discretion concerning the admissibility of background evidence." *Blackwell*, 853 F.2d at 88. "Consistent with that discretion, a Court may limit the introduction of background evidence which is not relevant under Federal Rule of Evidence 401 or which risks unfair prejudice, confusing the issues, misleading the jury, or wasting time under Federal Rule of Evidence 403." *United States v. Kosinski*, No. 3:16-CR-00148 (VLB), 2017 WL 4953902, at *5 (D. Conn. Oct. 31, 2017).

Federal Rule of Evidence 401 instructs that, "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed.R.Evid. 401. As the Court wrote in *Blackwell*:

> The Advisory Committee's notes on Rule 401 are illuminating. These notes state that "[e]vidence which is essentially background in nature can scarcely be said to involve disputed matter, yet it is universally offered and admitted as an aid to understanding." *See McCormick on Evidence* § 184, at 541 ("considerable leeway is allowed even on direct examination for proof of facts that do not bear purely on the legal issues, but merely fill in the background of the narrative....").

*Blackwell*, 853 F.2d at 88.

To assert a blanket claim that any potential defense evidence, including background evidence, would invite jury nullification and should be disallowed is both illogical—jury nullification requires, after all, the jury to consider and specifically reject valid evidence, not to be precluded from hearing relevant evidence—and unconstitutional. Mr. Shea is entitled to a vigorous defense against the Government's charges. He is entitled to call witnesses and to introduce evidence if he decides to do so. And, as part of that presentation, he is allowed, if he chooses to testify, to have his testimony considered in the same manner and with the same

7

scrutiny as that of any other witness. This includes any relevant background evidence that may assist the jury in its evaluation of his testimony.

We recognize that defendants who elect to exercise their constitutional rights and go to trial in the federal system, specifically within the Southern District of New York, are not the norm (4.6% of defendants in 2020[1]). We also recognize that, historically, when a federal defendant does go to trial in the federal system, the likelihood of an acquittal is within single-digit percentages (2 out of 251 within this Court in 2021[2]). We believe it to be common knowledge of anyone familiar with the federal court system that the prosecutors wield astronomical power and essentially unfettered discretion in their charging decisions, regardless of whether a case would have been better-suited as a civil matter (or no matter at all). It is not the responsibility of the Defense, or the Court, to protect the Government from criticisms that might arise once the jury is exposed to the true nature of this prosecution.

The Government's motions *in limine* are, quite frankly, bizarre. This is an institution that has enjoyed a nearly 98% conviction rate over the last four decades, a percentage that defies all rational odds. There is no other institution in this world – from a top sports team to the Roman Empire – that has experienced such statistically favorable odds over such a prolonged period. The Government now seeks to cover their single-digit chance of an acquittal by trying to intimidate the Defense out of putting forth a case, cross examining witnesses, and overall, from defending and advocating for Mr. Shea by raising speculative arguments that such advocacy would be improper or unfair rather than the very essence of the protections offered by the Fifth and Sixth Amendments of the Constitution.

---

[1] https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2020/2c20.pdf
[2] https://www.justice.gov/usao/page/file/1476856/download

## **CONCLUSION**

In short, the Defense concludes from the Government's motions *in limine* that the Government believes there is no defense to the charges and that Mr. Shea will be reduced at trial to making schoolyard claims of "unfair" treatment or otherwise basing his hope for an acquittal on an appeal to the jurors' sympathy rather than their reason. This is not the case. Mr. Shea has chosen to exercise his constitutional right to a fair trial before an impartial jury. He intends to hold the Government to its burden of proof on every element of every charge and to vigorously defend himself. The Constitution demands that he not be precluded from doing so.

Therefore, the Court should deny the Government's motions *in limine* in their entirety.

Dated: April 14, 2022
New York, NY

                                                                /s/
                                           John Meringolo, Esq.