UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------- x
                                       :
   UNITED STATES OF AMERICA            :
                                       :
              - v. -                   :            S1 20 Cr. 412 (AT)
                                       :
   TIMOTHY SHEA,                       :
                                       :
                     Defendant.        :
                                       :
------------------------------------------------- x
```

## THE GOVERNMENT'S OPPOSITION TO THE DEFENDANT'S MOTIONS *IN LIMINE*

DAMIAN WILLIAMS
United States Attorney
Southern District of New York

Alison Moe
Nicolas Roos
Robert B. Sobelman
Assistant United States Attorneys

- Of Counsel -

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................. 1

APPLICABLE LAW ............................................................................................................... 2

ARGUMENT ......................................................................................................................... 4

I.    Evidence of the Defendant's Backdating of Documents is Admissible ............................. 4

II.   Evidence of the Defendant's Misappropriation of $38,500 from We Build the Wall
      for His Energy Drink Company is Admissible ................................................................. 7

III.  Evidence of the Defendant's Failure to Disclose Income to the Internal Revenue
      Service is Admissible ................................................................................................... 9

IV.   Evidence that the Defendant Fraudulently Obtained a COVID Economic Injury
      Disaster Loan for Ranch Property Marketing and Management is Admissible ................ 12

V.    Evidence that the Defendant Attempted to Intimidate a Potential Cooperating
      Witness is Admissible ................................................................................................. 13

CONCLUSION ................................................................................................................... 15

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in opposition to defendant Timothy Shea's motion to preclude certain evidence at trial.

On August 17, 2020, Timothy Shea was charged in a two-count indictment with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h).  (Dkt. No. 2.)  On April 7, 2022, the defendant moved *in limine* to preclude certain evidence that the defendant claimed were not relevant to the then-pending charges and were inadmissible under Rules 404(b) and 403. (Dkt. No. 170.)  The Government had previously advised the defense of its intention to seek a superseding indictment. On April 14, 2022, a Superseding Indictment was filed charging the defendant with conspiracy to commit wire fraud and honest services fraud, in violation of 18 U.S.C. § 1349, conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h), and fabrication of documents, in violation of 18 U.S.C. § 1519.  The Superseding Indictment alleges that the defendant conspired to defraud donors to We Build the Wall, conspired to defraud We Build the Wall itself of the honest services of its officers, and conspired to launder the proceeds of those crimes.  The Superseding Indictment also adds the charge of obstruction through the fabrication of documents because the defendant fabricated and backdated documents to conceal the fraud and money laundering after he learned of the secret grand jury investigation.

As a result of the filing of the Superseding Indictment, the first two of the defendant's arguments are moot and should be denied because the defendant has now been directly charged for that conduct in the Superseding Indictment. The other evidence the defendant seeks to preclude is also admissible because it is direct evidence of the charged conspiracies and is, alternatively,

1

admissible under Rules 401 and 404(b).  For the reasons set forth below, the motion should be denied in its entirety.

## APPLICABLE LAW

Relevant evidence is admissible unless the Constitution, a federal statute, or the Federal Rules of Evidence provide otherwise. Fed. R. Evid. 402. Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401.

Clearly, acts specifically charged in the indictment are admissible as direct evidence. *See, e.g.*, *United States v. James*, 520 F. App'x 41, 45 (2d Cir. 2013); *United States v. Grant*, No. 05 Cr. 1192 (NRB), 2008 WL 678553, at *2 (S.D.N.Y. Mar. 11, 2008). In addition, even where conduct is not specifically charged in the indictment, it is well established that evidence of otherwise uncharged conduct is admissible, without regard to Rule 404(b), when it constitutes intrinsic or direct proof of the charged crimes.  *See, e.g.*, *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000); *United States v. Gonzalez*, 110 F.3d 936, 942 (2d Cir. 1997).  Indeed, the Second Circuit has frequently observed that such evidence "is not considered other crimes evidence under [Rule] 404(b) if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial."  *Carboni*, 204 F.3d at 44 (internal quotation marks omitted) (quoting *Gonzalez*, 110 F.3d at 942); *United States v. Daly*, 842 F.2d 1380, 1388 (2d Cir. 1988) ("[T]he trial court may admit evidence that does not directly establish an element of the offense charged, in order to provide background for the events alleged in the indictment. Background evidence may be admitted to show, for example, the circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were

2

performed.").  In such circumstances, the uncharged conduct evidence is appropriately treated as "part of the very act charged," or, at least, proof of that act.  *United States v. Concepcion*, 983 F.2d 369, 392 (2d Cir. 1992).

Alternatively, "other acts" evidence may be admitted under Rule 404(b) where the evidence: (1) is advanced for a proper purpose; (2) is relevant to the crimes for which the defendant is on trial; and (3) has probative value that is not substantially outweighed by any unfair prejudicial effect.  *See United States v. Ortiz*, 857 F.2d 900, 903 (2d Cir. 1988) ("[O]ther acts or crimes are admissible under Rule 404(b) to prove matters other than the defendant's criminal propensity.").  Rule 404(b)(2) identifies the proper purposes for the admission of other act evidence, including to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b).

The Second Circuit takes an "'inclusionary' approach" to the admission of other-act evidence, under which "'evidence of prior crimes, wrongs, or acts is admissible for any purpose other than to show a defendant's criminal propensity,' as long as it is 'relevant to some disputed issue in the trial' and satisfies the probative-prejudice balancing test of Fed. R. Evid. 403."  *United States v. Brennan*, 798 F.2d 581, 589 (2d Cir. 1986) (citations omitted).

While any evidence offered pursuant to Rule 404(b) is subject to the balancing test set forth in Rule 403, the Second Circuit has long made clear that "other act" evidence that is neither "more sensational" nor more "disturbing" than the charged crimes will not be deemed unfairly prejudicial.  *United States v. Roldan Zapata*, 916 F.2d 795, 804 (2d Cir. 1990); *United States v. Williams*, 205 F.3d 23, 33-34 (2d Cir. 2000); *see also United States v. Paulino*, 445 F.3d 211, 223 (2d Cir. 2006); *cf. Costantino v. Herzog*, 203 F.3d 164, 174 (2d Cir. 2000) ("Because virtually all

evidence is prejudicial to one party or another, to justify exclusion under Rule 403 the prejudice must be *unfair*.").

## ARGUMENT

### I.      Evidence of the Defendant's Backdating of Documents is Admissible

The defendant's creation of backdated agreements after learning of the Government's investigation is direct proof of the offenses charged in the Superseding Indictment.

After learning in October 2019 that the Government had served a grand jury subpoena on a bank for records relating to We Build the Wall's bank accounts, the defendant fabricated documents for the purpose of obstructing the investigation or a future criminal case.  In particular, the defendant edited and signed a vendor agreement between We Build the Wall and his company, Ranch Property Marketing and Management ("RPMM"), which he backdated to March 2019, in order to provide a seemingly benign—and fictitious—reason for the payments from We Build the Wall to RPMM.  Similarly, the defendant caused the creation of an agreement between RPMM and Brian Kolfage purportedly for the licensing of a donor list, which was also backdated to March 2019, in order to conceal the monetary kickbacks from RPMM to Kolfage of the money embezzled from We Build the Wall. The defendant conspired with Kolfage and his wife in creating and executing these agreements.

On April 14, 2022, a grand jury returned the Superseding Indictment charging the defendant in Count Three with obstruction of justice through the fabrication of these two agreements. Thus, the evidence of the defendant's creation of these backdated documents is direct evidence—indeed, central evidence—of the charged obstruction offense.  Additionally, the fabrication of documents is direct evidence of the defendant's involvement in the money laundering conspiracy because their clear purpose is to conceal the nature of the monetary transactions involving the defendant and Kolfage. *See United States v. Double*, 246 F.3d 677, at

*1 (9th Cir. 2000) (unpublished) (evidence of sham transactions and fabricated documents was direct evidence of the defendant's money laundering activities and therefore "were not evidence of other crimes").  The defendant's arguments that the documents are not relevant to the wire fraud conspiracy because they were never public, or because they were created after the conspiracy began, are meritless.  The fabrication of documents is direct evidence of the commission of the wire fraud conspiracy because such evidence is probative of the defendant's consciousness of guilt.  *See United States v. Tuzman*, No. 15 Cr. 536 (PGG), 2021 WL 1738530, at *28 (S.D.N.Y. May 3, 2021) (evidence that emails had been fabricated was "probative of [the defendant's] 'consciousness of guilt,' and . . . this evidence was 'more probative than prejudicial under Rule 403'").

The defendant argues, incorrectly, that the communications between the defendant and his wife, Amanda Shea, are protected by the spousal communications privilege.  No spousal privilege exists where, as here, the spouses are partners in crime, and/or their communications are designed to further criminal activity.  *See United States v. Estes*, 793 F.2d 465, 466 (2d Cir. 1986) ("[C]onfidential marital communications concerning ongoing criminal activity are not protected by the privilege."); *In re Jane Doe*, No. 01-149 (JG), 2001 WL 1152816, at *2 (E.D.N.Y. Sept. 18, 2001) ("[A]n exception applies where the communications at issue were for the purpose of committing a crime.").  The defendant's wife was included on communications with Kolfage about the grand jury investigation, and she was involved in the creation of the fabricated agreements, including through emails sending drafts of the agreements in October 2019.  Because she was a co-conspirator in, among other things, the obstruction of the grand jury proceeding, the defendant's communications with her regarding the agreements or the grand jury subpoena are not subject to the spousal privilege.

The defendant next argues that the Government must first establish the existence of a conspiracy and the defendant's involvement in it before the fabricated documents or related agreements may be admitted under Federal Rule of Evidence 801(d)(2)(E)'s exception for coconspirator statements. But the fabricated agreements are not being offered for their truth. Indeed, these are fake agreements—the Government's position is that they are anything but what they purported to be on their face.  The defendant has not specifically identified any other document or communication that he contends is inadmissible hearsay.  In any event, the Court does not need to determine now the existence of a conspiracy or the defendant's participation for statements to be admissible under Rule 801(d)(2)(E); "statements proffered as coconspirator statements may be admitted in evidence on a conditional basis, subject to the later submission of the necessary evidence" establishing that a conspiracy involving the defendant existed.  *United States v. Tracy*, 12 F.3d 1186, 1199 (2d Cir. 1993) (citing *United States v. Geaney*, 417 F.2d 116, 1120 (2d Cir. 1969)).  By proving at trial that the defendant participated in the charged conspiracies, the Government will establish the factual predicates for the admission of evidence under Rule 801(d)(2)(E), and therefore the Court may conditionally admit objected-to exhibits throughout the Government's case-in-chief, and then accept them into evidence at the close of the Government's case upon a finding that the Government has proven the existence of a conspiracy.

Accordingly, evidence of the defendant's backdating of documents is admissible as direct proof of the charged offenses, and the defendant's motion relating to this evidence should be denied.

**II.     Evidence of the Defendant's Misappropriation of $38,500 from We Build the Wall for His Energy Drink Company is Admissible**

The defendant's misappropriation of funds from We Build the Wall to pay for an energy drink business he was starting with Kolfage is admissible as direct proof of the wire fraud conspiracy.

In 2020, while the defendant and Kolfage were working for We Build the Wall, the defendant started an energy drink company called Winning Energy.  In June 2020, the defendant and Kolfage were told by a drink supplier that it would cost approximately $34,445 to produce two pallets of the energy drink. Shea, his wife, and Kolfage then conspired together to transfer $38,500 from We Build the Wall to a bank account in the name of Winning Energy.  The funds were used to purchase the pallets of the energy drink.  The transaction was papered as a loan, but We Build the Wall was never repaid. Had Winning Energy been successful, Kolfage and Shea would have personally profited from the business.

The Superseding Indictment charges that, in connection with the wire fraud conspiracy, the defendant and his co-conspirators defrauded We Build the Wall and its donors by secretly misappropriating money for, among other things, the defendant's energy drink business.  This evidence is direct proof of the wire fraud conspiracy because it establishes that the defendant and his co-conspirators acted in a manner contrary to the representation to donors that all of the raised funds would be spent building a wall, and that they profited from We Build the Wall notwithstanding representations to the contrary.  Moreover, this theft from We Build the Wall is, effectively, no different than, and in fact arises out of the same series of transactions as, the times that the defendant misappropriated money from the origination through RPMM.  This evidence is direct proof of the honest services fraud object of the Superseding Indictment, because it proves

7

that the defendant conspired with Kolfage to divert money from WBTW to Winning Energy, and in turn Kolfage would receive a kickback from Winning Energy.

The defendant argues that he was not involved in making representations to the public about We Build the Wall. (Mot. at 7-8.) But the "law of conspiracy recognizes that members of a conspiracy may serve different roles," *United States v. Ulbricht*, 31 F. Supp. 3d 540, 561 (S.D.N.Y. 2014) (citing *United States v. Santos*, 541 F.3d 63, 72 (2d Cir. 2008)), and here, as will be proven at trial, the defendant was involved in several parts of the conspiracy, most notably the aspect of the conspiracy in which funds were secretly embezzled from We Build the Wall to pay Kolfage. *See also United States v. Kapelioujnyj*, 547 F.3d 149, 155 (2d Cir. 2008) ("[A] defendant need not be aware of every detail of a conspiracy, nor of every other member in the conspiracy" (citation omitted)). Moreover, the evidence at trial will establish that We Build the Wall made false representations to donors throughout the duration of the conspiracy.

The defendant also argues that he lacked the intent to misappropriate the funds at the time representations were made to donors. (Mot. at 8.) That, however, is a question for the jury, and not a basis to exclude evidence of the misappropriation of funds in June 2020 for an energy drink company. Additionally, even if statements had been made to donors long before the defendant intended to defraud those donors by using their money for an energy drink company, the defendant would still be guilty of defrauding We Build the Wall of its honest services. The second object of Count One is defrauding We Build the Wall of the honest services of its officers, like Kolfage, and that occurred through the charged conspiracy, including in June 2020 when Kolfage authorized the payment of money from We Build the Wall to Shea's energy drink company with the understanding that Shea intended to kick back profits from the venture to Kolfage once the

business was successful.  *See James*, 520 F. App'x at 45 (charged conduct is admissible as direct evidence.)

The defendant contends that the use of We Build the Wall's money as a purported loan "is not evidence that those funds were not subsequently returned." (Mot. at 8.)  The fact of the matter is, however, that the evidence at trial will prove that the funds were *never* returned, let alone at the expiration of the term of the purported loan agreement.

Finally, the evidence is admissible under Rule 404(b) to establish the relationship between the defendant and Kolfage, a plan between them to misappropriate money from WBTW, and the absence of mistaken understanding.

Therefore, evidence of the defendant's misuse of We Build the Wall funds to pay for his energy drink business is relevant and direct proof of the Government's case-in-chief.

## III. Evidence of the Defendant's Failure to Disclose Income to the Internal Revenue Service is Admissible

The defendant's failure to report income from the We Build the Wall fraud scheme provides direct evidence that the defendant understood that this money was not legitimate income for him.  This evidence therefore provides direct proof of the defendant's intent to defraud.  *See United States v. Bergstein*, 788 F. App'x 742, 745 (2d Cir. 2019)  ("The government properly introduced [the defendant's] tax returns to show that even though [he] maintained that his income was legitimate, shell companies under his control did not report or pay taxes on [the] income."). Moreover, the evidence is relevant and critical to rebutting an expected defense—namely, that the defendant thought that his transactions with Kolfage were legitimate and that he was therefore entitled to the money "earned" from the transactions with We Build the Wall.  *See, e.g.*, *United States v. Valenti*, 60 F.3d 941, 946 (2d Cir. 1995) ("The tax returns were obviously probative to refute [the defendant's] defense that the contested funds were legitimate compensation.").

In the alternative, the records[1] are admissible pursuant to Rule 404(b), as they are highly probative of the defendant's intent, plan, knowledge, and absence of mistake or accident in engaging in the charged crimes. The tax records demonstrate, among other things, that the defendant knew that the "income" he derived from his participation in the fraud scheme was illegitimate and that he sought to conceal it.  *See, e.g.*, *United States v. Adelekan*, No. 19 Cr. 291 (LAP) (S.D.N.Y. Oct. 22, 2021) (Tr. 488) (denying defense motion to preclude IRS testimony at trial regarding failure to file tax returns and report income because "the testimony will be direct evidence of the concealment of the source of the funds").  The tax records also show an absence of mistake or accident in that the defendant took active steps to plan and conceal his fraud and the "income" he earned from it.  The tax returns are therefore important to rebut any defense that the defendant acted in good faith and was lawfully entitled to the crime proceeds that he received.  *See Bergstein*, 788 F. App'x at 745; *United States v. Osarenkhoe*, 439 F. App'x 66, 68 (2d Cir. 2011) (approving admission of tax return evidence under Rule 404(b)); *Avenatti*, No. 19 Cr. 374 (JMF) (S.D.N.Y. Jan. 13, 2022) (Tr. 14) ("[I]f the proceeds were lawful, legitimate proceeds to which Mr. Avenatti was entitled, they would have presumably been income and he would have been required to report them to the IRS.  The fact that he did not do so tends to rebut any claim that they were lawful and legitimate.").

Tellingly, the defendant's motion cites no case in which a court has excluded tax evidence in a fraud and money laundering case.  Instead, the defendant's motion exclusively relies on the Second Circuit's decision in *United States v. Paulino*.  Def. Mot. at 9-10.  In that case, the Second Circuit affirmed the district court's decision to admit evidence of the defendant's prior narcotics

---

[1] In his motion, the defendant asserts, without explanation, that he "question[s] the veracity of the source of the Government's information."  Def. Mot. at 10.  The defense further moves for "immediate production" of "IRS documentation to substantiate this assertion."  *Id.* at 10 n.2.  The Government produced the relevant tax records to the defendant on November 16, 2020.

conviction to establish the defendant's knowledge or intent in a narcotics trial. *Paulino*, 445 F.3d at 221. Nothing in *Paulino*, or the cases upon which it relies, stands for the sweeping proposition in the defendant's motion: that evidence cannot be admitted under Rule 404(b) where a defendant denies his guilt. Def. Mot. at 10 (asserting that "the proffered tax evidence is inadmissible to prove anything about Mr. Shea's frame of mind (knowledge, intent, etc.) under 404(b) because Mr. Shea has asserted, through his plea of not guilty that he has not committed the charged offenses at all."). Indeed, such a rule would be illogical, because criminal trials only occur where a defendant has pleaded not guilty. Instead, *Paulino* stands for the far narrower proposition that evidence of other bad acts is not admissible to prove the defendant's intent when the defendant "unequivocally" asserts the defense that he "did not do the charged <u>act</u> at all." *Paulino*, 445 F.3d at 221 (quoting *United States v. Tarricone*, 996 F.2d 1414, 1421-22 (2d Cir. 1993)) (emphasis added). Here, the defendant has not unequivocally denied conducting the financial transactions at issue in this case. The documentary evidence in this case would preclude such a defense. Instead, it appears that the defendant intends to deny more broadly that he is guilty of the crimes charged – a defense that puts squarely at issue the defendant's knowledge and intent at the time he committed the relevant acts.

Finally, particularly in the context of this case, which involves wire fraud and money laundering schemes, there is no basis to think that evidence that the defendant failed to disclose certain income would be unfairly prejudicial within the meaning of Rule 403. As in other cases where such evidence has been admitted, there is nothing salacious or unfair about documentary evidence regarding the defendant's disclosure or non-disclosure of income demonstrating his own view of the proceeds of his crime. *See Valenti*, 60 F.3d at 946 ("Any arguable prejudice to [the defendant] was *de minimis:* it strains credulity to think that the jury might have believed [the defendant] innocent of transporting stolen goods, but voted to convict him anyway just because he

11

failed to report income on his tax returns."); *see also Bergstein*, 788 F. App'x at 745; *Osarenkhoe*,

439 F. App'x at 68.

## IV.    Evidence that the Defendant Fraudulently Obtained a COVID Economic Injury Disaster Loan for Ranch Property Marketing and Management is Admissible

Evidence of the defendant's false statements relating to RPMM on an application for

government benefits is admissible as direct proof of the fact that RPMM was a fraudulent entity

established for the purpose of criminal activity, and not a legitimate business.

In May 2020, the defendant applied for a COVID Economic Injury Disaster Loan and

Advance from the Small Business Administration. The loan was for RPMM which, as alleged in

the Indictment, was the shell corporation set up by the defendant through which to launder money

to Kolfage.  In the application for the loan, the defendant falsely stated that RPMM had $263,047

in gross revenues prior to January 2020, and $141,525 in costs of goods sold during the same time

period. That was false.  Additionally, in the loan agreement with the Small Business

Administration the defendant agreed to "use all the proceeds of [the loan] solely as working capital

to alleviate economic injury caused by [the] disaster."  But instead of doing that, the defendant

transferred the funds to his personal bank account.

The defendant's loan application to the Small Business Administration is admissible as

direct proof of the fact that he controls RPMM. The application contains his name and contact

information, and will be used to prove that he operated the bank account that was used to launder

and kickback money to Kolfage.  The defendant claims that issue will not be in dispute, but there

are presently no agreements between the parties that RPMM is owned and operated by the

defendant, that he controls the funds, or that he is responsible for its transfers.  The Government,

therefore, is entitled to prove the defendant's control through probative evidence.  Additionally,

this evidence is admissible because it establishes that RPMM was not a legitimate business and

that the defendant used it as a vehicle for committing fraud. Evidence of the prior misuse of an account or shell companies is admissible under Rule 404(b) as evidence of the defendant's plan and lack of accident in his commission of the wire fraud. *See Bergstein*, 788 F. App'x at 745-46 (evidence of the defendant's prior transactions through accounts and shell companies was admissible as direct evidence and under Rule 404(b)).

The defendant's objections to this evidence lack merit. The Government will introduce a limited amount of evidence relating to the loan: likely the loan application and promissory notes, a witness from the Small Business Administration, and bank records demonstrating the defendant's use of the funds. That will hardly require a "trial within a trial," as the defendant claims. Moreover, there is nothing unduly prejudicial about this evidence; it is significantly less sensational than the charged crimes. There is no basis to exclude these records, and therefore the defendant's motion should be denied.

## V.   Evidence that the Defendant Attempted to Intimidate a Potential Cooperating Witness is Admissible

Evidence of the defendant's threatened tampering with a suspected government witness is admissible at trial.

After the defendant was charged in this case, he told a third party that he believed co-defendant Andrew Badolato was cooperating with the Government, and that Badolato should, in sum and substance, watch his back, because the defendant "knows people in a New York mafia crime family." (Mot., Ex. A.) The defendant moves to preclude this evidence, asserting that he does not, in fact, have mafia ties. That argument misses the point. The Government does not intend to offer this evidence to prove that the defendant had ties to organized crime families. Instead, this evidence is directly relevant to establish the defendant's state of mind, and in particular his consciousness of guilt.

13

It is well established that a statement threatening a cooperating witness is admissible as evidence of a defendant's guilty mind. *See United States v. Mickens*, 926 F.2d 1323, 1329 (2d Cir. 1991) (admitting evidence that the defendant made a hand gesture of a gun to a witness); *see also United States v. Perez*, 387 F.3d 201, 209 (2d Cir. 2004) ("[W]e have upheld the admission of evidence of attempted witness or jury tampering as probative of a defendant's consciousness of guilt."). Indeed, the Second Circuit has explained that evidence of consciousness of guilt "may be admissible even though that evidence might be subject to varying interpretations." *Perez*, 387 F.3d at 209.

Here, the defendant's statement – alluding to violence and stating that a co-defendant he believed to be cooperating should "watch his back" – is a verbal threat that establishes the defendant's consciousness of guilt. The implication of his statement is, first, that a person would be wrong to cooperate with the government, suggesting a bad intent on behalf of the defendant, and second, that the defendant has something to hide that Badolato could expose. It makes no difference whether the defendant was telling the truth about his connections; his willingness to threaten violence is evidence of his state of mind. Moreover, any prejudice to the defendant can be addressed by a limiting instruction informing the jury of the ways in which it may appropriately consider this evidence. Accordingly, this evidence should be admitted.

## **CONCLUSION**

For the foregoing reasons, the defendant's motions *in limine* should be denied.

Dated:  New York, New York

   April 14, 2022

                                   Respectfully submitted,

                                   DAMIAN WILLIAMS
                                   United States Attorney

                        By:    /s/
                                   Alison Moe
                                   Nicolas Roos
                                   Robert B. Sobelman
                                   Assistant United States Attorneys
                                   (212) 637-2225/2421/2616