UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
UNITED STATES OF AMERICA,     :
     :
   - v. –     :     20-CR-412 (AT)
     :
TIMOTHY SHEA     :
     :
     *Defendant*.     :
----------------------------------------------------------X

## DEFENDANT TIMOTHY SHEA'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS COUNT ONE OF THE SUPERSEDING INDICTMENT

John C. Meringolo, Esq.
Meringolo & Associates, P.C.
375 Greenwich Street, 7th Floor
New York, New York 10013
(212) 941-2077
*Attorneys for Defendant Timothy Shea*

<u>**DEFENDANT TIMOTHY SHEA'S MEMORANDUM OF LAW IN SUPPORT OF HIS**</u>
<u>**MOTION TO DISMISS COUNT ONE OF THE SUPERSEDING INDICTMENT**</u>

**NOW COMES** Defendant Timothy Shea, by and through his attorney, John C. Meringolo

Esq., and respectfully submits this motion to dismiss Count One the Superseding Indictment,

which charges Mr. Shea with conspiracy to commit honest services fraud. For the reasons set forth

below, Count One is unconstitutionally vague and inapplicable to the facts set forth in the

Superseding Indictment. Therefore, dismissal of Count One is warranted.

<u>**STATEMENT OF FACTS**</u>

On August 17, 2020, Mr. Shea was charged with one count of conspiracy to commit wire

fraud in violation of 18 U.S.C. § 1343 and one count of conspiracy to commit money laundering

in violation of 18 U.S.C. § 1956(h), in connection with his work on the crowdfunding campaign

website, "We the People Build the Wall" (later changed to "We Build the Wall," also referred to

as "WBTW"), which sought to raise money to build a privately funded wall along the southern

border of the United States. The Indictment alleged that Mr. Shea's former co-defendants, Stephen

Bannon, Brian Kolfage, and Andrew Badolato, received funds from WBTW for personal use, in

contradiction to public statements made by them promising all funds would be used for the wall.

It was alleged that Mr. Shea assisted Mr. Kolfage in receiving payments from WBTW. *See,*

*generally,* Indictment.

One year and eight months later – after the most notable co-defendant received a

presidential pardon and two other co-defendants agreed to plead guilty – Mr. Shea remained the

sole defendant scheduled for trial on May 16, 2022. And as is the government's practice, Mr. Shea

was punished for electing to exercise his constitutional rights. Thus, four weeks prior to trial, a

Superseding Indictment was filed against Mr. Shea, charging him with one count of conspiracy to

commit wire fraud in violation of 18 U.S.C. §§ 1343 and 1346, alleging – for the first time – that

1

Mr. Shea conspired with others "to deprive We Build the Wall of its intangible rights to the honest services of its president, Brian Kolfage…" and through the use of wire communications, "devised a scheme for businesses created by [Mr. Shea] to receive money from We Build the Wall in exchange for [Mr. Shea] paying a kickback to Brian Kolfage." *See* Superseding Indictment at ¶ 3. Allegedly, they "devised a scheme to defraud those donors by secretly misappropriating funds from We Built the Wall and using them on personal expenses, including compensating Kolfage and operating an energy drink company." *Id.* at ¶ 2.

Additionally, the Superseding Indictment charged Mr. Shea with one count of falsification of records, in violation of 18 U.S.C. § 1519, alleging that in October 2018, Mr. Shea "did falsify, or cause the falsification of, a document with intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of any department or agency of the United States…" in that Mr. Shea allegedly "created and caused the creation of documents that were falsely backdated and stated false reasons for payment from We Build the Wall" to Mr. Shea and from Mr. Shea to Mr. Kolfage, "with the intent to impede, obstruct, or influence an investigation by the United States Attorney's Office for the Southern District of New York." *See* Superseding Indictment at ¶ 7.

## **ARGUMENT**

### I.  **THE SUPERSEDING INDICTMENT DOES NOT SUFFICIENTLY PLEAD A "KICKBACK" IN THE MEANING OF HONEST SERVICES FRAUD**

**Applicable Law**

Federal law criminalizes the use of wire communications to effectuate a "scheme or artifice to defraud." 18 U.S.C. § 1343. Among the frauds covered by the wire fraud statute are schemes "to deprive another of the intangible right of honest services." 18 U.S.C.  § 1346. "Honest-services fraud is carefully circumscribed, however, and only criminalizes bribes and kickbacks." *United*

*States v. Percoco*, 13 F.4th 180, 188–89 (2d Cir. 2021); *See also Skilling v. United States*, 561 U.S. 358, 368 (2010) (Specifically refers to "kickbacks supplied by a third party who had not been deceived.").

Its prohibition on bribes and kickbacks draws content not only from pre-*McNally* case law, but also from federal statutes proscribing—and defining—similar crimes. See, *e.g.,* 18 U.S.C. §§ 201(b), 666(a)(2); 41 U.S.C. § 8701(2). "The term 'kickback' means any money, fee, commission, credit, gift, gratuity, thing of value, or compensation of any kind which is provided, directly or indirectly, to [enumerated persons] for the purpose of improperly obtaining or rewarding favorable treatment in connection with [enumerated circumstances]." *Skilling v. United States*, 561 U.S. at 412–13.

Typically, '[i]n the bribery or kickback cases, a defendant who has or seeks some sort of business relationship or transaction with the victim secretly pays the victim's employee (or causes such a payment to be made) in exchange for favored treatment." *United States v. Rybicki*, 354 F.3d 124, 139 (2d Cir. 2003); *See also, e.g., United States v. Bahel,* 662 F.3d 610, 634 (2d Cir. 2011) ("In *Skilling,* the Supreme Court defined classic kickbacks as involving the receipt of something of value from a third party *'in exchange for'* official action.") (quoting *Skilling v. United States,* 561 U.S. 358, 413 (2010)). A kickback scheme typically involves an employee steering business of his employer to a third party in exchange for a share of the third party's profits on that business. *See, e.g., Black's Law Dictionary* 948 (9th ed. 2009) (defining "kickback" as the "return of a portion of a monetary sum received, esp. as a result of coercion or a secret agreement."). *United States v. DeMizio*, 741 F.3d 373, 381 (2d Cir. 2014).

This Circuit does not accept the "contention that a private-sector scheme involves kickbacks only if the payoff recipient does not perform 'any' work in return for being paid…"

*United States v. DeMizio*, 741 F.3d at 383. "Although often the recipient does not in fact do any work, the scheme qualifies as a kickback scheme where the recipient receives inordinate amounts of money for doing minimal work." *Id.*; *See also United States v. McDonough,* 56 F.3d 381, 389 (2d. 1995) (scheme involved kickbacks totaling "nearly $100,000, for which [he] performed almost no work."); *United Sates v. LaSpina,* 299 F.3d 165, 171 (2d. Cir. 2002) (affirming conviction involving kickback scheme in which the defendant's mistress received hundreds of thousands of dollars in commissions for which she "did very little work."). Other circuits have suggested a correlation between work performed (or not performed) and the qualification (or not) of a payment as proscribed conduct. *See United States v. Bryant,* 655 F.3d 232, 237 (3d Cir. 2011) (upholding conviction under §§ 1341, 1343, and 1346 for honest-services fraud involving a bribery conspiracy in which the defendant was given "a 'low-show' job ... (meaning he provided only minimal or nominal services)"; *United States v. Urciuoli,* 613 F.3d 11, 14 (1st Cir. 2010) (upheld conviction for honest services fraud involving a bribery conspiracy in which a coconspirator was hired by a municipality to perform work for which municipal officials believed he "lacked the [requisite] skills," and for which he received an "ample" and increasing salary for "limited" and "decreas[ing]" work). In other words, "a kickback may consist of a payment that is partly for legitimate work and partly for some favorable action. While the portion compensating the recipient for actual work performed is legitimate, any excess payment may be a kickback if it is exchanged for favorable treatment." *United States v. DeMizio*, WL 1020045, at *8 (E.D.N.Y. Mar. 26, 2012), aff'd, 741 F.3d 373 (2d Cir. 2014). ("Here, there was ample evidence from which a reasonable jury could have inferred that the payments…were kickbacks. They performed work on no more than 10 to 20 percent of the transactions for which they were paid. The work they did perform was of minimal quality and difficulty, and there was even evidence that they were not

4

competent to perform work as finders. In exchange for this 'work,' they received in excess of $1.5 million in payments." *Id.* at *9).

## Discussion

As a threshold matter, the instant Superseding Indictment does not sufficiently allege conduct that would subscribe to the definition of "kickback" as it pertains to violations of the honest services statute. In fact, the Superseding Indictment is so scant as to specific theory that defense counsel can only surmise the government's intent to pursue a kickback claim by the sole one-sentence mention that the co-defendants "devised a scheme for businesses created by [Mr. Shea] to receive money from We Build the Wall in exchange for [Mr. Shea] paying a kickback to Brian Kolfage." *See* Superseding Indictment at ¶ 3. Assuming *arguendo* that the government even intends to advance such a theory, we submit that the alleged conduct cannot be described as a "kickback."

The first element of a kickback requires that money (or other thing of value) be provided to another. Based on the government's allegations, Mr. Shea received monies from Mr. Kolfage, and then funneled the monies back to him. In other words, if the allegations are taken as true, monies in the direct control of Mr. Kolfage, as President of WBTW, were essentially returned to him after they were given to Mr. Shea. This is not a case, as in any other conceivable kickback scheme, where person A is giving person B money for some preferential treatment. The Superseding Indictment does not expound on its theory – only citing the word "kickback" once. Whether Mr. Kolfage misused WTBW funds for his own personal use by funneling them through others is a different question presented here, which is whether a kickback can exist when the receiver of said kickback was using money within his own control.

Secondly, a kickback scheme is done for "the purpose of improperly obtaining or rewarding favorable treatment." *Skilling v. United States*, 561 U.S. at 412–13. Thereby, person A is giving person B money so that person A may receive some sort of benefit. In this instance, it would need to be alleged that, at minimum, Mr. Shea gave his own money to Mr. Kolfage to receive some sort of preferential treatment from Mr. Kolfage (and even then, as discussed in the following section, such allegation would be insufficient to establish proscribed conduct under an honest services theory). But here, there is no such allegation. If taken as true, Mr. Shea "created" businesses so that money can flow from WBTW to the business then flow back again to Mr. Kolfage. In which case, there is no benefit received by Mr. Shea. To the extent that the government is implying that Mr. Shea promised Mr. Kolfage a "kickback" of any money paid to him from WBTW in exchange for hiring Mr. Shea's businesses as vendors for the organization, which would then arguably pose a benefit to Mr. Shea, such allegations are not, and have never been, made in any of the charging instruments. Mr. Shea is receiving no preferential treatment within this scenario - much less treatment that can be deemed improperly obtained.

Lastly, if Mr. Shea is "kicking back" money that is not his, to receive no benefit or preferential treatment, then it is impossible to discern the corrupt intent requirement typically connected to the payment or receipt of "bribes or kickbacks." *United States v. Bahel*, 662 F.3d 610, 633-34 (2d Cir. 2011). The mere receipt of payment from a third party alone would not be sufficient to constitute a "bribe or kickback" prohibited by law. To be criminal conduct, the payment must be connected to one's intent to be corruptly influenced in carrying out his official action on behalf of the entity to which he owes a duty of loyalty. An unlawful *quid pro quo* divides permissible conduct from criminal conduct. *United States v. Rosen*, 716 F.3d 691, 699-700 (2d. Cir. 2013). But here, there is no allegation tying an "intent to be corruptly influenced," (or intent

6

to corruptly influence) to alleged payments made by Mr. Shea from money controlled by Mr. Kolfage. It simply does not make sense, on its face, that Mr. Shea's payments, if made, were done with the intent to influence Mr. Kolfage, especially when considering the source of the money.

Overall, Count One of the Superseding Indictment fails, on its face, to allege a valid kickback scheme theory - one of only two valid theories under which honest services fraud can be pled. Therefore, Count One must be dismissed.

## II.   THE COURT SHOULD DISMISS COUNT ONE BECAUSE THE HONEST SERVICES STATUTE IS UNCONSTITUTIONALLY VAGUE AS APPLIED TO MR. SHEA'S RELATIONSHIP TO WE BUILD THE WALL

### Applicable Law

Section 1346 defines the term "scheme or artifice to defraud" to include "a scheme or artifice to deprive another of the intangible right of honest services," which the United States Supreme Court has held to encompass "only bribery and kickback schemes," *Skilling v. United States*, 561 U.S. at 404. In *Skilling*, the Court rejected the government's argument that § 1346 encompassed other categories of proscribed conduct such as "undisclosed self-dealing by a public official or private employee—i.e., the taking of official action by the employee that furthers his own undisclosed financial interests while purporting to act in the interests of those to whom he owes a fiduciary duty." *Id.* at 409. The Court noted that such a charge "leaves many questions unanswered. How direct or significant does the conflicting financial interest have to be? To what extent does the official act have to further that interest in order to amount to fraud?" *Id.* at 411 n. 44. "Reading the statute to proscribe a wider range of offensive conduct, we acknowledge, would raise the due process concerns underlying the vagueness doctrine. To preserve the statute without transgressing constitutional limitations, we now hold that § 1346 criminalizes only the bribe-and-kickback core of the pre-McNally case law." *Id.* at 408-409.

7

The *Skilling* decision also identified (and by doing so resolved conflicting federal case law) the "solid core" of honest services fraud: a violation of fiduciary duty. ("The 'vast majority' of the honest-services cases involved offenders who, in violation of a fiduciary duty, participated in bribery or kickback schemes." *Id.* at 407). The *Skilling* majority concluded that such vagueness concerns were alleviated by limiting the statute only to bribes and kickbacks. But Justice Scalia, in a concurring opinion, cautioned that the Court's limiting construction would not cure the vagueness at the heart of the statute because it would "not solve the most fundamental indeterminacy: the character of the 'fiduciary capacity,' to which the bribery and kickback restriction applies." *Skilling*, 561 U.S. at 421 (Scalia, J., concurring in part and concurring in the judgment). "Even with the bribery and kickback limitation the statute does not answer the question 'What is the criterion of guilt?'" *Id.*

Furthermore, the Due Process Clause requires statutory terms to be "defined 'with sufficient definiteness that ordinary people can understand what conduct is prohibited,' [and] 'in a manner that does not encourage arbitrary and discriminatory enforcement.'" *McDonnell v. United States*, 136 S. Ct. 2355, 2373 (2016) (quoting *Skilling*, 561 U.S. at 402-03). The doctrine implicates two concerns: "fair notice" and "arbitrary and discriminatory prosecutions." *Skilling v. United States*, 561 U.S. at 412. A two-step process governs the court's analysis: the court must (1) "determine whether the statute gives the person of ordinary intelligence a reasonable opportunity to know what is prohibited" and (2) "then consider whether the law provides explicit standards for those who apply it." *Rubin v. Garvin*, 544 F.3d 461, 468 (2d Cir. 2008) (citations omitted).

**<u>Discussion</u>**

As discussed above, Count One fails to sufficiently allege conduct that, by any measure, describes a kickback scheme, and as such, must be dismissed. But even assuming *arguendo* that the Superseding Indictment alleges some sort of kickback theory, it is still insufficient under § 1346 and *Skilling*, in that it does not define the fiduciary duties, if any, owed by the individuals involved. In the instant matter, the honest services statute fails to define the source, scope and content of the fiduciary duty owed in the relationships presented in the Superseding Indictment. Therefore, the Court must dismiss Count One and find it void for vagueness.

Former co-defendant Brian Kolfage was President of WBTW during the pertinent time period. The Superseding Indictment does not specify what fiduciary duty, if any, Mr. Kolfage owed to donors in his capacity as President of a crowd-funding organization. Assuming *arguendo* he owed a duty of loyalty to donors, the Superseding Indictment, even if taken as true for the purposes of this motion, does not state how accepting monies can constitute the crime of honest services fraud. The law is clear that honest services fraud is "a type of wire fraud prohibited under § 1343." *United States v. Napout*, 963 F.3d 163, 179–80 (2d Cir. 2020). So to the extent the government seeks to now change its theory as to the "type" of wire fraud committed, it needs to do so in accordance with Due Process protections. Absent clear criteria for defining the scope of the fiduciary duty owned by a president of a non-profit organization to its organization and donors, it becomes impossible for an ordinary person to understand what conduct is, in fact, prohibited by the honest services statute.

When a public official commits "honest services" fraud, he may be held liable on the "theory that a public official acts as trustee for the citizens and the State and thus owes the normal fiduciary duties of a trustee, e.g., honesty and loyalty to them." *See Silver*, 948 F.3d 538, 551 (2d

Cir. 2020) (quoting *United States v. Silvano*, 812 F.2d 754, 759 (1st Cir. 1987)). However, the statute remains ambiguous on the scope of the fiduciary duty owed between a corporate officer and organization.

The matter is further complicated by the fact that Mr. Shea is not alleged to have a fiduciary duty to anyone or anything, and that his only conduct relates to conspiring with Mr. Kolfage to breach Mr. Kolfage's own duties. This situation creates a circumstance similar to the one of concern to Justice Scalia. If Count One is to stand, it would follow that any third-party payment made to a person or entity to whom a fiduciary duty is owed would create proscribed conduct. Such interpretation would be a broadening of honest services that *Skilling* specifically sought to avoid. Because the honest services fraud statute remains ambiguous as to the scope of the fiduciary duty owed between a crowd-funding campaign owner and donors as it relates to a "kickback," it cannot be constitutionally applied to the allegations in Count One.

## **CONCLUSION**

For the foregoing reasons, Mr. Shea respectfully requests that the Court dismiss Count One of the Superseding Indictment.

Dated:   April 27, 2022
      New York, NY

Respectfully submitted,
 /s/
 John Meringolo, Esq.
Meringolo & Associates, P.C.
*Attorneys for Defendant*
375 Greenwich Street, 7th Floor
New York, NY 10013
(212) 941-2077