```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
UNITED STATES OF AMERICA,

                -against-

TIMOTHY SHEA,

                                Defendant.
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/6/2022

20 Cr. 412-4 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Defendant, Timothy Shea, moves[1] for an order (1) dismissing the superseding indictment filed on April 21, 2022 (the "Second Superseding Indictment"), S.I.2., ECF No. 179; (2) dismissing Count One of the Second Superseding Indictment; or, in the alternative, (3) adjourning his May 16, 2022 trial date for at least thirty days, or severing Count One of the Second Superseding Indictment for trial purposes. *See* Def. Mot. I, ECF No. 189; Def. Mot. II, ECF No. 187; Def. Mem. III. Shea also asks the Court to review grand jury minutes to determine whether the Government adequately explained a potential defense to the grand jurors. Def. Mem. III at 8. For the reasons stated below, Shea's motions are DENIED.

## BACKGROUND

On August 17, 2020, a grand jury returned a sealed indictment (the "Indictment") charging Defendants Brian Kolfage, Stephen Bannon, Andrew Badolato, and Timothy Shea[2] with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h).[3] Indictment, ECF No. 2. The

---

[1] Shea filed three separate motions—two on April 27, 2022, and one on May 4, 2022. *See* ECF Nos. 189, 187; Def. Mem. III (filed under seal).
[2] On May 25, 2021, the Court dismissed the charges against Bannon following the issuance of a presidential pardon. ECF No. 117. On April 21, 2022, Kolfage and Badolato entered pleas of guilty on Count One of the Indictment, conspiracy to commit wire fraud. *See* Dkt. Entry 4/21/2022.
[3] The Indictment was unsealed on August 20, 2020. ECF No. 3.

Indictment alleged that Defendants fraudulently induced donors to contribute millions of dollars to an online crowdfunding campaign known as We Build the Wall. *Id.* ¶ 16. The Indictment further alleged that Kolfage, Bannon, and Badolato made repeated false statements that money from the fundraising campaign would not be taken for their personal use, and that all funds would go to the campaign's stated mission: building a wall along the southern border of the United States. *Id.* ¶¶ 1, 9, 11–14. Despite representations to the contrary, Defendants allegedly took hundreds of thousands of dollars from these funds for their own personal use. *Id.* ¶ 17.

As to Shea, the Indictment alleged that he conspired with his co-defendants to conceal payments to himself and Kolfage from funds raised by means of the false statements. *Id.* ¶ 2. Shea allegedly suggested to his co-defendants that he create a shell corporation to send money to himself and Kolfage. *Id.* ¶ 20. Consistent with this alleged proposal, Shea incorporated a limited liability corporation, which We Build the Wall then paid for "social media" work that was not performed. *Id.* ¶ 21. The funds were then funneled to Shea and Kolfage. *Id.* The Indictment also alleged that Defendants "took . . . steps to conceal the fraudulent scheme" after learning of the federal criminal investigation. *Id.* ¶ 26.

In March 2022, the Government advised Shea of its intention to seek a superseding indictment and the potential inclusion of an obstruction charge, and, on April 7, 2022, notified Shea that it would also be adding an honest services component to the wire fraud charge. Gov. Mem. I at 2, ECF No. 194. Then, on April 14, 2022, the Government filed a superseding indictment (the "Superseding Indictment"), which charged Shea with conspiracy to commit wire fraud and honest services fraud, in violation of 18 U.S.C. § 1349; conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h); and falsification of records, in violation of 18 U.S.C. § 1519. S.I.1., ECF No. 174. It alleged that Shea conspired to defraud We Build the

Wall's donors, to defraud We Build the Wall of the honest services of one of its officers, Kolfage, and to launder the proceeds of those crimes. *See id*. The Superseding Indictment further alleged that Shea falsified documents to conceal the fraud and money laundering after he learned of the grand jury investigation in October 2018. *See id*. On April 21, 2022, the Government filed the Second Superseding Indictment, which changed the date of the obstruction charge from October 2018 to October 2019. *See* S.I.2. On April 22, 2022, Shea was arraigned on the charges in the Second Superseding Indictment. *See* ECF No. 181.

Shea moves to dismiss the Second Superseding Indictment because the Government allegedly delayed disclosing material that should have been produced earlier pursuant to *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Def. Mem. III at 1. Shea also moves to dismiss Count One because it is "unconstitutionally vague and inapplicable to the facts set forth in the [Second] Superseding Indictment." Def. Mem. I at 1, ECF No. 190. As an alternative to dismissal, Shea requests a "short adjournment of trial to investigate" the alleged *Brady* material, a thirty-day continuance of his May 16, 2022 trial date, or the severance of Count One of the Second Superseding Indictment. Def. Mem. II at 1, ECF No. 188; Def. Mem. III at 1.

## DISCUSSION

I. <u>Motion to Dismiss</u>

    A.    Legal Standards

        1.    *Brady*

Under *Brady*, in a criminal prosecution the Government must produce to the defense evidence that is "exculpatory" or "favorable to an accused" because it is "material either to guilt or to punishment." *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (citation omitted). Evidence is

considered material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id*. (citation omitted).

The Government satisfies its burden when it provides or discloses the existence of potentially exculpatory material to the defense with sufficient time for the defense to make effective use of the evidence at trial. *See United States v. Coppa*, 267 F.3d 132, 144 (2d Cir. 2001). "There is no *Brady* violation unless there is a reasonable probability that earlier disclosure of the evidence would have produced a different result at trial." *Id*. Moreover, "the Government is under no duty to direct a defendant to exculpatory evidence within a larger mass of disclosed evidence." *United States v. Ohle*, No. 08 Cr. 1109, 2011 WL 651849, at *4 (S.D.N.Y. Feb. 7, 2011), *aff'd*, 441 F. App'x 798 (2d Cir. 2011).

Generally, dismissal of an indictment is warranted only when the prosecution engaged in "egregious and deliberate misconduct or act[ed] flagrantly, willfully, and in bad faith." *United States v. Mangano*, No. 16 Cr. 540, 2022 WL 59697, at *3 (E.D.N.Y. Jan. 6, 2022) (quotation marks and citation omitted).

        2.        Sufficiency of the Allegations

Under Federal Rule of Criminal Procedure 7(c), an indictment must contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged." An indictment is considered sufficient if it "first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974). And, to state an offense, "an indictment need do little more than to track the language of the statute charged and state the time and place

4

(in approximate terms) of the alleged crime." *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998) (citation omitted).

When an indictment meets those basic requirements, dismissal is considered an "extraordinary remedy," that is "reserved for extremely limited circumstances implicating fundamental rights." *United States v. De La Pava*, 268 F.3d 157, 165 (2d Cir. 2001). Moreover, a pretrial motion to dismiss an indictment is not a proper vehicle for challenging the sufficiency or quality of the evidence the Government may adduce at trial, *see United States v. Elie*, No. 10 Cr. 0336, 2012 WL 383403, at *1 (S.D.N.Y. Feb. 7, 2012) (citing *United States v. DeLaurentis*, 230 F.3d 659, 660–61 (3d Cir. 2000)), and, in evaluating such a motion, courts must accept the allegations of the indictment as true, *see United States v. Goldberg*, 756 F.2d 949, 950 (2d Cir. 1985); *United States v. Murgio*, 209 F. Supp. 3d 698, 706 (S.D.N.Y. 2016) (citation omitted).

   3.  Void for Vagueness

Under the void-for-vagueness doctrine, "a penal statute [must] define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *United States v. Halloran*, 821 F.3d 321, 337 (2d Cir. 2016) (citation omitted). When reviewing an "as applied" challenge, courts must consider "the application of the challenged statute to the person challenging the statute based on the charged conduct." *United States v. Smith*, 985 F. Supp. 2d 547, 592–93 (S.D.N.Y. 2014), *aff'd sub nom. United States v. Halloran*, 664 F. App'x 23 (2d Cir. 2016). Such an analysis requires courts to evaluate whether a law can be constitutionally applied to the challenger's individual circumstances. *See Copeland v. Vance*, 893 F.3d 101, 110 (2d Cir. 2018). This assessment cannot be conducted in the abstract; rather, courts must determine whether the party claiming a lack of notice has shown "that the statute in question

provided insufficient notice that his or her behavior at issue . . . was prohibited." *Dickerson v. Napolitano*, 604 F.3d 732, 745 (2d Cir. 2010).

      B.  Application

Shea argues that the Second Superseding Indictment should be dismissed because the materials he received on April 29, 2022, "which should have been produced pursuant to [*Brady*,] establish that the conduct at the heart of the case was not criminal." Def. Mem. III at 1. Shea also contends that Count One should be dismissed because (1) the Second Superseding Indictment does not sufficiently allege conduct that fits the definition of a "kickback" as it pertains to honest services fraud, and (2) the honest services fraud statute is unconstitutionally vague as applied to his conduct. *See generally* Def. Mem. I. The Court shall address these arguments in turn.

      1.  *Brady*

The Court rejects Shea's argument that the Second Superseding Indictment should be dismissed due to the Government's purported *Brady* violations. In support of his motion, Shea asserts that three documents were not timely produced: (1) notes from a February 2022 conversation between the Government and an attorney representing an attorney for We Build the Wall (the "WBTW Attorney"), (2) an October 22, 2019 email referenced in the notes, and (3) an interview memorandum prepared in connection with an investigation in the Northern District in Florida. *See generally* Def. Mem. III. The Court shall address each of these materials in turn.

As for the first alleged violation, the notes do not constitute exculpatory material that should have been disclosed under *Brady*. The notes discuss the WBTW Attorney's *lack* of knowledge regarding the alleged "flow of funds outlined in the indictment." Def. Mem. III, Ex. A. The notes also provide some context for the October 22, 2019 email sent by the WBTW

6

Attorney to Shea's wife about the backdated document at the heart of the falsification of records count, and explain that the WBTW Attorney did not think he was doing anything wrong in relation to the document because he believed Kolfage "could make money by selling [the] valuable donor email list." *Id.*; *see also* Gov. Mem. II at 3.[4] Furthermore, the notes state that the WBTW Attorney believed that We Build the Wall "had been engaged in a process to clean up some of its documentation" before anyone involved "learned about the subpoena." Def. Mem. III, Ex. A. The notes do not discuss any legal advice the WBTW Attorney gave to Shea. *See generally id*. The Court determines that these notes, which pertain to the WBTW Attorney's state of mind and his limited awareness of the transactions at issue here, are not material because there is no "reasonable probability" that their disclosure or non-disclosure would alter the result of the proceedings. *See United States v. Madori*, 419 F.3d 159, 169 (2d Cir. 2005).

Moreover, even assuming, *arguendo*, that the notes are *Brady* material, the Court concludes that Shea was not prejudiced by the timing of the Government's disclosure. The Government produced the notes to Shea on April 29, 2022, more than two weeks before trial, *see* Gov. Mem. II at 3, 7–8, which allows him sufficient time to interview the WBTW Attorney and call him as a witness, if he so desires. The Court does not find that there would be a different result at trial "if the information had been revealed to the defense earlier." *United States v. Romero*, 54 F.3d 56, 61 (2d Cir. 1995) (finding no *Brady* violation when exculpatory evidence was disclosed during the Government's case at trial).

Additionally, although Shea correctly notes that, under the Court's December 17, 2020 order, the Government was required to disclose *Brady* information "promptly after its existence becomes known to the Government," ECF No. 68 at 1, the Court does not consider dismissal the

---

[4] The Government filed this memorandum under seal.

appropriate sanction for any violations of this order. Dismissal is a severe remedy properly limited to situations in which the Government has acted in bad faith, *see Mangano*, 2022 WL 59697, at *3, and, as Shea notes, that is not the situation here, Def. Mem. III at 1.

As for the other two documents referenced by Shea, the Court also concludes that the Government did not violate its *Brady* obligations. The October 22, 2019 email was produced to Shea in October 2020, and the substance of the interview memorandum was disclosed to him in August 2021, with the actual memorandum produced on April 29, 2022. *See* Gov. Mem. II at 3–4. Therefore, the Court need not direct the Government to produce these documents nor impose any sanction on the Government related to the timing of their production.

Accordingly, Shea's motion to dismiss the Second Superseding Indictment based on *Brady* violations is DENIED.

2.     Sufficiency of the Allegations

The Court also rejects Shea's argument that Count One of the Second Superseding Indictment should be dismissed based on the insufficiency of its allegations. As is relevant here, the Second Superseding Indictment alleges that Shea conspired with others "to deprive We Build the Wall of its intangible rights to the honest services of its president, Brian Kolfage," by "devis[ing] a scheme for businesses created by [Shea] to receive money from We Build the Wall in exchange for [Shea] paying a kickback to Brian Kolfage." S.I.2. ¶ 3. Shea's arguments in support of this aspect of his motion consist primarily of his challenging whether the alleged conduct can be characterized as a "kickback" under the applicable law. *See* Def. Mem. I at 2–7. He describes what he anticipates will be the Government's theory of the case, and then contends that it is insufficient to constitute honest services fraud on a few different bases. *Id*. at 5–7. Moreover, in his reply, Shea argues that the language in Count One "falls short" because it does

not describe the "extent and scope of the duty owed by Mr. Kolfage to [We Build the Wall]" or "the preferential treatment or benefit [Shea] was to receive." Def. Reply at 1–3, ECF No. 195.

First, "[t]o the extent [Shea's] challenges are to the sufficiency of the Government's evidence to *satisfy*—as opposed to the sufficiency of the [Second Superseding] Indictment to *allege*—the federal elements of the crimes charged, those arguments are not appropriately decided on a motion to dismiss." *United States v. Bout*, No. 08 Cr. 365, 2011 WL 2693720, at *5 n.73 (S.D.N.Y. July 11, 2011) (emphasis in original) (citation and quotation marks omitted), *aff'd*, 731 F.3d 233 (2d Cir. 2013); *see also United States v. Tanner*, No. 17 Cr. 61, 2018 WL 1737235, at *6–7 (S.D.N.Y. Feb. 23, 2018). And, the Court finds that the Second Superseding Indictment's allegations, accepted as true, state a violation of the honest services fraud statute, 18 U.S.C. § 1346, as interpreted by *Skilling v. United States*. *See* 561 U.S. 358, 408–10 (2010).

The Second Superseding Indictment alleges that Shea participated in a scheme in which Kolfage, the president of We Build the Wall, and others sent that organization's money to businesses controlled by Shea, in exchange for Shea sending a portion of that money back to Kolfage and keeping a portion for himself. S.I.2. ¶ 3. This is sufficient to allege that Shea participated in a *quid pro quo* kickback scheme in which he agreed to give Kolfage money in return for Kolfage giving him money belonging to We Build the Wall, which violated the fiduciary duties Kolfage owed to We Build the Wall as its president. *See Skilling*, 561 U.S. at 407–08; *see also Kickback*, Black's Law Dictionary 948 (9th ed. 2009) (defining "kickback" as "the return of a portion of a monetary sum received, [especially] as a result of coercion or a secret agreement"); *United States v. Rybicki*, 354 F.3d 124, 141–42 (2d Cir. 2003) (applying the honest services fraud statute to "an officer or employee of a private entity (or a person in a

relationship that gives rise to a duty of loyalty comparable to that owed by employees to employers)" (footnote omitted)).

Accordingly, Shea's motion to dismiss Count One on insufficiency grounds is DENIED.

### 3. Void for Vagueness

Shea contends that the Court must dismiss Count One as void for vagueness because "the honest services statute fails to define the source, scope[,] and content of the fiduciary duty owed in the relationships presented in the [Second] Superseding Indictment." Def. Mem. I at 9–10. The Court disagrees.

Because it is assessing an as-applied challenge, the Court must determine what Shea *did* before determining whether the statute fairly apprised him that his conduct was prohibited. *Cf. Copeland*, 893 F.3d at 117. To make this determination, the Court "must await conclusion of the trial" because it is for the jury to decide what Shea did or did not do and what the relationships were between the parties involved. *United States v. Milani*, 739 F. Supp. 216, 218 (S.D.N.Y. 1990); *see also United States v. Avenatti*, 432 F. Supp. 3d 354, 366 (S.D.N.Y. 2020).

Accordingly, Shea's motion to dismiss Count One because the honest services fraud statute is unconstitutionally vague as applied to his conduct is DENIED.

## II. Motion for a Continuance

### A. Legal Standard

The decision of whether to grant a continuance of trial is committed to the district court's discretion. *See United States v. Brown*, No. 99 Cr. 1230, 2002 WL 34244994, at *3 (2d Cir. Apr. 26, 2002); *United States v. Spencer*, 646 F. App'x 6, 9 (2d Cir. 2016). And, although 18 U.S.C. § 3163(c)(2) typically affords a defendant at least thirty days between his initial appearance on an indictment and trial, "the Supreme Court has held that [] a continuance is not categorically

mandated following a superseding indictment." *Spencer*, 646 F. App'x at 9; *see also United States v. Rojas–Contreras*, 474 U.S. 231, 236 (1985).

Courts assessing whether to grant a continuance must determine whether such a continuance is "consistent with the ends of justice." *Spencer*, 646 F. App'x at 9 (quotation marks and citation omitted). In the context of a continuance requested because of a superseding indictment, courts consider "the impact of the second indictment on the defense and the time that remains available to deal with the changes effected by the superseder." *United States v. Montoya-Echeverria*, 896 F. Supp. 148, 151 (S.D.N.Y. 1995).

    B.    Application

Shea asks for "a short adjournment of the trial to investigate" the notes and memorandum disclosed by the Government on April 29, 2022, Def. Mem. III at 1, and, separately, argues that at least a thirty-day continuance is warranted on the grounds that (1) the new honest services charge poses complex and novel questions of law which may result in additional investigative work and pretrial motions; and (2) the ends of justice warrant a continuance because Shea may need to change his trial strategy and will be denied the effective assistance of counsel without sufficient time to prepare, Def. Mem. II at 3–7.

    1.    April 29, 2022 Disclosure

The Government's April 29, 2022 disclosure of the notes and memorandum does not justify an adjournment of trial. First, as discussed above, the Court does not consider the notes *Brady* material, and, therefore, considers their production timely. Moreover, assuming, *arguendo*, that the notes are *Brady* material, Shea has sufficient time to review them and make any adjustments to his trial strategy. Similarly, Shea has not shown that the memorandum is *Brady* material, and assuming, *arguendo*, that it is *Brady* material, the Government disclosed its

substance in August 2021 and produced the full memorandum with sufficient time for Shea to review it and make use of it at trial.

Accordingly, Shea's motion for a continuance based on *Brady* violations is DENIED.

    2.   Count One of the Second Superseding Indictment

The Court finds that a continuance is not necessary under the circumstances presented here. Shea has been on notice since March 2022 that the Government intended to seek a superseding indictment containing an obstruction charge, and he has known since at least April 7, 2022, that the Government intended to add an honest services fraud component to his existing wire fraud charge as well. *See* Gov. Mem. I at 9–10. Additionally, the charges in the Second Superseding Indictment, for all practical purposes, were filed on April 14, 2022, giving Shea at least thirty-two days to prepare for trial.[5]

Moreover, as to the falsification of records count (1) the Indictment alleged that Defendants acted to conceal the fraudulent scheme after learning of the grand jury investigation, (2) the Government notified Shea that it intended to offer evidence related to the falsified record on April 4, 2022, and (3) the parties have already engaged in briefing related to this evidence. *See id*. at 10; *see also* ECF Nos. 170, 173. Shea has also been on notice about the backdated documents that relate to this charge since October 2020, when they were produced to him during discovery. Gov. Mem. I at 10–11.

Additionally, as to the honest services fraud component of the wire fraud charge, the same payments that constitute the original wire fraud conspiracy charge based on defrauding donors make up the payments at the heart of the honest services fraud component of that charge.

---

[5] The Court recognizes that a revised Superseding Indictment was filed on April 21, 2022, but, as discussed above, the Second Superseding Indictment changes only the date for the falsification of records count. *Compare* S.I.1. *with* S.I.2; *see also supra* at 3.

*Id.* at 11. Indeed, the Government has not produced any additional discovery in relation to the new charges in the Second Superseding Indictment. *Id.*

Finally, Shea's assertion of prejudice is conclusory, and he has not shown what he intends to accomplish during his requested thirty-day continuance, particularly in light of his having already filed a motion to dismiss Count One, which the Court, as discussed, has determined should be denied.

Accordingly, Shea's motion for a continuance of trial, or severance of Count One is DENIED.

III. <u>Motion for Review of Grand Jury Minutes</u>

    A.    Legal Standard

Under Federal Rule of Criminal Procedure 6(e)(3)(E)(ii), a defendant may seek the disclosure of grand jury minutes where the defendant "shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." But, because of the presumption of grand jury regularity, such a request will be granted only when a defendant puts forward "specific factual allegations of government misconduct." *United States v. Torres*, 901 F.2d 205, 232–33 (2d Cir. 1990), *abrogated on other grounds by United States v. Marcus*, 628 F.3d 36, 41 (2d Cir.2010).

    B.    Application

Shea asks "the Court to review the grand jury minutes for both the original and the superseding indictments . . . to ascertain whether, in light of the Government's clear discounting of [the WBTW Attorney's] explanation of the relevant events, the advice[-]of[-]counsel defense was adequately explained to the grand jurors for their consideration." Def. Mem. III at 8 (quotation marks omitted).

The Court shall not review the grand jury minutes. Defendants are entitled to raise an advice-of-counsel defense only if there are "sufficient facts in the record" to support that the defendant (1) "honestly and in good faith sought the advice of counsel," (2) "fully and honestly laid all the facts before his counsel," and (3) "in good faith and honestly followed counsel's advice." *United States v. Scully*, 877 F.3d 464, 476 (2d Cir. 2017) (citation omitted). As discussed above, the notes regarding the WBTW Attorney do not indicate that he gave Shea any legal advice, let alone that the other requirements for the defense are met. And, Shea has not otherwise presented "specific factual allegations of government misconduct." *Torres*, 901 F.2d at 233.

Accordingly, Shea's request that the Court review the grand jury minutes is DENIED.

## CONCLUSION

For the reasons stated above, Shea's motions are DENIED. The Court also directs Shea to comply with the requirements of Local Criminal Rule 16.1 before filing any further discovery-related motions.

SO ORDERED.

Dated: May 6, 2022
New York, New York

ANALISA TORRES
United States District Judge