M56GsheC

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  UNITED STATES OF AMERICA,

4              v.                            20 Cr. 412 (AT)

5  TIMOTHY SHEA,

6                                            Conference
              Defendant.
7  ------------------------------x

8
                                            New York, N.Y.
9                                           May 6, 2022
                                            4:00 p.m.
10

11  Before:

12                     HON. ANALISA TORRES,

13                                          District Judge

14
                          APPEARANCES
15
   DAMIAN WILLIAMS
16      United States Attorney for the
        Southern District of New York
17  ROBERT B. SOBELMAN
   ALISON MOE
18  NICOLAS ROOS
        Assistant United States Attorney
19
   JOHN C. MERINGOLO
20  ANJELICA B. CAPPELLINO
   CLARA KALHOUS
21      Attorneys for Defendant

22

23

24

25

M56GsheC

1          (The Court and all parties present remotely)

2          THE COURT:  Good afternoon.  We're here in the matter

3    of United States v. Timothy Shea.

4          Counsel, please make your appearances.

5          MR. SOBELMAN:  Robert Sobelman, Alison Moe and

6    Nicholas Roos for the United States.  Good afternoon, your

7    Honor.

8          MS. CAPPELLINO:  Good afternoon, your Honor.  Anjelica

9    Cappellino, John Meringolo and Clara Kalhous on the telephone

10   line for defendant Timothy Shea, who is also present.

11         THE COURT:  The videoconference is open to the public

12   just as a courtroom would be, but you are not permitted to

13   rebroadcast or record the proceeding.

14         I understand that Mr. Shea has agreed to appear by

15   videoconference; is that correct?

16         MS. CAPPELLINO:  Yes, your Honor.

17         THE COURT:  Mr. Shea, you know that you would be

18   permitted to have an in-person appearance, but you have agreed

19   to have this matter heard by videoconference.

20         Is that correct, Mr. Shea?

21         THE DEFENDANT:  Yes, ma'am.

22         THE COURT:  I'm going to first address the

23   government's motion *in limine*.

24         First, the government asks the Court to preclude

25   defendant from offering evidence in support of the argument

M56GsheC

that the victims of the alleged scheme are at fault because they acted negligently or gullibly.

Defendant contends that he will not advance a "victim blaming" defense.  But, he argues that he should not be precluded from questioning alleged victims about their dealings with defendant or his alleged co-conspirators, and their understanding of the way in which their donations would be used.  ECF No. 171 at 1-3.

Because defendant disclaims any intention of asserting a defense based on the victims' blameworthiness, the government's motion is denied as moot.  Any concerns about the admissibility of specific questions shall be addressed at trial.

Second, the Government seeks to preclude Defendant from offering evidence or argument concerning the potential punishment he may face if convicted. ECF No. 166 at 5.

Again, defendant represents that he "does not intend to raise for the jury the potential punishment that he is facing if convicted. "  But he argues that he should be allowed to raise the issue of the possible sentences faced by cooperating witnesses, some of whom may have pleaded guilty to the offenses with which he is charged. ECF No.  171 at 3.

Defendant shall be permitted to elicit testimony related to the potential sentences faced by cooperating witnesses to the extent such testimony bears on their reasons

M56GsheC

| | |
|---|---|
| 1 | for testifying at trial.  But defendant may not make any |
| 2 | arguments related to his potential punishment. |
| 3 | Accordingly, the Government's motion is granted. |
| 4 | Third, the Government requests that the Court preclude |
| 5 | defendant from offering evidence that would "invite |
| 6 | nullification."  According to the Government, such evidence |
| 7 | would include testimony about aspects of defendant's background |
| 8 | that "may tend to elicit the jury's sympathy," and evidence |
| 9 | about Stephen Bannon's pardon, which the government argues may |
| 10 | "invite the jury to engage in impermissible speculation."  ECF |
| 11 | No. 166 at 7-9. |
| 12 | As for evidence about defendant's background, |
| 13 | defendant contends that he should be permitted to provide |
| 14 | relevant background evidence if he chooses to testify, and that |
| 15 | he should be allowed to present relevant evidence about his |
| 16 | wife if she is referenced during the trial.  ECF No. 171 at 6, |
| 17 | 7. |
| 18 | Based on the parties' submissions, the Court cannot |
| 19 | conclude at this time that evidence related to defendant's |
| 20 | background would be "clearly inadmissible on all potential |
| 21 | grounds. *United States v. Ozsusamlar,* 428 F. Supp. 2d 161, 164 |
| 22 | (S.D.N.Y. 2006).  Any concerns about the admissibility of such |
| 23 | evidence shall be addressed at trial. |
| 24 | As for evidence related to Bannon's pardon, defendant |
| 25 | contends that the pardon will be relevant because defendant |

M56GsheC

intends to call Bannon to testify at trial.  Moreover defendant

argues that such evidence will not invite jury nullification.

ECF No. 171 at 6 to 7.

          The Court agrees with defendant that evidence related

to Bannon's pardon may be admissible if he testifies because

such evidence may help avoid juror confusion about why Bannon

is no longer a defendant in this case.  Accordingly, the

Government's motion is denied.

          Fourth, the Government asks the Court to preclude

defendant from offering any evidence and argument concerning

the Government's motives in prosecuting him and any claim that

he is being selectively prosecuted.  ECF No.  166 at 5 to 7.

defendant represents that he will not assert a claim of

selective prosecution, but he argues that he should be

permitted to reference the fact that Bannon received a pardon

and that individuals associated with the case may have some

name recognition where defendant does not.  ECF No. 171 at 4 to

5.

          Because Defendant disclaims raising a selective

prosecution defense, this aspect of the Government's motion is

denied as moot.  But defendant shall be precluded from offering

any evidence intended to attack the government's motives for

charging him in this matter.  Accordingly, this aspect of the

government's motion is granted.  Moreover evidence related to

Bannon's pardon may be admissible for the reasons already

M56GsheC

stated, and the Court shall address the admissibility of

questions related to "name recognition" should the issue arise

at trial.

I will now turn to Defendant's motions.

Defendant's first motion asks the Court to preclude

the government from introducing evidence that defendant

conspired with his co-defendant, Brian Kolfage, and defendant's

wife, to create fraudulent backdated documents after they

learned of the grand jury's investigation.

Defendant argues (1) that the evidence is irrelevant

to the charged crimes in the Indictment filed in August 2020,

and (2) that the Government will not be able to introduce

evidence related to the documents because communications

between defendant and his wife are protected by the spousal

communications privilege, and co-conspirator testimony cannot

be introduced without first establishing that defendant

participated in a conspiracy.  ECF No. 170 at 6 to 7.

After the filing of Defendant's motions, the

government added new charges in a Superseding Indictment dated

April 21, 2022, which included charges for "falsification of

records" by means of backdating certain documents.  ECF No.

179.  Accordingly, defendant's argument as to the relevance of

the backdated documents is rejected and his motion is denied as

moot.

As for the other aspects of Defendant's motion, the

M56GsheC

government contends that communications between defendant and

his wife are not protected by the spousal communication

privilege because those communications were designed to further

criminal activity.  The government also argues that the Court

may address any concerns about defendant's participation in a

conspiracy at trial by conditionally admitting any objected-to

exhibits or statements and then accepting them into evidence

after the government has proven the existence of a conspiracy.

ECF No. 173 at 5 to 6.

          The Court agrees with the Government that

communications between defendant and his wife may be admissible

if they included third parties, or, under the "joint

participation exception" to the spousal communication

privilege, to the extent that defendant's wife is testifying

willingly concerning their joint criminal activities.  *United*

*States v. Estes,* 793 F.2d 465, 468 (2d Cir. 1986).

          Moreover, the Court also agrees that it should not

preclude the government from offering co-conspirator evidence

at this time.  The Court shall first admit such evidence

conditionally, and then, if the government establishes the

existence of a conspiracy and defendant's participation in it

at trial, the evidence shall be admitted.

          Accordingly, defendant's motion is denied.

          Second, defendant asks the Court to preclude the

government from offering evidence that defendant and Kolfage

M56GsheC

allegedly misappropriated $38,500 from We Build the Wall

through an alleged loan to Winning Energy, LLC, an Energy drink

business owned by Shea, because it does not constitute direct

evidence of the charged conspiracies.  ECF No. 170 at 7 to 9.

The Government contends that the misappropriation of

the money is admissible as direct proof of the wire fraud

conspiracy because, as the superseding indictment alleges

defendant secretly misappropriated We Build the Wall's funds

for Winning Energy, which establishes that defendant and his

co-conspirators acted in a manner contrary to the

representations made to the donors.  Moreover, this evidence is

direct proof of the honest services fraud component of Count

One in the superseding indictment because it would show that

defendant conspired with Kolfage to divert money from We Build

the Wall to Winning Energy, and that Kolfage received a

kickback from Winning Energy. ECF No. 173 at 7 to 8.

The Government shall not be precluded from offering

evidence that money was transferred from We Build the Wall to

Winning Energy.  Such evidence supports the charges in the

superseding indictment.  Accordingly, defendant's motion is

denied.

Third, defendant requests that the Court preclude the

government from introducing evidence that defendant failed to

disclose some of his income to the IRS.  Defendant argues that

such evidence is inadmissible because he has submitted a plea

M56GsheC

1  of not guilty and, when a defendant unequivocally relies on a

2  defense that he did not do the charged act at all... evidence

3  of other acts is not admissible for the purpose of proving the

4  intent or knowledge with which he acted.  Additionally,

5  defendant contends that filing a tax return with missing income

6  is irrelevant because it does not indicate the source of the

7  alleged income.  ECF No. 170 at 5, 9 to 11.

8       The government argues that defendant's failure to

9  report income from We Build the Wall is admissible because it

10 shows that he understood that this money was not a legitimate

11 source of income, and that, therefore, it shows his intent to

12 defraud.  Moreover, the government contends that this evidence

13 is relevant to rebut the anticipated defense that defendant

14 believed his transactions were legitimate and to rebut any

15 claims of accident or mistake.

16      The government also asserts that defendant has not

17 unequivocally denied his involvement in the financial

18 transactions at issue.  And the government contends that the

19 evidence is not inadmissible under Rule 403 because it is not

20 more salacious than the charged crimes.  ECF No. 173 at 9 to

21 12.

22      The Court agrees with the government that evidence

23 related to defendant's tax records may be admitted.  Such

24 evidence tends to show that Defendant knew the funds he

25 received were illegitimate and that he took pains to conceal

M56GsheC

1  them.  See *United States v. Bergstein,* 788 F. App'x 742, 745

2  (2d Cir. 2019).  Moreover, the mere fact that defendant entered

3  a plea of not guilty does not amount to a claim that he did not

4  commit the acts that constitute the charged offenses.  See

5  *United States v. Paulino,* 445 F.3d 211, 221 to 22 (2d Cir.

6  2006).  And defendant has not otherwise shown that his

7  knowledge or intent are not in dispute.  Additionally, the

8  Court agrees that such evidence should not be excluded under

9  Rule 403 because it is not "more sensational or disturbing"

10  than the charged crime, a factor considered important in prior

11  cases.  See *United States v. Roldan-Zapata,* 916 F.2d 795, 804

12  (2d Cir. 1990).

13      Accordingly, defendant's motion is denied.

14      Fourth, defendant asks the Court to preclude the

15  government from introducing evidence related to a $59,700

16  COVID-19 economic relief loan he obtained for Ranch Property

17  Marketing and Management, which I shall refer to as RPMM, the

18  entity the Government alleges is a shell company set up by

19  defendant to launder money to Kolfage.

20      Defendant argues that the loan was legitimately

21  obtained and is irrelevant to the charged conduct, and that he

22  does not dispute his ownership of RPMM. And, he contends that

23  attempts by the government to show that the loan was obtained

24  through misrepresentations would create undue delay and

25  confusion under Rule 403, and would constitute impermissible

M56GsheC

1    404(b) evidence. ECF No. 170 at 11 to 13.

2              The government argues that the loan application is

3    admissible because it is direct proof that defendant controls

4    RPMM.  And although defendant asserts that the issue of his

5    ownership of RPMM will not be in dispute there is presently no

6    agreement between the parties that defendant owns, operates,

7    and controls the funds of RPMM.  Moreover, the government

8    contends that evidence related to the loan shows that RPMM was

9    not a legitimate business and that the defendant used it as a

10   vehicle for committing fraud.  ECF No. 173 at 12 to 13.

11             Although the Court agrees that the Government may

12   offer the loan application as evidence of defendant's ownership

13   and control over RPMM, the Court holds that the government may

14   not introduce evidence that the loan was obtained through

15   misrepresentations or fraud.  Such evidence does not properly

16   support an inference that defendant knowingly participated in

17   the charged fraudulent scheme because the "other act is not

18   sufficiently similar to the conduct at issue." *United*

19   *States v. Gordon,* 987 F.2d 902, 909 (2d Cir. 1993).

20             Accordingly, defendant's motion is granted in part and

21   denied in part.

22             Fifth, defendant asks the Court to preclude the

23   government from offering evidence that he told a witness that

24   he believed that his co-defendant, Andrew Badolato, was

25   cooperating with the government and expressed that Badolato

M56GsheC

should "watch his back" because defendant "knows people in a

New York mafia crime family."  ECF No. 170 at 13 to 15.

In a May 5, 2022 letter submitted to the Court under

seal, the government states that it will not seek to offer

Testimony related to this alleged threat at trial.

Accordingly, defendant's motion is denied as moot.

Sixth, defendant asks the Court to preclude the

government from offering the testimony of Dustin Palmer whom

the Government intends to call as an expert "in money

laundering and compliance with anti-money laundering

regulations."  Defendant contends that Palmer's testimony

should not be admitted because it is an inappropriate subject

matter for expert testimony and because the government did not

provide adequate notice.  ECF No. 183.

The Government argues that Palmer's testimony is

admissible because it is about "widely-recognized money

laundering typologies" and will assist the jury in

understanding the evidence and determining important facts in

issue and because they provided sufficient notice.  ECF No.

200.

The Court agrees with the Government that Palmer's

testimony is admissible. Courts in this Circuit have routinely

held that experts can testify about money laundering techniques

in criminal cases involving a money laundering charge.  See,

e.g., *United States v. Monaco,* 199 F.3d 1324, 1999 WL 980946,

M56GsheC

at *2 to 3 (2d Cir. 1999); *United States v. Nektalov,* No. 03

Cr. 828, 2004 WL 1469487, at *3(S.D.N.Y. June 30, 2004).

        The Government intends to offer Palmer's testimony to

provide the jury with context with which it can consider the

evidence in this case.  ECF No. 200 at 7.  Such background

information will be helpful to the jury because the mechanics

of money laundering, particularly in white collar cases, are

beyond the understanding of the average juror.  See *Monaco,*

1999 WL 980946, at *2 to 3. Moreover, the government asserts

that it will not ask Palmer about defendant's conduct or other

evidence introduced at trial, ECF No. 200 at 9, which

alleviates concerns of Palmer becoming a summary witness.  See

ECF No. 183 at 4 to 5.

        The Court also does not find that the probative value

of Palmer's testimony will be substantially outweighed by

unfair prejudice or juror confusion because there is no

indication that Palmer will "stray from the scope of his

expertise," see *United States v. Dukagjini,* 326 F.3d 45, 54 (2d

Cir. 2003), and the Court sees no reason why general testimony

about money laundering techniques will prejudice defendant.  To

the extent any issues arise at trial, they may be addressed by

a limiting instruction.

        Additionally, the Court rejects the argument that the

government provided insufficient notice of Palmer's testimony.

The government's April 17, 2022 notice describes Palmer's

M56GsheC

1    qualifications, sets forth the subjects about which he is

2    expected to testify, and provides a summary of his testimony.

3    See ECF No. 200 Exhibit 1.  The Court considers this sufficient

4    under Federal Rule of Criminal Procedure 16(a)(1)(G). See

5    *United States v. Kidd*, 385 F. Supp. 3d 259, 262 to 63 (S.D.N.Y.

6    2019).  But to the extent the April 17 notice contained any

7    deficiencies, the government's submission in opposition to

8    defendant's motion alleviates these concerns.

9            Accordingly, defendant's motion is denied.

10           Trial shall commence on Monday, May 16th.  On Monday

11   through Friday, court will be in session from 9:00 a.m. to

12   5:00 p.m. with a break for lunch between one and 2:00 o'clock.

13           Do the parties anticipate that the trial will carry

14   over into the following week?

15           MR. SOBELMAN:  Your Honor, it likely will.  The

16   government is hopeful that we will rest the first week.  But it

17   is unlikely that any defense case, closings, charge conference

18   would be able to be accomplished within that week.  Although we

19   are focused on slimming our case down as much as we can.

20           THE COURT:  Does the defense have anything to add?

21           MR. MERINGOLO:  JUDGE, we haven't made a decision as

22   yet of whether we are going to put a case on.  If we did put a

23   case on, we would not need more than a day.  However, if the

24   defendant did testify, it may go over a day just because of the

25   cross-examination, but I don't think we would need more than a

M56GsheC

1    day.

2          MR. SOBELMAN:  Your Honor, I may add that my estimate

3    is conditioned on us being able to finalize the stipulations

4    that we began discussing with the defense.  If for some reason

5    we can't reach agreement on some or all of those, we anticipate

6    the trial to be substantially longer than the current estimate.

7          THE COURT:  Well, if you should not reach agreement on

8    reasonable, typical stipulations, please let me know.

9          MR. MERINGOLO:  Yes, Judge.  Seven of the 11, I think

10   we have agreed.  One where we're consenting to venue we're not

11   going to agree, things like that.  We're not going to be

12   unreasonable.  We've been trying cases in this courthouse for

13   20 years and we have never been unreasonable.  But we're not

14   going to just give them the venue.  We just can't do that.

15         THE COURT:  Are there any further applications at this

16   time?

17         MR. MERINGOLO:  From the defense, your Honor, we've

18   been speaking -- actually, today, I was in court for three

19   hours, unfortunately -- your Honor's order of us turning over

20   Rule 16, the Rule 16 we would have, we don't have any other

21   Rule 16 but for what the government has given us in their

22   Rule 16 discovery.  So do we have to reproduce everything that

23   they've given us?  I mean, they have given it to us and we're

24   not going to give them anything else.  Maybe there's a few

25   pictures from an investigator going down to the wall, but I

M56GsheC

1    think we're going to stipulate to the website of the wall, so I

2    don't think that will be relevant, but I'll turn them over.

3              THE COURT:  Mr. Sobelman.

4              MR. SOBELMAN:  Your Honor, we're not asking that the

5    defense be ordered to just simply produce back to us items we

6    produced in discovery.  We would ask that in advance of

7    trial -- Monday, ideally -- they provide marked exhibits of the

8    items they intend to offer at trial, whether they're from our

9    discovery productions or not.

10             MR. MERINGOLO:  Judge, we just got the rulings.

11   Specifically for the loan and the $38,000 We Build A Wall loan,

12   so I think the strategy and certain exhibits, those will

13   actually be put in.  It changes a part of our strategy.  Do we

14   know exactly everything?

15             I mean, we don't know the witnesses we're going to

16   call.  We don't know the exhibits.  It's just hard -- without

17   seeing the government's exhibits, it's very hard to say, okay,

18   if the government gave us exhibit that was sent at 9:00 a.m., I

19   want exhibit that was replied to at 10:00 a.m.  It's just

20   without seeing their exhibits, we're actually doing things in a

21   vacuum.

22             MR. SOBELMAN:  Your Honor, we intend to produce our

23   preliminary set of exhibits today.  We're not asking that they

24   produce theirs before ours are produced, of course.  But we do

25   think a deadline of what they do intend to offer at the time of

M56GsheC

1    early next week would make sense.  But of course, they can add

2    as they might wish to revise their set of exhibits, in the same

3    way that we do up to and sometimes during trial.  But we would

4    ask that the defense act in good faith to give us advanced

5    notice so that if there's issues that we need to flag for the

6    Court or potentially even brief, we're able to do that in

7    advance of trial and not have to do that during trial.

8            THE COURT:  When can the defense hand over its

9    exhibits?

10           MR. MERINGOLO:  Well, I'm sure we're going to get

11   their exhibits late tonight, so we will start tomorrow morning,

12   Judge.  At latest -- if it could be on a rolling basis -- at

13   latest, say, Wednesday afternoon.

14           THE COURT:  That's acceptable.  Wednesday afternoon is

15   acceptable.

16           MR. MERINGOLO:  And we will send our own stipulations

17   on Monday, Judge.

18           THE COURT:  All right, then.

19           MR. SOBELMAN:  Your Honor, I have a couple of other

20   items to raise, if that's all right.

21           THE COURT:  Yes.

22           MR. SOBELMAN:  Just briefly.

23           First, with respect to one of your Honor's rulings

24   with regard to the defendant's family background.  The

25   government's understanding is that you reserved judgment on

M56GsheC

1    whether evidence of that sort might be admissible depending on

2    how the trial goes and whether Mr. Shea decides to testify.

3    The government would ask that the defense be instructed not to

4    include any of those facts in the opening statement, in light

5    of the fact that your Honor has reserved on whether that

6    evidence is admissible.

7            THE COURT:  Does the defense intend to bring out

8    background information that is atypical?

9            MR. MERINGOLO:  No, Judge.  We have never, never done

10   that.  I don't want to open the doors to a character case if I

11   don't put the defendant on the stand.  I mean, is Mr. Shea

12   married to Amanda Shea?  The answer is yes.

13           I mean, am I going to be precluded from doing that?

14   Is he from -- when they don't see his family, I'll say Mr. Shea

15   lives in Colorado, I'm going to say that in the opening,

16   because when they don't see anybody in the galley, they'll

17   think that no one is supporting this guy.

18           MR. SOBELMAN:  Your Honor, we have no objection to the

19   fact that he's married to Amanda Shea or he lives in Colorado.

20   What we're hoping to avoid is anything about his children, his

21   parents, his faith, his community service, things that really

22   will have no bearing and we don't anticipate will come out at

23   the trial and that we think should be fronted for the Court

24   before they're put before the jury in any way.

25           MR. MERINGOLO:  Judge, I don't know his faith, I don't

M56GsheC

1     know if he does community service, so I won't say anything.

2                    THE COURT:  Just keep it to --

3                    MR. SOBELMAN:  Sorry, your Honor.  Defense counsel

4     conspicuously just left out reference his kids.

5                    MR. MERINGOLO:  Judge, everything seems to be so

6     literal.  We won't talk about his kids.  If Mr. Shea testifies,

7     I will say, are you married, yes, do you have any children,

8     like everyone else in the world on direct that testifies would

9     say.

10                    THE COURT:  Right.  Those are the normal things that

11     would be elicited.  It would be not normal to ask him whether

12     he had been in the Boy Scouts, something that is irrelevant.

13                    MR. MERINGOLO:  No, Judge.

14                    THE COURT:  Anything further?

15                    MR. SOBELMAN:  Yes, your Honor.

16                    With respect to Mr. Bannon's pardon, I have asked a

17     similar question, which is unless and until Mr. Bannon takes

18     the stand, we would ask that there be no reference to the fact

19     that he was part of the trial, including in the defense opening

20     statement.

21                    MR. MERINGOLO:  Judge, we will not address

22     Mr. Bannon's pardon unless Mr. Bannon testifies.

23                    MR. SOBELMAN:  Your Honor, let me just look at my

24     list.  Sorry, two other items.

25                    First is we inquired earlier today, but didn't have a

M56GsheC

1    chance to connect with defense counsel, and he suggested

2    raising with the Court when the defense intends to provide a

3    witness list and when the defense intends to provide any

4    Rule 26.2 materials, which like defense exhibits would be

5    helpful I think for the parties and the Court for us to have

6    these things in advance of trial so that if there are issues,

7    we can raise them in a timely manner.

8         MR. MERINGOLO:  By Monday, we'll let the government

9    know if we're going to call an expert.  Judge, it's unlikely

10   the defense is going to call an expert.

11        The witness list, Judge, we don't even have their

12   witness list.  We may call people that they turned over on the

13   3500 material.  We have seen certain witnesses in there that I

14   may want to call.  But I don't have their witness list, so how

15   can I give them my witness list?

16        MR. SOBELMAN:  Sorry, Mr. Meringolo, maybe the

17   disclosures were unclear, but the testifying witness 3500 was

18   our witness list at the time that we produced it and

19   nontestifiers are people that are not on our witness list at

20   the time we produced it.  If at any time you want an update,

21   just let us know and we'll be glad to provide an update.

22        MR. MERINGOLO:  Yes, they can provide an update.

23        Judge, when we will know -- for the defense as well as

24   the prosecutor -- when will we know who will be the first

25   witness, who will be the second witness?  Will we just know the

M56GsheC

1    night before?

2            THE COURT:  Mr. Sobelman, when do you plan to tell

3    them?

4            MR. SOBELMAN:  We're happy to confer with the defense.

5    They haven't asked us this kind of information.  As your Honor

6    saw from the papers, there hasn't been as much communication

7    between the parties as there might have been.  We are happy to

8    answer any questions the defense has.

9            MR. MERINGOLO:  Judge, there's been the same amount of

10   communication as there's been for my other 250 federal cases.

11   There's nothing that we're doing.  We're not trying to hide

12   evidence or anything to that matter.

13           THE COURT:  Is that it?

14           MR. MERINGOLO:  That's it, Judge.  Thank you so much.

15           MR. SOBELMAN:  The government would ask that the

16   defendant be allocuted on the fact that he received a plea

17   offer from the government on March 25th, 2022, that he read it,

18   discussed it with his counsel and declined to accept it.

19           THE COURT:  When is it that you want this allocution

20   to take place?

21           MR. SOBELMAN:  Your Honor could do that right now or

22   if your Honor prefers, it could happen at a later time before

23   the trial.  We just want to make sure it occurs before the

24   trial begins.

25           THE COURT:  My preference is that that should be done

M56GsheC

1    in person.

2                  MR. SOBELMAN:  That's one of the reasons we had hoped

3    to have this in person, but we're happy to have it done at a

4    later date if that's what the Court prefers.

5                  Your Honor, just to make sure, defense committed to

6    getting us his witness list on Monday?  I just want to make

7    sure the record is clear.

8                  MR. MERINGOLO:  No, we never committed to do that.

9    Best guesstimate, by Wednesday.

10                 MR. SOBELMAN:  On the same timeline as the exhibits?

11                 MR. MERINGOLO:  Yes.  The best we could do by

12   Wednesday we're going to do, exhibits in the morning, Judge.

13                 THE COURT:  Your Honor, will 26.2 material be produced

14   on the same time frame?

15                 MR. MERINGOLO:  We said Monday.

16                 MR. SOBELMAN:  There are no further issues from the

17   government at this time.

18                 Thank you, your Honor.

19                 MS. CAPPELLINO:  Thank you, Judge.

20                 THE COURT:  So we are going to start on time at

21   9:00 a.m. on Monday the 16th.  I will not have the panel

22   immediately at 9:00 a.m., so we can do the allocution and take

23   care of any housekeeping before we start the voir dire.

24                 MS. CAPPELLINO:  Thank you, Judge.

25                 THE COURT:  I wish all of you good health and I will

M56GsheC

1          see you on the 16th.

2                    Thank you.

3                    (Adjourned)