M5Q3SHE1

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,                New York, N.Y.

 4              v.                            20 Cr. 412 (AT)

 5   TIMOTHY SHEA,

 6              Defendant.                    Trial

 7   ------------------------------x

 8                                            May 26, 2022
                                             9:00 a.m.
 9

10   Before:

11                    HON. ANALISA TORRES,

12                                            District Judge
                                              and a Jury
13

14                         APPEARANCES
15
     DAMIAN WILLIAMS
16        United States Attorney for the
          Southern District of New York
17   BY:  ALISON G. MOE
          NICOLAS T. ROOS
18        ROBERT B. SOBELMAN
          Assistant United States Attorneys
19
     MERINGOLO & ASSOCIATES P.C.
20        Attorneys for Defendant
     BY:  JOHN C. MERINGOLO
21        ANGELICA B. CAPPELLINO
          CLARA S. KALHOUS
22

23   Also Present:  Sunny Drescher, Paralegal Specialist, USAO

24

25
```

M5Q3SHE1

1           (Trial resumed; jury not present)

2           THE COURT:  Good morning.

3           MR. ROOS:  Good morning, your Honor.

4           THE COURT:  Please make your appearances.

5

6           MR. ROOS:  Good morning, your Honor.  Nick Roos,

7    Alison Moe, and Robert Sobelman for the government.  We're

8    joined at counsel table by Sunny Drescher, a paralegal in our

9    office.

10          MR. MERINGOLO:  John Meringolo, Angelica Cappellino,

11   and Clara Kalhous for Mr. Shea who is standing to my right.

12          THE COURT:  I understand you're ready now?

13          MR. ROOS:  I think that's mostly right.  We're set I

14   think on all the stipulations except there's five –- correct me

15   if I'm wrong –- five defense e-mails that we'll stip to the

16   authenticity, but we think are hearsay, inadmissible hearsay,

17   irrelevant, or more confusing than they are probative.  So we

18   object to those.  We've otherwise stipulated to everything else

19   I think at issue.

20          So I think Mr. Meringolo wanted to tee it up for your

21   Honor, get a ruling on the admissibility of those, and we'll

22   include them in the stipulation or not.

23          THE COURT:  Those in the gallery may be seated.

24          MR. MERINGOLO:  Your Honor –-

25          THE COURT:  Anyone who isn't speaking may be seated.

M5Q3SHE1

1          MR. MERINGOLO:  Your Honor, we agreed to these

2    yesterday.  I went to bed, I didn't see the e-mail chain last

3    night.  We came in this morning, there are five -- six e-mails.

4    I'm going over them with my team.  I guess we can make

5    arguments on admissibility.  I believe the government is right

6    on some of them, and they are.

7          But Judge, we have these decisions done last night

8    that we agreed in good faith to stipulate to them, and then we,

9    I come in -- Clara was doing it last night, and I come in the

10   morning and now we're not stipulating to them.

11         There is nothing you can do.  This is just me talking.

12   I understand.  But sometimes you say something, you do it in

13   life.  Like I said, if I opened the door, I opened the door.

14         So, I can go through, I can give these to you, your

15   Honor, to make a ruling.  If they're admissible or not.  And I

16   guess it is not that much, Judge.  And I don't mean to put you

17   through this, to make you work something that I think is

18   unnecessary.

19         THE COURT:  That's what I get paid for.

20         MR. MERINGOLO:  I understand, Judge.  But we can do

21   the government's case, maybe release the jury, do the 29, make

22   a ruling here, and then I can go through it, 15, 20 minutes

23   tops.

24         THE COURT:  Okay.  I'd like just to get information

25   concerning which particular e-mails are at issue so that I can

M5Q3SHE1

1    have my staff look at them while we are hearing from the

2    prosecution.

3              MR. ROOS:  I believe it's Defense Exhibits --

4              MR. MERINGOLO:  I have give the exhibit numbers, your

5    Honor.  It's 615, 707, those are my lucky numbers, 705, 717,

6    and 713, sorry, 753.

7              THE COURT:  After 717 what was it?

8              MR. MERINGOLO:  I went back to 713, I'm sorry.  717,

9    753.

10             THE COURT:  So the prosecution argues that these are

11   all hearsay?

12             MR. ROOS:  Your Honor, yes.  The first answer is yes

13   to your Honor's question.  717, I don't see in the defense

14   stip --

15             MR. MERINGOLO:  Clara pulled it out, I'm sorry.

16             MR. ROOS:  Just to clarify for the record, the defense

17   stipulation lists maybe, I don't know, 15 documents.  Our

18   objections are to 615, 705, 707, 713, and 753.

19             Our view, in our view they are inadmissible hearsay.

20   The defense told us they are being offered to show they were

21   doing work at the time, which seems to us to being offered for

22   their truth.  Like, here is evidence we are doing work is in

23   fact a statement for its truth.

24             And our view also there is no contest that people were

25   doing work towards We Build the Wall.  So these e-mails, which

M5Q3SHE1

1    your Honor will see are very difficult to follow and confusing,

2    have a pretty minimal probative value in the case, and will be

3    confusing and lack context for the jury.

4              Those are our objections to those five documents.

5              THE COURT:  Mr. Meringolo, do you want to use these

6    e-mails to show that the defendant was actually doing work?

7              MR. MERINGOLO:  Partly I believe.

8              THE COURT:  What else?

9              MR. MERINGOLO:  Partly to impeach the government's

10   theory that it was just a shell company.  What else?  That's

11   it, Judge.

12             MR. ROOS:  On the second point --

13             MR. MERINGOLO:  If there is admissible evidence, if

14   you rule that we could, we'll redact whatever you want to.

15             THE COURT:  The bottom line is you are introducing it

16   for the truth of the matter asserted.

17             MR. MERINGOLO:  Let me just see.

18             MR. ROOS:  I'll just add on the second point about

19   Ranch Property Management being a shell company, I don't think

20   there was anything about Ranch Property in there.  Period.  If

21   there is, maybe we can just focus the e-mail on that.  I think

22   it is still offered for its truth either way.

23             MR. MERINGOLO:  We're not offering for its truth.

24   We're just offering that in fact that work was actually done.

25             THE COURT:  You're offering it to prove the fact that

M5Q3SHE1

1    work was done.  Okay.  So that's offering it for its truth.

2               MR. MERINGOLO:  Okay.  Judge, if you can make a

3    ruling, we had an agreement and I come from a different world.

4    You know.  Just a totally different world.

5               THE COURT:  When I have a moment to review them, I

6    will do that, and make my ruling.

7               MR. ROOS:  And maybe it's on me because there was a

8    lot going on and I wasn't in those conversations.  I will note

9    the defense stipulation they want us to sign reserves the

10   government's objections under 401 and 403, so I am not sure

11   what this --

12              MR. MERINGOLO:  We -- we had an agreement yesterday.

13   I don't care what it says.  That's what we had an agreement

14   and, Judge, this is court.  This isn't my neighborhood.  This

15   is the court.  I understand.  I just thought we had an

16   agreement, you can put them all in, let's move on.  And that's

17   what we did.  It's okay, Judge.  It's okay.

18              THE COURT:  Anything else?

19              MR. ROOS:  No, your Honor.  We're happy to proceed.

20              THE COURT:  So, I'll have the jury come in, you are

21   going to present certain stipulations; is that correct?

22              MR. ROOS:  That's right, there's just two or three

23   exhibits that from our view the transcript is not clear were

24   actually -- we think are in, but I want to clear up the

25   transcript cites.  And then I think I have four or five

M5Q3SHE1

1    stipulations just to read in and offer the exhibits associated

2    with them and then we'll rest.

3              THE COURT:  Okay.  Then I will have the jurors go out,

4    and Mr. Meringolo, you'll make your motion.  And I will make my

5    ruling on the e-mails.  Then I'll have the jurors come back in,

6    and I will excuse them for the weekend.

7              MR. MERINGOLO:  We're going to put our case, right?

8              THE COURT:  You are going to be adding -- you are

9    going to be presenting something?

10              MR. MERINGOLO:  I'm going to show them the e-mails and

11    read them the e-mails that's in evidence.

12              THE COURT:  You are saying those e-mails that have

13    already been --

14              MR. MERINGOLO:  We'd still have 10 e-mails and we have

15    a video which is two minutes, and one picture.  I mean, Judge,

16    if you gave us 20 minutes, I'll have it all done.

17              THE COURT:  You will get the amount of time that you

18    need.

19              MR. MERINGOLO:  Okay.

20              THE COURT:  Very well.  Let's have the jurors come

21    back in.

22              (Jury present)

23              THE COURT:  Do the parties agree that all jurors are

24    present and properly seated?

25              MR. MERINGOLO:  Yes, your Honor.

M5Q3SHE1

1          MR. ROOS:  Yes, your Honor.

2          THE COURT:  Please be seated.

3          Good morning, jurors.  I apologize again for the

4    delay.

5          The prosecution may continue.

6          MR. ROOS:  Thank you, your Honor.

7          First, your Honor, as a matter of housekeeping I

8    believe stipulations S1, S3, S5 and S6 were previously admitted

9    and exhibits were admitted from it.  I just want that to be

10   reflected in the transcript so I will note that now.

11         THE COURT:  They are admitted.

12         (Government's Exhibit S1, S3, S5, S6 received in

13   evidence)

14         MR. ROOS:  Similarly Government Exhibit 452 was

15   admitted yesterday.

16         THE COURT:  It's admitted.

17         (Government's Exhibit 452 received in evidence)

18         MR. ROOS:  The government will now read a series of

19   stipulations if that's okay.

20         THE COURT:  That's fine.

21         MR. ROOS:  Ms. Drescher, can we please see Government

22   Exhibit S2.  And I'll read it.

23         It is hereby stipulated and agreed by the United

24   States of America and Timothy Shea, the defendant, that

25   Government Exhibit 271 contains an accurate list of certain

M5Q3SHE1

1    checks to We Build the Wall that were received at 4833 Front

2    Street, Unit B-158, Castle Rock, Colorado, and then provided to

3    American Caging Inc. a donation processing service for

4    processing and depositing into We Build the Wall's bank

5    account.

6            Then there is some information about how to read the

7    exhibit.

8            The government offers this stipulation and the cited

9    Exhibit 271.

10           MR. MERINGOLO:  No objection.

11           THE COURT:  They are admitted.

12           (Government's Exhibit S2, 271 received in evidence)

13           MR. ROOS:  And Ms. Drescher, can we please now publish

14   for the jury Government Exhibit 271 which is the list of checks

15   that were deposited.

16           Your Honor, this, like the exhibit yesterday, contains

17   some personal information of donors so we ask that this

18   spreadsheet, Government Exhibit 271, be maintained under seal.

19           THE COURT:  Yes.  It shall be under seal.

20           MR. ROOS:  Ms. Drescher, if you can scroll down

21   through the exhibit so everyone can see the number of names.

22   Thank you.  We can take that down.

23           Ms. Drescher, can we please now have Exhibit S9, which

24   is another stipulation.  And your Honor, government offers S9.

25           THE COURT:  It is admitted.

M5Q3SHE1

1          (Government's Exhibit S9 received in evidence)

2          MR. ROOS:  Thank you, your Honor.  Can we publish this

3     to the jury.

4          THE COURT:  You may.

5          MR. ROOS:  And I'll read it.

6          It is hereby stipulated and agreed by the parties that

7     on May 20, 2021, one payment of $292 was made toward the

8     interest accrued on the $59,800 loan obtained from the Small

9     Business Association on May 20, 2020, by Timothy Shea, the

10    defendant, in connection with Ranch Property Marketing and

11    Management LLC.  No other payments have been made.

12         Second no moneys on the loan are yet due at this time.

13         Can we now see --

14         THE COURT:  One moment.  Counsel, if counsel would

15    step up, please.

16         (At the sidebar)

17         THE COURT:  There is a typo.  It says Small Business

18    Association it should be "administration."  Does everybody

19    agree that it is administration?

20         MR. MERINGOLO:  Yes.

21         MR. ROOS:  Yes.

22         THE COURT:  You can correct it.

23         (In open court)

24         MR. ROOS:  Your Honor, on S9, I'll just note it says

25    Small Business Association I think that's a typo.  It should

M5Q3SHE1

1    say Small Business Administration.  I think everyone agrees.

2               THE COURT:  Everyone agrees it is a typo.  It should

3    be "administration."

4               MR. ROOS:  Ms. Drescher, can we now see Government

5    Exhibit S10.  Which is a testimonial stipulation regarding Kris

6    Kobach.

7               Government offers Exhibit S10.  Can we publish it for

8    the jury.

9               THE COURT:  Go ahead.  It is admitted.

10              (Government's Exhibit S10 received in evidence)

11              MR. ROOS:  I'll read it.

12              If called to testify, Kris Kobach would testify as

13   follows.

14              1.  Kris Kobach is a licensed attorney in good

15   standing with the bar of the state of Kansas.  In late

16   January 2019, he became general counsel of We Build the Wall

17   and a member of its board of directors.

18              2.  Defense Exhibit 508 is a video of Kris Kobach in

19   2019.

20              3.  Kris Kobach recalls that at some point he was told

21   that Timothy Shea was involved in hiring a security company to

22   provide security services at a construction site for We Build

23   the Wall.

24              4.  Kris Kobach was not informed of, and had no

25   knowledge of, payments from We Build the Wall to Brian Kolfage

M5Q3SHE1

1    in 2019 for compensation or salary.  Kobach was not informed

2    of, and had no knowledge of, payments from We Build the Wall to

3    Ranch Property Marketing and Management or to Winning Energy

4    LLC five.  We Build the Wall never created an audit committee.

5            Thank you, Ms. Drescher.  We can take that down.

6            Offer another stipulation and this one I think I'll

7    need to use the Elmo.  This is just for the parties,

8    stipulation S12.

9            And the government offers stipulation S12.

10           THE COURT:  It is admitted.

11           (Government's Exhibit S12 received in evidence)

12           MR. ROOS:  May we publish it to the jury?

13           THE COURT:  You may.

14           MR. ROOS:  This stipulation says the parties agree

15   that:

16           1.  Rich Kaye is a partner at the law firm of Barnes &

17   Thornburg LLP in Atlanta, Georgia.  He is a licensed attorney

18   in good standing with the state bar.  Mr. Kaye's law firm

19   e-mail address is RichKaye@BTlaw.com.

20           Second.  In 2018 and 2019, Rich Kaye provided legal

21   services to We Build the Wall.

22           3.  Government Exhibit 129 is an e-mail sent on

23   October 22, 2019, by Rich Kaye from his personal e-mail address

24   which is RichKayeesq@gmail.com to Amanda Shea at

25   ATSheamedia@gmail.com.

M5Q3SHE1

1          Ms. Drescher, can we publish Government Exhibit 129

2     which is in evidence.

3          And Ms. Drescher, can we look at the attachment which

4     is Government Exhibit 129A.

5          Thank you, you can take this down.  And if we can use

6     the Elmo again just for the parties.

7          Government offers Exhibit S11.

8          THE COURT:  It is admitted.

9          (Government's Exhibit S11 received in evidence)

10          MR. ROOS:  May we publish?

11          THE COURT:  You may.

12          MR. ROOS:  It is hereby stipulated and agreed by the

13     parties that on August 20, 2020, Timothy Shea, the defendant,

14     was arrested by federal law enforcement agents pursuant to a

15     court-issued warrant after a grand jury sitting in the Southern

16     District of New York filed the indictment that initiated this

17     criminal case.

18          We'll take this down.  One moment, please.

19          And with that, your Honor, the government rests.

20          THE COURT:  Members of the jury, the government has

21     rested and has finished presenting evidence.  That does not

22     mean that the trial is over.  We're going to take a brief

23     recess, and I will be calling you back into the courtroom.

24     Even though the government has rested, you cannot start

25     deliberating.  You cannot start deliberating until I tell you

M5Q3SHE1

1   that it's time to deliberate.  So, don't discuss the case

2   amongst yourselves, don't let anybody discuss the case in your

3   presence.  I will call you back in shortly.

4           (Jury excused)

5           THE COURT:  Mr. Meringolo?

6           MR. MERINGOLO:  Yes, Judge.  I'd like to make a Rule

7   29 motion.

8           Judge, respectfully submitted, the government hasn't

9   proved Counts One through Three beyond a reasonable doubt.

10   We're requesting the Court to dismiss it because they haven't

11   proved each and every element of each and every crime.  And we

12   ask the Court to dismiss the case.

13           In addition to that, if we could have 14 days for any

14   briefing on a Rule 29.  We would ask the Court, if we choose to

15   do it in writing.

16           THE COURT:  I'll hear from the government.

17           MR. ROOS:  Your Honor, would you like to hear an oral

18   argument or a response?

19           THE COURT:  Yes.

20           MR. ROOS:  Yes, your Honor.

21           Count One of the indictment alleges that the defendant

22   conspired in a scheme to commit wire fraud by two ways.  One,

23   defrauding donors of money or property through false

24   statements, representations or promises, and two, by defrauding

25   We Build the Wall, through defrauding We Build the Wall, Brian

M5Q3SHE1

1    Kolfage and others honest services by way of kickbacks.  The

2    evidence established at trial establishes that the defendant

3    and his co-conspirators made false statements to the public by

4    stating, among other things, on multiple occasions, that one,

5    100 percent of the money would go to constructing a border

6    wall, and two, that the defendant as well as other individuals

7    associated with We Build the Wall would not take a penny in

8    compensation or salary.

9              Witnesses at this trial as well as e-mail evidence

10   establish these were important or weighty considerations for

11   people donating to We Build the Wall.  And had they known that

12   was not the case, it would have been material to their

13   decision-making.

14             The evidence presented in the form of e-mails, text

15   messages, and financial documents establish that Brian Kolfage

16   in fact was paid through a series of approximately 12 different

17   transactions whereby money was sent to an intermediary account

18   and then kicked back to Brian Kolfage.  And so that's Count One

19   on both objects.

20             Clearly the evidence establishes by way of text

21   messages and e-mails that there was a conspiracy amongst

22   multiple people to carry this out.

23             Count Two is the money laundering charge.  There is

24   more than sufficient evidence to give this to the jury.  First,

25   the evidence by way of Special Agent Yves Hunziker establishes

M5Q3SHE1

1    through a series of charts that money was sent through

2    intermediary accounts.  We heard the testimony of an expert

3    witness about the ways in which money laundering occurs, many

4    of the different ways he describes money laundering happens is

5    exactly what we see in these financial transactions here.  Ways

6    to conceal, and also on the second object, over $10,000 or more

7    in transactions involving crime proceeds.  So that's Count Two.

8         And then on Count Three, which is obstruction by way

9    of falsification of records, the evidence established that the

10   defendant, after learning of a grand jury investigation in

11   October 10, 2019 -- one second.

12        The defendant, after learning of the grand jury

13   investigation in October of 2019, together with Brian Kolfage,

14   created a document that was backdated to March 2019.  The

15   metadata presented yesterday establishes that document was

16   created after they learned of the grand jury investigation.

17        Throughout each of these different counts, there is

18   evidence that the defendant participated in the conspiracy.

19   He, among other things, participated in the organization and

20   creation of We Build the Wall, he participated in the money

21   movements, he is on the text messages discussing transfers of

22   payments.

23        So there is more than sufficient evidence to send this

24   to a jury.

25        THE COURT:  All right.  I'll permit the defense to

M5Q3SHE1

submit a written motion.  You have until June 9, so I will

reserve decision.  If no motion is submitted, I will issue a

written decision on the docket.

          Anything further?

          MR. MERINGOLO:  Nothing further from the defense,

Judge.

          THE COURT:  All righty.  So I am going to review the

e-mails now and then I will come back with my decision.  So

we'll take a recess.

          (Recess)

          (In open court; jury not present)

          THE COURT:  I have reviewed the e-mails, and I agree

with the defense that they do suggest that Mr. Shea undertook

work to Build the Wall.  However, they amount to hearsay, and

so I'm not going to allow them to be admitted.

          MR. MERINGOLO:  Judge, just one thing.  I'd like to

preserve my right under Rule 29 for venue.  I didn't, that the

government didn't establish venue.  So I'd like to preserve my

right to do that in the memo if we choose to.

          THE COURT:  All right.

          MR. ROOS:  I'm happy to speak to that or if they file

a Rule 29 we can just respond there.

          THE COURT:  Why don't you speak to it.

          MR. ROOS:  Certainly, your Honor.  So, there was ample

evidence of venue.  Among other things, there is records that

M5Q3SHE1

1    donors donated from the Southern District of New York.  They

2    used checks, they used GoFundMe in the Southern District of New

3    York.  The co-conspirators of the defendant filed their

4    registration with New York to fundraise here.  There is some

5    other evidence that will come out during the closing, but I

6    think that's more than enough to get us to the jury.

7              THE COURT:  All right then.  So I'll bring the jurors

8    back in.  And Mr. Meringolo, you will present your evidence.

9              (Jury present)

10             THE COURT:  The parties agree that all jurors are

11   present and properly seated?

12             MR. ROOS:  Yes, your Honor.

13             MR. MERINGOLO:  Yes, Judge.

14             THE COURT:  Please be seated.

15             Members of the jury, we will now hear evidence

16   presented by the defense.

17             Mr. Meringolo.

18             MR. MERINGOLO:  Yes, your Honor.  Your Honor, I'd like

19   to read a stipulation.

20             THE COURT:  Go ahead.

21             MR. MERINGOLO:  It is hereby agreed and stipulated by

22   and between the United States of America and Timothy Shea, the

23   defendant, that Defense Exhibit 602, 613, 629, 627, 628, 728,

24   740, 763, 764 and 800, and their subparts, are authentic copies

25   of e-mails and their attachments produced by e-mail service

M5Q3SHE1

1      providers pursuant to a court-authorized search warrant.  The

2      "from", the "to," the "cc," the "bcc" fields accurately display

3      the e-mail addresses that sent or received the e-mails.  The

4      "sent" field accurately displays the dates and the times on

5      which the e-mails were sent.  Subpart exhibits were attachments

6      to the main e-mails, e-mail exhibits.  For example, Defense

7      Exhibit 602 was attached to Defense Exhibit -- 602A was

8      attached to Defense Exhibit 602.

9               It is further stipulated and agreed that this

10     stipulation as well as the defense exhibits received subject to

11     any objections under rule 401 or 403 of the Federal Rules of

12     Evidence.  Dated May 26, 2022, signed by the government and

13     myself.

14               THE COURT:  It is admitted.

15               MR. MERINGOLO:  Thank you judge.

16               (Defendant's Exhibit 602, 613, 627, 628, 728, 740,

17     763, 764, 800 & their subparts received in evidence)

18               MR. MERINGOLO:  Judge, I would like to publish 728.

19               MR. SOBELMAN:  I think defense counsel may have

20     misspoke at one point and offered Exhibit Number 629 which we

21     don't see on the stipulation.

22               MR. MERINGOLO:  629 I said, Judge?

23               THE COURT:  I don't recall if you did.

24               MR. MERINGOLO:  The letters and numbers jump for me so

25     I'm sorry.  It's not 629.  It is 628.

M5Q3SHE1

1          Is that correct?

2          MR. SOBELMAN:  Yes, that's what is on the stipulation.

3          MR. MERINGOLO:  I'm going to try to match this up.

4     I'd like to put it on the Elmo if we can.

5          I'm going to put Exhibit Number 728 published to the

6     jury.

7          It is an e-mail from Timothy Shea,

8     TimShea.realestate@gmail.com.  Unarmed security contract.  On

9     March 13, 2019.  This is a contract for six unarmed bouncers

10    for Cobo.  Sign it and send it back to me.

11         This is 740.  Timothy Shea to Andy Badolato 3/12/19.

12    Starting from -- Mr. Shea says sounds like three of the police

13    officers will be rolling in between 4:30 and 5:30 as they get

14    off duty.  See e-mail below.

15         E-mail below.  I have three Hamilton county deputies

16    phasing in as they get off duty from 4:30, 5, 5:30 p.m.  I also

17    have Cincinnati police that will have two officers here plus a

18    captain that can call in more resources if needed.

19         And this is the back of the e-mail.

20         The next e-mail, your Honor, and ladies and gentlemen

21    of the jury, are 623 and 623A.  623 is from Timothy Shea to

22    Brian Kolfage, states:  Thanks, Brian.

23         623A is a Ranch Property Management invoice and the

24    description states:  Contract company to utilize commercial

25    drone service to gather footage over the southern border.  The

M5Q3SHE1

1   service provided drones using streaming 4K video both during

2   the day and night to gather intelligence on border crossings in

3   Sunland Park, New Mexico.  Contractor is licensed to fly in

4   Mexico's airspace as well as the U.S.A.  Five consecutive days

5   and fights, $9,345 per day.  Subtotal $46,725.33.

6           The next exhibit is 627.  This is from Timothy Shea to

7   Brian Kolfage on November 6, 2019.

8           Hi, Brian.  Please look over my proposal, sign, send

9   back to me.  Also, will include wire instructions U.S. Bank

10  Ranch Property, the numbers, Castle Rock, Colorado.  Thanks,

11  Tim.

12          This is 627A, and this is a contract and the contract

13  at the end, the filming, you guys can read it the total of the

14  contract is $57,756.

15          All right.  The next e-mail is 628 and 628A.  And it

16  is an e-mail, again, from Timothy Shea to Brian Kolfage on

17  December 13, 2019, at 10:42 a.m.

18          Hi, Brian.  Here's the invoice, U.S. Bank Ranch

19  Property Marketing and Management.  Castle, Colorado.  RPMM.

20  And the invoice and it's 628A, and ladies and gentlemen, you

21  can look at it.  just the total is $20,856.

22          602.  602 is 602 and 602A.  It is an e-mail from

23  Timothy Shea to Amanda Shea on January 22, 2020.  And the

24  invoice is attached at 602A, and the invoice is for marketing

25  towards the new building locations in Mission, Texas, and Rio

M5Q3SHE1

Grande Valley, Texas.  Utilize Facebook ads, utilize Google
ads, pull info on local landowners' tract locations and cold
calls.  Set up meeting.  Total $5,817.

Next exhibit is Defense Exhibit 800.  And this
exhibit, Exhibit 800, is July 16, 2019, from Timothy Shea to
Brian Kolfage.  And there is an attachment 800A.  And here's
the invoice.  Yikes.  That's what Mr. Shea says.

And attached to the e-mail is 800A, it is an invoice
from Sky Front, creation date of the invoice is July 15, 2019.
It is prepared by a person by the name of Troy Metzler and the
contact is Timothy Shea.  And the invoice is for $64,500 for
premier MRS, medium range surveillance, perimeter surveillance,
electronic fuel injection, ground control station laptop and
software, laptop stand, two custom fit pelican transport cases,
battery charges, medium range telemetry and video.  And then
the camera, the rental for the camera is 15,000 and tax is
5 percent.  And the total of this invoice is $84,475.

Okay.  I'm done with this batch.  We have just a few
more.  Does anybody know how to work this?

At this time, your Honor, the government and I have
agreed that the defense could move a picture of the border wall
after completion.  Defense Exhibit 302.

THE COURT:  It is admitted.

(Defendant's Exhibit 302 received in evidence)

MR. MERINGOLO:  I can't get it on the screen so I'll

M5Q3SHE1

show ladies and gentlemen of the jury.  This is Exhibit 302.

This is Exhibit 613.  And it is Exhibit 613.  And 613A.  And it is Timothy Shea on March 29, 2019.  Timothy Shea to landowners.  Subject landowners to Andy Badolato and Brian Kolfage.

Hi, fellas.  Read this over, let me know if any changes need to be made.  Thanks, Tim Shea, associate broker, Realty One Premier Group.  And the attachment is 613A, and it states:

Dear landowner.  We have been contracted by We Build the Wall to identify privately owned property along the United States-Mexico.  The nonprofit group backed by some of the biggest names in politics is excited to be currently working with private landowners to build a barrier along the national border wall.  Additionally, We Build the Wall is protecting individuals' property along the border wall at no cost to the landowner.  In some areas where the wall has already been built, we have seen a dramatic increase in land due to the protection of property.  More importantly than the increase in value is the owners have a new, needed sense of safety and security.  This is an exciting opportunity to be a part of history in the making led by the first, and only, privately funded effort to secure our nation's border.  We Build the Wall.  Inc.  Is fulfilling a decades old political promise made to the American people and have been given Donald Trump's

M5Q3SHE1

1    blessing.  It would be our pleasure and honor to set up a phone

2    call or meeting with you and one of the We Build the Wall board

3    members, including the cause's founder, triple amputee war hero

4    Brian Kolfage to discuss the plans for building the wall and

5    how your property can be a very valuable part of that process.

6    We are also happy to answer any questions you may have about

7    this at this time.  We have provided the website information

8    below so you can explore the group's cause, missions plans and

9    progress.  Please feel free to contact us by phone to speak to

10   us personally.

11          Direct line.  Ranch Property Management and Marketing

12   1-800-608 -- everybody knows the website.  That's 613A.

13          763 -- we only have one more after this -- is an

14   e-mail from Jason Miller to Tim Shea.  This is an e-mail from

15   Jason Miller, subject border wall, to Tim Shea.

16          Hi Andy, here is the contract for the security detail.

17   I'll call you in the morning.

18          Hi Tim, great talking with you tonight.  Thanks for

19   clearing up a few things for me.  I've attached the LOA.  As

20   discussed, though, this is just a draft version.  As you'll see

21   there are some blank spaces, namely if we move forward, I'll

22   need the physical address or the closest cross streets of the

23   site, billing addresses, your title, credit card or wire

24   transfer instructions for advance payment, and the local POC's

25   whom we'll meet with on Wednesday for coordination and

M5Q3SHE1

1    Thursday.  When work begins, I will make the final changes and

2    resubmit the document to you or whomever you designate via

3    docusign, which is easy to execute on your phone or any device.

4    Please try to have an answer for me by close of business

5    tomorrow so I have time to get our agents scheduled and get my

6    travel arrangements made.  I understand this is a sizable

7    amount of money, but I hope we can make this work.  Feel free

8    to call me.

9           The last exhibit is 764.  And it is a proposal to Tim

10   Shea from Jason Miller.  Oh this -- this is 764 but that's

11   related to the e-mail I just read to you.  This is the proposal

12   that Tim was talking -- this is the border wall that We Build

13   the Wall built.

14           And your Honor, at this time, defense would like to

15   play a two-minute video.

16           THE COURT:  You may.

17           MR. MERINGOLO:  Thank you, Judge.

18           (Video playing)

19           MR. MERINGOLO:  Judge, that was very unclear and the

20   sound, I think it will be in evidence, it will be much clearer.

21   If the jury wants to watch it.

22           THE COURT:  Of course.

23           MR. MERINGOLO:  All right.

24           Judge, the defense rests.

25           THE COURT:  Members of the jury, the defense has

M5Q3SHE1

1  rested and has finished presenting evidence, but that does not

2  mean that the trial is over.  We still have summations, both

3  sides, as well as my instructions on the law.  That will go

4  forward on next Tuesday.  And so we have come to the end of our

5  work for today.

6         It's very important that you remember that I have not

7  yet told you that it's time to deliberate.  We're about to

8  stop, and recess until next Tuesday at 9 a.m.  And I want to

9  remind you of the instructions that I gave you earlier about

10  your conduct as jurors.

11         During this recess, and all other recesses, do not

12  discuss the case with anyone, including your fellow jurors,

13  other people involved in the trial, members of your family,

14  friends or anyone else.  Do not speak at all with any of the

15  parties, the witnesses or the attorneys.  Do not permit anyone

16  to discuss the case with you.  Do not even remain in the

17  presence of anyone discussing the case.  If anyone approaches

18  you, and tries to talk to you about the case, please report

19  that to me through my clerk immediately.  Do not read, watch,

20  or listen to any news reporting concerning the trial in a

21  newspaper, on the internet, or television.  Do not use the

22  internet or library or any other source to look for information

23  about the parties, the witnesses, the lawyers or anything else

24  associated with the case.  Do not conduct any kind of

25  investigation on your own.

M5Q3SHE1

1          The only information that you are to consider in

2     deciding the case is what you have learned in this courtroom

3     during the trial.

4          However, you are not ready yet to decide the case.  As

5     we part today for this long weekend, I want to remind you that

6     you are being entrusted with a great responsibility in being

7     able to return home for a number of days.  I'm sure that each

8     of you will make every effort to ensure that none of the

9     restrictions is violated.

10          You must return to the courtroom at 9 a.m. on this

11    coming Tuesday, May 31.

12          I hope all of you have a lovely holiday weekend.

13    Thank you.

14          (Jury excused)

15          THE COURT:  Please be seated.

16          I did not receive any further comments with respect to

17    the instructions.

18          MR. SOBELMAN:  Yes, your Honor.  We are in the process

19    of drafting a letter that we hope to file today.  There are not

20    any alterations to the instructions as your Honor drafted them.

21    It might be just two or three very discrete additions related

22    to events from the trial, but it is still something we are

23    working on and we hope to have that filed today.

24          THE COURT:  Very well.

25          MR. SOBELMAN:  Just one other minor issue to raise.  I

M5Q3SHE1

1    want to clarify for the record that the defense e-mails that

2    were offered were not offered for their truth.  There is no

3    hearsay exception that would apply.  To the extent they contain

4    any factual assertions, we would ask that the Court instruct

5    the defense they cannot argue the truth of the matters asserted

6    in those e-mails.

7          THE COURT:  So, for what purpose, Mr. Meringolo, were

8    they admitted?

9          MR. MERINGOLO:  They were admitted to refute the

10    government saying there were no legitimate invoices.

11          THE COURT:  Is that the government's understanding?

12          MR. SOBELMAN:  Not sure precisely the purpose that the

13    defense thought they were relevant.  We tried not to object to

14    every single document they wished to offer.  But, there were

15    some documents, for example, there was an e-mail that attached

16    an invoice.  The invoice itself we have no objection to the

17    fact that it is an invoice.  But, to the extent it states that

18    certain work was done, we don't think the defense can rely on

19    the truth that, okay, because there was an invoice, the work

20    was done.  They can say there was an invoice, and this is what

21    the invoice asked for.  But, we think that extra step would be

22    inappropriate, given the fact there is no hearsay exception.

23          So I want to clarify that they can reference the

24    documents, there were invoices sent, but they can't then say

25    the invoice is proof that the items listed in the invoice

M5Q3SHE1

1    actually occurred.

2              MR. MERINGOLO:  Well, if I said, your Honor, Timothy

3    Shea did work, without referencing -- I think we have evidence

4    in there that in fact he did do work.  Did he send, he did send

5    the people a letter that he proposed to go get the property?

6    They got the property.  You know, they had events, there was

7    security.  I mean...

8              THE COURT:  Why didn't the prosecution object to the

9    admission of the documents?

10             MR. SOBELMAN:  Your Honor, because the documents, if

11   not offered for their truth, we think are admissible.  We don't

12   think they're highly probative of anything.

13             To the extent the defense wants to argue there were

14   other invoices that Timothy Shea sent to Brian Kolfage or to We

15   Build the Wall, at other points, invoicing for other purported

16   work, I think they're entitled -- again, I don't find it

17   persuasive -- I think they are entitled to say, hey, there were

18   other financial transactions between these individuals that the

19   government didn't put before the jury.

20             But, the truth of those underlying events occurring,

21   in the same way that the government can't offer an invoice to

22   show that the underlying event actually occurred, absent a

23   hearsay objection.

24             THE COURT:  I think we need to go through these

25   documents, because I want to understand what you've agreed to

M5Q3SHE1

1    and what you haven't agreed to.

2         MR. SOBELMAN:  That's fine.  We can go through it.  I

3    think whatever your Honor thinks is appropriate.  I am not

4    asking for that.  I simply wanted to make sure --

5         THE COURT:  He has to understand what it is that he

6    can discuss in summation.  My understanding was that you had

7    come to an agreement together with respect to the documents,

8    you did not make an objection.  So, it is important that

9    Mr. Meringolo understand what he can say for his summation.

10        MR. SOBELMAN:  That's fine, your Honor.  Just to be

11   clear, Ms. Moe said in opening that the government concedes

12   Mr. Shea did work for We Build the Wall.  So there is no, as

13   far as we see it, that's not the battleground in this case.  We

14   are not going to say in closing or rebuttal that Mr. Shea did

15   no work for We Build the Wall.

16        So we see this as a little bit of a side issue.  To

17   the extent the defense wants to rely on the truth of some of

18   the statements in these documents, I think we should talk about

19   whether that's appropriate.  We didn't understand him to be

20   offering it for that purpose.

21        THE COURT:  So, my impression was that the defense was

22   offering the documents as evidence of work that was

23   accomplished.  I don't know of any other reason they would have

24   offered the documents.

25        MR. SOBELMAN:  We understand that to be the purpose of

M5Q3SHE1

1    the documents your Honor precluded.  We didn't have a

2    conversation with them specifically about the purpose for which

3    they were offering the ones to which we didn't object.  Because

4    we understood that they had a potential non-hearsay purpose.

5              THE COURT:  Well, then let's specify what the

6    non-hearsay purpose is.

7              MR. SOBELMAN:  Yes, your Honor.  I am not sure if you

8    want to go document by document.

9              THE COURT:  Yes, that's what we'll do.  Document by

10   document.

11             MR. SOBELMAN:  Okay.

12             MR. MERINGOLO:  Judge, they had their, they didn't

13   object to it.  Now it's in evidence.  And I mean, now I can't

14   argue what's in evidence?  I can't argue that here is an

15   exhibit, here is the invoice, you decide, ladies and gentlemen

16   what that means.  What I say is not evidence.  You decide what

17   that e-mail means, you decide what the attachment means.  I

18   don't understand.

19             MR. SOBELMAN:  We have no objection to that.  What I

20   am saying is he can't put up an invoice --

21             MR. MERINGOLO:  I'll do it a different way.

22             MR. SOBELMAN:  The point is you can't put up an

23   invoice and say Tim Shea billed for X, Y, Z, and, therefore,

24   that happened, without other evidence saying that happened.

25   Which there is no evidence in the record that it did.

M5Q3SHE1

1              THE COURT:  I think there is more that he is going to

2     argue.  I think he'll probably argue that he billed for X, and

3     that shows that he was undertaking the construction of the

4     wall.

5              (Continued on next page)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

M5QVSHE2

1          MR. SOBELMAN:  I'm not sure what he's going to argue.

2          But my point is the invoice is evidence that the

3    invoice was sent; that Tim Shea, for example, sent a bill to We

4    Build the Wall or Brian Kolfage that contained whatever it

5    contained.  But we don't think it's proper for him to then say,

6    Because the invoice said that, it must have happened, because

7    this invoice has to be true.

8          THE COURT:  So the question is, is he offering it to

9    show that these emails reflect Mr. Shea's work on the project

10   or is he offering it to show that the project was underway or

11   it was completed?  I think we need to define that.

12         MR. SOBELMAN:  Your Honor, I think Mr. Meringolo can

13   argue inferences from the facts that are admissible.  But to

14   rely on the truth of a document to which there's no hearsay

15   exception we think is improper.  The nonhearsay purpose of

16   explaining there were other invoices sent, this is what the

17   invoices said.  But to then say, you know, because this

18   document says this work was performed means this work was

19   performed, it's that last step that we think is improper as to

20   a couple of the emails.

21         THE COURT:  So you have no problem with his stating

22   that there was an invoice for X service or X goods, but you

23   have a problem with him saying that that means that those

24   services or goods were provided?

25         MR. SOBELMAN:  Let me confer with counsel for one

M5QVSHE2

1     second just to make sure I'm being clear.

2               (Counsel conferred)

3               MR. SOBELMAN:  Your Honor, we think it's totally

4     proper for defense counsel to say the fact that there's an

5     invoice is circumstantial evidence that the work occurred.  But

6     it's a subtle distinction.  But I just want to make sure our

7     position is at least clear, and if we get guidance from the

8     Court on this, because we don't want to be objecting in closing

9     if it's something your Honor would not be troubled by.

10              But we do think there is a line that could be crossed

11    between saying, Here's an invoice, you know, this is what

12    was -- this is what was said from person A to person B; and you

13    should infer from that that this work happened, rather than, It

14    says here the work happened and, therefore, the work happened.

15    I think that's the subtle distinction.  It's a direct versus

16    circumstantial point.  And I think that's sort of the hearsay

17    line to draw.

18              MR. MERINGOLO:  Judge, there's nothing in the

19    stipulation preserving a hearsay objection.  You know what's

20    really crazy?  That work was all done.  That's what's really

21    crazy here.  I know it has nothing to do with what's going on

22    in this case, but all that work was done; all those invoices

23    were paid.

24              Now we're like, Oh, Meringolo is going to do this.

25    You know what?  Meringolo doesn't know what he's going to do

M5QVSHE2

1   until he does it.  I mean, it is -- it may be objectionable, it

2   doesn't come out correctly, I don't read right.  It is what it

3   is.  Everything is all in the air.

4           But for me to sit here and say I can't argue this

5   email was sent on this day, Tim was working, I mean, the email

6   itself is work.  If he's talking to a contractor, getting --

7   somebody's giving him a proposal and he's sending an invoice,

8   that's work.  You know, I mean, maybe it's not like digging a

9   ditch or anything else, but it's still work.

10          MR. SOBELMAN:  I don't think we disagree with any of

11  that.  He can certainly argue these emails were sent, he sent

12  these invoices.  It might be that there's no disagreement here

13  at the end of the day.  I just wanted to flag the issue because

14  as we were going through them with the jury, there were a few

15  statements that we thought might be interpreted the wrong way.

16          We can move on.

17          THE COURT:  I don't want to have surprising

18  objections; I want to resolve this now so that he can prepare

19  his summation.

20          MR. SOBELMAN:  If you want, your Honor, we can try

21  talking it out.

22          THE COURT:  Would you please do that?

23          We'll take a brief recess.

24          (Recess)

25          THE COURT:  Please be seated.

M5QVSHE2

1          MR. SOBELMAN:  Your Honor, we consulted with the

2     defense.  I think we have a mutual understanding of, sort of,

3     where the line is.  If there's an issue, we'll object; but I

4     don't expect there will be.

5          THE COURT:  Would you please let me know what the line

6     is.

7          MR. SOBELMAN:  Yes, your Honor.

8          I think the line is between arguing the truth of

9     individual factual assertions in the emails or invoices versus

10    the fact that emails -- that the invoices and emails were sent,

11    are certainly evidence that Tim Shea was doing -- was sending

12    the invoices, that was contacting those people, was involved in

13    those activities.  And it's circumstantial evidence that the

14    underlying activities occurred.

15         THE COURT:  It's circumstantial evidence that what was

16    discussed in the emails was consummated?

17         MR. SOBELMAN:  I think that would be a fair inference

18    for the defense to ask the jury to make, is that if someone is

19    discussing a potential business deal, you could say, Well, they

20    discussed it, and you can infer from that that maybe it

21    happened.  I think it's speculative and probably a weak

22    inference, but we're trying to be -- take a wide view of

23    permissible inferences that the defense could ask the jury to

24    draw.

25         THE COURT:  Very well.

M5QVSHE2

1           Anything further?

2           MR. MERINGOLO:  No, Judge.

3           THE COURT:  All right.  Then I look forward to getting

4    your comments on the instructions.  Mr. Meringolo, if you have

5    comments, I would also like them to be in today.

6           MR. MERINGOLO:  Judge, we were just discussing we may

7    want an idle -- we'll send to you an idle chatter -- possibly

8    an idle chatter instruction standard, because of all the text

9    messages had a lot of idle chatter in it, certain responses on

10   some of the emails that are in evidence.  You can rule however,

11   you know, but I just think there was just a lot of idle chatter

12   going back and forth.

13          THE COURT:  I just want to resolve this so that at 9

14   a.m. on Tuesday, we can just dive right into summations.

15          MR. MERINGOLO:  We'll be ready.

16          MR. ROOS:  I'm sorry, I don't know what the idle

17   chatter instruction --

18          MR. MERINGOLO:  We'll ask -- we'll send the Court an

19   idle chatter instruction.  You can object.

20          MR. ROOS:  I don't even know what it is, so I'm not

21   sure --

22          THE COURT:  Mr. Roos is asking what is the substance

23   of an idle chatter instruction.

24          MR. MERINGOLO:  The substance is that there were text

25   messages going back and forth.  And some of those text messages

M5QVSHE2

1   are just idle chatter, what it says.  We'll get the Court the

2   instruction this afternoon.  Not in furtherance of the

3   conspiracy.  Like if they were talking about -- in these long

4   emails, there were parts of the emails that they weren't

5   talking about We Build the Wall.  Talking about, You're going

6   to go to dinner, Tim, which isn't We Build the Wall.  That's

7   idle chatter.  It's not in furtherance.

8           THE COURT:  But what is the instruction that I am to

9   direct them to disregard idle chatter?  What is the

10  instruction?

11          MR. MERINGOLO:  I'll send it to you, like the

12  government is going to send it to you later, their proposals.

13          THE COURT:  All right.

14          MR. ROOS:  Sounds to me like he's just asking your

15  Honor to characterize certain evidence as idle chatter and

16  disregard it, which doesn't seem right to me.  But we'll put in

17  an opposition to whatever they put in.

18          THE COURT:  I have never seen that instruction, and

19  I've been doing this for a long time.

20          MR. MERINGOLO:  Maybe we did something that you didn't

21  see.  Listen, Judge, some judges put it in, some judges take it

22  out.  That's just what we thought of off the top of our head

23  today.  If you rule against us, we don't really take -- we

24  accept it and sit down.  We don't come back and cry, you know?

25          THE COURT:  Good.  All righty, then.

M5QVSHE2

1          So I wish everyone good health and a wonderful holiday

2      weekend.

3          MR. MERINGOLO:  Thank you, Judge.

4          (Adjourned to May 31, 2022, at 9 o'clock a.m.)

5

6                          GOVERNMENT EXHIBITS

7      Exhibit No.                              Received

8      S1, S3, S5, S6   . . . . . . . . . . . . . 553

9      452  . . . . . . . . . . . . . . . . . . . 553

10     S2, 271  . . . . . . . . . . . . . . . . . 554

11     S9   . . . . . . . . . . . . . . . . . . . 555

12     S10  . . . . . . . . . . . . . . . . . . . 556

13     S12  . . . . . . . . . . . . . . . . . . . 557

14     S11  . . . . . . . . . . . . . . . . . . . 558

15                         DEFENDANT EXHIBITS

16     Exhibit No.                              Received

17     602, 613, 627, 628, 728, 740, 763, 764, 800 & their subparts 564

18     302  . . . . . . . . . . . . . . . . . . . 567

19

20

21

22

23

24

25