M62VSHETredacted

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,              New York, N.Y.

 4              v.                          20 Cr. 412 (AT)

 5   TIMOTHY SHEA,

 6                  Defendant.              Trial

 7   ------------------------------x

 8                                          June 2, 2022
                                            9:50 a.m.
 9

10   Before:

11                   HON. ANALISA TORRES,

12                                          District Judge
                                              and a Jury
13

14                         APPEARANCES

15
     DAMIAN WILLIAMS
16        United States Attorney for the
          Southern District of New York
17   BY:  NICOLAS T. ROOS
          ROBERT B. SOBELMAN
18        Assistant United States Attorneys

19   MERINGOLO & ASSOCIATES P.C.
          Attorneys for Defendant
20   BY:  JOHN C. MERINGOLO
          ANGELICA B. CAPPELLINO
21        CLARA S. KALHOUS

22

23   Also Present:  Sunny Drescher, Paralegal Specialist, USAO

24

25
```

M62VSHETredacted

1          (Trial resumed; jury not present)

2          THE COURT:  Good morning.

3          Would you make your appearances please.

4          MR. ROOS:  Robert Sobelman and Nicolas Roos for the

5    United States.  We're joined at counsel table by Sunny

6    Drescher, a paralegal in our office.

7          Good morning, your Honor.

8          MR. MERINGOLO:  Good morning, your Honor.

9          John Meringolo, Anjelica Cappellino, and Clara Kalhous

10   for Mr. Shea, who's to my right.

11         THE COURT:  Please be seated.

12         I have a note from the jury.  I received it at ten --

13   rather 9:45.  It states the following:  We the jury require the

14   following, if possible:

15         One, missing bank statement for Ranch Property

16   Marketing Management, RPMM; and Freedom Daily for the period of

17   3/1/2019 to 5/31/2019, or page where this exists in exhibits.

18         Two.  Please provide a flipboard paper chart.

19         Three.  All bank statements the defense lawyer used

20   from Synovus Bank for the period of 3/1/2019 to 5/31/2019 or

21   page where this exists in the exhibits.

22         Four.  Missing texts from 12/15/18 to 11/7/2019.

23         It is signed by the foreperson and dated today's date.

24         I'm going to make this Court Exhibit No. 1.

25         So you're free to inspect this and let me know how you

M62VSHETredacted

```
1    want me to deal with it.  I'm going to wait for you to think
2    about it before I bring the jurors in.
3            MR. SOBELMAN:  Your Honor, could we just get a copy of
4    it?  Would that be possible?
5            THE COURT:  Sure.
6            MR. SOBELMAN:  Thank you.
7            THE COURT:  You'll let Ms. Marder-Spiro know when
8    you're ready.
9            (Recess)
10           THE COURT:  Please be seated.
11           All right, then.  Where are you coming out on all of
12   this?
13           MR. ROOS:  Thank you, your Honor.
14           If it's okay, I'll just go in number order.
15           THE COURT:  Yes.
16           MR. ROOS:  Number one, missing bank statements for
17   Ranch Property Marketing and Management and Freedom Daily for
18   the period of March 1, 2019 to May 31st, 2019.
19           So the first thing, I think it could be useful for the
20   Court to tell the jury that they have all of the bank records
21   in an electronic format, because it seems like from notes one
22   and notes three that they maybe don't know that they have the
23   bank records.
24           With sort of that general point aside, we have printed
25   the bank statements for -- that are in evidence that fall
```

M62VSHETredacted

1    within this period for those two accounts.  We are going to

2    show them to defense counsel and then we can pass them back.

3    So I think that should take care of request number one.

4            THE COURT:  So when you say all the bank statements

5    that are in evidence, are you saying that not all of the

6    statements that fall in the period?

7            MR. ROOS:  So for one of the two accounts, Ranch

8    Property, there's no March statement.  I think that's because

9    actually maybe it was opened in either late March or early

10   April and didn't have account activity.  But either way, we

11   only have April and May for that account.

12           THE COURT:  Is there any agreement on whether or not

13   there is a statement for March?

14           MR. ROOS:  I think we --

15           MR. MERINGOLO:  No statement.

16           MR. ROOS:  I think we all agree there's no statement

17   in evidence, and I'm not sure if one exists in the world.

18           The signature card was signed April 2nd, so the

19   account was opened April 2nd.  So I guess --

20           THE COURT:  Okay.  So this is the Ranch Property

21   Management account in what bank?

22           MR. ROOS:  At U.S. Bank.

23           THE COURT:  At U.S. Bank, was open on April 2nd, so

24   there is no March statement.

25           MR. ROOS:  Correct.

M62VSHETredacted

1          THE COURT:  April 2nd of what year?

2          MR. ROOS:  Of 2019.  And we are proposing to send back

3    to the jury, therefore, for that account the April and May

4    statements.

5          THE COURT:  When you say that these records are

6    available electronically, how are they labeled?

7          MR. ROOS:  So, Judge, basically, what was sent back to

8    the jury, there's a little manila folder for each of the

9    exhibits; is that right?  And then for the bank statements

10   there just marked as like this -- they are on this -- it's a

11   drive?  They are all on a drive.  And then on the drive it has

12   the exhibit folders for the bank statements.

13         THE COURT:  But is it identified as the exhibit?  In

14   other words, does it say Exhibit Y or does it say bank

15   account --

16         MR. SOBELMAN:  Your Honor, so it says -- for each one

17   there's a folder on the drive that says --

18         THE COURT:  I'm going to ask you to back up, because

19   I'm old and this computer language is beyond me.  And so when

20   they open up the laptop, what do they see?

21         MR. SOBELMAN:  If they look on the drive --

22         THE COURT:  When you say "the drive," what do you

23   mean?

24         MR. SOBELMAN:  Sorry, a thumb drive.

25         THE COURT:  Oh, there's a thumb drive that they have

M62VSHETredacted

1    to insert.

2            MR. SOBELMAN:  I believe it's already been loaded.

3            THE COURT:  It's loaded?  The clerks handled that.

4            THE LAW CLERK:  If I could clarify, your Honor.

5            THE COURT:  I just want to make it clear that Juliana

6    Bennington, my law clerk, is speaking now.

7            THE LAW CLERK:  So there are two manila folders on the

8    desktop of their computer.  One is labeled "Defense Exhibits"

9    and the other one, I believe, is labeled "Government Exhibits."

10   If they open the government exhibits folder, there are

11   subfolders within that.  And there is a folder, I believe, for

12   each of the bank accounts.

13           MR. ROOS:  And those are numbered 1000 through 2400.

14   And that's the full universe of bank statements.  Each hundred

15   series is a different account.

16           THE COURT:  But we are going to give them the April

17   and May statements in hard copy.

18           MR. ROOS:  In hard copy.

19           What's in evidence, it spans, I think, several years

20   in some cases.  And they have asked for a pretty specific

21   period, so we just printed out that period.

22           THE COURT:  Okay.

23           MR. ROOS:  So on the first point, your Honor, they'll

24   get the April and May statements for Ranch Property; and they

25   will get the March, April, and May statements for Freedom

M62VSHETredacted

1   Daily.

2          THE COURT:  Okay.  Go ahead.

3          MR. ROOS:  For request two, they asked for a flipboard

4   with paper.  And we are fine with whatever the Court wants to

5   use, including that one over there, or anything else your Honor

6   would like to use.

7          MR. MERINGOLO:  No objection.

8          THE COURT:  Okay.

9          MR. ROOS:  All right.  The third one:  All bank

10  statements the defense lawyer used from Synovus Bank for the

11  period March 1, 2019 to May 31st, 2019.  So on this, the

12  Synovus Bank accounts are -- there are two Synovus Bank

13  accounts.  They have those; again, they are on the computer.

14  And they are both for We Build the Wall.

15          I think in my summation I briefly referenced them; and

16  in the defense summation I don't believe they are referenced.

17  It said Mr. Meringolo referenced records from, I believe, U.S.

18  Bank.

19          MR. MERINGOLO:  U.S. Bank.

20          MR. ROOS:  So this one we could send back, the Synovus

21  Bank records; although I'm not positive that's what they are

22  asking for.  And so it may make sense just to tell them

23  something like, The defense lawyer didn't use Synovus Bank

24  records.

25          THE COURT:  I can say that he used the U.S. Bank

M62VSHETredacted

1    records.  But do we want to send them the U.S. Bank records

2    or --

3             MR. ROOS:  We could just say --

4             MR. MERINGOLO:  Yes, Judge, because that's what I

5    used.

6             THE COURT:  Since they haven't asked for that

7    specifically, I would want the consent of the attorneys for me

8    to send that back.

9             MR. ROOS:  Here's what I propose, your Honor:  In

10   response to this request by the jury, we could say, The bank

11   accounts at Synovus Bank were the We Build the Wall accounts.

12   And those are Government Exhibits 1600 and 1700.  The bank

13   records used by Mr. Meringolo, the defense attorney --

14            THE COURT:  Okay.  So if you'll just back up.

15            The Synovus Bank accounts are exhibits what did you

16   say?

17            MR. ROOS:  1600 and 1700.

18            THE COURT:  Okay.

19            MR. ROOS:  And then I propose saying, Mr. Meringolo,

20   the defense attorney, used records from U.S. Bank, which are

21   Government Exhibit 2000.

22            THE COURT:  So are we sending in hard copies or no?

23            MR. ROOS:  Well, on this I would propose to clarify

24   that for them and then ask them, Which would you like?

25            THE COURT:  So a second note.

M62VSHETredacted

1            MR. ROOS:  If that's okay.  Or we could print all of

2      those statements, the Synovus and the U.S. Bank, for the March

3      to May period.

4            MR. MERINGOLO:  I wouldn't mind sending them Synovus

5      and U.S. Bank, because I used U.S. Bank and they're asking for

6      what I used.  And they're also asking for Synovus.

7            THE COURT:  Okay.  So you agree that I will send back

8      the U.S. Bank records, which are Exhibit 2000; and the Synovus

9      records, which are 1600 and 1700.

10           MR. ROOS:  For the period March to May.

11           THE COURT:  U.S. Bank corresponds to what entity?

12           MR. ROOS:  That is the defendant, Timothy Shea's, bank

13     account personally.

14           THE COURT:  It's in his name.

15           MR. ROOS:  Right.  There's also -- I mean there's also

16     a U.S. Bank account in Ranch Property on which he's a signer;

17     but they already asked for that account for request one, so I

18     think probably they'll be getting that.

19           MR. MERINGOLO:  I didn't use that one.

20           MR. ROOS:  So we propose on request three, I guess,

21     then just giving them the March to May of U.S. Bank, and the

22     March to May of Synovus Bank in hard copy.

23           THE COURT:  Okay.

24           MR. MERINGOLO:  Your Honor, may I just interject?

25           We just wanted to clarify that the Freedom Daily -- I

M62VSHETredacted

1    guess Freedom Daily from 3/1 to 5/31, the printed copy, is

2    going in?

3              MR. ROOS:  Yes.

4              MR. MERINGOLO:  Okay.  I didn't hear.

5              THE COURT:  I'm sorry.  I didn't understand what you

6    said, Mr. Meringolo.

7              MR. ROOS:  He just wanted to be sure that the Freedom

8    Daily bank records --

9              MR. MERINGOLO:  Number one, it was Ranch and Freedom

10   Daily.

11             THE COURT:  So for Ranch Property, it's April and May

12   with respect to number one.  But for Freedom Daily, what

13   months?

14             MR. ROOS:  It's March, April, and May of 2019.

15             THE COURT:  And?

16             MR. ROOS:  And then finally for request number four,

17   which is missing texts from December 15, 2018 to January 17,

18   2019.  So the government would propose -- so first let me note

19   that Government Exhibits 2 through 20 are text messages that

20   are within that period.  And the government's proposal is to

21   say Government Exhibit 2 through 20 are the text messages in

22   evidence from that period.  Let us know if you are missing any

23   of them, just in case they're --

24             THE COURT:  Well, I'm not asking -- I'm not asking

25   them if they are missing anything else; and so I think that's

1    inconsistent.

2              MR. ROOS:  It says missing texts from this period.

3    And so at least to me it's not clear to me, are they saying

4    there should be other texts they haven't seen or that literally

5    some of the texts that are in evidence during that period for

6    some reason either we or they misplaced the paper copy?

7              THE COURT:  So they could also be saying we don't

8    think these are all of the texts that were exchanged between

9    the parties during this period.

10             MR. ROOS:  Certainly.

11             So one proposal would be just to say the text messages

12   in evidence from that period are Government Exhibits 2 through

13   20, period.  And then no further follow-up or question.  And

14   then if they have another question, they will send it.

15             MR. MERINGOLO:  Judge, may I confer with the

16   prosecutor?

17             THE COURT:  Yes.

18             (Counsel conferred)

19             THE COURT:  Where is the Freedom Daily account?  What

20   bank is that with?

21             MR. ROOS:  Wells Fargo.

22             THE COURT:  Okay.  So I just want to review what it is

23   that I am going to say to the jurors in response to their note.

24             With respect to number one, I'm going to say:  All

25   bank records are in electronic form in the laptop.  You will

M62VSHETredacted

1      see one folder for government exhibits and one for defense

2      exhibits.  In the government exhibits, the bank statements are

3      folders 1000 to 2400.  The Ranch Property management account at

4      U.S. Bank was opened on April 2nd, 2019; there is no March

5      statement.  Freedom Daily's account at Wells Fargo, there are

6      statements for March, April, and May.  And then I'll say that

7      I'm going to send in paper copies of everything, that's what

8      you want me to say.  So with respect to the U.S. Bank account,

9      it's April and May that I'll be sending in, right?

10             MR. ROOS:  Correct.

11             THE COURT:  With respect to question number two, I

12     will say yes.

13             With respect to question number three, I will say that

14     Mr. Meringolo referred to Timothy Shea's bank account at U.S.

15     Bank, which is Exhibit 2000; and that there are March, April,

16     and May statements in evidence.  Also, that We Build the Wall

17     had an account at Synovus Bank, and that is Exhibits 1600 and

18     1700; and there are statements for March, April, and May.  And

19     I will send in paper copies.

20             And for number four, the texts that are in evidence

21     that correspond to the period that they mention are Government

22     Exhibits 2 through 20, and I will send in hard copies.

23             MR. ROOS:  They should have hard copies of those, your

24     Honor, or we could print more.

25             THE COURT:  So am I volunteering or not to send in

M62VSHETredacted

1  hard copies of these documents?  It's up to you, folks.

2          MR. MERINGOLO:  No, your Honor, I believe they have

3  them already.

4          THE COURT:  So you're saying they have the hard copies

5  of 2 through 20, but they don't have the hard copies of the

6  others?

7          MR. ROOS:  Correct.

8          THE COURT:  Okay.  So please bring in the jurors.

9          (Jury present)

10          THE COURT:  The parties agree that all jurors are

11  present and properly seated?

12          MR. ROOS:  Yes, your Honor.

13          MR. MERINGOLO:  Yes, your Honor.

14          THE COURT:  Please be seated.

15          Good morning, jurors.

16          THE JURY:  Good morning.

17          THE COURT:  Thank you for being on time and thank you

18  for your hard work.

19          I have a letter -- rather, a note from the jury; came

20  in at 9:45 a.m.  And it is signed by the foreperson.

21          It states:  We the jury require the following, if

22  possible:

23          Number one, missing bank statement for Ranch Property

24  Marketing Management, RPMM, and Freedom Daily for the period of

25  March 1st, 2019 to May 31st, 2019, or page where this exists in

M62VSHETredacted

1   the exhibits.

2          Okay.  So first of all, all bank records are in

3   electronic form on your laptop.  If you open up the laptop,

4   you'll see one folder for the government exhibits and another

5   for the defense exhibits.  In the government exhibits, bank

6   statements are in folders 1000 to 2400.

7          Ranch Property management had its account at U.S.

8   Bank.  Ranch Property Management had its account at U.S. Bank.

9   That account was opened on April 2nd, 2019.  There is no March

10  statement.  So you have April and May.  But I will also be

11  sending in a hard copy of the exhibits that I'm discussing at

12  this moment.

13         Freedom Daily's account was at Wells Fargo.  Freedom

14  Daily's account was at Wells Fargo.  And there are statements

15  from March, April, and May.  I'm referring now to 2019 with

16  respect to all of these statements.  And I will send in paper

17  copies of everything that you have requested in number one.

18         Number two:  Please provide a flipboard paper chart.

19  I will do that.

20         Number three:  All bank statements the defense lawyer

21  used from Synovus Bank for the period of March 1st, 2019 to

22  April 31st, 2019, or page where this exists in exhibits.

23         Mr. Meringolo referred to Timothy Shea's bank account

24  at U.S. Bank.  Mr. Meringolo referred to Timothy Shea's bank

25  account at U.S. Bank.  And that is Exhibit 2000.  There are

M62VSHET

1   March, April, and May statements for 2019.

2            We Build the Wall had an account at Synovus Bank.  We

3   Build the Wall had an account at Synovus Bank.  And those are

4   Exhibits 1600 and 1700.  And there are statements for March,

5   April, and May, again, corresponding to 2019.  And I will send

6   in paper copies.

7            Number four, you ask for the missing texts from

8   December 15th, 2018 to January 17th, 2019.  The texts that

9   correspond to that time period are in Government Exhibits 2

10  through 20, and you already have the hard copies of those

11  exhibits.

12           If you have any further questions or you want

13  something clarified, you can write me another note.  So please

14  go back and continue your deliberations.

15           (Jury not present)

16           THE COURT:  Please be seated.

17           We'll let you know if we get any further notes.

18           MR. ROOS:  Thank you, your Honor.

19           We have everything printed.  Mr. Sobelman is just

20  going to show defense counsel.  And once they agree that it's

21  the statements for the relevant period, we'll give it to one of

22  your clerks to give to the jury.

23           THE COURT:  All righty.  Thank you.

24           (Recess pending verdict)

25           THE COURT:  Please be seated.

M62VSHET

          I have a second note from the jury.  I received it at
11 a.m.  It is signed by the foreperson and dated with today's
date.  I'm making it Court Exhibit No. 2.

          It states:  We the jury have unanimously requested
████████████████████  be replaced with an alternate juror for
the following:

          A violation of oath claiming:

          1.  Political bias, "government witch-hunt."

          2.  Antigovernment bias, "Government tried in S.D.N.Y.
because they knew people here vote differently.  Should have
been tried in a southern state."

          3.  Refusal to believe evidence is accurate, speaking
in hypotheticals about "what if more evidence exists."

          4.  "Tim Shea is a good man.  He doesn't beat his
wife."

          5.  "You can't just vote to lynch someone."

          6.  He has accused all 11 jurors of having a verdict
before the evidence was presented.  Not true at all.

          7.  Accused us all of being liberals.

          8.  Questioned the validity of testimony of the
prosecution evidence, venue.

          9.  Questioned the judge's interpretation.

          10.  Refuses to deliberate based on evidence.

          11.  Unable to understand and comprehend the charges
and instructions.

M62VSHET

1          Continued.  Continued from page 1.

2          12.  Juror claims, quote, other jurors are readily

3   convicting him, the juror, and shows the hangman noose because

4   jurors are New York residents.

5          13.  Juror brings topics outside scope of evidence

6   before prosecution/defense such as invoices, political parties'

7   conversation that have not been entered into evidence.

8          These items we have all confirmed to have occurred.

9          So I will hand out a copy of the note, and I would

10  like the parties to tell me how they would like me to proceed.

11          MR. ROOS:  We need maybe, like, ten minutes to talk

12  about it.

13          THE COURT:  To discuss this?

14          Let me state that certainly one approach would be to

15  invite ███████████, who is ███████████████████, to be questioned

16  by myself.  Another option is to question each of the jurors

17  with respect to these claims.  And, of course, I would want

18  your opinion ultimately as to whether or not this juror should

19  be replaced.  So I will give you the time that you need.

20          MR. ROOS:  Thank you, your Honor.

21          (Recess)

22          THE COURT:  Please be seated.

23          I'll hear from the government first.

24          MR. SOBELMAN:  Thank you, your Honor.

25          We would ask for the Court's indulgence for a little

M62VSHET

1  additional time.  We actually had a similar issue arise in a

2  trial I handled a few months ago before Judge Furman.  This

3  note is much more specific and particular; so we are going to

4  propose handling it in a slightly different way.

5          But there's a few Second Circuit cases that have dealt

6  with situations similar to this that we want to be able to send

7  to your Honor and have your Honor review, because it's a pretty

8  sensitive area; and inquiry, in the government's view, has to

9  be very targeted.

10          And so what we were hoping is to be able to go down to

11  our office, send you those cases very shortly, and also

12  potentially propose some questions for inquiry.  Obviously

13  we'll copy the defense on what we send, and then your Honor can

14  proceed as your Honor wishes, perhaps make an inquiry of that

15  juror.

16          THE COURT:  Mr. Meringolo.

17          MR. MERINGOLO:  Judge, I honestly don't know what our

18  position is.  We're going to research it.  I have an ethical

19  duty to the client.  I don't know if it's appropriate to ask

20  for a mistrial because of everything that's in here.  I just

21  don't know.  But we're going to do whatever is best for the

22  client.

23          The government, if they can provide hard copies of the

24  cases to us, we'll read them, and it is what it is.  We're not

25  going to go against the Second Circuit, but we're also going to

M62VSHET

1   preserve the client's rights.

2               THE COURT:  All right.  So that's a fine way of going

3   forward.  And I'll just wait to hear back from you.

4               MR. SOBELMAN:  Thank you, your Honor.  We'll do it as

5   expeditiously as we can.

6               Does your Honor prefer -- if we can email the Court

7   the cases and the list, is that acceptable?

8               THE COURT:  That's perfectly fine.

9               MR. SOBELMAN:  Thank you, your Honor.

10              THE COURT:  Yes.

11              (Recess)

12              THE COURT:  Would you please make your appearances.

13              MR. SOBELMAN:  Robert Sobelman and Nicolas Roos,

14   United States.  And we're joined at counsel table by Sunny

15   Drescher, a paralegal in our office.

16              Good afternoon, your Honor.

17              MR. MERINGOLO:  Good afternoon, your Honor.

18              John Meringolo, Anjelica Cappellino, and Clara Kalhous

19   for Timothy Shea, who's to my right.

20              THE COURT:  Please be seated.

21              First, I would like the court reporter to redact from

22   the transcript the name and the number of the juror who was

23   mentioned just before.

24              I received from the prosecution a list of questions

25   that they request that I ask.  And they state that I should

M62VSHET

1    say:  I'm going to ask you a series of questions.  I'm not

2    going to ask you -- this would be put to the juror in question.

3    I am not going to ask you about the substance of what you said

4    during deliberations or the substance of what other jurors said

5    during deliberations.  Please do not reveal your views of

6    whether the defendant is guilty or not guilty of any count or

7    your view of the evidence in this case.

8           1.   What is your view of what role politics or

9    political views should play in reaching a verdict in this case?

10          2.   Did you listen to and read my legal instructions?

11          3.   Did you understand them?

12          4.   What, if any, disagreements do you have with the

13    law as I have instructed you?

14          5.   I have instructed you on your duty to deliberate.

15    What do you understand that duty to be?

16          6.   Have you and are you continuing to consult with

17    your fellow jurors to deliberate with a view to reaching an

18    agreement?

19          7.   I've instructed you on how the government may

20    satisfy the venue requirement for each of the three counts in

21    the indictment.  What is your understanding of how the

22    government may satisfy that requirement?

23          8.   Without telling me your view, do you have feelings

24    favoring or disfavoring the defendant or the government, such

25    as sympathy or prejudice?  If so, what role should those

M62VSHET

1    feelings play in reaching a verdict in this case?

2              9.   What role does potential punishment have in

3    reaching a verdict in this case?

4              I understand that the defense does not want me to pose

5    any questions to the juror.

6              MR. MERINGOLO:  Yes, Judge.

7              Judge, for the record, we would respectfully request a

8    mistrial at this time.  We know -- based on this note, we know

9    way too much about the deliberations.  No one should know the

10   substance and secrecy of what's going on in any jury room.

11             The 11 jurors, whether intentional or accidental, it's

12   immaterial, but they violated your instructions, your Honor.

13   There is a lot of substantive information in these 13 points

14   with respect to what's going on in that jury room, and that

15   should never be because it should be secret.  There should be

16   no notes discussing any type of deliberation.

17             We respectfully submit that this individual is being

18   targeted and singled out by the 11 jurors.  In some of their

19   points he is actually deliberating.  Ms. Cappellino and

20   Ms. Kalhous pulled in *Thomas*, 116 F.3d 621-22.  If the record

21   evidence discloses any possibility that the request to

22   discharge stems from the jurors' view of the sufficiency of the

23   government's evidence, the Court must deny the request of the

24   questioning.

25             We believe the questioning of this juror is improper

M62VSHET

1    at this time.  We would ask the Court to bring in the jury and

2    give them an instruction to go back and deliberate, and let the

3    Court know or let all the parties know if they can agree or

4    not, because I believe they bypassed the deadlock.

5          It appears -- from the note, it appears to be 11 to

6    one for conviction; I mean that's pretty much common sense.

7    This individual is questioning the venue and, I guess, the

8    government's evidence at certain points; and other points, it

9    is what it is, Judge.

10         But I think that prior to questioning him, I think we

11   have to bring the whole jury in and tell them.  And if they are

12   deadlocked, then we give them the *Allen* Charge.  I don't think

13   to just question this juror all by himself, it puts -- it just

14   puts the onus on him as if he's being singled out, when they

15   are accusing him of things, and in their letter he's accusing

16   them of things.  And we shouldn't know any of this, Judge.

17         I've never dealt with an issue like this, so I

18   wouldn't know; I have nothing to go back on and cite.  But, you

19   know, I think it's pretty clear from the *Thomas* case that even

20   though he has a position -- you know, some of his position it

21   appears that he was deliberating, he just doesn't believe the

22   venue.  I'm not saying he's right or wrong, that's not for me

23   to say.

24         But respectfully, it should either be a mistrial,

25   because they disclosed way more than they should have, which

M62VSHET

1      violates the secrecy, and probably -- the 11 probably did this

2      innocently, accidentally, for whatever is going on in there,

3      which we know some things is going back and forth.  If that's

4      not the case, Judge, I think we should bring them all out and

5      just give them that instruction before we question this

6      particular juror.

7              Okay.  Thank you, Judge.

8              MR. SOBELMAN:  Your Honor, respectfully, we disagree.

9              We think under the cases that we sent your Honor,

10     including *Thomas,* the predicate has been laid in this note to

11     believe that the juror may be violating his oath and not

12     following your Honor's legal instructions by refusing to

13     deliberate, by disregarding your Honor's legal instructions.

14     He doesn't have the option to do that.  And we think your Honor

15     should clarify with the juror whether this impermissible way of

16     proceeding is what he's engaged in.  And then once your Honor

17     gathers the facts, we can discuss whether it's appropriate for

18     him to be dismissed or not.  We're not making an application

19     for him to be dismissed at this time, simply for your Honor to

20     make an inquiry about not the substance of the deliberations,

21     but whether the juror is following your Honor's instructions,

22     essentially.

23             Also, your Honor, just to be clear, the note, we think

24     defense counsel is misconstruing it.  It doesn't say there

25     are -- one could read certain inferences into it, but it

M62VSHET

1   doesn't say the relative positions of the jurors; it doesn't

2   say -- it doesn't delve into discussions of elements or

3   particular pieces of evidence.  And simply disclosing something

4   that's been discussed doesn't rise to the level of requiring or

5   necessitating a mistrial or any of that.

6          THE COURT:  Mr. Meringolo.

7          MR. MERINGOLO:  On number six, he, I guess meaning

8   ███████ has accused all -- I mean, he has accused all 11

9   jurors of having a verdict before the evidence was presented,

10  and they say that's not true.  So I think --

11         THE COURT:  But it doesn't say what verdict --

12         MR. MERINGOLO:  Well, he's --

13         THE COURT:  -- or whether all 11 have the same

14  opinion.

15         MR. MERINGOLO:  Well, they all say it's not true at

16  all.  He doesn't say specifically guilt or innocent.

17         THE COURT:  In other words, we can't conclude that all

18  of them are in favor of a guilty or a not guilty verdict.  He

19  could be accusing those who are in favor of guilty and those

20  who are in favor of not guilty of having reached that decision

21  before they started deliberating.

22         MR. MERINGOLO:  Right.  But they also write in 8, he's

23  questioning the validity of the testimony of the prosecution's

24  evidence and venue.  That's fine.  That means he's

25  deliberating, if he's questioning evidence.  I'm not saying

M62VSHET

1    he's right or wrong, but -- I'm not even saying what should be

2    even.  I'm just -- we know too much from this note.  We

3    shouldn't know any of this.

4            THE COURT:  Right.  I think that a number of the

5    government's questions may elicit comments concerning the

6    sufficiency of the evidence.  And so I'm going to be calling

7    the jurors back in, I'm going to be reading the note to them.

8    I will then excuse them to the jury room.  And then I, as well

9    as the attorneys, will go into the robing room, and I will ask

10   some questions of the juror in question.

11           And this is what I'm going to say:

12           I'm going to say:  I'm going to ask you some

13   questions.  Under the law, the deliberations of a jury are

14   secret.  This secrecy is extremely important.  So in answering

15   my questions, do not tell me what you said during

16   deliberations.  Do not tell me what the other jurors said.  Do

17   not tell me your opinion or the opinion of the other jurors

18   about whether the defendant is guilty or not guilty.  Do not

19   tell me your opinion about the sufficiency of the evidence.

20           Please let me finish asking questions before you begin

21   speaking.

22           Do you have any biases or personal views that prevent

23   you from being a fair and impartial juror in this case, without

24   saying anything about the evidence or the jury's deliberations?

25   What are they?  What is the origin of these views?

M62VSHET

1          As I stated during jury selection, you are required to

2     accept the law as I explain it to you.  It is your job to

3     determine the facts subject to my explanation of the law.  Even

4     if you disagree with me or the law, can you follow that

5     instruction?

6          As I stated before deliberations, you are required to

7     consult with your fellow jurors and to deliberate with a view

8     to reaching an agreement.  You must also decide the case for

9     yourself, but only after an impartial consideration of the

10    evidence with your fellow jurors, again, without saying

11    anything about the jury's deliberations or your view of the

12    sufficiency of the evidence.  Can you follow those

13    instructions?

14         So if you'd have the jurors brought in, please.

15              MR. MERINGOLO:  Judge, for the record --

16              THE COURT:  One moment, please.  If you'll just hold

17    off for a moment, please.  One moment.

18              MR. MERINGOLO:  I'm sorry.

19         Judge, for the record, we have to object.

20              MR. ROOS:  I'm sorry, for the record, what's the

21    objection?

22              MR. MERINGOLO:  Object to any of the questions.

23              MR. ROOS:  Just so we understand, what's the basis of

24    the objection?

25              THE COURT:  He just gave his argument as to why he

M62VSHET

1    does not believe I should ask the questions.

2              MR. ROOS:  Understood, your Honor.  I was just trying

3    to understand if Mr. Meringolo was objecting generally to the

4    questioning or to your Honor's questions, which were obviously

5    different than the government's questions, whether it's

6    substance or the entire procedure.

7              MR. MERINGOLO:  For the record, Judge, we'll just be

8    broad on any questions.  We object.  We have to do this.

9              THE COURT:  All righty.

10             If you'll have the jurors come in, please.

11             (Jury present)

12             THE COURT:  Do the parties agree that all jurors are

13   present and properly seated?

14             MR. SOBELMAN:  Yes, your Honor.

15             MR. MERINGOLO:  Yes, your Honor.

16             THE COURT:  Please be seated.

17             Members of the jury, I received a second note from you

18   which I'm going to read.  It says:

19             We the jury have unanimously requested — and I'm not

20   going to mention the number or the name of the juror at this

21   time — that that individual be replaced with an alternate juror

22   for the following:  A violation of oath claiming:

23             1.  Political bias --

24             MR. SOBELMAN:  Your Honor, I'm so sorry to interrupt,

25   but I'm not sure whether your Honor intended for the alternate

M62VSHET

1    jurors to be present for this colloquy.

2              THE COURT:  If you'll step up please.

3              (At sidebar)

4              THE COURT:  So I generally do not exclude the

5    alternates when reading a jury note.  What would be the ground

6    for doing it?

7              MR. SOBELMAN:  We're just concerned that if your Honor

8    is then going to -- let's say the way this plays out is this

9    juror is removed for some reason.  If your Honor ends up

10   removing him and one of the alternates is introduced to the

11   jury and they have to begin deliberating again, we just want to

12   make sure there's no issue with that juror's understanding or

13   recollection being tainted by this process.

14             If defense has no objection, I don't think we have an

15   issue.  We just wanted to raise it.  I'm sorry for not thinking

16   of it until your Honor began to read the note.

17             THE COURT:  Is your concern that the note would reveal

18   something that the alternates should not hear?

19             MR. SOBELMAN:  Your Honor, there are comments about

20   the deliberations, although obviously not the sort of key

21   substance as we just discussed on the record.  But generally,

22   if an alternate is placed on a deliberating jury, the jury is

23   instructed they have to start the deliberations over again.

24             I just don't know whether your Honor would want the

25   alternate to have heard this process and the substance of this

837

M62VSHET

1    particular note, depending on how things play out.  Again, we

2    don't have a specific concern; we just want to make sure it's

3    something the parties had been aware of and the Court had

4    thought through before we proceeded.

5           MR. MERINGOLO:  For the record, your Honor, we would

6    reiterate that the note -- because of this issue and because of

7    the sidebar, we would reiterate that the note is problematic

8    and violated the sanctity of the jury, and we would move for a

9    mistrial again.  I don't believe that -- I don't know of

10   whether the jurors should listen to this or not.  Every note --

11   Judge, this is the first time this happened.  Every note is

12   always read, if there are alternates, they hear it.  But this

13   is a little different note.

14          Our position is the mistrial on the note.  So I guess

15   we'll do whatever -- you know, that's been overruled; so we'll

16   do whatever the Court feels just with the alternates, right?

17          MS. CAPPELLINO:  We'll just reiterate, your Honor, and

18   we can understand the government's interpretation and the

19   Court's, but I do believe a reasonable reading of the note

20   would strongly suggest it is very firmly 11-1 for a conviction.

21   We believe that the alternates should not be present for the

22   reading of the note since that may create, I think, obvious

23   bias.

24          THE COURT:  Certainly my excluding the alternates

25   would suggest that I agree with that position.

1          MR. SOBELMAN:  We don't think that that's the way the

2     note reads, but it does say things about the way in which the

3     jurors are interacting with each other.

4          And again, we don't have a firm view of whether the

5     alternates should be present or not.  Often alternates aren't

6     kept waiting at the courthouse; they are sent home during

7     deliberations anyway, so this issue doesn't arise very often.

8          But for this particular note, we just want to make

9     sure the Court had considered whether there might be an issue

10    with them hearing the note.  Again, we don't have a particular

11    concern, because your Honor has and will continue to instruct

12    them on how to properly deliberate, and we assume they will

13    follow those instructions.  But this is sort of an unusual note

14    and we just wanted to make sure the Court was comfortable with

15    them being in the room.

16         THE COURT:  But you're not taking any position.

17         MR. ROOS:  I think if the defense has no objection,

18    then we are fine with it.

19         MR. SOBELMAN:  It wasn't clear whether they objected

20    to that.

21         MS. CAPPELLINO:  We clearly object to them being here.

22    I think the note is very clear.  This man is apparently being

23    quoted saying, You can't just vote to lynch someone.  Then the

24    next number says -- he accuses all 11 jurors of having a

25    verdict before the evidence presented.  Granted, he does not

M62VSHET

1    specifically say which way he's voting, but I do not believe

2    that this is subject to interpretation.  In that case I do

3    believe it prejudices the alternates that are listening to

4    this.  They know what they are walking into.  They wrote this

5    note.  I do not see any other reason --

6              MR. SOBELMAN:  Regardless of the reading of the note,

7    we would prefer that the alternates not be present for the

8    note, as we don't think -- they are not sitting on the jury

9    currently, and there's no real benefit to them, I think, to

10   hearing the note be read.  In the event that one of them is

11   placed on the jury, deliberations will start again and the note

12   will sort of be in the past.

13             THE COURT:  All right.  I will excuse them.

14             MR. SOBELMAN:  Thank you, your Honor.

15             (In open court)

16             THE COURT:  I'm going to excuse the alternate jurors

17   from this particular aspect of the proceeding, but you are to

18   remain in the courthouse.

19             (Alternate jurors not present)

20             THE COURT:  I'm going to start the note again.

21             We the jury have unanimously requested that a certain

22   individual juror be replaced with an alternate juror for the

23   following:  A violation of oath claiming:

24             1.  Political bias, "government witch-hunt."

25             2.  Antigovernment bias, "Government tried in S.D.N.Y.

M62VSHET

because they knew people here vote differently.  Should have

been tried in a southern state."

       3.  Refusal to believe evidence is accurate.  Speaking

in hypotheticals about "what if more evidence exists."

       4. "Tim Shea is a good man.  He doesn't beat his

wife."

       5. "You can't just vote to lynch someone."

       6.  He has accused all 11 jurors of having a verdict

before the evidence was presented.  Not true at all.

       7.  Accused us all of being liberals.

       8.  Questioned the validity of testimony of the

prosecution evidence, venue.

       9.  Questioned the judge's interpretation.

       10.  Refuses to deliberate based on evidence.

       11.  Unable to understand and comprehend the charges

and instructions.

       Continued.

       Continued from page 1.

       12.  Juror claims "other jurors are readily convicting

him (the juror) and shows the hangman noose because jurors are

New York residents."

       13.  Juror brings topics outside the scope of evidence

(before prosecution/defense) such as invoices, political

parties' conversation that have not been entered into evidence.

       These items we have all confirmed to have occurred.

M62VSHET

1          And it's signed by the foreperson and dated today's

2     date.

3          I'm going to excuse the jurors at this point.  You'll

4     be going back into the jury room and you will wait my further

5     instructions.  And while you're waiting, do not deliberate.

6     Don't discuss the case amongst yourselves or with anyone else.

7     Do not deliberate until I tell you to start deliberating again.

8          (Jury not present)

9          THE COURT:  So now the attorneys and Mr. Shea will

10    join me in the robing room.

11          (In the robing room)

12          (Juror present)

13          THE COURT:  Please take a seat right here.  Please be

14    seated.  You can remove your mask.

15          ███████████████, is that your name?

16          JUROR:  Yes, ma'am, appreciate it.

17          THE COURT:  I'm going to ask you some questions.

18          Under the law, the deliberations of a jury are secret.

19    The secrecy is extremely important.  So in answering my

20    questions, do not tell me what you said during deliberations.

21    Do not tell me what the other jurors said.  Do not tell me your

22    opinion or the opinion of the other jurors about whether the

23    defendant is guilty or not guilty.  Do not tell me your opinion

24    about the sufficiency of the evidence.

25          I'm going to repeat that, what I just said, because

1   it's extremely important that you not say certain things.

2              Do not tell me what you said during deliberations.  Do

3   not tell me what the other jurors said.  Do not tell me your

4   opinion or the opinion of the other jurors about whether the

5   defendant is guilty or not guilty.  Do not tell me your opinion

6   about the sufficiency of the evidence.  Of course, you are not

7   to tell me about the others' opinions concerning the

8   sufficiency of the evidence either.

9              Please let me finish asking my questions before you

10  answer.

11             Do you have any biases or personal views that prevent

12  you from being a fair and impartial juror in this case?

13             JUROR:  No, I don't.

14             THE COURT:  As I said during jury selection, you are

15  required to accept the law as I explain it to you.  Your job is

16  to determine the facts subject to my explanation of the law,

17  even if you disagree with me or the law.

18             Can you follow that instruction?

19             JUROR:  Yes, I do.

20             THE COURT:  As I said earlier, you are required to

21  consult with your fellow jurors and to deliberate with a view

22  to reaching an agreement.  You must also decide the case for

23  yourself, but only after an impartial consideration of the

24  evidence with your fellow jurors.

25             Again, without saying anything about the jury's

M62VSHET

1    deliberations or your view of the sufficiency of the evidence,

2    can you follow those instructions?

3               JUROR:  Yes, I do.

4               THE COURT:  Okay.  Thank you.  You may step out.

5               (Juror not present)

6               THE COURT:  So ▮▮▮▮▮▮▮▮▮▮▮▮ has not said anything

7    that would disqualify him as a juror, and I am not going to

8    replace him.  I'm going to bring the jurors in and tell them to

9    continue deliberating.

10              (In open court)

11              THE COURT:  Would you have the jurors return, please.

12              (Jury present)

13              THE COURT:  Do the parties agree that all jurors are

14   present and properly seated?

15              MR. SOBELMAN:  Yes, your Honor.

16              MR. MERINGOLO:  Yes, Judge.

17              THE COURT:  Please be seated.

18              Members of the jury, I want you to know that I have

19   considered your note and I'm directing you to return to the

20   jury room and recommence deliberations.

21              (Jury not present)

22              THE COURT:  All righty.

23              So I will let you know if we get another note.

24              MR. SOBELMAN:  Thank you, your Honor.

25              (Recess pending verdict)

M62VSHET

1          THE COURT:  Please be seated.

2          I have received a third note from the jury.  It came

3     in at 3:40 p.m.  I have marked it as Court Exhibit No. 3.  It

4     is signed and dated by the foreperson.

5          It says:  We the jury, we cannot agree on a unanimous

6     verdict on any of the counts.  Please advise.  Should each

7     juror complete a verdict form or should we submit the general

8     verdict form?

9          Do you want me to give an *Allen* charge?

10          MR. MERINGOLO:  The defense does not, your Honor.

11          MR. SOBELMAN:  The government does, your Honor.  We're

12     happy to propose some language if you'll give us a few minutes.

13          THE COURT:  I'll consider it.

14          MR. SOBELMAN:  Give us a few minutes?

15          THE COURT:  Yes.

16          MR. SOBELMAN:  Should we send it to your chambers in a

17     Word document, sort of like the questions?

18          THE COURT:  You can do that.

19          MR. SOBELMAN:  Okay.  We will, your Honor.  Thank you.

20          THE COURT:  Yes.

21          (Recess)

22          THE COURT:  Please be seated.

23          All right.  Thank you for your submissions.  I'm going

24     to have the jurors come in and address them.

25          MR. MERINGOLO:  Your Honor, we just want to quickly

M62VSHET

1    object to any *Allen* charge.  We believe this is a secondary

2    note of what the jury is intending to do.  Social media now is

3    having the gentleman number four's name all over it, and we

4    believe that could be a big problem overnight, whether people

5    contact him about that, and obviously this is a politically

6    charged issue.

7              So we respectfully -- we've been waiting here for 40

8    minutes for the *Allen* charge from the government to send

9    something.  We think the jury is done and, in the interest of

10   their time and not coming back tomorrow morning, we would

11   request that the Court enter a mistrial order.

12             THE COURT:  I'm going to be giving a charge.

13             (Jury present)

14             THE COURT:  Do the parties agree that all jurors are

15   present and properly seated?

16             MR. SOBELMAN:  Yes, your Honor.

17             MR. MERINGOLO:  Yes, your Honor.

18             THE COURT:  Please be seated.

19             I have another note from the jury.

20             It says:  We the jury, we cannot agree on a unanimous

21   verdict on any of the counts.  Please advise.  Should each

22   juror complete a verdict form or should we submit the general

23   verdict form?

24             A verdict form would only be used if and when you

25   reach a unanimous verdict.  So that would only be one.

M62VSHET

1          I understand from your note that you have been unable
2     to reach a unanimous verdict.  As I told you in my initial
3     instructions, any verdict you return must be unanimous.  If you
4     cannot reach a unanimous agreement, you cannot return a verdict
5     and a new trial will have to be scheduled before a different
6     jury.
7          It is not uncommon for a jury to have difficulty
8     initially in reaching a unanimous verdict.  It is not uncommon
9     for a jury to believe that they will never be able to reach a
10    unanimous verdict.  But after further deliberation, most juries
11    are able to reach a unanimous verdict.  And so I'm going to ask
12    you to continue your deliberations.
13         But before I do, I want to remind you that when this
14    trial began, many prospective jurors were called and
15    questioned.  Many were excused for one reason or another.  But
16    you were selected to serve.  That means that of all the
17    prospective jurors called in this case, you were the ones in
18    whom both sides expressed confidence.  Both sides were
19    convinced that each of you would be fair and impartial; that
20    each of you would listen carefully to the evidence, to the
21    arguments, and to the law; and that each of you would
22    deliberate with your fellow jurors and work hard to reach a
23    unanimous verdict that was consistent with the law and the
24    evidence.
25         I continue to have confidence in you.

M62VSHET

1        At the beginning of the case, you each took an oath to

2   well and truly try this issue and a true verdict give according

3   to the law and the evidence.  Pursuant to that oath, each of

4   you has a duty to deliberate.  That entails a duty to consult

5   one another, to consider each other's views with an open mind,

6   and to discuss the evidence with the objective of reaching a

7   just verdict.  Under your oath as jurors, you are not to be

8   swayed by sympathy, emotion, or political views or opinions.

9   You should be guided solely by the evidence presented during

10  the trial and the law as I give it to you, without regard to

11  the consequences of your decision.

12       You've been chosen to try the issues of fact and reach

13  a verdict on the basis of the evidence or lack of evidence.  If

14  you let sympathy, emotion, or political views or opinions

15  interfere with your clear thinking, there is a risk that you

16  will not arrive at a just verdict.  You must make a fair and

17  impartial decision so that you will arrive at the just verdict.

18       You are a superb jury.  If we have a retrial of this

19  case before a new jury, we could not find people any more

20  intelligent, reasonable, hardworking, or fair than you are.  I

21  want to emphasize that.  I'm not asking any juror to violate

22  his or her conscience or to abandon his or her best judgment.

23  Any verdict you reach must be the verdict of each juror and not

24  mere acquiescence in the conclusion of others.

25       I'm asking you to continue to deliberate and to resume

M62VSHET

1    your deliberations with an open mind.  Start with a fresh

2    slate.  Do not feel bound by how you felt before.  Have the

3    courage to be flexible.  Be willing to change your position if

4    a reevaluation of the evidence convinces you that a change is

5    appropriate.  Do not adhere to an opinion or conclusion that

6    you no longer believe is correct.

7             However, if you are convinced that you are correct,

8    you may stand your ground and not change your position.  Be

9    honest with yourselves and with the other jurors.  Listen to

10   the other jurors and evaluate what they have to say.  Do not

11   let anything prevent you from carefully considering what they

12   say.  Remember that each of you made a commitment when you

13   became a juror that requires you to reason and deliberate

14   together to reach a fair and just verdict based only on the

15   evidence.  Of course, while a discussion among jurors may at

16   times be intense, I am sure you understand that it can and

17   should also be respectful of the feelings and opinions of the

18   other jurors.

19            I urge that each of you make every possible effort.

20   Make certain that the decision you reach is based solely on the

21   evidence and the law and is not influenced or affected by

22   sympathy for or against any individual or for or against either

23   side.  Be sure that no baseless speculation, no bias or

24   prejudice for or against any individual enters into your

25   deliberations.

M62VSHET

1          If I can help you in any way, whether through a

2     readback or through clarification or restatement of the law, I

3     am ready to do so.  Again, please make every effort, consistent

4     with your conscience and the evidence in this case, to

5     harmonize your views and decisions with those of the other

6     jurors to the best of your ability.  I ask you to apply common

7     sense and good judgment.

8          I remind you that your verdict must be unanimous.

9     Further, you are reminded that if at any time you are not in

10    agreement, you are not to reveal the positions of the jurors —

11    including the split of the vote — to anyone, including me, at

12    any time during your deliberations.

13         Finally, I appreciate that the process of

14    deliberations can be difficult.  Frankly, it wasn't intended to

15    be easy.  So in accord with your oath, please continue to

16    deliberate with a view toward reaching a verdict.

17         I will excuse you for the day.  You'll return tomorrow

18    at 9 o'clock, as usual.  And when Juror No. 1 states that the

19    deliberations are to recommence, you will recommence

20    deliberating.  But you are not to discuss the case now amongst

21    yourselves or with anyone else; you are not to permit anyone to

22    discuss the case in your presence; and you are not to read or

23    listen to or view any form of news or other information

24    concerning this case.

25         Have a good evening.

M62VSHET

1              (Jury not present)

2              THE COURT:  Please be seated.

3              Is there anything further for today?

4              MR. SOBELMAN:  Not from the government, your Honor.

5              MR. MERINGOLO:  Your Honor, just for the record, I

6     have to object to that *Allen* charge based on *U.S. v. Hayes*, (2d

7     Cir. 2013).

8              Thank you much, Judge.

9              THE COURT:  All righty.  Have a good evening.

10             (Adjourned to June 3, 2022 at 9 o'clock a.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25