M63VSHET

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,              New York, N.Y.

 4            v.                            20 Cr. 412 (AT)

 5   TIMOTHY SHEA,

 6               Defendant.                 Trial

 7   ------------------------------x

 8                                          June 3, 2022
                                            11:00 a.m.
 9

10   Before:

11                  HON. ANALISA TORRES,

12                                          District Judge
                                              and a Jury
13

14                       APPEARANCES
15
     DAMIAN WILLIAMS
16        United States Attorney for the
          Southern District of New York
17   BY:  NICOLAS T. ROOS
          ROBERT B. SOBELMAN
18        Assistant United States Attorneys

19   MERINGOLO & ASSOCIATES P.C.
          Attorneys for Defendant
20   BY:  JOHN C. MERINGOLO
          ANGELICA B. CAPPELLINO
21        CLARA S. KALHOUS

22

23   Also Present:  Sunny Drescher, Paralegal Specialist, USAO

24

25
```

M63VSHET

```
 1              (Trial resumed; jury not present)

 2              THE COURT:  Good morning.

 3              Please make your appearances.

 4              MR. SOBELMAN:  Robert Sobelman and Nicolas Roos for

 5    the United States.  We're joined by Sunny Drescher, a paralegal

 6    in our office.  Good morning, your Honor.

 7              MR. MERINGOLO:  Good morning, your Honor.

 8              John Meringolo, Anjelica Cappellino, and Clara Kalhous

 9    for Timothy Shea, who's to my right.

10              THE COURT:  Please be seated.

11              I have another note from the jury.  I received it at

12    10:42.  It states:  We the jury request printout of all bank

13    statements from 2018 to 2020.  This format will be easier than

14    on the TV screen.

15              It's signed by the foreperson and dated with today's

16    date.

17              MR. ROOS:  Okay.  That's going to take a little bit;

18    pretty voluminous, but we'll get right to work on it.

19              THE COURT:  Okay.  Thank you.

20              MR. ROOS:  I'm sorry, your Honor, the date range

21    again?

22              THE COURT:  It says 2018 to 2020.

23              MR. ROOS:  Okay.

24              THE COURT:  I've made that Court Exhibit No. 4.

25              (Recess pending verdict)
```

M63VSHET

1          THE COURT:  Please be seated.

2          I've received another note from the jury; came in at

3     12:10.  I'm making it Court Exhibit No. 5.

4          It states:  We the jury request clarification from

5     judge.  Re:  Regarding falsification of documents charge.  If

6     there exists a signed document on laptop that makes an

7     agreement between Tim Shea and Brian Kolfage regarding purchase

8     of email list for $150,000 entered in March 2019.

9          Now in October 2019, Tim Shea and Brian Kolfage simply

10    memorialized the agreement, quote, again — it seems to me an

11    end quote — because they do not have access to the original

12    agreement.  Is it still a crime they created this document in

13    October 2019 and signed it and dated it as March 2019?

14          Is it a crime?

15          Or is it a crime they created the document in October

16    2019 and signed and dated it and made it look like it was

17    signed in March 2019?

18          Irrespective, whether or not another document existed

19    in March 2019 somewhere, the prosecution did not seek and find.

20          It's signed by the foreperson and dated with today's

21    date.

22          So I'm going to hand this down to you so that you can

23    review it and let me know how you'd like me to respond.

24          MR. SOBELMAN:  Thank you, your Honor.

25          THE COURT:  In the meantime, I understand that the

M63VSHET

1    Xeroxing is underway.  You're gathering the documents that they

2    requested.  I think that because it's been a long time, that I

3    should bring them in and just let them know that the documents

4    are voluminous, and that's the reason that it's taking awhile.

5    I can also read out the second note or I can wait until you've

6    reviewed this note and then bring them in.

7              MR. SOBELMAN:  Your Honor, we've completed printing

8    about half the bank records; they're with defense counsel.  I'm

9    hopeful their review is almost complete and we can send those

10   back.  The other half we're printing now on three different

11   printers at the same time.

12             I think we would propose waiting a few minutes to let

13   us confer about this note and maybe we can even get them some

14   of the bank records in the meantime before they come out.

15             THE COURT:  Okay.

16             MR. SOBELMAN:  Thank you, your Honor.

17             May we step out for a few moments?

18             THE COURT:  You may.

19             MR. SOBELMAN:  Thank you.

20             (Pause)

21             THE COURT:  Are you ready?

22             MR. SOBELMAN:  Yes, your Honor.

23             THE COURT:  It looks like Mr. Roos is not here.

24             MR. SOBELMAN:  Mr. Roos had another matter he has to

25   tend to.  This is Daniel Elsen-Rooney.  He's an intern in our

M63VSHET

1   office.

2          THE COURT:  All righty.  Go ahead.

3          MR. SOBELMAN:  Your Honor, let's wait for

4   Mr. Meringolo.

5          THE COURT:  Oh, I'm sorry.  I thought he was there.

6          MR. SOBELMAN:  That's okay.

7          THE COURT:  All righty.

8          I'll hear from the government.

9          MR. SOBELMAN:  Yes, your Honor.

10         After considering the note, we have the following

11  suggestion for how to respond:

12         We take it there are basically three points here.  As

13  to the first, which we read as a factual question, we would

14  suggest that the Court offer, if the jury wishes, to provide a

15  copy of the transcript of Andrew Crain's testimony, which I

16  think would answer that question.

17         THE COURT:  All right.  So let's just go over what the

18  first item is.

19         MR. SOBELMAN:  Yes, your Honor.

20         THE COURT:  If there exists a signed document on

21  laptop that makes an agreement between Tim Shea and Brian

22  Kolfage regarding purchase of email list for 150,000 entered in

23  March 2019.  I don't know what the question is.  How do you

24  interpret that?

25         MR. SOBELMAN:  We agree it's not clear.  But to us it

M63VSHET

1    seems like a factual question about whether there was or is

2    such a document on that laptop.  We think that to the extent

3    the record has information relevant to answer that question,

4    it's found in the testimony of Andrew Crain.

5            THE COURT:  What did Crain say?

6            MR. SOBELMAN:  Crain found no -- I believe no such

7    agreement on a laptop, but Crain's testimony also made clear

8    that we do not have access to Tim Shea's laptop, I believe.  I

9    don't remember whether he said that or not, but there's no

10   evidence on what's on the defendant's laptop, for example.

11           THE COURT:  So are you asking me to tell them how I

12   interpret the question?

13           MR. SOBELMAN:  No, your Honor.  I don't think we

14   should try to interpret the question.  It's not clear.

15           It appears to us to be a factual question about what's

16   on these -- what's on a device, not clear which device.  But I

17   think all I would suggest is to say to the jury with respect to

18   the first one, if it would be of assistance to the jury, we can

19   provide you a copy of the transcript of the testimony of Andrew

20   Crain and sort of leave it there.  If they don't want it, that

21   would be fine; they are not asking for it, but it might be of

22   assistance to them.  There's not other evidence in the record

23   that would bear on whatever factual question is being asked

24   there.

25           THE COURT:  One moment.

M63VSHET

1          I don't know whether this is a freestanding question

2     or whether it is part of the question.  In other words, asking

3     us to assume there exists a signed document, and then now in

4     October 2019, and then is it a crime.  I think that's one way

5     of interpreting it.

6          MR. SOBELMAN:  There's no evidence that a document

7     existed back in March 2019 on a laptop or otherwise.  So that's

8     why I read it as a question.

9          But I agree with your Honor that it certainly could be

10    read multiple ways.  But that's why I think offering the jury

11    the testimony, if they want it.  And if it's not a factual

12    question and it's a hypothetical, then I assume they'll decline

13    that invitation.

14          THE COURT:  Well, are you suggesting that I ask them

15    to clarify whether it's a factual question or whether it's a

16    hypothetical?  Are they asking me to assume something?

17          MR. SOBELMAN:  I think we'd like to avoid a lengthy

18    back-and-forth with the jury, but we don't have an objection if

19    your Honor wants to clarify what's written.

20          Perhaps I could explain our thinking on the second and

21    third points, that may be informative.

22          THE COURT:  Okay.

23          MR. SOBELMAN:  With respect to the second point, it

24    appears to ask, sort of, in two circumstances whether that

25    would constitute a crime under Count Three.

M63VSHET

1        We would request that the Court simply direct the jury

2   to the jury instructions for Count Three and make clear that

3   those are the elements.  If they find the elements are met,

4   it's a crime.  If they don't find the elements are met, it's

5   not a crime.  I don't think either hypothetical is able to be

6   answered with a yes or no.

7        THE COURT:  Are you suggesting that I reread the

8   instructions or simply direct them to where the instructions

9   are in the jury charge?

10        MR. SOBELMAN:  We defer to the Court on that.

11        But they do have a copy of the charge with them and

12   I'm sure are able to read it themselves.  But if the Court

13   thinks it would be helpful for the jury to reread it, we

14   certainly would have no objection.

15        THE COURT:  Okay.  Go ahead.

16        MR. SOBELMAN:  With respect to the last point that

17   begins "Irrespective," we would suggest that, similarly to the

18   first point, the Court offer Andrew Crain's testimony to the

19   extent it's a factual question; and that the Court also point

20   the jury to the equally available evidence instruction so that

21   that point is clear with respect to what might exist or any

22   speculation that's going on.

23        THE COURT:  So when you refer to the third item, are

24   you referring to the "irrespective"?

25        MR. SOBELMAN:  Yes, your Honor.  I read the sort of

M63VSHET

1    middle two as one bucket, which is just requiring a pointing

2    back to the legal instructions.  It appears those are two

3    different -- again, a little difficult to understand, two

4    different hypotheticals saying is this a crime if this is the

5    fact we find.  And I think the facts are not complete enough in

6    order to enable the Court to answer it.

7         THE COURT:  So it says whether or not another document

8    existed in March 2019 somewhere, the prosecution did not search

9    and find.  Whether or not a document existed certainly goes to

10   a question of fact, but it could be also a question of fact as

11   to whether or not the prosecution searched for such a document.

12        MR. SOBELMAN:  And to the extent that question is

13   answered by the record, it would be in Andrew Crain's

14   testimony, which is why we would suggest the Court offer a copy

15   of his testimony with respect to that one; and then we would

16   also suggest that the equally available evidence instruction be

17   pointed to just to make sure the jury understands that point in

18   considering this question.

19        THE COURT:  Where is that instruction, equally

20   available evidence?

21        MR. SOBELMAN:  It's paired with the uncalled witnesses

22   instruction.

23        THE COURT:  So with respect to if there exists a

24   signed document and now in October 2019, you're recommending

25   that I direct them to the testimony of Andrew Crain?  I'm not

M63VSHET

1    quite sure where it is you think that the elements of Count

2    Three come in.

3          MR. SOBELMAN:  So, your Honor, if we look at it as, I

4    guess, four bullet points or four dash lines, the first

5    being -- starting "If there exists"; second, "Now in October";

6    third, "Or is it a crime"; fourth, "Irrespective," with respect

7    to bullets one and four, we think Mr. Crain's testimony might

8    be relevant to answering their inquiry.  And with respect to

9    bullets two and three, we think the Court should direct them to

10   the Court's instructions on Count Three.  And then with respect

11   to bullet four, we ask the Court also direct their attention to

12   the equally available evidence instruction.

13         THE COURT:  With respect to one, you're asking me to

14   direct them to Crain's testimony, also with respect to number

15   four; and also that I refer them with respect to number four to

16   the equally available testimony; and with respect to two and

17   three to the elements of the crime.

18         MR. SOBELMAN:  Yes, your Honor.  Whether your Honor

19   wants to direct them to testimony or simply offer that we could

20   send in the testimony, we defer to the Court.  I think either

21   way would be appropriate.

22         THE COURT:  Mr. Meringolo?

23         MR. MERINGOLO:  Judge, I'd have to object to any

24   testimony going back into the jury room that they didn't

25   request.  I think your Honor should just direct them to the

M63VSHET

1 | jury instructions.

2 |      And we would also at this point object to the Court,

3 | with the equal available evidence, because in this particular

4 | case, I guess there were laptops seized that the government

5 | didn't go in.  And there are, I believe -- it may have been

6 | Mr. Crain actually that says that there were 40 -- or 30 or 40

7 | devices that he went through.

8 |      But I don't think it's proper to send any testimony

9 | back into a jury room that the jury does not request.

10 |      THE COURT:  Well, what I understand Mr. Sobelman to be

11 | saying is that I call their attention to the fact that there

12 | was testimony concerning this matter given by Mr. Crain.  And

13 | if they should want that, that can be sent to them.

14 |      MR. MERINGOLO:  We would object to that for the

15 | record, Judge.  They know; they were here.  I mean, they are

16 | diligently -- this is -- they are deliberating more time than

17 | the trial, the evidence was being put in.  So they know

18 | everything that's going on here.  And I don't think we should

19 | specifically direct them to specific testimony that they didn't

20 | request.  I think your instructions are sufficient enough on

21 | the falsification.

22 |      MR. SOBELMAN:  Your Honor, respectfully, the jury is

23 | obviously working very hard.  They've been at this a long time.

24 | They are asking for the Court's guidance.  There's not a lot of

25 | guidance I think the Court can give here, but there are a

M63VSHET

1    couple of things that the Court can and should say in order to

2    assist them in trying to reach a just verdict.

3            THE COURT:  All right.

4            Let's have the members of the jury brought back in.

5            (Jury present)

6            MR. SOBELMAN:  Sorry, your Honor.

7            I think given the substance of the note, again, we

8    would suggest to the Court to consider whether the alternates

9    should be present or not for this particular colloquy.

10            THE COURT:  I've considered that.

11            Do the parties agree that all jurors are present and

12   properly seated?

13            MR. SOBELMAN:  Yes, your Honor.

14            MR. MERINGOLO:  Yes, Judge.

15            THE COURT:  Please be seated.

16            I've received two notes since yesterday.

17            Good afternoon.  I should have started with that.

18            I received a note at 10:42, in which you say:

19            We the jury request printout of all bank statements

20   from 2018 to 2020.  This format will be easier than on the TV

21   screen.

22            It's signed by the foreperson and dated today's date.

23            These documents are very voluminous and we are in the

24   process of printing them out.  And we will get them to you.  We

25   started immediately when we got the note, and we'll get them to

M63VSHET

1   you as soon as we can.

2          I received another note -- that note that I just

3   mentioned was Court Exhibit No. 4.

4          I received another note at 12:10 p.m., also signed by

5   the foreperson and dated with today's date.  And I'm making

6   that Court Exhibit No. 5.

7          It says:  We the jury request clarification from

8   judge.  Re:  Regarding falsification of documents charge.

9          And then there are four bullets.

10         The first bullet:  If there exists a signed document

11  on laptop that makes an agreement between Tim Shea and Brian

12  Kolfage regarding purchase of email list for $150,000 entered

13  in March 2019.

14         There was only one witness who testified as to the

15  existence of documents on devices, and that was Andrew Crain.

16  And if you should wish to read his testimony, I can offer that

17  to you.

18         And the second bullet point:  Now in October 2019, Tim

19  Shea and Brian Kolfage simply memorialized the agreement again

20  because they do not have access to the original document.  Is

21  it still a crime they created this document in October 2019 and

22  signed it and dated it as of March 2019?  Is it a crime?

23         The third bullet point:  Or is it a crime they created

24  the document in October 2019 and signed and dated it and made

25  it look like it was signed in March 2019?

M63VSHET

1          So with respect to that, I direct you to the elements

2     of the crime.  And the elements of the crime appear on page 39

3     of the jury instructions, paragraph 18; and that goes through

4     page 43, 39 to 43.

5          The last bullet point:  Irrespective, whether or not

6     another document existed in March 2019 somewhere, the

7     prosecution did not search and find.

8          Again, the question of what documents existed was

9     addressed in the testimony of Mr. Crain.  And if you would like

10    that, I can offer that to you.

11         Also I want to call your attention to instruction

12    paragraph number 28, and that is on page 47.  And it's called

13    "Uncalled Witnesses and Evidence Equally Available to Both

14    Parties."

15         And that is all I have with respect to this note.

16         So I'm going to ask you to continue your

17    deliberations.  Shortly you're going to get some of the

18    documents that you requested earlier, and we are working on

19    getting all of them to you as soon as possible.

20         (Jury not present)

21         THE COURT:  You may be seated.

22         So I will hear you, Mr. Meringolo, with respect to

23    your motion.

24         MR. MERINGOLO:  We will rely on the papers, Judge.

25         THE COURT:  Okay.

M63VSHET

1          So I'll hear the government's response.

2          MR. SOBELMAN:  Yes, your Honor.

3          I have a few notes on my phone.  I'm not communicating

4    with others.

5          Defense counsel cites no authority in his letter that

6    supports declaring a mistrial at this point in the trial.

7    There's no case that he cites that says if the jurors

8    inadvertently or even purposely divulge some type of

9    information about the substance of their deliberations, that a

10   mistrial should result.  It's not that uncommon actually, in my

11   limited experience, for jurors to do that and for deliberations

12   to continue and be successful.

13         With respect to the argument about your Honor

14   questioning the juror that was questioned yesterday, there was

15   clearly a predicate for it under the applicable case law based

16   on the note that the other 11 jurors had passed up that

17   referenced him not following his oath, misconstruing the

18   Court's legal instructions, refusing to deliberate.

19         It's the precise situation that occurred in a number

20   of those other cases, including *Spruill*.  And your Honor

21   conducted a very limited, targeted, and careful colloquy with

22   that juror that clearly did not delve into the juror's views,

23   the merits of his views, the substance of the deliberations.  I

24   think three or four yes-or-no questions that are very similar

25   to the questions, if not identical to the ones that were asked

M63VSHET

1    during the voir dire process.  That colloquy offers nothing for

2    the defense to rest on here.

3            The modified *Allen* charge that the Court gave included

4    exactly the language that's been approved by many courts with

5    respect to these matters where it's balanced.  It tells the

6    jurors that they should reexamine their own views and listen to

7    those of others, but also the balanced language that the

8    defense had suggested to the Court about not giving up any

9    conscientiously held beliefs.  So there's nothing in the *Allen*

10   charge that had any prejudicial effect or potential prejudicial

11   effect.

12           With respect to the defense's argument about some type

13   of unfair coercion, the defense engages in a fair amount of

14   speculation both in court before and in their motion about the

15   status of deliberations at various times based in part on the

16   note, the sort of lengthier note we received, the list of items

17   about a particular juror.

18           What we know now is the jurors are continuing to

19   deliberate; they are continuing to ask for evidence.  And

20   nothing that the Court has done — whether it be the modified

21   *Allen* charge or very limited targeted questioning of one juror

22   — has been unduly coercive in any way.  In fact, we are many

23   hours from that limited questioning and the jury is still

24   deliberating.  It doesn't appear anyone was coerced into

25   changing their view.  They still have not reached a verdict,

M63VSHET

1      and may or may not at some point.

2              Lastly, I think there was a reference to some type of

3      media attention on this particular juror.  The Court has given

4      the jurors very clear instructions:  If someone contacts them

5      about the case or approaches them, they should report it to the

6      Court.  We assume — because the Court has not told us that

7      that's occurred — it has not occurred.  And the Court also gave

8      repeated and clear instructions that the jurors should not be

9      reading or consuming any media or social media about the case.

10     And, again, we have no reason to think that any juror has done

11     so.

12              So I think the defense arguments are meritless.  The

13     jurors should be able to continue their deliberations.  We

14     should continue responding to their inquiries, and they'll take

15     as long as they need to take to reach a just verdict.

16              THE COURT:  The application is denied.

17              I'll let you know if I get another note.

18              MR. SOBELMAN:  Thank you, your Honor.

19              (Recess pending verdict)

20              THE COURT:  Good afternoon.  Please be seated.

21              I understand, Mr. Meringolo, did you want to raise a

22     question concerning bank records?

23              MR. MERINGOLO:  Yes, your Honor.

24              In Exhibit 2000, which is the exhibits for the bank

25     records, I don't know if you remember the thing that I read to

M63VSHET

1    them that was in the bank records, the interview with Mr. Shea.

2              THE COURT:  Yes.

3              MR. MERINGOLO:  The government opposes that going in.

4    But it's part of the exhibit and we respectfully want it to go

5    in.

6              THE COURT:  On the grounds of hearsay?  What's the

7    ground?

8              MR. MERINGOLO:  It's in evidence.

9              MR. SOBELMAN:  No, your Honor.

10             THE COURT:  I'm saying why are you objecting?

11             MR. SOBELMAN:  Understood, your Honor.

12             It's not just that document; there are other documents

13   they ask also to go back.  They fit in the same category.  The

14   note as your Honor read it, I don't have a copy, but said they

15   want all bank statements.

16             THE COURT:  Yes.

17             MR. SOBELMAN:  That's what we printed, bank

18   statements.  These documents are other documents that are

19   contained within the larger universe of bank records that were

20   offered; they are not bank statements.  We think that's the end

21   of the analysis.

22             THE COURT:  My understanding of the word "statement"

23   is a record of the activity within a bank account.  And so if

24   you have a different definition --

25             MR. SOBELMAN:  And, your Honor, just to be clear, all

M63VSHET

1    of the records are available to them electronically.  They have

2    the portion that the defense wishes to go back now in hard copy

3    already electronically.

4                MR. MERINGOLO:  Your Honor, it's based on the

5    statements itself, because that's the reason why they

6    interviewed him.

7                THE COURT:  Okay.  So let me just go back to the note.

8                It says here -- I'm now looking at Court Exhibit No.

9    4.  It says:  We the jury request a printout of all bank

10   statements from 2018 to 2020.  So if something is not

11   concerning what goes in and what goes out of an account, what

12   does it concern, Mr. Meringolo?

13               MR. MERINGOLO:  Well, this was an interview based on

14   what goes in and out.

15               THE COURT:  What interview?

16               MR. MERINGOLO:  The interview of the bank and Mr. --

17               THE COURT:  Oh, you mean that --

18               MR. MERINGOLO:  Yes.

19               THE COURT:  -- that chat that they had in that grid.

20               That's not a statement of an account.  That certainly

21   relates to the banking that Mr. Shea was doing, but it's not a

22   bank statement.

23               MR. MERINGOLO:  Okay.

24               THE COURT:  All right, then.  That's my ruling.

25               Thank you.

M63VSHET

1        (Recess pending verdict)

2        THE COURT:  Good afternoon, everyone.

3        Is there anything that you'd like to discuss before I

4   have the jurors brought in?

5        MR. SOBELMAN:  Not from the government, your Honor.

6        MR. MERINGOLO:  Nothing from the defense, Judge.

7        THE COURT:  All right.

8        Then please have our jurors brought in.

9        (Jury present)

10       THE COURT:  Do the parties agree that all jurors are

11   present and properly seated?

12       MR. SOBELMAN:  Yes, your Honor.

13       MR. MERINGOLO:  Yes, Judge.

14       THE COURT:  Members of the jury, I know that you've

15   been working very hard.  Thank you.  We've come to the end of

16   the day and the end of the week.  You are obligated to return

17   on Monday at 9 a.m. on time.  It's not optional; jury service

18   is, of course, obligatory under the law.

19       I want to remind you that you are to stop your

20   deliberations, and you will not be resuming deliberations until

21   Monday morning, when the foreperson declares that deliberations

22   are recommencing.  Remember that you are not allowed to discuss

23   the case amongst yourselves or with anyone else.  Don't permit

24   anyone to discuss the case in your presence until the

25   foreperson declares that it's time to start deliberating with

M63VSHET

 1   everyone in the jury room.

 2               I wish everyone a wonderful weekend.

 3               And remember, of course, not to listen to or read

 4   anything about the case, be it a news media or any other form.

 5               (Jury not present)

 6               THE COURT:  You may be seated.

 7               So we will resume on Monday.

 8               I'll let you know if I receive a note.

 9               Have a good weekend.

10               (Adjourned to June 6, 2022 at 9 o'clock a.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25