UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
UNITED STATES OF AMERICA,

-against-

TIMOTHY SHEA,

                Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/19/2022

20 Cr. 412-4 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Defendant, Timothy Shea, moves[1] for an order (1) transferring the venue of this action to the District of Colorado, ECF No. 267; (2) suppressing certain evidence produced by the Government on August 19, 2022, or, in the alternative, granting a trial continuance, ECF No. 269; (3) disqualifying Assistant United States Attorney ("AUSA") Robert Sobelman from participating in Shea's retrial, which is scheduled to commence on October 24, 2022, ECF No. 271; and (4) adjourning trial because of a scheduling conflict created by defense counsel, ECF No. 281. For the reasons stated below, Shea's motions are DENIED.

## BACKGROUND

On August 17, 2020, a grand jury returned a sealed indictment (the "Indictment") charging Defendants Brian Kolfage, Stephen Bannon, Andrew Badolato, and Timothy Shea[2] with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h).[3] Indictment, ECF No. 2. The Indictment alleged that Defendants fraudulently induced donors to contribute millions of dollars to an online

---

[1] Shea filed three separate motions on August 22, 2022, see ECF Nos. 267, 269, 271, and a fourth motion on September 14, 2022, ECF No. 281.
[2] On May 25, 2021, the Court dismissed the charges against Bannon following the issuance of a presidential pardon. ECF No. 117. On April 21, 2022, Kolfage and Badolato pleaded guilty to conspiracy to commit wire fraud. See Dkt. Entry 4/21/2022.
[3] The Indictment was unsealed on August 20, 2020. ECF No. 3; Dkt. Entry 8/20/2020.

crowdfunding campaign known as "We Build the Wall." *Id.* ¶¶ 1, 16. The Indictment further alleged that Kolfage, Bannon, and Badolato made repeated false statements that money from the fundraising campaign would not be taken for their personal use, and that all funds would go to the campaign's stated mission: building a wall along the southern border of the United States. *Id.* ¶¶ 1, 9, 11–14. Despite representations to the contrary, Defendants allegedly took hundreds of thousands of dollars from these funds for their own personal use. *Id.* ¶ 17.

As to Shea, the Indictment alleged that he conspired with his co-defendants to conceal payments to himself and Kolfage from funds raised by means of the false statements. *Id.* ¶ 2. Shea allegedly suggested to his co-defendants that he create a shell corporation to send money to himself and Kolfage. *Id.* ¶ 20. Consistent with this alleged proposal, Shea incorporated a limited liability corporation, which We Build the Wall then paid for "social media" work that was not performed. *Id.* ¶¶ 20–21. The funds were then funneled to Shea and Kolfage. *Id.* The Indictment also alleged that Defendants "took . . . steps to conceal the fraudulent scheme" after learning of the federal criminal investigation. *Id.* ¶ 26.

On April 14, 2022, the Government filed a superseding indictment, which charged Shea with conspiracy to commit wire fraud and honest services fraud, in violation of 18 U.S.C. § 1349; conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h); and falsification of records, in violation of 18 U.S.C. § 1519. ECF No. 174. On April 21, 2022, the Government filed a second superseding indictment, which changed the date of the obstruction charge from October 2018 to October 2019. *See* ECF No. 179.

On August 18, 2020, the Honorable Kristen L. Mix, United States Magistrate Judge for the District of Colorado, issued a warrant authorizing the search of Shea's residence and the seizure of "any computers" contained therein. *See* ECF No. 277-1. On August 20, 2020, law enforcement

officers executed the warrant and seized an Acer laptop (the "Laptop"). Gov. Opp. at 12, ECF No. 277. Shortly after seizing the Laptop, the Government provided it to a technical expert (the "Expert") for assistance with accessing its contents, which were password-protected. *Id*.

On November 5, 2020, Shea moved to transfer the venue of this action to the District of Colorado. ECF No. 44. On December 14, 2020, the Court denied his request, finding that, "the location of the defendant and the expenses of the parties weigh in favor of transfer, but the other factors are neutral or weigh against transfer, and the interest of avoiding additional trials weighs heavily against transfer."[4] Transfer Order at 13, ECF No. 63. The Court concluded that "Shea ha[d] not carried his burden to show that transfer [was] warranted under [Federal Rule of Criminal Procedure 21(b).]" *Id*.

On May 6, 2022, the Government produced a preliminary set of marked trial exhibits to the defense. Gov. Opp. at 21, ECF No. 277. One of those exhibits was marked as Exhibit 20 ("Preliminary Exhibit 20"). *Id*.

Trial in this matter began on May 23, 2022. Dkt. Entry 5/23/2022. At trial, the Government called twelve witnesses to testify: four who resided or worked in the Southern District of New York, and eight who lived elsewhere in the United States. Gov. Opp. at 5. Shea did not call any witnesses. *See* Tr. at 563–70, ECF No. 243.

On May 24, 2022, the Government provided defense counsel with an updated exhibit list that included an electronic file for a new document marked as Exhibit 20 ("Admitted Exhibit 20"). Gov. Opp. at 23. On May 25, 2022, The Government offered Admitted Exhibit 20 into evidence,

---

[4] When the Court issued the Transfer Order, Shea was scheduled to be tried with Kolfage and Badolato in the Southern District of New York. *See* Transfer Order at 12–13. Both Kolfage and Badolato subsequently pleaded guilty. *See* Dkt. Entry 4/21/2022.

published it to the entire courtroom, and read the exhibit into the record. *Id*. at 24. Both parties rested on May 26, 2022. Tr. at 558, 570, ECF No. 243.

On June 2, 2022, while the jury was deliberating, the Court received a note from the jury requesting the replacement of a juror on the ground that he was politically biased against the Government and in favor of Shea. *See* Tr. at 824, ECF No. 249. The Court did not replace the juror, and later the jury informed the Court that it was deadlocked. *Id*. at 844. The Court urged the jury to continue deliberating. *Id*. at 846–49. On June 7, 2022, the jury again stated that it was deadlocked, and the Court declared a mistrial. Tr. at 881–83, ECF No. 256. On June 9, 2022, the Court scheduled a new trial to begin on October 24, 2022. ECF No. 236.

After the conclusion of the first trial, the Government reengaged with the Expert to renew its efforts to access the Laptop. Gov. Opp. at 12–13. On August 17, 2022, the Expert informed the Government that he had accessed the Laptop. *Id*. at 13. On August 19, 2022, the Government provided a copy of the forensic image to Shea. *Id*. After the Government's filter team confirmed that the Laptop's files did not appear to contain any privileged material, the Government's prosecution team conducted a responsiveness review that yielded thirteen files that, in their view, are responsive to the warrant. *Id*. On September 2, 2022, the Government identified the thirteen files to Shea. *Id*.

## DISCUSSION

I. Motion to Transfer

   A. Rule 21(a)

      1. *Legal Standard*

Under Federal Rule of Criminal Procedure 21(a), a "court must transfer the proceeding against that defendant to another district if the court is satisfied that so great a prejudice against

4

the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there." Rule 21(a) applies only in "extraordinary circumstances." *United States v. Awadallah*, 457 F. Supp. 2d 246, 250 (S.D.N.Y. 2006). In order to prevail on a motion under Rule 21(a), the defendant must show "a reasonable likelihood" that prejudice in a particular venue "will prevent a fair trial." *United States v. Maldonado-Rivera*, 922 F.2d 934, 966–67 (2d Cir. 1990) (quoting *Sheppard v. Maxwell*, 384 U.S. 333, 363 (1966)). When assessing a motion based on the effects of pretrial publicity, a court may consider, "*inter alia*, the extent to which the government is responsible for generating the publicity, the extent to which the publicity focuses on the crime rather than on the individual defendants charged with it, and other factors reflecting on the likely effect of the publicity on the ability of potential jurors in the district to hear the evidence impartially." *Id*. at 967.

      2.    *Application*

Shea argues that the Court should transfer venue to the District of Colorado under Rule 21(a) because "political polarization" present in the Southern District of New York and the publicity that followed his first trial "will . . . prevent a jury from rendering a fair and impartial verdict." Shea Mem. I at 4–6, ECF No. 268. The Court disagrees.

To justify a change of venue under Rule 21(a), the Court must be convinced that a fair trial cannot be had in the district due to prejudice against the defendant. At Shea's first trial, although the jury's note may have indicated that differences in political opinions affected the jury's deliberations, Shea has not demonstrated that those differences in opinion reflected a "prejudice against [*him*]". *See* Fed. R. Crim. P. 21(a) (emphasis added). Moreover, Shea has not explained why "political polarization" would be less pronounced in the District of Colorado, or in any other

5

district in the United States. *See Awadallah*, 457 F. Supp. 2d at 253.[5]  Therefore, the Court "agree[s] with the courts that have faced similar circumstances and [finds] a careful individual voir dire examination to be the most effective tool to address [any] potential prejudice in the jury pool." *Id*. at 254.

Nor has Shea shown "a reasonable likelihood" that prejudice from pretrial publicity in the Southern District of New York "will prevent a fair trial." *Maldonado-Rivera*, 922 F.2d at 966–67. Shea points to two forms of pretrial publicity that, he contends, have unfairly prejudiced him: (1) publicity about the jury's deliberations in the first trial, and (2) statements by the United States Attorney for the Southern District of New York, Damian Williams.  Def. Mem. I at 4–6.  The Court disagrees.[6]

Shea offers no examples of press coverage that suggest he would be denied a fair trial in this District.  And, after conducting its own review of relevant articles, including articles from national publications as well as local newspapers in Colorado and New York,[7] the Court finds that they do not create a reasonable likelihood that jurors in this District would be prejudiced against Shea because they were published over four months before the scheduled start of the new trial and focus primarily on the mistrial.  And, to the extent that any potential jurors have read these articles and feel that their ability to be fair and impartial would be stifled as a result, the Court will be able

---

[5] And, Shea provides no support for his argument in his reply brief that Bannon's fraud prosecution by the Manhattan District Attorney's Office demonstrates that this case is politically motivated or that jurors in this District would be biased against Shea because of his political affiliations.  *See* Shea Reply, ECF No. 279.

[6] Shea appears to contend that press related to Bannon's prosecution in state court will somehow affect this case.  *See* Shea Reply.  But, Shea offers no explanation as to why the media coverage of Bannon would cause potential jurors to be biased against Shea.

[7] *See*, *e.g.*, Associated Press, *"We Build the Wall" Trial Ends in Mistrial; Jury Deadlocked*, POLITICO (June 6, 2022, 4:02 PM EDT), https://www.politico.com/news/2022/06/07/we-build-the-wall-trial-ends-in-mistrial-jury-deadlocked-00037860; Associated Press, *"We Build The Wall" Trial Against Colorado Man Ends in Mistrial Because of Deadlocked Jury*, COLO. SUN (June 7, 2022, 2:10 MDT), https://coloradosun.com/2022/06/07/timothy-shea-we-build-wall-mistrial/; Colin Moynihan, *Juror's "Political Bias" Prompts Mistrial in "Build the Wall" Case*, N.Y. TIMES (June 7, 2022), https://www.nytimes.com/2022/06/07/nyregion/build-the-wall-case-bannon.html; Ben Feuerherd, *Jurors Blast Holdout Panelist as "We Build the Wall" Case Ends in Mistrial*, N.Y. POST (June 7, 2022, 5:15 PM), https://nypost.com/2022/06/07/jurors-blast-holdout-panelist-as-we-build-the-wall-case-ends-in-mistrial/.

to identify those individuals during voir dire. *See Awadallah*, 457 F. Supp. 2d at 254. Thus, the Court finds that this publicity does not militate in favor of transferring the case to the District of Colorado. *Cf. Maldonado-Rivera*, 922 F.2d at 967.

Nor has Shea shown that statements made by United States Attorney Williams create such "extraordinary circumstances," as to warrant transfer under Rule 21(a). *Awadallah*, 457 F. Supp. 2d at 250. Williams expressed disappointment in the jury's inability to reach a unanimous verdict and reaffirmed his belief in Shea's guilt. *See* Press Release, U.S. Dep't of Just., Statement of U.S. Attorney Damian Williams on the Hung Jury in U.S. v. Timothy Shea (June 7, 2022), https://www.justice.gov/usao-sdny/pr/statement-us-attorney-damian-williams-hung-jury-us-v-timothy-shea. Williams merely reiterated what is already obvious—the Government believes Shea to be guilty and would like him to be convicted. Therefore, the Court does not find that transfer is proper under Rule 21(a).

B. Rule 21(b)

1. *Legal Standard*

"As a general rule a criminal prosecution should be retained in the original district." *United States v. Parrilla*, No. 13 Cr. 360, 2014 WL 1621487, at *13 (S.D.N.Y. Apr. 22, 2014) (quotation marks and citation omitted), *aff'd sub nom. United States v. Kirk Tang Yuk*, 885 F.3d 57 (2d Cir. 2018). However, under Federal Rule of Criminal Procedure 21(b), "[u]pon the defendant's motion, the court may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice."

To determine if transfer is proper, the Court considers the ten factors set forth in *Platt v. Minnesota Mining & Manufacturing Co.*:

> (1) location of . . . [the] defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket condition of each district . . . ; and (10) any other special elements which might affect the transfer.

376 U.S. 240, 243–44 (1964) (quotation marks and citation omitted). Courts "should not give any one factor preeminent weight nor should [they] assume that the quantity of factors favoring one party outweighs the quality of factors in opposition." *United States v. Spy Factory, Inc.*, 951 F. Supp. 450, 455 (S.D.N.Y. 1997). Rather, how the factors are weighed is committed to the "sound discretion of the district court." *Maldonado-Rivera*, 922 F.2d at 966. Ultimately, the defendant carries the burden of showing that "the interests of justice require transfer." *United States v. Estrada*, 880 F. Supp. 2d 478, 482 (S.D.N.Y. 2012); *see also United States v. Posner*, 549 F. Supp. 475, 477 (S.D.N.Y. 1982) ("To warrant a transfer from the district where an indictment was properly returned it should appear that a trial there would be so unduly burdensome that fairness requires the transfer to another district of proper venue where a trial would be less burdensome." (citation omitted)).

    2.    *Application*

In its December 14, 2020 order denying Shea's original motion to transfer venue to the District of Colorado, this Court analyzed the *Platt* factors and found that, "the location of the defendant and the expenses of the parties weigh in favor of transfer, but the other factors are neutral or weigh against transfer." Transfer Order at 13. Shea has provided no compelling reason for the Court to revisit this decision and the Court, having considered Shea's arguments, adheres to its conclusion for the reasons stated in the prior order. *See id.* at 5–13.

The Court's prior order did note that transferring Shea's case would "require severing the case against him and conducting two trials on the same conspiracy," *id.* at 12, a concern that is no

longer relevant because his co-defendants have either pleaded guilty or been pardoned, *see supra* note 2.  The Court shall, therefore, assess whether the removal of this factor alters its initial determination.  Here, the Court finds that another consideration weighs strongly against transfer—the fact that this Court has already overseen a trial in this case.  The undersigned is uniquely situated to resolve disputes between the parties and otherwise manage the upcoming trial, which counsels in favor of retaining the case in the Southern District of New York.  Thus, the Court adheres to its initial conclusion and finds that transfer is not warranted under Rule 21(b).

Accordingly, Shea's motion for transfer is DENIED.

II. Motion for Suppression/Trial Continuance

    A.    Suppression

        1.    *Legal Standard*

Under Federal Rule of Criminal Procedure 41(e)(2)(B), "[a] warrant . . . may authorize the seizure of electronic storage media or the seizure or copying of electronically stored information," and, "[u]nless otherwise specified, the warrant authorizes a later review of the media or information consistent with the warrant."  "Although there is no established upper limit as to when the government must review seized electronic data to determine whether the evidence seized falls within the scope of a warrant, it is well-settled that the Fourth Amendment requires the government to complete its review within a reasonable period of time." *United States v. Almaleh*, No. 17 Cr. 25, 2022 WL 602069, at *19 (S.D.N.Y. Feb. 28, 2022) (quotation marks, citation, and alteration omitted).  The reasonableness of the Government's review generally varies based on the nature of the device being reviewed.  *See id.*  And, even if a delay is unreasonable, suppression is not the appropriate remedy if "there was no prejudice to the defendant by the delay, and there is no

evidence of any intentional and deliberate disregard of any provision of Rule 41." *United States v. Alston*, No. 15 Cr. 435, 2016 WL 2609521, at *4 (S.D.N.Y. Apr. 29, 2016).

### 2. *Application*

Shea argues that suppression of the Laptop's contents is warranted because the Government unreasonably delayed in accessing its contents.[8] Shea Mem. II at 5–6, ECF No. 270. The Court disagrees.

First, the Court finds that the Government's seizure of the Laptop complied with Rule 41(e)(2)(B). The search warrant was issued on August 18, 2020, and the warrant was executed on August 20, 2020. *See* Gov. Opp. at 12; *see also* Fed. R. Crim. P. 41(e)(2)(A)(i). And, although the Government took about two years to review the material found on the Laptop, the delay cannot be considered unreasonable because it was occasioned by the Government's difficulty in accessing the data stored on the Laptop, which was password-protected. Gov. Opp. at 12. Other courts have reached the same conclusion in similar circumstances, *see*, *e.g.*, *United States v. Dixon*, No. 20 Cr. 3, 2021 WL 1976679, at *2 (N.D. Ga. May 18, 2021) (collecting cases), and have noted that the advisory committee notes to Rule 41(e)(2)(B) contemplate such delays, *see* Fed. R. Crim. P. 41(e)(2) advisory committee's note to 2009 amendment. Additionally, the Court considers the Government's efforts reasonable based on the posture of this case. The Government continued to engage the services of the Expert up until the first trial, and then, after the mistrial, renewed and increased its efforts to access the Laptop's contents in an attempt to address evidentiary concerns that arose at the first trial. *See* Gov. Opp. at 12–13. Once the Government had access to the

---

[8] Shea also contends that "upon information and belief, it is likely that there is little to no data that is responsive to the search warrant." Shea Mem. II at 5. Because Shea provides no support for this contention, the Court shall not address it.

Laptop's contents, it took only two weeks to review the data before identifying the files it deemed responsive to the warrant. *Id*. at 19.

Moreover, Shea has not shown that he was prejudiced by the delay or that the Government intentionally violated Rule 41. *See Alston*, 2016 WL 2609521, at *4. The Government found that only thirteen files, totaling forty-seven pages, were responsive to the warrant, and identified those files to Shea on September 2, 2022. Gov. Opp. at 13, 19. Shea has sufficient time to review those files before trial on October 24, 2022. Furthermore, Shea provides no support for his argument that the Government intended to violate Rule 41 in order to retain Shea's data for some unspecified improper future use. *See* Shea Mem. II at 6. Rather, the Court concludes that the Government's actions with respect to the Laptop indicate an understandable attempt to strengthen the evidence it presents at the second trial. Therefore, evidence from the Laptop shall not be suppressed.

      B.      Trial Continuance

          1.      *Legal Standard*

The decision of whether to grant a continuance of trial is committed to the district court's discretion. *See United States v. Wright*, 807 F. App'x 31, 34 (2d Cir. 2020); *United States v. Spencer*, 646 F. App'x 6, 9 (2d Cir. 2016). Courts assessing whether to grant a continuance must determine whether such a continuance is "consistent with the ends of justice." *Spencer*, 646 F. App'x at 9 (quotation marks and citation omitted). And, courts abuse their discretion by denying a continuance only when "the denial was an arbitrary action that substantially impaired the defense." *United States v. O'Connor*, 650 F.3d 839, 854 (2d Cir. 2011) (quotation marks omitted).

          2.      *Application*

Shea asks for an adjournment of trial from October 24, 2022, to a date in early December 2022, to allow him additional time to make motions related to the Laptop's contents, and argues

that a failure to do so would cause a "miscarriage of justice." Def. Mem. II at 6 (quotation marks and citation omitted). The Court disagrees.

The Government provided Shea with the entire contents of the Laptop on August 19, 2022, more than two months before trial. Gov. Opp. at 19. It took the Government approximately two weeks to conduct an attorney-client privilege and responsiveness review of the Laptop's 280 user-generated files. *Id*. at 13, 19. Shea has not stated why it would take him longer than two weeks to review the Laptop's contents, nor has he said approximately how long it would take him to conduct his review. *See* Shea Mem. II. Shea has also failed to explain why he needs the assistance of a forensic expert to determine if Shea has viable claims with respect to the thirteen documents the Government has identified as potential trial evidence. *Id*. And, Shea has not stated how long it would take a forensic expert to provide that assistance. Thus, Shea has not shown how the denial of a continuance would "substantially impair[] [his] defense," *O'Connor*, 650 F.3d at 854 (quotation marks omitted), and the Court determines that a continuance is not warranted here.

Accordingly, Shea's motion for suppression of the Laptop's contents or a trial continuance is DENIED.

III. Motion for Disqualification

A.     Legal Standard

Courts have the authority to disqualify an attorney based on their "inherent power to preserve the integrity of the adversary process." *Streichert v. Town of Chester*, No. 19 Civ. 7133, 2021 WL 735475, at *4 (S.D.N.Y. Feb. 25, 2021) (quoting *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (quotation marks omitted)). Disqualification is "reserved for situations of prior representation, conflicts of interest, prosecutorial misconduct, and other unethical attorney behavior." *United States v. Stewart*, 294 F. Supp. 2d 490, 494 (S.D.N.Y.

12

2003). "Motions to disqualify are generally not favored," and, because they are "often tactically motivated" and "tend to derail the efficient progress of litigation," parties moving for disqualification "carry a heavy burden and must satisfy a high standard of proof." *Felix v. Balkin*, 49 F. Supp. 2d 260, 267 (S.D.N.Y. 1999) (quotation marks and citation omitted). Parties cannot meet this burden by putting forth "mere speculation" or arguing in favor of the "mere appearance of impropriety." *Streichert*, 2021 WL 735475, at *5 (quotation marks, citation, and alteration omitted).

      B.      Application

Shea argues that the disqualification of AUSA Sobelman is warranted because he may have been involved in the "last minute, devious substitution" of Preliminary Exhibit 20 for Admitted Exhibit 20 and the belated disclosure of the contents of the Laptop. Shea Mem. III at 3, ECF No. 272. The Court disagrees.

At the first trial, defense counsel raised the issue of Preliminary Exhibit 20's substitution with the Court, referring to it as a "bait and switch" intended to prejudice the defense. *See* Tr. at 663, ECF No. 245. On the record, the Court rejected that characterization, stating that it does not consider the Government's behavior a "bait and switch" because the Government "admit[ted] a document, . . . put it up, . . . [and] talk[ed] about it for a long time" with defense counsel present. *Id*. at 663–64. Defense counsel then conceded that failing to notice the substitution was "[his] fault." *Id*. at 664. In his moving papers, Shea has not presented any legal argument that calls into question the Court's determination at trial that the Government did not engage in misconduct related to the substitution of Preliminary Exhibit 20. Therefore, the Court rejects Shea's current attempt to construe the Government's admission of Admitted Exhibit 20 as an example of unethical conduct. Furthermore, Shea has not pointed to other examples of misconduct by the

13

Government to satisfy his burden of showing that disqualification is merited. *See Felix*, 49 F. Supp. 2d at 267.

Moreover, Shea offers no specific support for *AUSA Sobelman's* disqualification from this case and, indeed, expressly disclaims "cast[ing] aspersions on the professionalism of AUSA Sobelman to the exclusion of the other members of the [prosecution team at Shea's first trial]." Shea Mem. III at 1. In doing so, Shea asks the Court to speculate about AUSA Sobelman's involvement in any of the alleged misdeeds Shea puts forth, and the Court shall not do so.

Accordingly, Shea's motion to disqualify AUSA Sobelman is DENIED.

IV. Motion for Adjournment

Finally, Shea asks the Court to adjourn the trial set for October 24, 2022, because defense counsel decided, at some point in late August, to represent a new client in a trial scheduled for the same date. Shea Mem. IV. at 1, ECF No. 281. On June 9, 2022, the Court designated October 24, 2022, as the date for Shea's second trial, *see* ECF No. 236, after defense counsel stated he had a scheduling conflict on the Court's proposed date of July 11, 2022, and that he could not commit to a trial in the months of August and September, Tr. at 884–85, ECF No. 256. Despite knowing that trial was scheduled for October 24, 2022, on September 1, 2022, defense counsel entered an appearance to represent a new client in a trial scheduled to begin on October 24, 2022. ECF No. 281-1.

The Court shall not adjourn trial due to an entirely foreseeable scheduling conflict created by defense counsel. Defense counsel has a duty to represent his original client, Shea, and is directed to appear for trial in this matter on October 24, 2022.

Accordingly, Shea's motion for an adjournment of trial is DENIED.

## CONCLUSION

For the reasons stated above, Shea's motions are DENIED. Trial shall begin on **October 24, 2022**, in the Southern District of New York.

    SO ORDERED.

Dated: September 19, 2022
       New York, New York

                                                        ANALISA TORRES
                                                  United States District Judge