# DISTRICT ATTORNEY

### COUNTY OF NEW YORK

ONE HOGAN PLACE

New York, N. Y. 10013



**ALVIN L. BRAGG, JR.**

DISTRICT ATTORNEY

October 21, 2022

**VIA ECF**

Honorable Analisa Torres
United States District Court Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re: *United States of America v. Timothy Shea,*
         20 Cr. 412 (AT)

Dear Judge Torres,

      The New York County District Attorney's Office ("DANY") respectfully submits this letter motion to quash the subpoena served on DANY by defendant Timothy Shea ("Shea") on October 18, 2022, which seeks testimony by District Attorney Alvin Bragg, or, in the alternative, the production of "[a]ny and all exculpatory materials pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) related to Timothy Shea, Stephen Bannon and We Build the Wall [sic], including but not limited to: grand jury testimony, witness interviews and notes, written communications such as emails, texts, and phone records, and law enforcement memoranda" (hereinafter "Shea subpoena") (Attached hereto as "Exhibit A").

      This motion is made pursuant to Fed. R. Crim. P. 17(c)(2) on the grounds that compliance with the subpoena would be unreasonable and/or oppressive.

      "Rule 17(c) subpoenas are held to a strict standard such that a Rule 17(c) subpoena 'should not issue unless it meets three specific criteria: (1) relevancy; (2) admissibility; and (3) specificity.'" *United States v. Johnson*, 10 Cr. 431 (CM), 2013 WL 3948454 at *1 (S.D.N.Y. July 24, 2013) (quoting *United States v. Nixon*, 418 U.S. 683, 700 (1974)). "A general assertion that certain material 'might contain exculpatory information is insufficient to prevail against a motion to quash under Rule 17(c)." *Id.* (quoting *United States v. Scaduto*, 94 CR 311 (WK), 1995 WL 130511 (S.D.N.Y. Mar. 27, 1995)).

      The Shea subpoena should be quashed for several reasons. First, the subpoena is impermissibly vague. Interpreted literally, there could be no responsive material as to Shea because the subpoena calls for "exculpatory materials pursuant to *Brady v. Maryland*" and DANY has no obligation under *Brady v. Maryland* to Shea, as he is not a defendant in a criminal

case prosecuted by this office.[1] Despite Shea's contentions, there was no joint investigation between DANY and the United States Attorney's Office for the Southern District of New York ("SDNY"). DANY is not fully familiar with the separate, federal prosecution of Shea. DANY is therefore not in a position to determine which materials might fall within SDNY's obligations under *Brady v. Maryland* in that prosecution for federal crimes.

Second, the Shea subpoena is overbroad and not sufficiently limited in scope, such that it fails to satisfy the specificity requirement of Rule 17(c). *See United States v. Barnes*, No. S9 04 Cr. 186 (SCR), 2008 WL 9359654, at *4 (S.D.N.Y. Apr. 2, 2008). The Shea subpoena calls for exculpatory material concerning defendants in the New York case, *i.e.* Stephen Bannon and WeBuildTheWall, Inc. To the extent that such material exists and is also distinct from exculpatory information as to Shea, it would not be relevant or admissible in this federal matter and is therefore not within the scope of Rule 17(c).

Third, compliance with the subpoena would be unduly burdensome. *See United States v. Jasper*, 00 Cr. 825 (PKL), 2003 WL 1107526, at *3 (S.D.N.Y. Mar. 13, 2003) (quashing portion of defendant's subpoena that called for a "massive document search" on the eve of trial); *see also United States v. Ashburn*, 11 Cr. 0303 (NGG), 2015 WL 1033063, at *2 (E.D.N.Y. Mar. 6, 2015) (quashing subpoena that is "extremely burdensome and impractical" for government agency to comply with under either *Nixon* or more permissive, but not controlling standard articulated in *United States v. Tucker*, 249 F.R.D. 58 (S.D.N.Y. 2008)). DANY has obtained or generated multiple terabytes of data pursuant to the ongoing state prosecution, which currently is in its discovery phase. Thus, enforcement of the instant subpoena would require this office to review voluminous data on an unreasonably expedited basis while also requiring state prosecutors to evaluate the import of that data with a specific eye toward the federal charges against Shea, which this office has no role in prosecuting. In addition, the subpoena calls for a substantial volume of privileged material (see below), further complicating the review required to satisfy the subpoena. Given that the subpoena was served on October 18th, and is returnable on October 24th, DANY could not practically or competently complete such a task within that six-day timeframe.

Fourth, the Shea subpoena does not seek admissible evidence as is required. Even assuming exculpatory statements were contained in the "grand jury testimony, witness interviews and notes, written communications such as emails, texts, and phone records, and law enforcement memoranda" called for by the subpoena, all of those materials are hearsay and would not be admissible. *See, e.g.*, *United States v. Ceballo*, 03 CR 283 (SWK), 2003 WL 21961123 at *3 (S.D.N.Y. Aug. 18, 2003) ("any NYPD investigative material in the file is inadmissible hearsay and should not be disclosed.").

---

[1] Assuming the subpoena intends to call for material which would fall within DANY's *Brady* obligation if DANY were prosecuting Shea for federal crimes, DANY is under no obligation, and is in no position to parse its records for such information.

2

Finally, the subpoena by its own terms clearly seeks material that it is not permitted to seek via subpoena pursuant to Fed. R. Crim. P. 17(h), which prohibits parties from obtaining statements of prospective witnesses via subpoena.

For all of these reasons, this Court should quash the Shea subpoena. As DANY is not the prosecuting authority in the Shea matter, DANY is simply not in a position to make the legal determinations required by the subpoena. While it is manifestly impracticable to conduct a comprehensive review of the records in the state prosecution vis-à-vis Shea, DANY takes seriously its broader ethical obligations to ensure that justice is done. Accordingly, on October 20, 2022, DANY applied for and received a grand jury sharing order that permits it to share with SDNY certain materials that may be germane to matters in the federal case. DANY shared those materials with a taint team at SDNY that same day so that SDNY can make the determination whether disclosure of those materials to the defense is appropriate. DANY has done this in an abundance of caution and in accordance with its broader ethical obligations as a law enforcement agency.

Nothing in this application should be construed as a waiver of DANY's right to assert applicable privileges that would protect from disclosure categories of documents listed within the Shea subpoena's demand for *Brady* material ("grand jury testimony, witness interviews and notes, written communications such as emails, texts, and phone records, and law enforcement memoranda"). *See United States v. Orena*, 883 F. Supp. 849, 867-68 (E.D.N.Y. 1995).

For example, memoranda and notes generated by DANY personnel concerning charging decisions and investigative and prosecutorial strategy are plainly covered by the law enforcement and deliberative process privileges, in addition to constituting attorney work product pursuant to the state prosecution. *See generally United States v. Wey*, 252 F. Supp. 3d 237, 249-52 (S.D.N.Y. 2017) (explaining the legal standards for deliberative process and law enforcement privileges). The law enforcement privilege would furthermore protect from disclosure any information that identifies confidential informants and witnesses who may be subject to intimidation and harassment if their cooperation were divulged. *See In re Department of Investigation of City of New York*, 856 F.2d 481, 483-84 (2d Cir. 1988).

Additionally, the work product privilege protects any material containing an analysis of information and evidence gathered by DANY, including with respect to impressions of witness credibility. *See United States v. Cherry*, 876 F. Supp. 547, 550-52 (S.D.N.Y. 1995) (determining that the principles governing work product privilege protect local law enforcement records from disclosure even when they were generated in coordination with federal authorities pursuant to a federal investigation and prosecution). In the instant matter, DANY's records would be further insulated from disclosure than those in *Cherry* given that they were generated pursuant to an independent investigation and prosecution.

State law also requires DANY to honor the secrecy of grand jury proceedings. *See* N.Y. Crim. Proc. L. § 190.25(4); *cf. United States v. Fernandes*, 115 F. Supp. 3d 375, 379 (W.D.N.Y. 2015) (citing authority for the proposition that federal courts should consider the public policy interests of state privileges and rules governing confidentiality). This principle would exempt from production the minutes of grand jury presentations, including witness testimony, and

information obtained pursuant to grand jury subpoenas, as well as the identities of witnesses thereto.

Finally, in light of the grounds to quash the Shea subpoena detailed in this application, DANY respectfully requests that the Court apply the arguments set forth herein to relieve District Attorney Bragg from any obligation to appear as a witness in Shea's trial on October 24th as a substitute for producing documents pursuant to the Shea subpoena.

Respectfully submitted,

*Robin McCabe*   *Corey S. Shoock*
Assistant District Attorney Robin A. McCabe
Assistant District Attorney Corey S. Shoock
*Office of the General Counsel*
*New York County District Attorney's Office*

cc: All Parties (via ECF)