UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------X

UNITED STATES OF AMERICA,

          v.

TIMOTHY SHEA,

                  Defendant.

-------------------------------------------------X

20-Cr-412 (AT)

**MEMORANDUM OF LAW
IN SUPPORT OF TIMOTHY SHEA'S MOTION PURSUANT TO
FEDERAL RULE OF CRIMINAL PROCEDURE 29(a)**

Dated: November 11, 2022
       New York, NY

John C. Meringolo, Esq.
Meringolo & Associates, PC
375 Greenwich St., F. 7
New York, NY 10013
(212) 941-2077
john@meringololaw.com

*Attorney for Timothy Shea*

## PRELIMINARY STATEMENT

Timothy Shea, through counsel, submits this memorandum of law in support of his motion pursuant to Federal Rule of Criminal Procedure 29(a) for a judgment of acquittal notwithstanding the verdict as to the honest services object of the wire fraud conspiracy charged in Count One. The evidence failed to prove beyond a reasonable doubt that Kolfage performed or agreed to perform any act as a result of the kickback payments that he received from the proceeds of WBTW's fundraising campaign. Consequently, the evidence was insufficient to prove honest services wire fraud.

In addition, Shea renews his motions pursuant to Rule 29 as to each and every count as set forth on the record during trial. Trial Transcript ("Tr.") at 635.

## STATEMENT OF FACTS

The S2 superseding indictment in this case charged Shea in Count One with having engaged in a conspiracy to commit wire fraud in two ways: through a scheme to defraud donors by misappropriating funds from We Build the Wall ("WBTW") and using them on personal expenses and through a scheme "for businesses created by SHEA to receive money from We Build the Wall in exchange for SHEA paying a kickback to Brian Kolfage." S2 Superseding Indictment at ¶ 3.

Crediting all inferences in favor of the government[1], the evidence showed that Brian Kolfage, the founder and mastermind behind the WBTW fundraising campaign, conspired to mislead potential donors to WBTW by asserting that he would "not take a penny" from the

---

[1] When deciding a motion brought pursuant to Rule 29, the Court must "credit[] every inference that the jury might have drawn in favor of the government," *United States v. Temple*, 447 F.3d 130, 136-37 (2d Cir. 2006), and resolve "all issues of credibility in favor of the jury's verdict," *United States v. Desena*, 260 F.3d 150, 154 (2d Cir. 2001).

donations while simultaneously agreeing with Stephen Bannon and others to receive payment for his work on WBTW. Kolfage communicated with Timothy Shea about the WBTW fundraising campaign and, later, about actions taken in furtherance of building a wall along the southern border of the United States. See, e.g., Gov't. Ex. 1, 14. Shea took actions in support of building the border wall, including overseeing security details and traveling to the border on multiple occasions. See, e.g., Tr. 403-404, 411-12. The wall was built.

The evidence also showed a series of financial transactions between bank accounts held in the names of, *inter alia*, Kolfage personally, Kolfage's company Freedom Daily, WBTW, Timothy and Amanda Shea, and Ranch Property Marketing and Management ("RPMM"). Kolfage and Freedom Daily received money from Stephen Bannon's Citizens of the American Republic ("COAR"), from the Glenda F. Moon Revocable Trust, from Decisive Fiber Group, and from RPMM. See Gov't Ex. 900.

The evidence did not show that Kolfage took any action that he would not otherwise have taken as a result of payments made to him from WBTW donation funds.

As to the honest services object of the wire fraud conspiracy, the Court instructed in relevant part:

> The first element of honest services wire fraud, as charged against the defendant, is the existence of a scheme or artifice to defraud We Build the Wall by depriving it of its right to Mr. Kolfage's honest services through one or more kickbacks.
>
> [. . .]
>
> A kickback occurs when a person, directly or indirectly, promises, gives, or offer[s] a corporate officer or director something of value such as money, in exchange for the performance of an act or a promise to perform an act and the act itself provides the source of the funds to be kicked back. The kickback can be given on a one one-time basis or as a string of payments.
>
> The specific transactions comprising the illegal scheme need not match up precisely this for that. The scheme to defraud must be material to the corporate officer or

director's organization, meaning that the scheme had a natural tendency to influence or was capable of influencing a decision or action by the organization.

The government is not required to show that the corporate officer director performed or promised to perform and act solely because of the thing of value that he received. All that is required [is] that the corporate officer or director performed or promised to perform the act in question, at least in part, because of the thing of value he received.

Tr. 763-65.

Further, the Court instructed, "The fact that an officer or director's conduct violates [the] organization's rules, policies, or codes of conduct does not necessarily mean that there was a scheme to defraud. Nor is it sufficient to merely prove that Mr. Kolfage was engaged in undisclosed self-dealing or failure to disclose a conflict of interest. . . ." Tr. 766-67.

## APPLICABLE LAW

A motion for a judgment of acquittal must be granted as to any offense "for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). "If the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal." Fed. R. Crim. P. 29(c)(2). A defendant who challenges the sufficiency of the evidence under Fed. R. Crim. P. 29 "bears a heavy burden." *United States v. Desena*, 260 F.3d 150, 154 (2d Cir. 2001); *United States v. Autuori*, 212 F.3d 105, 114 (2d Cir. 2000). On such motions, the Court must ask "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Espaillet*, 380 F.3d 713, 718 (2d Cir. 2004) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). *See also United States v. Leslie*, 103 F.3d 1093, 1100 (2d Cir. 1997) (quotation marks and citation omitted) (same); *United States v. Jackson,* 335 F.3d 170, 180 (2d Cir. 2003) (court must find that no rational trier of fact could have found the defendant guilty beyond a reasonable doubt because the evidence was nonexistent or meager); *United States v.*

*Aleskerova,* 300 F.3d 286, 292 (2d Cir. 2002) (evidence is viewed in the light most favorable to the government).

When deciding a motion brought pursuant to Rule 29, the Court must "credit[] every inference that the jury might have drawn in favor of the government," *United States v. Temple*, 447 F.3d 130, 136-37 (2d Cir. 2006), and resolve "all issues of credibility in favor of the jury's verdict," *Desena*, 260 F.3d at 154.

With respect to honest services wire fraud, "The only intent that need be proven . . . is the intent to deprive another of the intangible right of honest services." *United States v. Seabrook*, 814 F. App'x 661, 662 (2d Cir. 2020) (quoting *United States v. Rybicki*, 354 F.3d 124, 145 (2d Cir. 2003) (alteration omitted in *Seabrook*)). As the Circuit has instructed, the deprivation of honest services occurs when, "In the bribery or kickback cases, a defendant who has or seeks some sort of business relationship or transaction with the victim secretly pays the victim's employee (or causes such a payment to be made) in exchange for favored treatment." *Rybicki*, 354 F.3d at 139 (collecting cases).

## DISCUSSION

There was no such evidence here. The government asserted, and the jury found, that the financial transfers from Shea and his company (RPMM) to Kolfage and Freedom Daily constituted wire fraud insofar as the transfers were intended to compensate Kolfage for his work on WBTW using funds appropriated from WBTW. But there was no evidence that Kolfage's representations or solicitations for donations to WBTW were premised on receiving money from WBTW. There was no evidence that Kolfage took any action, or failed to take any action, in connection with his position as president of WBTW because of the payments he received. There was no evidence of favored treatment. There was, in short, no evidence of honest services wire fraud.

**CONCLUSION**

Wherefore, because the evidence was insufficient to prove honest services wire fraud beyond a reasonable doubt, the Court should enter a finding of "not guilty" on that theory of Count One notwithstanding the jury's verdict.

Dated: November 11, 2022
      New York, NY

              _____/s/_____
              John C. Meringolo, Esq.
              Meringolo & Associates, PC
              375 Greenwich St., F. 7
              New York, NY 10013
              (212) 941-2077
              john@meringololaw.com

              *Attorney for Timothy Shea*

Cc:    All parties (by ECF)