```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
UNITED STATES OF AMERICA,

                -against-

TIMOTHY SHEA,
                                Defendant.
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _1/3/2023_

20 Cr. 412-4 (AT)

**ORDER**

ANALISA TORRES, District Judge:

On April 21, 2021, Defendant, Timothy Shea, was charged in a superseding indictment (the "Indictment") with: (1) conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349; (2) conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h); and (3) falsifying records with the intent to impede, obstruct, and influence an investigation by the Government in violation of 18 U.S.C. §§ 1519 and 2. Indictment, ECF No. 179. Trial commenced on October 24, 2022, Dkt. Entry 10/24/2022, and on October 28, 2022, a jury found Defendant guilty on all three counts, Dkt. Entry 10/28/2022. Defendant moves under Federal Rule of Criminal Procedure 29(a) for a judgment of acquittal, arguing that there was insufficient evidence to sustain his conviction. *See* Def. Mem., ECF No. 330.

For the reasons stated below, Defendant's motion is DENIED.

## BACKGROUND[1]

The Court empaneled a jury on October 24, 2022, and began trial the next day. Dkt. Entries 10/24/2022, 10/25/2022. The Government presented its case-in-chief over the course of

---

[1] When deciding a Rule 29 motion, the Court must "credit[] every inference that the jury might have drawn in favor of the government[,]" *United States v. Temple*, 447 F.3d 130, 136–37 (2d Cir. 2006) (quotation marks and citation omitted), and resolve "all issues of credibility in favor of the jury's verdict," *United States v. Desena*, 260 F.3d 150, 154 (2d Cir. 2001).

three days, calling twelve witnesses and introducing over 400 exhibits. *See, e.g.*, Tr. IV at 628:12, ECF No. 347.

The Government introduced text messages and other exhibits showing that Defendant, along with his wife, and one of his co-defendants, Brian Kolfage, launched a GoFundMe page called "We The People Will Fund The Wall," which had the stated purpose of raising money to build a wall on the southern border of the United States. Tr. II at 68, 74, 185–86, ECF No. 343; GX 1, 301. Defendant and Kolfage then formed a non-profit entity called We Build the Wall, Inc. ("WBTW"), to receive the money from the GoFundMe campaign and build a southern border wall. Tr. II at 74–76; GX 302, 306. Kolfage was the president of WBTW and the public face of the GoFundMe campaign. GX 352. Kolfage and WBTW made representations to GoFundMe and the public that 100% of the funds raised would go toward building the wall and that Kolfage would "personally not take a penny of compensation from these donations." GX 306; *see* Tr. II at 83–84, 89, 122–32; Tr. III at 448–49, 468–69, 482–84, ECF No. 345; GX 352. Defendant knew about and was involved in making these promises. GX 23.

The Government's exhibits showed that less than a month after it launched the GoFundMe campaign had raised nearly $20 million. Tr. II at 74; GX 313. Thousands of donors resided in the Southern District of New York. *See* GX 312. The Government elicited the testimony of two donors who stated that Kolfage and WBTW's representations—that 100% of the funds would go to funding the border wall and that Kolfage would not receive any compensation from the donations—were material to their decision to donate. Tr. III at 449–50, 469–70.

Although Defendant, Kolfage, and other individuals used portions of the WBTW donor money to build segments of the wall, they kept some of the money for themselves. Tr. III at

2

401–02.  The Government introduced exhibits showing that Defendant and his co-defendants pocketed hundreds of thousands of dollars from WBTW by setting up business intermediaries and transferring WBTW's donor funds to those intermediaries, which then retained some of the money and transferred some of it back to Kolfage.  *See* GX 900.  For example, Defendant created a company called Ranch Property Marketing and Management LLC ("RPMM").  Tr. II at 246–48; GX 501.  Over several months, WBTW transferred funds to RPMM on multiple occasions, and portions of those transfers were sent to Kolfage.  GX 900, 900-1.  On one occasion, WBTW transferred money to Defendant's personal bank account to serve as the intermediary.  GX 901-C.  By October 2019, RPMM had received hundreds of thousands of dollars from WBTW and forwarded approximately $250 million to Kolfage.  GX 900.

The Government also presented exhibits and testimony demonstrating that Defendant and his co-defendants used fraudulent invoices and memo lines in checks and wire transfers to conceal the purposes of the money transfers.  GX 906-C, 906-E, 906-F, 906-H.  One of the Government's witnesses, Charles J. Ford, testified that his company Vision Quest Solutions provided security services to WBTW.  Tr. III at 396–98.  Vision Quest sent WBTW an invoice for approximately $20,000, but RPMM billed WBTW $50,000 for those services using a phony invoice.  Tr. III at 405–11; GX 116A, 118A.  From the $50,000, RPMM paid Vision Quest's invoice, paid Kolfage $20,000, and kept the remaining money for Defendant.  GX 901-H.

In October 2019, the Government issued a grand jury subpoena to Synovus Bank as part of its investigation into Defendant and his co-defendants' actions; a Synovus Bank employee disclosed that subpoena to WBTW's lawyer.  Tr. II at 144–53.  After exchanging phone calls and text messages to discuss the subpoena, *see* Tr. III at 305–15, Defendant and co-defendants created backdated contracts to justify the money transfers, *see* Tr. III at 316–34.  This included a

3

backdated "vendor services agreement" between WBTW and RPMM and a backdated letter memorializing an agreement between Defendant and Kolfage regarding WBTW's donor list. *Id.*; GX 127–30, 129A, 130A, 907.

In his defense, Defendant introduced exhibits and played a video for the jury. The exhibits documented the work that RPMM performed in building the wall. *See* Tr. IV at 602–08.

On October 27, 2022, at the close of the Government's case-in-chief, Defendant moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29(a). Tr. IV at 599–600. The Court reserved decision and granted Defendant's request for "two weeks to file a written Rule 29 [motion]." *Id.* On November 11, 2022, Defendant filed his motion, arguing that the evidence presented at trial was insufficient as to the honest-services fraud object of the wire fraud conspiracy in Count One. Def. Mem. at 4–5. He also "renew[ed] his motions pursuant to Rule 29 as to each and every count as set forth on the record during trial." *Id.* at 1.

## DISCUSSION

I. Legal Standard

On a Rule 29 motion, the evidence at trial must be "viewed in a light that is most favorable to the government, and with all reasonable inferences resolved in favor of the government." *United States v. Eppolito*, 543 F.3d 25, 45 (2d Cir. 2008) (cleaned up). A defendant challenging the sufficiency of the evidence "bears a heavy burden," *United States v. Aguiar*, 737 F.3d 251, 264 (2d Cir. 2013) (citation omitted), and a court should only grant such a motion if it "concludes there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt," *United States v. Irving*, 452 F.3d 110, 117 (2d Cir. 2006) (quotation marks and citation omitted). "[C]ourts must be careful to avoid usurping the role of the jury when confronted with a motion for acquittal." *United States v. Jackson*, 335 F.3d 170,

4

180 (2d Cir. 2003); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  And, the jury's verdict must be upheld as long as "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Aguiar*, 737 F.3d at 264 (citation omitted).

II. <u>Application</u>

In his Rule 29 motion for acquittal, Defendant only briefs the argument that the evidence at trial was insufficient as to the honest-services fraud object of the wire fraud conspiracy in Count One.  *See* Def. Mem. at 4–5.  Honest-services fraud occurs in "bribery or kickback cases, [when] a defendant who has or seeks some sort of business relationship or transaction with the victim secretly pays the victim's employee (or causes such a payment to be made) in exchange for favored treatment." *United States v. Rybicki*, 354 F.3d 124, 139 (2d Cir. 2003).

A rational trier of fact could have found beyond a reasonable doubt that Defendant, through his company RPMM, engaged in honest-services fraud because he engaged in "transaction[s] with the victim," WBTW, in exchange for "secretly pay[ing] the victim's employee." *Id.*  Here, the Government brought forth evidence which established that six transactions took place between WBTW and Defendant or RPMM.  *See* GX 901-C, 901-E, 901-F, 901-H, 901-J, and 901-K.  In each transaction, WBTW transferred tens of thousands of dollars to Defendant or RPMM.  *Id.*  Then, Defendant kept some of the money and transferred additional money back to Kolfage.  Therefore, a rational trier of fact could have found beyond a reasonable doubt that Defendant participated in a *quid pro quo* kickback scheme in which he agreed to transfer money to Kolfage in exchange for Kolfage transferring money to Defendant that belonged to WBTW, which violated the fiduciary duty Kolfage owed WBTW as its president.  *See Skilling v. United States*, 561 U.S. 358, 407 (2010); *Rybicki*, 354 F.3d at 141.

As to the other counts of conviction, Defendant states that he "renews his motions pursuant to Rule 29 as to each and every count as set forth on the record during trial." Def. Mem. at 1. At trial, Defendant's counsel stated:

> Your Honor, we make an application for the Court to dismiss Counts One, Two, [and] Three, pursuant to Rule 29, that the government didn't prove their case based on the evidence and the lack of evidence. The government didn't put a witness on to testify exactly what the intent was for [Defendant].

Tr. IV at 599:4–8.

Based on the evidence presented at trial, a rational trier of fact could have found beyond a reasonable doubt that the Government proved Defendant had the requisite intent necessary to convict on each count of the Indictment. The Government introduced text messages showing that Defendant knew about Kolfage and WBTW's misrepresentations, *see* GX 23, 905, and that Defendant knew that transferring money from WBTW to Kolfage through an intermediary was illegal, *see* GX 29, 904. The Government also presented exhibits showing that Defendant used fraudulent invoices and memo lines to conceal the purposes of RPMM's money transfers. GX 906-C, 906-E, 906-F, 906-H. And, the Government introduced communications between Defendant and co-defendants discussing backdating contracts in response to the Synovus Bank subpoena. Tr. III at 305–34; GX 53.

Defendant has waived any arguments relating to the remaining elements of his convictions because he neither briefed those arguments nor made any arguments on the trial record. *See United States v. Malka*, No. 19 Cr. 497, 2022 WL 1488568, at *9 (S.D.N.Y. May 11, 2022) ("Due to their perfunctory nature and the lack of proper briefing, the Court declines to address any such motions and deems the arguments they raise waived."); *United States v. Javier*

*Figueroa*, No. 18 Cr. 6904, 2020 WL 3481454, at *2 (W.D.N.Y. June 26, 2020); *cf. United States v. Botti*, 711 F.3d 299, 313 (2d Cir. 2013).

## CONCLUSION

For the reasons stated above, Defendant's motion is DENIED. The Clerk of Court is directed to terminate the motion at ECF No. 330.

SO ORDERED.

Dated: January 3, 2023
New York, New York

_____
ANALISA TORRES
United States District Judge

7