Timothy Shea (Fed. Reg. No. 05591-509)
Federal Correctional Institution
  Englewood – Satellite Camp
9595 West Quincy Avenue
Littleton, CO 80123

*Inmate, Pro Se*

---

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.    1:20-CR-00412-AT-4 |
| *Plaintiff,* | **MOTION TO REDUCE TERM OF IMPRISONMENT PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)** |
| v. | |
| Timothy Shea, et al., | *(VERIFIED)* |
| *Defendant.* | Hon. Analisa Torres |

## I.    Introduction

Timothy Shea's minor children face an immediate crisis that threatens their safety and well-being. Their mother's severe alcohol dependence has rendered her incapable of providing necessary care and supervision, leaving fifteen-year-old twins Evyn and Haddie without an available caregiver. Mr. Shea therefore moves this Court for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), as he is the only viable caregiver for his daughters.

The November 2023 revisions to U.S.S.G. § 1B1.13 explicitly recognize "the death or incapacitation of the caregiver of a minor child" as extraordinary and compelling circumstances warranting compassionate release. Mr. Shea's situation presents precisely the type of family crisis these revised guidelines were designed to address.

Prior to his incarceration in October 2023, Mr. Shea was a central figure in his children's daily lives, providing stability and guidance. Following his imprisonment, his wife Amanda's pre-existing struggle with alcohol dependence spiraled into a series of increasingly dangerous incidents that demonstrate her complete incapacity to care for their children:

- In March 2024, Mrs. Shea was arrested for driving under the influence with both children in the vehicle. *See* Exhibit G, Police Report (March 2024).

- In May 2024, she attempted suicide. *See* Exhibit A, Letter from Tim Shea (Sept. 2024).

- Most recently, on September 26, 2024, Mrs. Shea was again arrested for driving under the influence, abandoning the twins at night until emergency intervention by family friends. *See* Exhibit F, DUI Arrest Citation Sept. 2024; *also see* Exhibit C, Declaration of Arthur Landrey; Exhibit D, Declaration of Kendra Landrey.

The family's support system now has no viable alternative, except the possibility of Mr. Shea's release. Their 18-year-old son is no longer at home, he is now in a full academic degree program, living in Arizona, their 83-year-old grandmother (Mr. Shea's mother) is physically unable to assist due to health limitations, and no other family members live within proximity to provide care. This absence of alternative caregivers leaves Mr. Shea as the only viable option for providing his children with necessary care and supervision.

According to Christin Gardner MA, LPC, a licensed professional counselor working with the family, as a result of this tragic chain of developments, the twins are now experiencing significant "trauma and daily impact of losing their primary caregiver," compounded by their father's absence. *See* Exhibit H, Declaration of Christin Gardner. Ms. Gardner has also documented the children's "steady decline" in their ability "to maintain the daily tasks and growing emotional needs."

In considering the possibility of reducing Mr. Shea's sentence to address these extraordinary circumstances, it's important to consider that during his incarceration, Mr. Shea has

consistently demonstrated his commitment to rehabilitation and personal growth. He has completed multiple educational and re-entry programs, maintained consistent employment, and incurred no disciplinary infractions. As a result, the Federal Bureau of Prisons has recently updated his official PATTERN assessment of Mr. Shea, which presents a broad consideration of factors including personal circumstances, crime of conviction, criminal history, conduct while incarcerated, programming, prison work and other good conduct while incarcerated – and has officially categorized Mr. Shea as presenting the lowest possible "minimum" risk of recidivism upon release. Thus, it is well-supported that Mr. Shea's release would not present any danger to the community. Instead, it would provide immediate stability for his family, particularly his minor children and address the urgent crisis that threatens their well-being.

The modest nature of this request merits immediate emphasis. While Mr. Shea's formal sentence extends to 2027, with his earned Good Conduct credits and First Step Act time credits (currently 330 days and accumulating at 15 days per month based on his successful program participation), the Bureau of Prisons already projects his release for April 2027. Moreover, given his minimum-security designation and continued program participation, he is currently eligble for transfer to community placement (home confinement or halfway house) under Second Chance Act provisions by October 21, 2025 - approximately 357 days from now. Thus, in practical terms, this motion seeks to advance Mr. Shea's return to his family by less than one year. This modest adjustment to an already-anticipated transition timeline would prevent devastating harm to his minor children while maintaining accountability through supervised release conditions.

Therefore, Mr. Shea respectfully requests that this Court grant his motion, reduce his sentence to time served or convert his remaining time to supervised release and allow him to return home where his presence is urgently needed to prevent further harm to his children.

## II.    Legal Standard

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes the Court to modify a term of imprisonment upon finding that: "(1) extraordinary and compelling reasons warrant such a reduction; (2) such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and (3) the § 3553(a) factors weigh in favor of a reduction in sentence." *United States v. Saez*, No. 16 Cr. 317, 2024 WL 303847, at *2 (S.D.N.Y. Jan. 26, 2024) (quotation marks omitted).[1]

Significantly here, the Sentencing Commission's November 2023 amendments to U.S.S.G. § 1B1.13 has repeatedly expanded the criteria of circumstances which render an inmate eligible for a possible reduction in sentence by providing specific guidance on what constitutes "extraordinary and compelling" reasons. This policy guidance – approved by Congress – now provides a much broader policy framework than at any time prior to 2023 and explicitly recognizes a broad circular of trying family circumstances as potential grounds for compassionate release, including "the death or incapacitation of the caregiver of the defendant's minor child," where "the defendant would be the only available caregiver for the minor child." U.S.S.G. § 1B1.13, cmt. n.1(B).

Courts have emphasized that the amended guidelines, while binding, should be applied flexibly to address the unique circumstances of each case. See e.g. *United States v. Amato*, 48 F.4th 61, 66 (2d Cir. 2022) (Courts should "consider the full slate of extraordinary and compelling reasons that may warrant an imprisoned person's release.") (citation and internal quotation marks omitted). Further, the U.S.S.C. also recently emphasized and re-promulgated its "catch-all"

---

[1] Mr. Shea has exhausted the required administrative remedy outlined at 18 U.S.C. § 3582(c)(1)(a), by first seeking the warden's approval from his institution prior to filling this request. *See* Exhibit J, Warden Request.

provision for "any other circumstance or combination of circumstances" not explicitly in the policy provisions but which "when considered by themselves or together" with the listed factors, if they are "similar in gravity." § 1B1.13(b)(5). This Court has recently explained that this "catchall provision," recognizes that the Sentencing Commission "could not possibly identify the myriad extraordinary and compelling reasons that might warrant a sentence reduction" and that "judges are in a unique position to determine . . . what circumstances or combination of circumstances are sufficiently extraordinary and compelling to warrant a reduction in sentence." *United States v. Cave*, 18 Cr. 689-1 (AT) * 3 (S.D.N.Y. Aug. 21, 2024) (Internal citations omitted).

Even before the 2023 expanded policy guidelines, courts in this District have already reduced sentences based on serious family circumstances. *See, e.g., United States v. Dones*, No. 19 Cr. 169, 2022 WL 354679, at *3 (S.D.N.Y. Feb. 7, 2022) (granting compassionate release where defendant was only viable caregiver for incapacitated family member); *United States v. Hasanoff*, No. 10 Cr. 162, 2020 WL 6285308, at *4-6 (S.D.N.Y. Oct. 27, 2020) (releasing defendant who demonstrated both status as sole available caregiver for incapacitated parent and record of rehabilitation during incarceration). Even this Court has recently explained that similar family circumstances can constitute the "extraordinary and compelling" reasons required by the statute. *See e.g., United States v. Miao*, 15 Cr. 628 (AT) (S.D.N.Y. Jul. 20, 2023).

The consideration of what is extraordinary, though often misunderstood, does not require the Court to compare whether Mr. Shea's circumstances are so rare and extraordinary when compared to the entire body of 150,000 plus federal inmates, but instead the evaluation is whether the events at issue are extraordinary within the context of Mr. Shea's life and circumstances. *See e.g., United States v. Jean*, No. 23-40463 at *25 (5th Cir. Jul. 15, 2024).

Finally, in evaluating whether a sentence reduction is warranted, besides the "extraordinary and compelling" standard, courts must then consider the § 3553(a) sentencing factors to determine if a reduction is appropriate. When analyzing these § 3553(a) factors in the context of compassionate release motions based on family circumstances, courts particularly focus on:

1. The defendant's post-sentencing conduct and rehabilitation efforts
2. The potential impact of release on minor children's welfare
3. The availability of alternative caregivers
4. The defendant's risk of recidivism

Here, Mr. Shea bears the burden of establishing that extraordinary and compelling reasons warrant compassionate release. *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992). Once an extraordinary reason is established, the Court has broad discretion within the § 3553(a) framework to determine whether a sentence reduction is warranted based on all the circumstances. *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020).

## III.    ARGUMENT

### A. EXTRAORDINARY & COMPELLING CIRCUMSTANCES

The November 2023 amendments to U.S.S.G. § 1B1.13 explicitly recognize family circumstances as grounds for compassionate release when there is "death or incapacitation of the caregiver of the defendant's minor child or minor children" or "incapacitation of the defendant's spouse" and "the defendant would be the only available caregiver." U.S.S.G. § 1B1.13(b)(3)(A)-(B). Mr. Shea's circumstances satisfy both provisions, presenting an urgent case for compassionate release.

### 1. Mrs. Shea's Severe Alcoholism Has Incapacitated Her as Caregiver for Their Minor Children

The evidence demonstrates that Mrs. Shea's alcoholism has progressed beyond mere substance abuse to complete incapacitation as a caregiver, creating an immediate crisis for the

minor children's safety and well-being. Courts have recognized that severe alcoholism can constitute legal incapacitation when it renders a parent unable to provide necessary care and supervision. *See Matter of Jamie J.*, 30 N.Y.3d 275, 289 (2017) (finding parent's untreated alcoholism created "imminent risk" to children's safety); *Matter of Natasha W.*, 145 A.D.3d 402, 404 (1st Dep't 2016) (holding that parent's alcoholism rendered them legally incapacitated when it prevented provision of adequate care).

Mrs. Shea's incapacitation is evidenced by an escalating pattern of recent dangerous incidents and medical crises:

- September 26, 2024: Arrested for DUI with minor children in vehicle; children stranded at shopping center requiring emergency intervention (Exhibit F).

- May 4, 2024: Suicide attempt discovered by son; found unresponsive in running car in garage (Exhibit A).

- March 30, 2024: DUI and child abuse charges following accident with children in vehicle (Exhibit E).

- October 2023: Deterioration following Mr. Shea's incarceration (Exhibit A).

- May 2, 2023: Domestic violence Protective Order (Exhibit G).

- April 2022: ICU hospitalization for alcoholic seizures (Exhibit A).

Licensed counselor Christin Gardner documents the severe impact of this escalating chain of events, on the children, observing their "trauma and daily impact of losing their primary caregiver" and "steady decline" in basic functioning. *See* Exhibit H, Gardner Decl. ¶ 8. The 15-year-old twins are particularly vulnerable following their older brother's departure for college in Arizona. *See* Exhibit C, Landrey Decl. ¶ 12.

### 2. Mr. Shea Is the Only Available Caregiver

The evidence establishes a complete absence of alternative caregivers for the minor children. Their 83-year-old grandmother, while deeply concerned for their welfare, is physically

unable to help due to her own health limitations. *See* Exhibit B, Phyllis Shea Decl. ¶ 4. No other family members live within reasonable proximity to provide regular care or supervision. *See* Exhibit A, Tim Shea Letter, at p. 2. The recent emergency intervention by the Landreys—who had never previously been called upon to assist with the children—underscores the family's desperate support systems. *See* Exhibit C, Arthur Landrey Decl. ¶ 3. The children's older brother, who might otherwise have provided some stability, has relocated to Arizona for college. *See* Exhibit H, Gardner Decl. ¶ 15.

Courts in this District have granted compassionate release in circumstances where the defendant was the only available caregiver. *See United States v. Dones*, No. 19 Cr. 169, 2022 WL 354679, at *3 (S.D.N.Y. Feb. 7, 2022) (granting release where defendant was only viable caregiver for incapacitated family member); *United States v. Hasanoff*, No. 10 Cr. 162, 2020 WL 6285308, at *4-6 (S.D.N.Y. Oct. 27, 2020) (releasing defendant who proved status as sole available caregiver).

### 3. Mrs. Shea's Medical Condition Independently Warrants Release

Mrs. Shea's condition has deteriorated to a level of medical incapacitation that independently satisfies § 1B1.13(b)(3)(B)'s criteria for release based on an incapacitated spouse. Her multiple hospitalizations, including ICU admission for alcoholic seizures, documented suicide attempt, and persistent inability to maintain basic daily functions paint a picture of severe medical incapacitation. Her recent conduct, particularly the September 2024 DUI arrest, demonstrates an escalating pattern of dangerous behavior that threatens not only her own life but also the safety of her children. *See United States v. Lisi*, 440 F.Supp.3d 246, 252 (S.D.N.Y. 2020) (finding family member's severe medical condition constituted extraordinary and compelling reason for release).

#### 4. Mr. Shea's Rehabilitation Supports His Ability to Address the Crisis

Mr. Shea's conduct while incarcerated demonstrates his readiness and capacity to provide immediate stability for his family. Since being incarcerated has maintained a perfect disciplinary record and shown consistent commitment to self-improvement through educational programs and steady institutional employment. *See* Exhibit K, BOP Progress Report, p. 3. *See also* Exhibit I, Certificates.

Specifically, Mr. Shea has completed five significant targeted programs over the course of the last year:

1) The Bureau of Prisons' comprehensive Drug Education Program ("A Path Forward") on April 16, 2024, an intensive course designed to help participants evaluate substance use consequences and treatment needs - particularly relevant for supporting his wife's recovery journey. *See* Exhibit I at 4; Exhibit K at 1.

2) A comprehensive series of parenting programs: National Parenting Program Phase I; National Parenting Program Phase II; Partners in Parenting. This sequential completion of three distinct parenting programs demonstrates Mr. Shea's dedication to developing the skills needed to support his teenage daughters during this critical period. *See* Exhibit I at 1-3.

3) Criminal Thinking/Meaning and Making Change coursework, evidencing his commitment to positive decision-making and personal growth. This focused program participation, combined with his steady institutional employment and perfect disciplinary record, demonstrates exceptional dedication to rehabilitation. *See* Exhibit I at 5.

It's important to point out that these programs were sought out by Mr. Shea, not required. And a review of these programs, when compared to typical simple programs, shows that Mr. Shea's conduct while incarcerated demonstrates not just general rehabilitation, but specific preparation to

address his family's urgent needs. He has maintained a perfect disciplinary record while completing an intensive series of programs directly relevant to his family's circumstances:

First, recognizing the central role of substance abuse in his family's crisis, Mr. Shea completed the Bureau of Prisons' comprehensive Drug Education Program ("A Path Forward") on April 16, 2024. This wasn't merely checking a box - the program provided critical training in:

- Understanding addiction as a family disease
- Recognizing enabling behaviors versus healthy support
- Strategies for supporting recovery while maintaining boundaries
- Resources for family-based addiction treatment
- Crisis intervention techniques for substance abuse emergencies

This training is particularly vital given Mrs. Shea's demonstrated pattern of dangerous behavior and her expressed willingness to enter treatment.

Second, Mr. Shea undertook a comprehensive sequence of extensive parenting education, completing three distinct programs that build upon each other: (1) National Parenting Program Phase I: Focused on basic parenting skills and child development; (2) National Parenting Program Phase II: Advanced techniques for parenting teens through crisis; and (3) Partners in Parenting: Specialized instruction in:

- Supporting adolescents through family trauma
- Managing academic and social challenges
- Addressing substance abuse impacts on children
- Creating stability during family restructuring
- Co-parenting through family challenges
  This systematic approach to parenting education demonstrates Mr. Shea's commitment to developing the specific skills needed to support his teenage daughters through their current crisis. The progression through all three programs shows dedication beyond minimal compliance.

Third, Mr. Shea completed the Criminal Thinking/Meaning and Making Change program, demonstrating his commitment to addressing the decision-making patterns that led to his offense. This program required participants to:

- Examine past choices and their impacts on family
- Develop strategies for ethical decision-making
- Create concrete plans for positive community impact
- Build accountability systems for ongoing compliance

The effectiveness of these rehabilitation efforts is objectively demonstrated by Mr. Shea's recent PATTERN Score evaluation, which presents the Bureau of Prisons' comprehensive assessment of recidivism risk based on: Program participation; Work performance; Disciplinary record; Criminal history; Release planning; Etc.

Significantly, this evaluation categorized Mr. Shea at the lowest possible "minimum" risk level. This isn't merely an informal assessment - it represents the Bureau of Prisons' official, data-driven determination that Mr. Shea presents minimal risk upon release. *See* Exhibit K, BOP Risk Assessment, p. 1.

This combination of targeted programming, perfect conduct, and objective risk assessment demonstrates that Mr. Shea has used his time in custody to prepare specifically for the challenges his family faces. *See United States v. Torres*, 464 F.Supp.3d 651, 658-59 (S.D.N.Y. 2020) (considering rehabilitation evidence demonstrating preparation to address family needs). Rather than simply serving time, he has developed concrete skills and strategies directly applicable to his family's crisis.

### 5. The Totality of Circumstances Satisfies the Extraordinary and Compelling Standard

The combination of crises here satisfies the extraordinary and compelling reasons standsrd for other reasons "similar in gravity" to those enumerated in § 1B1.13:

- Simultaneous crises affecting both minor children and incapacitated spouse
- Complete collapse of family support system
- Critical developmental stage of teenage daughters
- Immediate risk to children's safety and well-being
- Unique position of Mr. Shea to prevent foster care intervention

Each passing day exacerbates the risk to Mr. Shea's children and wife. His immediate release represents the only viable solution to prevent further deterioration of this urgent family crisis.

B. THE § 3553(A) FACTORS STRONGLY SUPPORT RELEASE

The Analysis of the § 3553(a) factors must begin by recognizing Congress's evolved understanding of federal sentencing objectives. The First Step Act and Second Chance Act reflect Congress's clear determination that extended periods of institutional confinement are not necessary to achieve sentencing objectives for inmates who demonstrate rehabilitation and present minimal security risks. Mr. Shea's current placement in a minimum-security camp already reflects the BOP's assessment that he requires only the lowest level of supervision. In this context, continuing his institutional confinement - particularly given his projected eligibility for community placement in less than a year - serves no additional penological purpose while actively harming his minor children.

Congress has specifically directed that sentences should "provide the defendant with needed... correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(D). Here, converting Mr. Shea's remaining time to supervised release would better serve this statutory mandate by:

- Enabling him to prevent his children's exposure to documented dangers while maintaining strict accountability through supervision

- Allowing him to support his wife's recovery while subject to monitoring and testing

- Facilitating his ability to make restitution payments through employment

- Providing structure through supervised release conditions that both punish and rehabilitate

This approach aligns perfectly with Congress's clear policy preference, expressed through both the First Step Act and Second Chance Act, for transitioning eligible inmates to community

supervision when family and societal interests align with doing so. The fact that Mr. Shea would be eligible for such transition in less than a year regardless, demonstrates that granting this motion would not subvert Congressional intent or sentencing objectives, but rather advance them in a manner that prevents serious harm to innocent family members.

Within this framework, examination of each § 3553(a) factor supports Mr. Shea's release: release.

## 1. Nature and Circumstances of the Offense and History and Characteristics of the Defendant

Mr. Shea acknowledges the serious nature of his offense related to the "We Build the Wall" effort and the approximately $1.8 million in donor funds at issue. Mr. Shea exercised his right to go to trial and was convicted. He respects the law and the legal process and accepts full responsibility for his actions.

Nevertheless, several distinguishing characteristics contextualize this offense. Mr. Shea had no prior criminal history before this incident. His participation, while serious, was limited compared to his co-defendants. It was recognized in this Court that he was the least culpable regarding the crux of the case charges, The case involved no violence or threat of violence. His actions were an attempt to provide for his family, and though his actions were ruled criminal and deserving of punishment, the conduct differs markedly from schemes designed to fund broader criminal enterprises or lavish lifestyles. Mr. Shea has suffered the loss of reputation, the stress and limitations of the entire process - including incarceration, and by this motion he does not seek to evade any responsibility. Instead, he is asking for compassion to enable him to better take additional responsibility for his family while completing his obligations under the law.

Mr. Shea's history and characteristics provide important context. Prior to this offense, he maintained steady employment throughout his adult life while serving as the primary caregiver for

his children. His deep community ties and family obligations have been consistent hallmarks of his life. Unlike many defendants, he has no history of substance abuse or violence. His genuine expressions of remorse and acceptance of responsibility demonstrate understanding of his offense's severity. Finally, his post-conviction conduct as described herein adds additional insight into his commitment to return to being a rule and law abusing member of his community while providing love and care for his family.

**2. Need for the Sentence Imposed**

   a.  Reflecting Seriousness, Promoting Respect for Law, and Providing Just Punishment

Mr. Shea has served approximately 12 months of his 63-month sentence. With his Good Conduct credits, the BOP projects that his sentence will be satisfied on April 13, 2028 (approx. 41 months remaining). However, Mr. Shea has also earned 330 First Step Act time-credits and is earning these at the rate of 15 days per thirty days served, based on his successful and continuous participation in Evidence Based Reduction in Recidivism Programing and Productive Activities. Thus, as a result of his conduct, he will earn an additional year off of his sentence, with a Projected Release Date of April 14, 2027. Finally, with his full slate of earned credits, and his statutory eligibility for Second Chance Act transfer to pre-release custody the BOP currently projects that Mr. Shea will be eligible for transfer back to his community (meaning home confinement or a halfway house) by approximately October 21, 2025 (approximately 357 days from now). This data is essential to an individualized considering of Mr. Shea's request for Compassionate Release. In context, he is asking for the ability to return home less than a year earlier than he is currently projected to be eligible for; representing a modest ask in the context of considering the Justice and equities of the circumstance.  Further, the Court has discretion to convert all of Mr. Shea's

remaining sentence to Supervised Release, there avoiding any appearance or actual reprieve beyond what would be both just and compassionate.

Further, already during his time in custody, Mr. Shea has:

- Maintained perfect institutional conduct
- Completed five intensive rehabilitation programs focused on:
  - Substance abuse education to support family recovery
  - Three distinct parenting programs to enhance caregiving skills
  - Personal growth and decision-making
- Participated in all other required programming and work responsibilities
- Tutored Multiple Inmates Seeking Their GEDs
- Demonstrated genuine rehabilitation
- Developed concrete plans for supporting his family upon release

These factors suggest that the punitive and deterrent purposes of sentencing have been substantially achieved. Moreover, the collateral consequences to his family - particularly his minor children - have far exceeded what was contemplated at sentencing.

Converting his remaining time to supervised release would maintain accountability through strict conditions including home detention, electronic monitoring, regular reporting, employment requirements, financial disclosure, and restitution payments. This approach provides just punishment while preventing further harm to innocent family members. Courts have recognized that changed circumstances can shift the balance of § 3553(a) factors. *See United States v. Brooker*, 976 F.3d 228, 238 (2d Cir. 2020) ("[T]he district court's discretion in this area – as in all sentencing matters – is broad.").

b. Affording Adequate Deterrence

As just described, both specific and general deterrence objectives have been satisfied. Mr. Shea has experienced significant punishment through loss of liberty, public shame, professional consequences, and financial penalties. His conviction and initial period of imprisonment send a

clear message to others. Most importantly, his family circumstances and responsibilities make recidivism especially unlikely.

c. Protecting the Public

Mr. Shea poses minimal risk to public safety, as evidenced by his official BOP PATTERN assessment of "minimum" recidivism risk. The non-violent nature of his offense, absence of prior criminal history, and perfect disciplinary record while incarcerated all support this conclusion. His strong family support system and obligations, combined with clear employment prospects and demonstrated commitment to rehabilitation, further minimize any public safety risk. Indeed, his release would serve public safety by preventing potential tragedy involving his minor children.

d. Providing Needed Educational/Vocational Training, Medical Care, or Correctional Treatment

Mr. Shea has actively engaged in available programming during his incarceration, completing drug education, parenting courses, and personal development programs. His needs can be effectively addressed through supervised release conditions, including family counseling and other support services

3. **Kinds of Sentences Available**

The Court has broad discretion to modify Mr. Shea's sentence to to served or to convert it to supervised release with appropriate conditions. This approach would maintain substantial restrictions on his liberty while allowing him to address his family's urgent needs.

As addressed above, give Mr. Shea's current "out custody" placement at a Federal Prison Camp, and his eligibility within the next 12 months to be transferred to community custody and pre-release programs; the request her fits squarely within the kinds of sentence already sufficient to address his particular circumstances.

### 4. Sentencing Guidelines and Public Policy

The November 2023 amendments to U.S.S.G. § 1B1.13 explicitly recognize family circumstances like Mr. Shea's as grounds for sentence modification. His situation aligns precisely with these updated policy statements. And again, as detailed, Congress has weighed in via the setting of specific policy objectives through the Second Chance Act and First Step Act. Federal BOP policy implanting these new legal provisions provided plain support for the idea that not all punishment needs to be institutional incarceration, and Mr. Shea's eligibility for transfer in less than a year demonstrates that this request fits within the current policy framework.

### 5. Avoiding Unwarranted Sentencing Disparities

Granting compassionate release would not create unwarranted sentencing disparities. Mr. Shea's co-defendants received similar or lesser sentences, and courts routinely grant compassionate release in comparable family circumstances. Courts have granted release in similar cases where family circumstances have deteriorated to crisis levels post-sentencing. *See, e.g., United States v. Hernandez*, No. 18 Cr. 834-04, 2020 WL 1684062, at *3 (S.D.N.Y. Apr. 2, 2020) (granting compassionate release based on family circumstances).

Moreover, since release would occur less than 12 months before his projected community placement, it represents a modest adjustment rather than a dramatic departure from typical outcomes.

### 6. Restitution

Mr. Mr. Shea's release would enhance, not hinder, his ability to make restitution payments. Immediate return to employment, combined with reduced family expenses from managing his wife's treatment needs directly, would improve his capacity to meet these obligations. The Court can impose specific conditions ensuring regular restitution payments remain a priority.

**7. Rehabilitation Plan**

If released, Mr. Shea has a concrete plan to address his family's crisis:

- Immediate assumption of caregiving responsibilities for his minor daughters
- Facilitating professional treatment for Mrs. Shea's alcoholism
- Securing employment to support the family
- Engaging family counseling services
- Maintaining strict compliance with any conditions of release

This plan directly addresses the court's statutory obligation to provide rehabilitation "in the most effective manner." 18 U.S.C. § 3553(a)(2)(D).

In addition, while not an enumerated § 3553(a) factor, the Supreme Court has recognized that district courts may consider post-sentencing rehabilitation in modification proceedings. See *Pepper v. United States*, 562 U.S. 476, 490-93 (2011). Mr. Shea's exemplary conduct while incarcerated demonstrates genuine rehabilitation. He has:

- Maintained perfect institutional conduct
- Completed five intensive rehabilitation programs
- Participated in all required programming
- Developed concrete plans for supporting his family
- Earned the lowest possible PATTERN risk score

## IV.    CONCLUSION

The extraordinary circumstances facing Mr. Shea's family, particularly the immediate danger to his minor children, create a compelling case for compassionate release. The § 3553(a) factors, when viewed in light of these changed circumstances and Mr. Shea's post-sentencing conduct, support modifying his sentence to allow him to prevent further harm to his family while continuing to meet the objectives of sentencing through supervised release.

## V.    VERIFICATION

I declare under penalty of perjury, that the foregoing is the and correct.

Executed and submitted this _4th_ day of ~~September~~ *November* 2024.

Timothy Shea (Fed. Reg. No. 05591-509)
Federal Correctional Institution
 Englewood – Satellite Camp
9595 West Quincy Avenue
Littleton, CO 80123
*Inmate, Pro Se*

### Prison Mailbox Rule

I declare under penalty of perjury that, pursuant to the prison mailbox rule, Houston v. Lack, 487 U.S. 266, 270-71 (1988), I have placed this document in the prison's internal mail system for mailing to the Court on the date accompanying my signature below.

Date: _11-4-2024_

Timothy Shea (Fed. Reg. No. 05591-509)
Federal Correctional Institution
 Englewood – Satellite Camp
9595 West Quincy Avenue
Littleton, CO 80123
*Inmate, Pro Se*

**EXHIBIT A**

**Letter From Timothy Shea**

Judge Torres,

I am writing regarding the severe deterioration of conditions at my home since my incarceration one year ago.

At my sentencing, we discussed my wife Amanda's decade-long struggle with alcohol addiction. This situation has now reached a crisis point. The timeline of events demonstrates the escalating severity:

- April 2022: Amanda was hospitalized in ICU with alcoholic seizures
- May 2023: Amanda was arrested for domestic violence and child endangerment
- October 2023: My incarceration began, after which conditions worsened dramatically
- March 2024: Amanda received a DUI and child abuse charge while driving with our daughters
- May 4, 2024: My son found Amanda attempting suicide in our garage
- September 26, 2024: Amanda was arrested for DUI after drinking at a bar while our daughters were at play rehearsal

My children are bearing the weight of this situation: Jett (18) - Now in colleg; Evyn and Haddie (15) - Twin daughters still at home

The impact on my daughters has been particularly severe. With no relatives nearby and no one available for extended support, they face daily challenges:

- Unreliable transportation to school and activities
- Multiple incidents of being stranded when Amanda passes out
- Embarrassment from their mother's intoxicated interactions with teachers and other parents
- Forced social isolation to avoid explaining their situation
- Lack of maternal guidance during critical developmental years

Amanda's addiction has transformed her into someone almost unrecognizable. While addiction differs from other illnesses, its destructive power is undeniable. It has:

- Led to multiple hospitalizations and arrests
- Created a toxic home environment
- Resulted in verbal abuse
- Left our daughters without proper parental supervision

In just over one year, Amanda has faced three child abuse-related charges. Her latest DUI case is scheduled for January 21, 2025, combining multiple charges.

I am deeply concerned about my daughters' physical and mental well-being during this critical period of their development. If granted compassionate release, I would:

- Provide immediate care and stability for our daughters
- Help Amanda obtain necessary rehabilitation
- Seek family counseling services
- Reestablish routine in our home
- Support my daughters' academic and emotional needs
- Work to rebuild our family unit

During my incarceration, I have focused on self-improvement through educational programs and have maintained a clean disciplinary record. This request for compassionate release is not an attempt to evade responsibility for my past actions. Rather, it is an urgent plea to address my family's desperate situation and protect my children's well-being.

I declare these statements are true, under penalty of perjury.


Sincerely,

Tim Shea

**EXHIBIT B**

Timothy Shea (Fed. Reg. No. 05591-509)
Federal Correctional Institution
  Englewood - Satellite Camp
9595 West Quincy Avenue
Littleton, CO 80123


*Inmate, Pro Se*

---

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| UNITED STATES OF AMERICA, | Case No.  1:20-CR-00412-AT-4 |
|---|---|
| Plaintiff, | **DECLARATION OF PHYLLIS SHEA** |
| v. | *(VERIFIED)* |
| Timothy Shea, et al., | Hon. Analisa Torres |
| Defendant. | |

---

I, Phyllis Shea, declare under penalty of perjury that the
**following is true and correct:**

1. I have been asked to write a letter of explanation of why
   I would be unable to help with my granddaughters as much
   as I would like to.

2. I am 83 years old, and I haven't driven long distances for
   a very long time. Taking care of them would require my
   driving early morning from my home in Greeley to Parker,
   picking them up after school or activities, taking them
   home and then driving back to Greeley late at night.

3. I have health problems that often cause weakness,
   lightheadedness and migraines. I need to be close to my
   doctors and appointments.

1

4. Going to stay with them in their home that isn't near mine
   would be impossible. As I have said, I would love to be
   able to help but it is just impossible for me.

Executed on this _13_ day of _Oct._ , 2024, in Littleton,
Colorado.

_Phyllis A Shea_

Phyllis Shea
Mother of Timothy Shea

2

**EXHIBIT C**

Timothy Shea (Fed. Reg. No. 05591-509)
Federal Correctional Institution
  Englewood – Satellite Camp
9595 West Quincy Avenue
Littleton, CO 80123

*Inmate, Pro Se*

---

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.  1:20-CR-00412-AT-4 |
| Plaintiff, | **DECLARATION OF ARTHUR LANDREY** |
| v. | (*VERIFIED*) |
| Timothy Shea, et al., | Hon. Analisa Torres |
| Defendant. | |

I, Arthur Landrey, declare under penalty of perjury that the following is true and correct:

1. Thursday night my wife, Kendra, received a call from a Sheriff's deputy, asking if she could come to the Carpet Exchange in Parker, CO to pick up and take care of the girls for the night as Amanda had been arrested for DUI. I drove Kendra to the Carpet Exchange and she then talked with the Deputies and the girls were then turned over to us.

2. We took the girls home to their house so that they could have their routine as normal as possible and have some time to study for a big test they both had the next morning.

3. We arrived around 10:30 pm and found the front door was locked and the keypad for the garage door is not working and the garage remote was in Amanda's car. Fortunately the back door was unlocked and the four of us were able to get in.

4. The girls studied for a little bit before heading upstairs to bed. My wife and I both laid down on the couch downstairs to sleep, but neither of us were able to sleep much.

5. My wife received a call from the Jail around 3:30 AM from Amanda who was asking for Kendra to wake up the girls to go to get their debit card from them and then if one of us could bring the card to bail her out. Kendra calmly explained that she (Kendra) was not going to wake the girls because they had a test. But she did tell Amanda that the girls would be up in a couple hours and that once we dropped them off at school that I (Arthur) would then come to the jail to workout the bail process. Amanda seemed to be good with that decision but then called Kendra about 20 minutes later asking for the same thing and Kendra again calmly explained the plan again. After that conversation ended, Amanda did not call Kendra again.

6. At around 5:00 AM, Kendra and I woke up after a couple hours of sleep and drove to our house so Kendra could get ready and head to work. I then returned to the Shea's house to pick up the girls and drove them to school. After dropping them off, I drove to the jail.

7. I attempted to pay for Amanda's $1000 bail via the kiosk at the County jail, but the payment did not go through. I then emailed Tim's prison email address to see what he suggested to do next.

8. As I was waiting for a response, the agents working the desk at the jail suggested I try paying online, and so I did and the payment did go through successfully this time. Once that was confirmed, the agents at the desk let me know it might take 1-6 hours before she came up.

9. I then went outside to the courthouse and took a business call for about an hour and also called the Carpet Exchange to explain that Amanda's car was parked in their parking lot and that it should be towed out at some point later that day. Then I went back in and Amanda was released a few minutes after that.

10. As I drove Amanda home and summarized how the night went with the girls, she was very sorry and expressed sorrow and remorse. I explained the important thing was to take

the right next steps and that Kendra and I were there to
support anything her and the girls Needed. I then drove to
work.

Executed on this ___1st___ day of __November__ 2024, in Parker, Colorado.

_____
Arthur Zandrey
Parker, Colorado

**EXHIBIT D**

Timothy Shea (Fed. Reg. No. 05591-509)
Federal Correctional Institution
  Englewood – Satellite Camp
9595 West Quincy Avenue
Littleton, CO 80123


*Inmate, Pro Se*

---

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.  1:20-CR-00412-AT-4 |
| Plaintiff, | **DECLARATION OF KENDRA LANDREY** |
| v. | *(VERIFIED)* |
| Timothy Shea, et al., | Hon. Analisa Torres |
| Defendant. | |

I, Kendra Eileen Landrey, swear that the details of this statement are true.

1. On Thursday 10/26, as my husband (Arthur Landrey) and I were getting ready to head to bed, I received a call from Amanda Shea's cell. However, it was not Amanda. It was a sergeant from the Parker Police Department saying, "They had a bit of a pickle" and they needed us to come pick up Tim and Amanda's twin girls, they had just arrested Amanda.

2. We have known Tim Shea for over 30 years; however, their girls had never really spent anytime with us before. This was their very first personal interaction with us.

3. I did speak with Amanda on the phone briefly, when the Sergeant called, and Amanda told me the girls could stay home alone overnight. However, my husband and I did not feel comfortable with that, as they needed to get to school, so we took the girls home and spent the night at the Shea home.

4. Amanda called my cell at 4 AM and said she was ready to be bonded out. I told her we were not going to wake the girls right then, to bond her out, they went to bed late, and needed sleep, as they had a test in school, first thing in the morning- but we would get her bond figured out after we took the girls to school.

5. Amanda did call a few more times after that, wanting us to come and bond her out. Each time I told her we were not going to wake the girls because they had a test first thing in the morning.

6. We left the Shea home around 5 AM as we still needed to go back to our home, to get ready for our work day. I had to be to work at 7 AM, so my husband took the girls to school.

7. After taking the girls to school, my husband went to take care of Amanda's bond at the Douglas County Jail, and then take her home. However, while I was at work, I received a few texts from their oldest son Jett, he was concerned, asking, if we were going to take care of the bonds as Amanda was now texting him, she was not sure we were going to bond her out. I reassured him, I had told Amanda we were coming after my husband took his sisters to school and we had it covered. He didn't need to worry since he was in Arizona.

8. When I got off work I picked the girls up from school – as Amanda had no means to go get them, her car was undrivable from the night before.

9. I picked the girls up from their high school and took them home – they said they did good on their tests. They are truly great girls just having to navigate their mom's addiction my themselves. I'm thankful they have each other- you can tell they stick close together and depend on each other.

10. When we arrived to pick the girls up that evening from the Sergeant, she mentioned that during her interaction with the girls, she felt that they were extremely "desensitized" to Amanda's condition related to her addiction and the DUI. The Sergeant kindly reached out to both girls and let them know that if they ever needed someone to talk to, she would be available to them. The

Sergeant was very empathetic and understanding of the difficult situations the girls have been facing with their mother.

Executed on this 1st day of November 2024, in Parker, Colorado.

Kendra E. Landrey
Parker, Colorado

**EXHIBIT E**

DOUGLAS COUNTY
SHERIFF
★ Honor. Service. Valor ★
Darren M. Weekly

4000 Justice Way
Castle Rock, CO 80109
(303) 660-7505

**OFFENSE / INCIDENT REPORT**

CASE NO. 2024-00029444

CONNECTING CASE NUMBER(S)
2024-
2024-

| | | | | | | |
|---|---|---|---|---|---|---|
| **E V E N T** | DATE REPORTED 03/30/2024 | TIME 15:55 | INCIDENT TYPE DUI | | CASE DISPO CLEARED B | EXCEPTIONAL CLEARANCE |
| | OCCURRED FROM 03/30/2024 | TIME 15:55 | LOCATION OF OCCURRENCE N US HIGHWAY 85 SEDALIA, CO | | | |
| | OCCURRED TO 03/30/2024 | TIME 16:14 | AT INTERSECTION MANHART ST | | | ROUTE TO PATROL TRAFFIC |
| | CASE STATUS CLOSED | | CASE STATUS DATE 03/30/2024 | REPORTING DISTRICT DCSO-06 | SIGNIFICANT EVENT | |

| | NO. | AT/CO | COUNT | CRS | |
|---|---|---|---|---|---|
| **O F F E N S E S** | 1 | C | 2 | 18-3-208  M2 | RECKLESS ENDANGERMENT |
| | 2 | C | 1 | 42-4-1301 (1)(a) (A) M | DROVE VEH WHILE UNDER THE INFLUENCE OF ALCOHOL OR DRUGS OR BOT |
| | 3 | C | 1 | 42-4-1409 (1) MT1 | OWNER OPERATED AN UNINSURED MOTOR VEHICLE ON A PUBLIC ROADWA |
| | 4 | C | 1 | 42-4-1402 (2)(a) (A) MT2 | CARELESS DRIVING |
| | 5 | C | 1 | 42-4-1007 (1)(a) (B) TIA | FAILED TO DRIVE IN SINGLE LANE (WEAVING) |
| | 6 | | | | |
| | 7 | | | | |
| | 8 | | | | |
| | 9 | | | | |
| | 10 | | | | |
| | 11 | | | | |
| | 12 | | | | |
| | 13 | | | | |
| | 14 | | | | |
| | 15 | | | | |
| | 16 | | | | |
| | 17 | | | | |
| | 18 | | | | |
| | 19 | | | | |
| | 20 | | | | |
| | 21 | | | | |
| | 22 | | | | |
| | 23 | | | | |
| | 24 | | | | |
| | 25 | | | | |
| | 26 | | | | |
| | 27 | | | | |

Victim was provided with written Victims Rights Information  _ Yes  _ No  _ N/A

| | | Assisting Agency Information | |
|---|---|---|---|
| ORI | Role | Comments (Case Number, etc.) | |

| REPORTING OFFICER FEIERSTEIN, HILLARY | DATE SUBMITTED 03/30/2024 | APPROVING SUPERVISOR SAYER, TIMOTHY CURTIS 03/31/2024 |
|---|---|---|

NWS CASE REPORT

| PRIMARY OFFENSE / INCIDENT TYPE | | | | DOUGLAS COUNTY SHERIFF'S OFFICE | | | CASE NO. | | |
|---|---|---|---|---|---|---|---|---|---|
| DUI | | | | WITNESS LIST SUBJECTS | | | 2024-00029444 | | |

| REPORTING OFFICER | | | | | | DATE | | |
|---|---|---|---|---|---|---|---|---|
| FEIERSTEIN, HILLARY | | | | | | 03/30/2024 | | |

| INVOLVEMENT | NAME | | | | | | DOB | AGE |
|---|---|---|---|---|---|---|---|---|
| SUSPECT | SHEA, AMANDA | | | | | | 07/21/1981 | 42 |

| RACE | SEX | HEIGHT | | WEIGHT | | HAIR | EYES | DRIVERS LIC. NO. / STATE | |
|---|---|---|---|---|---|---|---|---|---|
| WH | F | 55 | - | 130 | - | BRO | BRO | 112020658 | CO |

| RESIDENCE ADDRESS | PRIMARY PHONE |
|---|---|
| 4432 PRAIRIE ROSE CIR CASTLE ROCK, CO 80109 | (720)660-2102 |

| E-MAIL ADDRESS | OTHER PHONE |
|---|---|
| | |

| EMPLOYER / SCHOOL TYPE | EMPLOYER / SCHOOL NAME | OCCUPATION |
|---|---|---|
| EMPLOYER | SELF EMPLOYED | OWNER MANAGEMENT |

| EMPLOYER / SCHOOL ADDRESS | BUS. PHONE |
|---|---|
| | |

| WITNESS CAN TESTIFY TO: |
|---|
| DRIVER OF VEHICLE; MOTHER OF TWO JUVENILES; DROVE FROM WIDE OPEN SALOON; |

| INVOLVEMENT | NAME | | | | | | DOB | AGE |
|---|---|---|---|---|---|---|---|---|
| VICTIM | SHEA, HADDIE | | | | | | 10/01/2008 | 15 |

| RACE | SEX | HEIGHT | | WEIGHT | | HAIR | EYES | DRIVERS LIC. NO. / STATE | |
|---|---|---|---|---|---|---|---|---|---|
| WH | F | | - | | - | | | | CO |

| RESIDENCE ADDRESS | PRIMARY PHONE |
|---|---|
| 4432 PRARIE ROSE CIR CASTLE ROCK, CO 80109- | (720)526-1265 |

| E-MAIL ADDRESS | OTHER PHONE |
|---|---|
| | |

| EMPLOYER / SCHOOL TYPE | EMPLOYER / SCHOOL NAME | OCCUPATION |
|---|---|---|
| SCHOOL | LUTHERAN HIGH SCHOOL | STUDENT |

| EMPLOYER / SCHOOL ADDRESS | BUS. PHONE |
|---|---|
| 11249 NEWLIN GULCH BLVD PARKER, CO | (303)841-5551 |

| WITNESS CAN TESTIFY TO: |
|---|
| REAR PASSENGER IN VEH WITH AMANDA; DAUGHTER OF AMANDA; |

| INVOLVEMENT | NAME | | | | | | DOB | AGE |
|---|---|---|---|---|---|---|---|---|
| VICTIM | SHEA, EVYN | | | | | | 10/01/2008 | 15 |

| RACE | SEX | HEIGHT | | WEIGHT | | HAIR | EYES | DRIVERS LIC. NO. / STATE | |
|---|---|---|---|---|---|---|---|---|---|
| WH | F | | - | | - | | | | CO |

| RESIDENCE ADDRESS | PRIMARY PHONE |
|---|---|
| 4432 PRARIE ROSE CIR CASTLE ROCK, CO 80109- | (720)526-1265 |

| E-MAIL ADDRESS | OTHER PHONE |
|---|---|
| | |

| EMPLOYER / SCHOOL TYPE | EMPLOYER / SCHOOL NAME | OCCUPATION |
|---|---|---|
| SCHOOL | LUTHERAN HIGH SCHOOL | STUDENT |

| EMPLOYER / SCHOOL ADDRESS | BUS. PHONE |
|---|---|
| 11249 NEWLIN GULCH BLVD PARKER, CO | (303)841-5551 |

| WITNESS CAN TESTIFY TO: |
|---|
| REAR PASSENGER IN VEH WITH AMANDA; DAUGHTER OF AMANDA; |

| INVOLVEMENT | NAME | | | | | | DOB | AGE |
|---|---|---|---|---|---|---|---|---|
| VICTIM | STATE OF COLORADO, | | | | | | | |

| RACE | SEX | HEIGHT | | WEIGHT | | HAIR | EYES | DRIVERS LIC. NO. / STATE | |
|---|---|---|---|---|---|---|---|---|---|
| | | | - | | - | | | | |

| RESIDENCE ADDRESS | PRIMARY PHONE |
|---|---|
| 1200 FEDERAL BLVD DENVER, CO 80204 | (720)944-4347 |

| E-MAIL ADDRESS | OTHER PHONE |
|---|---|
| | |

| EMPLOYER / SCHOOL TYPE | EMPLOYER / SCHOOL NAME | OCCUPATION |
|---|---|---|
| | | |

| EMPLOYER / SCHOOL ADDRESS | BUS. PHONE |
|---|---|
| | |

| WITNESS CAN TESTIFY TO: |
|---|
| STATE OF COLORADO |

| INVOLVEMENT | NAME | | | | | | DOB | AGE |
|---|---|---|---|---|---|---|---|---|
| OTHER | SHEA, JETT KAMDEN | | | | | | 02/17/2006 | 18 |

| RACE | SEX | HEIGHT | | WEIGHT | | HAIR | EYES | DRIVERS LIC. NO. / STATE | |
|---|---|---|---|---|---|---|---|---|---|
| | M | 62 | - | 165 | - | BRO | BRO | 171639827 | |

| RESIDENCE ADDRESS | PRIMARY PHONE |
|---|---|
| 4432 PRAIRIE ROSE CIR CASTLE ROCK, CO 80109 | |

| E-MAIL ADDRESS | OTHER PHONE |
|---|---|
| | |

| EMPLOYER / SCHOOL TYPE | EMPLOYER / SCHOOL NAME | OCCUPATION |
|---|---|---|
| | | |

| EMPLOYER / SCHOOL ADDRESS | BUS. PHONE |
|---|---|
| | |

| WITNESS CAN TESTIFY TO: |
|---|
| ADULT OLDER BROTHER THAT JUVENILES HADDIE AND EVYN WERE RELEASED TO. |

| PRIMARY OFFENSE / INCIDENT TYPE | CASE NUMBER |
|---|---|
| DUI | 2024-00029444 |

| REPORTING OFFICER | DATE |
|---|---|
| FEIERSTEIN, HILLARY | |

**VICTIM OFFENDER RELATIONSHIP**

**VICTIM OFFENDER RELATIONSHIP**

SHEA, AMANDA   07/21/1981 PARENT

**VICTIM OFFENDER RELATIONSHIP**

SHEA, AMANDA   07/21/1981 PARENT

**VICTIM OFFENDER RELATIONSHIP**

SHEA, AMANDA   07/21/1981 STRANGER

**VICTIM OFFENDER RELATIONSHIP**

**VICTIM OFFENDER RELATIONSHIP**

**VICTIM OFFENDER RELATIONSHIP**

| PRIMARY OFFENSE / INCIDENT TYPE | | DOUGLAS COUNTY SHERIFF'S OFFICE | | | CASE NO. | | |
|---|---|---|---|---|---|---|---|
| DUI | | SUSPECT VEHICLES (CASE VEHICLES) | | | 2024-00029444 | | |

| REPORTING OFFICER | | | | | DATE | | |
|---|---|---|---|---|---|---|---|
| FEIERSTEIN, HILLARY | | | | | 03/30/2024 | | |

| LICENSE NUMBER | | YEAR | MAKE | MODEL | STYLE | COLOR(S) | |
|---|---|---|---|---|---|---|---|
| DWCM72 | /CO | 2018 | BMW (GERMANY) | 530i | 4 D | WHI / WHI | |
| DESCRIPTION | | | | | VIN WBAJA7C50JWA74843 | | |
| VSQ846 | /CO | 2016 | FORD | F150 | PK TK | GRA / GRA | |
| DESCRIPTION | | | | | VIN 1FTEX1EP6GKF19100 | | |

| LICENSE NUMBER | | YEAR | MAKE | MODEL | STYLE | COLOR(S) | |
|---|---|---|---|---|---|---|---|
| | / | | | | | / | |
| DESCRIPTION | | | | | VIN | | |
| | / | | | | | / | |
| DESCRIPTION | | | | | VIN | | |

| LICENSE NUMBER | | YEAR | MAKE | MODEL | STYLE | COLOR(S) | |
|---|---|---|---|---|---|---|---|
| | / | | | | | / | |
| DESCRIPTION | | | | | VIN | | |
| | / | | | | | / | |
| DESCRIPTION | | | | | VIN | | |

| LICENSE NUMBER | | YEAR | MAKE | MODEL | STYLE | COLOR(S) | |
|---|---|---|---|---|---|---|---|
| | / | | | | | / | |
| DESCRIPTION | | | | | VIN | | |
| | / | | | | | / | |
| DESCRIPTION | | | | | VIN | | |

| LICENSE NUMBER | | YEAR | MAKE | MODEL | STYLE | COLOR(S) | |
|---|---|---|---|---|---|---|---|
| | / | | | | | / | |
| DESCRIPTION | | | | | VIN | | |
| | / | | | | | / | |
| DESCRIPTION | | | | | VIN | | |

| LICENSE NUMBER | | YEAR | MAKE | MODEL | STYLE | COLOR(S) | |
|---|---|---|---|---|---|---|---|
| | / | | | | | / | |
| DESCRIPTION | | | | | VIN | | |
| | / | | | | | / | |
| DESCRIPTION | | | | | VIN | | |

| LICENSE NUMBER | | YEAR | MAKE | MODEL | STYLE | COLOR(S) | |
|---|---|---|---|---|---|---|---|
| | / | | | | | / | |
| DESCRIPTION | | | | | VIN | | |
| | / | | | | | / | |
| DESCRIPTION | | | | | VIN | | |

| LICENSE NUMBER | | YEAR | MAKE | MODEL | STYLE | COLOR(S) | |
|---|---|---|---|---|---|---|---|
| | / | | | | | / | |
| DESCRIPTION | | | | | VIN | | |
| | / | | | | | / | |
| DESCRIPTION | | | | | VIN | | |



DOUGLAS COUNTY
SHERIFF
☆ Honor, Service, Valor ☆

4000 Justice Way
Castle Rock, CO 80109
(303) 660-7505

CASE NO. 2024-00029444

PRIMARY OFFENSE / INCIDENT TYPE
DUI

## CASE NARRATIVE

| REPORTING OFFICER | DATE SUBMITTED | APPROVING SUPERVISOR |
|---|---|---|
| FEIERSTEIN, HILLARY | 03/30/2024 | SAYER, TIMOTHY CURTIS 03/31/2024 |

**N A R R A T I V E**

On Saturday, March 30, 2024, at approximately 1555 hours I, Deputy R. Feierstein #2119, a patrol deputy with the Douglas County Sheriff's Office (DCSO), Traffic Unit responded to the area of the Wide Open Saloon (5607 US-85, Sedalia), in the unincorporated County of Douglas, State of Colorado, for a report of a Report Every Drunk Driver Immediately (REDDI). DCSO Dispatch advised there was a white in color BMW with CO license plate DMC-M72 parked in the parking lot. The driver of the vehicle was described as Amanda Shea (DOB 07/21/1981) as a white female with dark hair and highlights wearing a black hoodie.

Deputy Novitskiy was the first in the area and saw the vehicle traveling south on US-85. He relayed to me the following:
Deputy Novitskiy saw the BMW strike the rear of a white in color Ford F150 truck bearing CO license plate VSQ-846. The truck was traveling in front of the BMW. The truck stopped and the driver got out, looked at the rear of his truck then got back in and continued driving south. The driver of the BMW did not get out of their vehicle and waited there for the truck to continue to move. The BMW continued on the highway, where Deputy Novitskiy conducted a traffic stop. Deputy Novitskiy has not had any contact with the driver of the truck at this time.
After the traffic stop, Deputy Novitskiy found damage to the front BMW near the license plate, and it appeared to have been caused by a truck hitch.
A witness saw the BMW drive from C470 to Sedalia and go into other lanes more than once, including hitting the curb and the center median.

I arrived on scene, and observed a white BMW 530, VIN: WBAJA7C50JWA74843 pulled over on the side of the highway. I learned the following:
A female occupant (later identified by CO DL as Amanda) was in the driver seat
Amanda stated she stopped at Wide Open Saloon and had one margarita and food for her two children (Haddie Shea 10/01/2008 and Evyn Shea 10/01/2008) who were in the backseat of the BMW.
Amanda got out of the vehicle and agreed to voluntary roadside tests to insure she was alright to drive. While giving Amanda instructions for the roadside tests, she had gait ataxia, and would sway forward and backward while standing still.
Amanda was unable to perform roadside tests to that of a sober person. I placed Amanda into custody for driving under the influence of alcohol and advised her of Colorado Express Consent. Amanda agreed to a blood test, and she needed a medical evaluation for her safety after being in an accident
While I was placing Amanda into custody, I smelled an odor of an unknown alcoholic beverage coming off her breath
Vehicle insurance was State farm, and it was canceled 10/01/23. I verified this through Master Files.
Amanda stated she was not in a crash and did not rear end any other vehicle.

Deputy Aronson told me the following after speaking with Haddie and Evyn:
Haddie saw Amanda pour Vodka and Coca Cola into a cup and was drinking while driving them around.
Amanda had at least two large margaritas at Wide Open Saloon
The front of Amanda's BMW struck the rear of a white truck shortly before police arrived.

I had DCSO Dispatch send off on Amanda's criminal and driving histories and did not locate any prior

| PRIMARY OFFENSE / INCIDENT TYPE | | DOUGLAS COUNTY SHERIFF'S OFFICE | CASE NO. | |
|---|---|---|---|---|
| DUI | | WITNESS LIST SUBJECTS | 2024-00029444 | |

| REPORTING OFFICER | DATE |
|---|---|
| FEIERSTEIN, HILLARY | 03/30/2024 |

| INVOLVEMENT | NAME | | DOB | AGE |
|---|---|---|---|---|
| LE OFFICER | FEIERSTEIN, | | | |

| RACE | SEX | HEIGHT | WEIGHT | HAIR | EYES | DRIVERS LIC. NO. / STATE | |
|---|---|---|---|---|---|---|---|
| WH | F | - | - | | | | CO |

| RESIDENCE ADDRESS | PRIMARY PHONE |
|---|---|
| 4000 JUSTICE WAY CASTLE ROCK, CO | (303)660-7500 |
| E-MAIL ADDRESS | OTHER PHONE |

| EMPLOYER / SCHOOL TYPE | EMPLOYER / SCHOOL NAME | OCCUPATION |
|---|---|---|
| EMPLOYER / SCHOOL ADDRESS | | BUS. PHONE |

WITNESS CAN TESTIFY TO:
CONDUCTED SFSTS; TRANSPORTED AMANDA TO HOSP FOR BLOOD DRAW AND TO JAIL; #2119

| INVOLVEMENT | NAME | | DOB | AGE |
|---|---|---|---|---|
| LE OFFICER | NOTIVSKIY, | | | |

| RACE | SEX | HEIGHT | WEIGHT | HAIR | EYES | DRIVERS LIC. NO. / STATE | |
|---|---|---|---|---|---|---|---|
| WH | M | - | - | | | | CO |

| RESIDENCE ADDRESS | PRIMARY PHONE |
|---|---|
| 4000 JUSTICE WAY CASTLE ROCK, CO | (303)660-7500 |
| E-MAIL ADDRESS | OTHER PHONE |

| EMPLOYER / SCHOOL TYPE | EMPLOYER / SCHOOL NAME | OCCUPATION |
|---|---|---|
| EMPLOYER / SCHOOL ADDRESS | | BUS. PHONE |

WITNESS CAN TESTIFY TO:
FIRST ON SCENE; CONDUCTED TRAFFIC STOP; IMPOUNDED VEH; RELEASED JUVENILES TO ADULT BROTHER; #170

| INVOLVEMENT | NAME | | DOB | AGE |
|---|---|---|---|---|
| LE OFFICER | ARONSON, | | | |

| RACE | SEX | HEIGHT | WEIGHT | HAIR | EYES | DRIVERS LIC. NO. / STATE | |
|---|---|---|---|---|---|---|---|
| WH | M | - | - | | | | CO |

| RESIDENCE ADDRESS | PRIMARY PHONE |
|---|---|
| 4000 JUSTICE WAY CASTLE ROCK, CO | (303)660-7500 |
| E-MAIL ADDRESS | OTHER PHONE |

| EMPLOYER / SCHOOL TYPE | EMPLOYER / SCHOOL NAME | OCCUPATION |
|---|---|---|
| EMPLOYER / SCHOOL ADDRESS | | BUS. PHONE |

WITNESS CAN TESTIFY TO:
SPOKE WITH JUVENILES (HADDIE AND EVYN) AS WELL AS ADULT OLDER BROTHER; #2244

| INVOLVEMENT | NAME | | DOB | AGE |
|---|---|---|---|---|
| | | | | |

| RACE | SEX | HEIGHT | WEIGHT | HAIR | EYES | DRIVERS LIC. NO. / STATE | |
|---|---|---|---|---|---|---|---|
| | | - | | | | | |

| RESIDENCE ADDRESS | PRIMARY PHONE |
|---|---|
| | |
| E-MAIL ADDRESS | OTHER PHONE |

| EMPLOYER / SCHOOL TYPE | EMPLOYER / SCHOOL NAME | OCCUPATION |
|---|---|---|
| EMPLOYER / SCHOOL ADDRESS | | BUS. PHONE |

WITNESS CAN TESTIFY TO:

| INVOLVEMENT | NAME | | DOB | AGE |
|---|---|---|---|---|
| | | | | |

| RACE | SEX | HEIGHT | WEIGHT | HAIR | EYES | DRIVERS LIC. NO. / STATE | |
|---|---|---|---|---|---|---|---|
| | | - | | | | | |

| RESIDENCE ADDRESS | PRIMARY PHONE |
|---|---|
| | |
| E-MAIL ADDRESS | OTHER PHONE |

| EMPLOYER / SCHOOL TYPE | EMPLOYER / SCHOOL NAME | OCCUPATION |
|---|---|---|
| EMPLOYER / SCHOOL ADDRESS | | BUS. PHONE |

WITNESS CAN TESTIFY TO:

DOUGLAS COUNTY
**SHERIFF**
☆ *Honor, Service, Valor* ☆
Service is Weekly

4000 Justice Way
Castle Rock, CO 80109
(303) 660-7505

CASE NO. **2024-00029444**

## CASE NARRATIVE CONTINUATION

<div style="writing-mode: vertical">N A R R A T I V E   C O N T I N U A T I O N</div>

alcohol related convictions.

Amanda was transported to the Castle Rock Adventist Hospital for a medical evaluation and blood test. Registered Nurse Joseph Emerson drew two vials of Elizabeth's blood at 1733 hours from her arm. The blood vials were collected, sealed, initialed, and placed into their original Colorado Bureau of Investigations (CBI) box and sealed. The CBI box was subsequently placed into a refrigerated locker at the DCSO Evidence Facility.

After a medical clearance Amanda was transported to the DCSO Jail and booked without incident.

My Body Worn Camera (BWC) and Mobile Video Recorder (MVR) (rear) were activated at the time and may have captured statements and/or details not captured in this report.

Attachments:
-BWC/MVR (Feierstein #2119)
-MVR 2019
-Summons
-CBI Blood draw paperwork
-Booking documents
-Insurance Affidavit and Notice of Suspension

**EXHIBIT F**

**UNIFORM SUMMONS AND COMPLAINT OR PENALTY ASSESSMENT**   PRINT FROM TOP COPY ONLY

Parker PD

C 16097

| | | | | |
|---|---|---|---|---|
| Date of Violation (mm/dd/yyyy) | Time of Violation | Approximate Location of Violation, Town of Parker, Douglas County, State of Colorado | | Agency Case # |
| ☐ Aggressive Driving   ☐ Traffic Accident   ☐ Injuries Involved   ☐ School Zone   ☐ Construction Zone   ☐ Custodial Arrest   ☐ Sexual Offense | | | | |

**The People of Colorado vs.**

| Defendant (Last Name) | (First) | (Middle) | Date of Birth (mm/dd/yyyy) |
|---|---|---|---|

| Defendant's Address | City | State | Zip | Phone Number |
|---|---|---|---|---|

| Driver's ID License Number | State | CDL | Race | ☐ Male ☐ Female | Height | Weight | Hair | Eyes | Court Text Reminder ☐ Yes ☐ No |
|---|---|---|---|---|---|---|---|---|---|

| Vehicle License Number | State | Vehicle Year | Vehicle Make | Vehicle Model | Vehicle Color | Vehicle Identification Number |
|---|---|---|---|---|---|---|
| | CO | 2018 | BMW | 530 | WHI | |

| Registered Owner Name ☐ Same as Defendant | Address | City | State | Zip |
|---|---|---|---|---|

| X | C.R.S. | Title | CC | Pt | Fine / SC | X | C.R.S. | Title | CC | Pt | Fine / SC |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 18-3-204 | Assault in the Third Degree | | | SUMMONS | X | 42-2-101(1) | Drove Vehicle without Valid License | 660 | 3 | SUMMONS |
| | 18-3-206(1) | Menacing w/out Deadly Weapon | | | SUMMONS | | 42-3-114 | Displayed Expired Number Plates | 939 | 0 | |
| | 18-3-208 | Reckless Endangerment | | | SUMMONS | | | | | | |
| | 18-3-602(1) | False Imprisonment | | | SUMMONS | | 42-3-121(1)(b) | Displayed Fictitious / Altered License Plate | 942 | 0 | SUMMONS |
| | 18-6-701 | Child Abuse | | | SUMMONS | | 42-3-202(1)(a) | Vehicle Displayed only One Number Plate | 037 | 0 | |
| | 18-6-800.3 | Domestic Violence | | | SUMMONS | | 42-3-202(2)(a) | Number Plate(s) Improperly Attached | 036 | 0 | |
| | 18-6-801.6 | Domestic Violence Summons & Complaint | | | SUMMONS | | 42-3-202(2)(a)(III,B) | Number Plate(s) Not Clearly Visible | 036 | 0 | |
| | 18-6-803.5(1) | Violation of Protection Order | | | SUMMONS | | 42-3-202(2)(b) | Number Plate Obstructed by Distorted Smoked / Tinted / Scratched / Dirty Device | 049 | 0 | |
| | 18-9-104(1)(a) | Obstructing a Peace Officer | | | SUMMONS | | | | | | |
| | 18-9-106(1) | Disorderly Conduct | | | SUMMONS | | 42-3-203(3)(a)(a) | Displayed Expired Temporary Permit | 039 | 0 | |
| | 18-9-111(1) | Harassment | | | SUMMONS | | 42-4-1007(1)(a) | Failed to Drive in a Single Lane (Weaving) | 223 | 3 | |
| | 18-9-306.5(1) | Obstruction of Telephone / Telegraph Svc | | | SUMMONS | | 42-4-1008(1) | Following too Closely | 142 | 4 | |
| | 18-4-501.__ | Theft - $ | | | SUMMONS | | 42-4-1101(1) | Speeding _____ MPH in a _____ MPH Zone | | | |
| | 18-4-501.__ | Criminal Mischief - $ | | | SUMMONS | | 42-4-1409(1) | Owner Operated an Uninsured Motor Vehicle on a Public Roadway | 954 | 4 | SUMMONS |
| | 18-4-502 | 2nd Degree Criminal Trespassing | | | SUMMONS | | 42-4-1409(2) | Operated an Uninsured Motor Vehicle on a Public Roadway | 955 | 4 | SUMMONS |
| | 18-18-403.5(2)(c) | Possession of not more than 4 gm Sched 1 or 2, or any Qty. of 3,4,5 | | | SUMMONS | | 42-4-1409(3) | Failed to Present Evidence of Insurance Upon Request | 957 | 4 | SUMMONS |
| | 18-18-406(4)(c) | Possession of Marijuana Concentrate - More than 2 less than 6 oz. MJ Not More than 3 oz Concentrate | | | SUMMONS | | 42-4-202(1) | Drove a Defective / Unsafe Vehicle | 542 | 2 | |
| | 18-18-428(1)(a) | Possession of Drug Paraphernalia | PCD | PA | SUMMONS | | 42-4-204(1) | Failed to Display Headlamps When Required | 611 | 2 | |
| | 42-4-1301(1)(a) | Drove Under the Influence of Alcohol/Drugs | 808   813 | 12 | SUMMONS | | 42-4-206(3) | Vehicle had No/Defective License Plate Lamps | 619 | 0 | |
| | 42-4-1301(1)(b) | Drove with Abilities Impaired by Alcohol/Drugs | 861 | 3 | SUMMONS | | 42-4-208(1) | Vehicle had No/Defective Stop Lamps | 623 | 0 | |
| | 42-4-1301(2)(a) | Drove Vehicle with BAC of 0.08 or More BAC | 842 | 12 | SUMMONS | | 42-4-237(2) | Drove Vehicle when Safety Belt Not in Use | 575 | 0 | |
| X | 42-2-138(1)(a) | Drove Vehicle when License Under Restraint ☐ Suspended ☒ Revoked ☐ Cancelled | 076   077   078 | RA | SUMMONS | | 42-4-603 | Disregarded Traffic Control Device (Signs) | 300 | 4 | |
| | 42-2-138(1)(d)(I) | Drove Vehicle when License Under Restraint - Alcohol / Drug Related | 085 | RA | SUMMONS | | 42-4-604 | Disregarded Traffic Control Device (Lights) | 304 | 4 | |
| | 42-4-1401 | Reckless Driving | 140 | 8 | SUMMONS | | 42-4-608(1) | Failed to Use Turn Signals | 436 | 2 | |
| X | 42-4-1402(1) | Careless Driving | 141 | 4 | | | 42-4-702 | Failed to Yield Right of Way when Turning Left | 279 | 3 | |
| | | | | | | | | DNA Surcharge | | | $2.50 |

| X | C.R.S. | Title | CC | Pt | Fine / SC |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |

**Summons:** ☐ Traffic Infraction   ☐ Misdemeanor Traffic   ☒ MISD. / Petty
Without admitting guilt, I promise to appear at the time and place indicated below. Failure to appear may constitute a separate offense and will result in a warrant being issued for my arrest. (Required Court Appearance – DO NOT MAIL.)

X __In Custody__

NOTICE: See instructions on reverse side titled "Summons"

**Penalty Assessment:** My signature is a promise to pay this penalty assessment within 20 days. With payment, I acknowledge guilt of all charges listed above and understand that the points will be assessed against my driver's license. If I do not pay, my signature is a promise to appear in court as indicated below.

☐ Valid Colorado ID / DL

X _____   Total to be paid by mail $ _____

NOTICE: See instructions on reverse side titled "Penalty Assessment"   (Fine and Surcharge)

You are summoned and ordered to appear to answer charges noted above in:

**Douglas County Combined Court**
**4000 Justice Way, Castle Rock, Colorado**

On: _____ @ _____ am / pm

If this date is a Saturday, Sunday or Holiday, or for any reason the courthouse is closed, your mandatory appearance date is the next court business day.

The undersigned has probable cause to believe that the defendant committed the offense(s) against the peace and dignity of the People of the State of Colorado and affirms that a copy of this Summons & Complaint or Penalty Assessment was served upon the defendant.

Officer (Print) _____   Badge # 2313

Your signature: _____

Date issued: _____   Agency: _____

(Rev. 08/20)   **THIS IS A LEGAL DOCUMENT – READ BOTH SIDES**

**EXHIBIT G**

COUNTY COURT
DOUGLAS COUNTY, COLORADO
Douglas Combined Courts
4000 Justice Way
Castle Rock, CO 80109

FILED
IN THE COMBINED COURTS
DOUGLAS COUNTY, CO
MAY 0 2 2023

**The People of the State of Colorado, Plaintiff  vs.**

AMANDA SHEA, Defendant

DATE FILED: May 2, 2023 10:03 AM
CASE NUMBER: 2023M001021

▲ COURT USE ONLY ▲

Case Number:
C0182023M001021

Division/Courtroom:
D

## MANDATORY PROTECTION ORDER PURSUANT TO §18-1-1001, C.R.S.

| Full Name of Defendant ☐Protected Party alleges Weapon Involved | Date of Birth | Sex | Race | Weight | Height | Hair Color | Eye Color |
|---|---|---|---|---|---|---|---|
| AMANDA SHEA | 07/21/1981 | F | W | 115 | 505 | | |

| Full Name of Protected Party (Victim/Witness) | Date of Birth | Sex | Race | Full Name of Protected Party (Victim/Witness) | Date of Birth | Sex | Race |
|---|---|---|---|---|---|---|---|
| Timothy Shea | 11/24/1970 | M | | Evyn Shea | 10/1/08 | F | |
| Jett Shea | 2/17/06 | M | | Haddie Shea | 10/1/08 | F | |
| | | | | | | | |
| | | | | | | | |

**The Court Finds** it is appropriate to issue this Protection Order pursuant to §18-1-1001, C.R.S.

**The Court Finds** that the probable cause statement or arrest warrant ☒ does☐ does not include a crime that includes an act of domestic violence, as defined by §18-6-800.3(1).

**Therefore, it is ordered that you, the Defendant:**

☒1.   Shall not harass, molest, intimidate, retaliate against, or tamper with any witness to or victim of the acts you are charged with committing.

☐2.   Shall vacate the home of the victim(s), stay away from the home of the victim(s), and stay away from any other location the victim(s) is/are likely to be found.

☐3.   Shall refrain from contacting or directly or indirectly communicating with the victim(s) or witness(es).

☒4.   Shall not possess, purchase, or control a firearm or other weapon.

☒5.   Shall not possess or purchase any ammunition.

☒6.   Shall relinquish, for the duration of the order, any firearm or ammunition in your immediate possession or control, or subject to your immediate possession or control, and shall do so within 24 hours (24, unless the court finds good cause to provide additional time) of being served with this order, excluding legal holidays and weekends.  If you are in custody and cannot relinquish firearms and ammunition, the court orders you to do so within 24 hours of your release from custody. You shall complete an affidavit and file it along with proof of relinquishment with the court, within 7 business days of the date of this order as required by statute.

☒7.   Shall not possess or consume alcoholic beverages or controlled substances without a prescription.

☒8.   **Is further ordered that:** You shall commit no new offenses. Compliance with this MPO is a condition of any and all bonds posted in this case.

**This Order remains in effect until final disposition or further order of Court.**

Date: May 2, 2023 _____

By signing, I acknowledge receipt of this Order.
Date: _____

I certify this is a true and accurate copy of the original order.
Date: _____

Judge/Magistrate

X _____
Defendant

Clerk

*"Until final disposition of the action" means until the case is dismissed, until the Defendant is acquitted, or until the Defendant completes his or her sentence. Any Defendant sentenced to probation is deemed to have completed his or her sentence upon discharge from probation. A Defendant sentenced to incarceration is deemed to have completed his or her sentence upon release from incarceration and discharge from parole supervision. (§18-1-1001(8)(b), C.R.S.)

## Important Information About Protection Orders

**THIS ORDER IS IN EFFECT UNTIL THE DISPOSITION OF THIS ACTION, OR, IN THE CASE OF AN APPEAL, UNTIL THE DISPOSITION OF THE APPEAL.**

This Order is accorded full faith and credit and shall be enforced in every civil or criminal court of the United States, an Indian tribe, or a United States territory pursuant to 18 U.S.C. Sec. 2265. The issuing court has jurisdiction over the parties and subject matter. The Defendant has been given reasonable notice and opportunity to be heard.

### Notice to Defendant
- ✓ **A knowing violation of a Protection Order is a crime under §18-6-803.5, C.R.S.** A violation may subject you to fines of up to $1,000.00 and up to 364 days in jail. A violation will also constitute contempt of court.
- ✓ **You may be arrested** without notice if a law enforcement officer has probable cause to believe that you have knowingly violated this Order.
- ✓ If you violate this Order thinking that a victim or witness has given you permission, **you are wrong,** and can be arrested and prosecuted.
- ✓ The terms of this Order cannot be changed by agreement of the victim(s) or witness(es). **Only the Court can change this Order.**
- ✓ You may apply at any time for the modification or dismissal of this Protection Order.
- ✓ Possession of a firearm while this Protection Order is in effect or following a conviction for a misdemeanor crime of Domestic Violence, may constitute a Felony under Federal Law, 18 U.S.C. §922(g)(8) and (g)(9).
- ✓ Firearm and ammunition relinquishment must be in accordance with §18-1-1001(9)(b), C.R.S. Failure to comply with the order to relinquish may result in an arrest warrant.

### Notice to Law Enforcement Officers
- ✓ You shall use every reasonable means to enforce this Protection Order.
- ✓ You shall arrest, or take into custody, or if an arrest would be impractical under the circumstances, seek a warrant for the arrest of the Defendant when you have information amounting to probable cause that the Defendant has violated or attempted to violate any provisions of this Order and the Defendant has been properly served with a copy of this Order or has received actual notice of the existence of this Order.
- ✓ You shall enforce this Order even if there is no record of it in the Protection Order Central Registry.
- ✓ You shall take the Defendant to the nearest jail or detention facility utilized by your agency.
- ✓ You are authorized to use every reasonable effort to protect the Protected Parties to prevent further violence.
- ✓ You may transport, or arrange transportation to a shelter for the Protected Parties.

### Notice to Protected Person
- ✓ You may request the prosecuting attorney to initiate contempt proceedings against the Defendant.

EXHIBIT H



# Turning Pages Counseling

510 Wilcox St. Suite B
Castle Rock, CO 80104
(720) 744-0042

September 8, 2024

To Whom it may concern,

I have had the pleasure of working alongside Evyn Shea while navigating the complexities and stressors experienced within her fluctuating family dynamics. The adjustment has been very difficult for Evyn and her siblings as they continue to experience the trauma and daily impact of losing their primary caregiver, attempting to maintain household stability, and managing the daily challenges as an adolescent.

In my experience, young adolescents require stability, support, and consistency that is imperative for overall wellness and developmental growth. After meeting with Evyn recently, it appears that her and her siblings are witnessing a steady decline with their primary caregiver and her abilities to maintain the daily tasks and growing emotional needs. My concern for the situation has increased with the absence of the oldest sibling that has moved away to pursue college.

I believe in the importance of the family structure in raising healthy, successful children and feel that restoring their family system is imperative to their present and future growth.

Sincerely,

Christin Gardner MA, LPC

EXHIBIT I

# CERTIFICATE

# COMPLETION

SPC Englewood
Littleton, Colorado

*This certifies that:*

## Timothy Shea
(Reg. No.: 05591-509)

*has satisfactorily completed*

## Criminal Thinking:
## Finding Meaning and Making Change

*and is hereby awarded this certificate this 19th day of April, 2024*

*B. McCormick, M.A., Predoctoral Psychology Intern*

# Certificate of Completion

Presented to

## Timothy Shea #05591-509

For successfully completing the
Bureau of Prisons
Drug Education: A Path Forward
On April 16, 2024

M. Hejin, M.S.,C.A.S.,
Drug Treatment Specialist
FCI Englewood



Note: The Drug Abuse Education Course is a minimum of 12 hours. The goal of this program is to help the offender make an accurate evaluation of the consequences of his alcohol and or drug use and consider the need for treatment.



# Certificate of Completion

## PARTNERS IN PARENTING

*awarded to*

# TIMOTHY SHEA

Reg. 05591-509

*in recognition of*
*your dedication, passion, and hard work*

August 7, 2024
Date

J. Brennan, Special Population Program Coordinator
Name/Title of Presenter



*Certificate of Completion*

NATIONAL PARENTING PROGRAM PHASE II

*awarded to*

# TIMOTHY SHEA

Reg. 05591-509

*in recognition of*
*your dedication, passion, and hard work*

August 7, 2024
*Date*

J. Brennan, Special Population Program Coordinator
*Name/Title of Presenter*



# Certificate of Completion

## NATIONAL PARENTING PROGRAM PHASE I

*awarded to*

# TIMOTHY SHEA

Reg. 05591-509

*in recognition of*
*your dedication, passion, and hard work*

June 17, 2024
Date

J. Brennan, Special Population Programs Coordinator
Name/Title of Presenter

**EXHIBIT J**

BP-A0148
JUNE 10
               INMATE REQUEST TO STAFF CDFRM

U.S. DEPARTMENT OF JUSTICE                     FEDERAL BUREAU OF PRISONS

| TO:(Name and Title of Staff Member)<br>Warden Williams (via Unit Team) | DATE:<br>    June 17, 2024 |
|---|---|
| FROM:<br>Timothy Shea | REGISTER NO.:<br>   05591509 |
| WORK ASSIGNMENT:<br>Recreation | UNIT:<br>  CAMP |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary. Your failure to be specific may result in no action being
taken. If necessary, you will be interviewed in order to successfully respond to your
request. I am requesting a reduction in sentence / compassionate release pursuant to
18 U.S.C. § 3582(c)(1)(A), P.S. 5050.50, and the newly ammended policy statement of
the U.S.S.C. from 2023 expanding the circumstances that may constitute "extraordinary
and compelling reasons" for a reduction under the statute.

Specifically, my request is based on the serious downturn in my wife's mental health
related to alcoholism which, since the time of my sentencing, has rendered her
"incapacitated" and unable to provide adequate care for our two minor children
(Evyn Shea, 10/01/2008; Hayden Shea, 10/01/2008). I am the only available family
caregiver for my children and my incapacitated wife and am therefore respectfully
requesting a reduction in my sentence to time served. Verification of these recent
developments can be had by reference to two Colorado court cases: DUI – Case No.
24M752 (March 30, 2024); DV – Case No. 23M1021 (May 2023). Information verifying my
marriage status  to Amanda Shea (07/21/1981), my status as family caregiver to our
children, my release address and related pertinent details of a release plan are
already in possession of the Unit Team. I am also glad to provide any additional details.

               (Do not write below this line)

DISPOSITION:

| Signature Staff Member | Date |
|---|---|

Record Copy - File; Copy - Inmate

PDF                   Prescribed by P5511

                        This form replaces BP-148.070 dated Oct 86
                        and BP-S148.070 APR 94

BP-E IN SECTION 6 UNLESS APPROPRIATE FOR Prescribed by FOLDER

# SECTION 6

**EXHIBIT K**



**Individualized Needs Plan - Program Review    (Inmate Copy)**
Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: SHEA, TIMOTHY  05591-509

SEQUENCE: 02345377
Team Date: 05-16-2024

| | |
|---|---|
| Facility: | ENG ENGLEWOOD FCI |
| Name: | SHEA, TIMOTHY |
| Register No.: | 05591-509 |
| Age: | 53 |
| Date of Birth: | 11-24-1970 |

| | |
|---|---|
| Proj. Rel. Date: | 02-13-2028 |
| Proj. Rel. Mthd: | FIRST STEP ACT RELEASE |
| DNA Status: | PREBOP TST / 09-05-2023 |

**Detainers**

| Detaining Agency | Remarks |
|---|---|
| NO DETAINER | |

**Inmate Photo ID Status**

| No photo ID – Expiration: null |
|---|

**Current Work Assignments**

| Facl | Assignment | Description | Start |
|---|---|---|---|
| ENG | C REC ORD | CAMP RECREATION ORDERLY | 03-07-2024 |

**Current Education Information**

| Facl | Assignment | Description | Start |
|---|---|---|---|
| ENG | ESL HAS | ENGLISH PROFICIENT | 11-02-2023 |
| ENG | GED HAS | COMPLETED GED OR HS DIPLOMA | 11-02-2023 |

**Education Courses**

| SubFacl | Action | Description | Start | Stop |
|---|---|---|---|---|
| ENG | | FPC REAL ESTATE INVESTMENT | 02-01-2024 | CURRENT |
| ENG SCP | C | FPC MONEY MANAGEMENT | 12-20-2023 | 01-31-2024 |
| ENG SCP | C | NON-FICTION BOOK REPORT/STUDY | 11-15-2023 | 12-15-2023 |

**Discipline History (Last 6 months)**

| Hearing Date | Prohibited Acts |
|---|---|
| ** NO INCIDENT REPORTS FOUND IN LAST 6 MONTHS ** | |

**Current Care Assignments**

| Assignment | Description | Start |
|---|---|---|
| CARE1 | HEALTHY OR SIMPLE CHRONIC CARE | 10-24-2023 |
| CARE1-MH | CARE1-MENTAL HEALTH | 10-24-2023 |

**Current Medical Duty Status Assignments**

| Assignment | Description | Start |
|---|---|---|
| NO PAPER | NO PAPER MEDICAL RECORD | 10-24-2023 |
| REG DUTY | NO MEDICAL RESTR--REGULAR DUTY | 10-24-2023 |
| YES F/S | CLEARED FOR FOOD SERVICE | 10-24-2023 |

**Current Drug Assignments**

| Assignment | Description | Start |
|---|---|---|
| DAP NO INT | DRUG ABUSE PROGRAM NO INTEREST | 03-05-2024 |
| ED COMP | DRUG EDUCATION COMPLETE | 04-16-2024 |

**FRP Payment Plan**

| Most Recent Payment Plan |
|---|

**FRP Assignment:     PART     FINANC RESP-PARTICIPATES     Start: 11-07-2023**

Inmate Decision:  **AGREED       $25.00**          Frequency: **QUARTERLY**
Payments past 6 months:      **$50.00**          Obligation Balance: **$1,801,957.00**

**Financial Obligations**

| No. | Type | Amount | Balance | Payable | Status | |
|---|---|---|---|---|---|---|
| 1 | ASSMT | $300.00 | $250.00 | IMMEDIATE | AGREED | |
| | Adjustments: | Date Added | Facl | Adjust Type | Reason | Amount |
| | | 03-13-2024 | ENG | PAYMENT | INSIDE PMT | $25.00 |
| | | 12-12-2023 | ENG | PAYMENT | INSIDE PMT | $25.00 |



## Individualized Needs Plan - Program Review    (Inmate Copy)

Dept. of Justice / Federal Bureau of Prisons

Plan is for inmate: SHEA, TIMOTHY  05591-509

SEQUENCE: 02345377
Team Date: 05-16-2024

### Most Recent Payment Plan

| No. | Type | Amount | Balance | Payable | Status |
|---|---|---|---|---|---|
| 2 | REST FV | $1,801,707.00 | $1,801,707.00 | IMMEDIATE | AGREED |

** NO ADJUSTMENTS MADE IN LAST 6 MONTHS **

### FRP Deposits

Trust Fund Deposits - Past 6 months:  $1,133.20        Payments commensurate ?   N

New Payment Plan:    Will up to 100/mo

### Current FSA Assignments

| Assignment | Description | Start |
|---|---|---|
| AWARD | EBRR INCENTIVE AWARD | 11-03-2023 |
| FTC ELIG | FTC-ELIGIBLE - REVIEWED | 12-05-2023 |
| N-ANGER N | NEED - ANGER/HOSTILITY NO | 05-17-2024 |
| N-ANTISO N | NEED - ANTISOCIAL PEERS NO | 05-17-2024 |
| N-COGNTV N | NEED - COGNITIONS NO | 05-17-2024 |
| N-DYSLEX N | NEED - DYSLEXIA NO | 11-02-2023 |
| N-EDUC N | NEED - EDUCATION NO | 05-17-2024 |
| N-FIN PV N | NEED - FINANCE/POVERTY NO | 05-17-2024 |
| N-FM/PAR N | NEED - FAMILY/PARENTING NO | 05-17-2024 |
| N-M HLTH N | NEED - MENTAL HEALTH NO | 05-17-2024 |
| N-MEDICL N | NEED - MEDICAL NO | 05-17-2024 |
| N-RLF N | NEED - REC/LEISURE/FITNESS NO | 05-17-2024 |
| N-SUB AB N | NEED - SUBSTANCE ABUSE NO | 05-17-2024 |
| N-TRAUMA N | NEED - TRAUMA NO | 05-17-2024 |
| N-WORK N | NEED - WORK NO | 05-17-2024 |
| R-MIN | MINIMUM RISK RECIDIVISM LEVEL | 05-17-2024 |

### Progress since last review

He has been a Camp Rec Orderly since 3-7-2024. Has maintained clear conduct. No BC. No SS. No State ID. Enrolled in FPC Real Estate. FRP Complete.

### Next Program Review Goals

The following goals should be completed by next review in November. Continue job assignment and earn positive work reports. Maintain clear conduct and contact with family and friends through phone and email by placing at least 2 calls and send/receive 5 emails weekly. Enroll in and complete two Educational or FSA courses.

### Long Term Goals

Obtain Social Security Card, and birth certificate, and State ID, by 5-2025.

### RRC/HC Placement

### Comments

** No notes entered **



## FSA Time Credit Assessment
Register Number:05591-509, Last Name:SHEA

**U.S. DEPARTMENT OF JUSTICE**                          **FEDERAL BUREAU OF PRISONS**

| | |
|---|---|
| Register Number....: 05591-509 | Responsible Facility: ENG |
| Inmate Name | Assessment Date.....: 05-08-2024 |
|   Last.............: SHEA | Period Start/Stop...: 10-23-2023 to 05-08-2024 |
|   First............: TIMOTHY | Accrued Pgm Days....: 197 |
|   Middle...........: | Disallowed Pgm Days.: 1 |
|   Suffix...........: | FTC Towards PRC/HC..: 0 |
| Gender...........: MALE | FTC Towards Release.: 60 |
| Start Incarceration: 10-23-2023 | Apply FTC to Release: Yes |

| Start | Stop | Pgm Status | Pgm Days |
|---|---|---|---|
| 10-23-2023 | 10-24-2023 | disallow | 1 |

  Incomplete needs assessment
   Missing Need Area(s)
   Anger/Hostility
   Antisocial Peers
   Cognitions
   Family/Parenting

----------------------------------------------------------------------

| Start | Stop | Pgm Status | Pgm Days |
|---|---|---|---|
| 10-24-2023 | 05-08-2024 | accrue | 197 |

  Accrued Pgm Days...: 197
  Carry Over Pgm Days: 0
  Time Credit Factor.: 10
  Time Credits.......: 60

--- FSA Assessment ------------------------------------------------------------

| # | Start | Stop | Status | Risk Assignment | Risk Asn Start | Factor |
|---|---|---|---|---|---|---|
| 001 | 10-23-2023 | 11-20-2023 | ACTUAL | FSA R-LW | 11-03-2023 1335 | 10 |
| 002 | 11-20-2023 | 05-18-2024 | ACTUAL | FSA R-LW | 11-03-2023 1335 | 10 |

## FSA Recidivism Risk Assessment (PATTERN 01.03.00)

Register Number:05591-509, Last Name:SHEA

**U.S. DEPARTMENT OF JUSTICE**                                    **FEDERAL BUREAU OF PRISONS**

| | |
|---|---|
| Register Number: 05591-509 | Risk Level Inmate....: R-MIN |
| Inmate Name |   General Level......: R-MIN (-1) |
|   Last.........: SHEA |   Violent Level......: R-MIN (0) |
|   First........: TIMOTHY | Security Level Inmate: MINIMUM |
|   Middle.......: | Security Level Facl..: MINIMUM |
|   Suffix.......: | Responsible Facility.: ENG |
| Gender.........: MALE | Start Incarceration..: 10/23/2023 |

### PATTERN Worksheet Summary

| Item | - Value | - General Score | - Violent Score |
|---|---|---|---|
| Current Age | 53 | 7 | 4 |
| Walsh w/Conviction | FALSE | 0 | 0 |
| Violent Offense (PATTERN) | FALSE | 0 | 0 |
| Criminal History Points | 0 | 0 | 0 |
| History of Escapes | 0 | 0 | 0 |
| History of Violence | 0 | 0 | 0 |
| Education Score | HighSchoolDegreeOrGED | -2 | -2 |
| Drug Program Status | NoDAPCompletion | 0 | 0 |
| All Incident Reports (120 Months) | 0 | 0 | 0 |
| Serious Incident Reports (120 Months) | 0 | 0 | 0 |
| Time Since Last Incident Report | N/A | 0 | 0 |
| Time Since Last Serious Incident Report | N/A | 0 | 0 |
| FRP Refuse | FALSE | 0 | 0 |
| Programs Completed | 3 | -6 | -2 |
| Work Programs | 0 | 0 | 0 |
| | | Total  -1 | 0 |

### PATTERN Worksheet Details

Item: Programs Completed, Value: 3
General Score: -6, Violent Score: -2
Risk Item Data

| Category | - Assignment | - Start | - Stop |
|---|---|---|---|
| DRG | ED COMP | 04/16/2024 15:00 | |
| EDC | FPC NFICTB | 11/15/2023 10:09 | 11/15/2023 10:09 |
| EDC | FPC MONEYM | 12/20/2023 12:14 | 12/20/2023 12:14 |

Item: Work Programs, Value: 0
General Score: 0, Violent Score: 0
Risk Item Data
  No Data

Assessment Date: 05/17/2024                    (1)                    Assessment# R-2146326401

## FSA Needs Reassessment
Register Number:05591-509, Last Name:SHEA

**U.S. DEPARTMENT OF JUSTICE**                              **FEDERAL BUREAU OF PRISONS**

Register Number: 05591-509                    Responsible Facility: ENG
Inmate Name                                   Assessment Date.....: 05/17/2024
    Last.........: SHEA
    First........: TIMOTHY
    Middle.......:
    Suffix.......:
Gender.........: MALE

### Needs Reassessment Worksheet Summary

| Need Area | - Before/After - | Assignment - | Description |
|---|---|---|---|
| Anger/Hostility | Before | N-ANGER N | NEED - ANGER/HOSTILITY NO |
| | After | N-ANGER N | NEED - ANGER/HOSTILITY NO |
| Antisocial Peers | Before | N-ANTISO N | NEED - ANTISOCIAL PEERS NO |
| | After | N-ANTISO N | NEED - ANTISOCIAL PEERS NO |
| Cognitions | Before | N-COGNTV N | NEED - COGNITIONS NO |
| | After | N-COGNTV N | NEED - COGNITIONS NO |
| Education | Before | GED HAS | COMPLETED GED OR HS DIPLOMA |
| | After | N-EDUC N | NEED - EDUCATION NO |
| Family/Parenting | Before | N-FM/PAR N | NEED - FAMILY/PARENTING NO |
| | After | N-FM/PAR N | NEED - FAMILY/PARENTING NO |
| Finance/Poverty | Before | N-FIN PV N | NEED - FINANCE/POVERTY NO |
| | After | N-FIN PV N | NEED - FINANCE/POVERTY NO |
| Medical | Before | N-MEDICL N | NEED - MEDICAL NO |
| | After | N-MEDICL N | NEED - MEDICAL NO |
| Mental Health | Before | N-M HLTH N | NEED - MENTAL HEALTH NO |
| | After | N-M HLTH N | NEED - MENTAL HEALTH NO |
| Recreation/Leisure/Fitness | Before | N-RLF N | NEED - REC/LEISURE/FITNESS NO |
| | After | N-RLF N | NEED - REC/LEISURE/FITNESS NO |
| Substance Abuse | Before | N-SUB AB Y | NEED - SUBSTANCE ABUSE YES |
| | After | N-SUB AB N | NEED - SUBSTANCE ABUSE NO |
| Trauma | Before | N-TRAUMA N | NEED - TRAUMA NO |
| | After | N-TRAUMA N | NEED - TRAUMA NO |
| Work | Before | N-WORK N | NEED - WORK NO |
| | After | N-WORK N | NEED - WORK NO |